UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>FIRESTAR DIAMOND, INC., *et al.*<br><br>      Debtors. | Chapter 11<br><br>No. 18-10509 (SHL)<br><br>(Jointly Administered) |
| RICHARD LEVIN, Chapter 11 Trustee of FIRESTAR DIAMOND, INC., FANTASY, INC., and OLD AJ, INC. f/k/a A. JAFFE, INC.,<br><br>      Plaintiff,<br><br>   v.<br><br>AMI JAVERI (A/K/A AMI MODI); PURVI MEHTA (A/K/A PURVI MODI); NEHAL MODI; NEESHAL MODI; CENTRAL PARK REAL ESTATE, LLC; CENTRAL PARK SOUTH 50 PROPERTIES, LLC; TRIDENT TRUST COMPANY (SOUTH DAKOTA) INC., solely as Trustee of the ITHACA TRUST; TWIN FIELDS INVESTMENTS LTD.; AURAGEM COMPANY LTD.; BRILLIANT DIAMONDS LTD.; ETERNAL DIAMONDS CORPORATION LTD.; FANCY CREATIONS COMPANY LTD.; HAMILTON PRECIOUS TRADERS LTD.; SINO TRADERS LTD.; SUNSHINE GEMS LTD.; UNIQUE DIAMOND AND JEWELLERY FZC; WORLD DIAMOND DISTRIBUTION FZE; VISTA JEWELRY FZE; EMPIRE GEMS FZE; UNIVERSAL FINE JEWELRY FZE; DIAGEMS FZC; TRI COLOR GEMS FZE; PACIFIC DIAMONDS FZE; HIMALAYAN TRADERS FZE; UNITY TRADING FZE; FINE CLASSIC FZE; DG BROTHERS FZE,<br><br>      Defendants. | Adv. Proc. No. 20-1054 |

## MEMORANDUM OF LAW IN SUPPORT OF
## PURVI MEHTA'S MOTION TO DISMISS THE COMPLAINT

Frederick D. Hyman, Esq.
DUANE MORRIS LLP
1540 Broadway
New York, NY 10036
Tel: (212) 692-1063
*Attorneys for Defendant Purvi Mehta*

# TABLE OF CONTENTS

**Page(s)**

TABLE OF CONTENTS ................................................................................................ i

TABLE OF AUTHORITIES ...................................................................................... iii

PRELIMINARY STATEMENT ..................................................................................1

SUMMARY OF ALLEGATIONS ..............................................................................2

I.     The Alleged Scheme To Defraud The Punjab National Bank ............................2

II.    Ms. Mehta's Purported Role In The Scheme .....................................................3

III.   The Debtors And U.S. Affiliates' Purported "Injuries" ...................................6

IV.    The Trustee's Failure To Serve Ms. Mehta, A Belgian Resident With No
       Minimum Contacts With The United States ........................................................7

LEGAL ARGUMENT ................................................................................................8

I.     The Complaint Should Be Dismissed Pursuant To Rule 12(b)(5) Because the
       Trustee Failed to Properly Serve Ms. Mehta .....................................................8

II.    The Complaint Should Be Dismissed Pursuant to Rule 12(b)(2) Because the Court
       Lacks Personal Jurisdiction Over Ms. Mehta ..................................................11

       A.     The Trustee Fails to Allege That Ms. Mehta Had Sufficient Minimum
              Contacts With The United States ......................................................... 12

              1.     The Court Lacks General Jurisdiction Over Ms. Mehta ........................... 12

              2.     The Court Lacks Specific Jurisdiction Over Ms. Mehta.......................... 13

              3.     Ms. Mehta's Alleged Contacts With The United States Were Not The
                     Proximate Cause Of The Debtors And U.S. Affiliates' Purported Injuries
                     ...................................................................................................... 15

              4.     The Trustee's Conclusory Conspiracy Allegations Fail To Establish
                     Personal Jurisdiction ............................................................................. 16

       B.     Exercising Jurisdiction Over Ms. Mehta Would Be Unreasonable ..................... 19

III.   The Complaint Should Be Dismissed Pursuant to Rules 12(b)(1) and 12(b)(6)
       Because The Trustee Lacks Standing .................................................................20

A.    The Complaint Asserts Legal Rights And Interests Of Creditors, Not The
      Debtors Or U.S. Affiliates ................................................................................ 21

B.    The Trustee Lacks Standing Under The Doctrines Of *In Pari Delicto* And
      The *Wagoner Rule* ........................................................................................... 25

C.    The Trustee Lacks Standing To Bring RICO Claims ........................................... 26

D.    PNB Is Better Situated To Bring RICO Claims.................................................... 28

IV.   The Trustee's Claims Against Ms. Mehta Fail to State a Claim Upon Which
      Relief May Be Granted and Should Be Dismissed..............................................29

A.    The RICO Claims Should Be Dismissed As Time-Barred................................... 29

B.    The RICO Claims Should Be Dismissed For Failure To Allege Domestic
      Injury.................................................................................................................. 30

C.    The Complaint Does Not State RICO Claims Against Ms. Mehta....................... 32

      1.    The Complaint Does Not Allege A Substantive RICO Claim................. 33

      2.    The Complaint Does Not Allege That Ms. Mehta Knew Of Or Agreed To
            Facilitate Or Further The Bank Fraud....................................................... 34

      3.    The Complaint Does Not Allege That Ms. Mehta Committed A
            Substantive RICO Violation ...................................................................... 35

D.    The Complaint Does Not State A Cause Of Action For Actual Fraudulent
      Transfer With Respect To The Synergies-Mehta Transfer................................... 36

E.    The Complaint Does Not State A Cause of Action For Constructive
      Fraudulent Transfer With Respect To The Synergies-Mehta Transfer ............... 38

CONCLUSION....................................................................................................................40

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*45 John Lofts, LLC v. Meridian Capital Grp., LLC (In re 45 John Lofts, LLC)*,
599 B.R. 730 (Bankr. S.D.N.Y. 2019) ...................................................................36

*A. Terzi Prods. v. Theatrical Protective Union, Local No. One*, 2 F. Supp. 2d 485
(S.D.N.Y. 1998) ...................................................................................................27

*Allstate Ins. Co. v. Rozenberg*, 590 F. Supp. 2d 384 (E.D.N.Y. 2008) ..........................35

*Am. Tissue, Inc. v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 351 F. Supp. 2d 79
(S.D.N.Y. 2004) ...................................................................................................25

*Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006) .................................................28

*Armutcuoglu v. Lev*, No. 17-cv-0627, 2018 U.S. Dist. LEXIS 48469 (S.D.N.Y.
Mar. 23, 2018) .............................................................................................33, 36

*Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102 (1987) .......................17

*Aviles v. S&P Glob., Inc.*, 380 F. Supp. 3d 221 (S.D.N.Y. 2019) ................................30

*Baisch v. Gallina*, 346 F.3d 366 (2d Cir. 2003) ............................................................27

*Balintulo v. Daimler AG (In re S. African Apartheid Litig.)*, 643 F. Supp. 2d 423
(S.D.N.Y. 2009) .....................................................................................................8

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120 (2d Cir.
2002) ...................................................................................................................19

*Bank of Am. Corp. v. Braga Lemgruber*, 385 F. Supp. 2d 200 (S.D.N.Y. 2005) ..........21

*Bascuñán v. Elsaca*, 874 F.3d 806 (2d Cir. 2017) ........................................................31

*Bd. of Managers of Trump Tower at City Ctr. Condo. v. Palazzolo*, 346 F. Supp.
3d 432 (S.D.N.Y. 2018) ........................................................................................34

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .........................................................29

*Bologna v. Allstate Ins. Co.*, 138 F. Supp. 2d 310 .......................................................34

*In re Brown Publ. Co.*, Nos. 10-br-73295, 12-ap-08193, 2015 Bankr. LEXIS 667
(Bankr. E.D.N.Y. Mar. 4, 2015) ......................................................................38-39

*Buchwald v. Renco Group, Inc. (In re Magnesium Corp. of Am.)*, 399 B.R. 722
    (Bankr. S.D.N.Y. 2009) ...................................................................................22, 26

*Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68 (2d Cir. 2018)......................16, 18, 21

*Charych v. Siriusware, Inc.*, No. 17-cv-468, 2018 U.S. Dist. LEXIS 128341
    (E.D.N.Y. July 30, 2018), *report and recommendation adopted*, 2018 U.S.
    Dist. LEXIS 170968 (E.D.N.Y. Sept. 25, 2018).....................................................11

*Chera v. Chera*, No. 99-cv-7101, 2000 U.S. Dist. LEXIS 13749 (E.D.N.Y. Sep.
    20, 2000) ...................................................................................................27

*City of Almaty v. Ablyazov*, 226 F. Supp. 3d 272 (S.D.N.Y. 2016) ........................................ 30-31

*In re Collins*, 540 B.R. 54 (Bankr. E.D.N.Y. 2015) ......................................................36

*Condos Bros. Constr. Corp. v. Main St. Am. Assurance Co.*, 280 F. Supp. 3d 349
    (E.D.N.Y. 2017)...........................................................................................33

*Contrera v. Langer*, 290 F. Supp. 3d 269 (S.D.N.Y. 2018).........................................................29

*Daimler AG v. Bauman*, 571 U.S. 117 (2014) ........................................................................12, 16

*Dandong Old North-East Agric. & Animal Husbandry Co. v. Gary Ming Hu*, No.
    15-cv-10015, 2017 U.S. Dist. LEXIS 122471 (S.D.N.Y. Aug. 3, 2017) ......................... 32-33

*Deng Minghui v Chau Shuk Ling* [2007] 2 HKC, 414, [2007] 1 HKLRD 905 (CA)...................10

*Denney v. Deutsche Bank AG*, 443 F.3d 253 (2d Cir. 2006) .................................................... 26-27

*Egerique v. Chowaiki*, No. 19-cv-3110, 2020 U.S. Dist. LEXIS 73060 (S.D.N.Y.
    Apr. 24, 2020).............................................................................................. 32-33

*Feltman v. Kossoff & Kossoff LLP (In re TS Emp't, Inc.)*, 597 B.R. 543 (Bankr.
    S.D.N.Y. 2019) .............................................................................................25

*In re Firestar Diamond, et al.*, No. 18-bk-10509 (Bankr. S.D.N.Y.) ...........................................29

*First Capital Asset Mgmt. v. Brickellbush, Inc.*, 218 F. Supp. 2d 369 (S.D.N.Y.
    2002) .....................................................................................................*Passim*

*First Capital Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d 159 (2d Cir. 2004) ...............................33

*Frankel v. Cole*, 313 F. App'x 418 (2d Cir. 2009) ................................................................. 29-30

*Frydman v. Verschleiser*, 172 F. Supp. 3d 653 (S.D.N.Y. 2016) .................................................32

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011)....................................12

*Gowan v. Patriot Grp., LLC (In re Dreier LLP)*, 452 B.R. 391 (Bankr. S.D.N.Y. 2011) ...............................................................................................23, 36

*In re Granite Partners,* 194 B.R. 318 (S.D.N.Y. 1996) ................................................25

*Harris v. Coleman*, 863 F. Supp. 2d 336 (S.D.N.Y. 2012)............................................24

*Helicopteros Nacionales de Colombia, S.A., v. Hall*, 466 U.S. 408 (1984) ..................14

*Hemi Grp., LLC v. City of N.Y.*, 559 U.S. 1 (2010) .....................................................28

*Hinrichsen v. Hinrichsen Found.*, No. 17-cv-1152, 2018 U.S. Dist. LEXIS 4585 (S.D.N.Y. Jan. 9, 2018)..........................................................................................14

*Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085 (2d Cir. 1995) .............................21, 24

*Holliday v. K Rd. Power Mgmt., LLC (In re Bos. Generating LLC)*, No. 12-br-01879, 2020 Bankr. LEXIS 1593 (Bankr. S.D.N.Y. June 18, 2020).......................36

*Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258 (1992).................................................28

*Jus Punjabi, LLC v. Get Punjabi, Inc.*, No. 14-cv-3318, 2015 U.S. Dist. LEXIS 66006 (S.D.N.Y. May 20, 2015)...........................................................................34

*Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649 (S.D.N.Y. 1996).................33

*Khan v. Khan*, 360 F. App'x 202 (2d Cir. 2010) .............................................................8

*Kirschner v. Agoglia (In re Refco Inc.)*, 461 B.R. 181 (Bankr. S.D.N.Y. 2011)..........39

*Koulkina v. City of N.Y.*, 559 F. Supp. 2d 300 (S.D.N.Y. 2008) ..................................11

*Lehman Bros. Special Fin. Inc. v. Bank of Am. N.A. (In re Lehman Bros. Holdings)*, 535 B.R. 608 (Bankr. S.D.N.Y. 2015)...........................................11, 15

*In re Lehr Constr. Corp.*, No. 11-br-10723, 2015 Bankr. LEXIS 2932 (Bankr. S.D.N.Y. Sep. 2, 2015) .............................................................................. 21-22, 24

*Levin v. Modi, et al.*, No. 19-ap-1103 (Bankr. S.D.N.Y.)...........................................7, 9

*In re Libor-Based Fin. Instruments Antitrust Litig.*, No. 11-mdl-2262, 2019 U.S. Dist. LEXIS 49700 (S.D.N.Y. Mar. 25, 2019) ......................................................16

*Liquidation Tr. v. Daimler AG (In re Old CarCo LLC)*, 435 B.R. 169 (Bankr. S.D.N.Y. 2010) .................................................................................................. 36-37

*Lopresto v. Dep't of Revenue (In re Iorizzo)*, 114 B.R. 19 (E.D.N.Y. 1990) ...............24

*LPD N.Y., LLC v. Adidas Am., Inc.*, No. 15-cv-6360, 2019 U.S. Dist. LEXIS
    54321 (E.D.N.Y. Mar. 29, 2019) ........................................................29

*Makowski v. United Bhd. & Joiners of Am.*, No. 08-cv-6150, 2010 U.S. Dist.
    LEXIS 77775 ........................................................................27

*Martin Hilti Family v. Knoedler Gallery, LLC*, 386 F. Supp. 3d 319 (S.D.N.Y.
    2019) ................................................................................30

*McHale v. Citibank, N.A. (In re 1031 Tax Grp., LLC)*, 420 B.R. 178 (Bankr.
    S.D.N.Y. 2009) .................................................................. 25-26

*Mende v. Milestone Tech., Inc.*, 269 F. Supp. 2d 246 (S.D.N.Y. 2003) ........................8

*Miller v. Helmsley*, 745 F. Supp. 932 (S.D.N.Y. 1990) ....................................24

*Moore v. PaineWebber, Inc.*, 189 F.3d 165 (2d Cir. 1999) ...............................20

*Motorola Credit Corp. v. Uzan*, 322 F.3d 130 (2d Cir. 2003) ...........................27

*Noskov v. Roth*, No. 19-cv-7431, 2020 U.S. Dist. LEXIS 126411 (S.D.N.Y. July
    17, 2020) ............................................................................29

*O'Neill v. Asat Tr. Reg. (In re Terrorist Attacks on Sept. 11, 2001 (Asat Tr.
    Reg.))*, 714 F.3d 659 (2d Cir. 2013) .......................................11-12, 18-19

*O'Toole v. Karnani (In re Trinsum Group, Inc.)*, 460 B.R. 379 (Bankr. S.D.N.Y.
    2011) ................................................................................40

*O'Toole v. MyPlace Dev. SP. Z O.O. (In re Sledziejowski)*, Nos. 13-br-22050-
    RDD, 13-br-22748-RDD, 15-br-08207-SHL, 15-br-08208-SHL, 2016 Bankr.
    LEXIS 3791 (Bankr. S.D.N.Y. Oct. 21, 2016) ........................................14

*Official Comm. of Unsecured Creditors of Vivaro Corp. v. Leucadia Nat'l Corp.
    (In re Vivaro Corp.)*, 524 B.R. 536 (Bankr. S.D.N.Y. 2015) ...........................37

*Paradigm BioDevices, Inc. v. Viscogliosi Bros., LLC*, 842 F. Supp. 2d 661
    (S.D.N.Y. 2012) ....................................................................39

*Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30 (2d Cir. 2010) .....................11

*Pereira v. EisnerAmper LLP (Waterford Wedgwood USA, Inc.)*, 529 B.R. 599
    (Bankr. S.D.N.Y. 2015) .............................................................22

*Picard v. HSBC Bank PLC*, 454 B.R. 25 (S.D.N.Y. 2011) .................................25

*Picard v. JPMorgan Chase & Co.*, 460 B.R. 84 (S.D.N.Y. 2011) ..........................23

*Picard v. JPMorgan Chase Bank & Co. (In re Bernard L. Madoff Inv. Sec. LLC)*, 721 F.3d 54 (2d Cir. 2013) ................................................................. 20-21

*Pilates, Inc. v. Pilates Inst.*, 891 F. Supp. 175 (S.D.N.Y. 1995) ................................................... 12

*Reich v. Lopez*, 38 F. Supp. 3d 436 (S.D.N.Y. 2014) ................................................... 13

*RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090 (2016) ................................................ 30, 32

*Sharp Int'l Corp. v. State Street Bank & Trust Co. (In re Sharp Int'l Corp),* 403 F.3d 43 (2d Cir. 2005) ................................................... 38

*Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114 (2d Cir. 1991) ....................... 21, 25-26

*Sky Med. Supply Inc. v. SCS Support Claims Servs.*, 17 F. Supp. 3d 207 (E.D.N.Y. 2014) ................................................... 26-28

*Sonterra Capital Master Fund, Ltd. v. Barclays Bank PLC,* 366 F. Supp. 3d 516 (S.D.N.Y. 2018) ................................................... 31

*SPV Osus Ltd. v. UBS AG, UBS (Luxembourg) S.A.*, 882 F.3d 333 (2d Cir. 2018) .......... 11, 13, 15

*Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17 (2d Cir. 2004) ................................................... 17

*Terminate Control Corp. v. Horowitz*, 28 F.3d 1335 (2d Cir. 1994) ................................................... 27

*Thompson v. Cty. of Franklin*, 15 F.3d 245 (2d Cir. 1994) ................................................... 21

*Waite v. Schoenbach*, No. 10-cv-3439, 2010 U.S. Dist. LEXIS 115470 (S.D.N.Y. Oct. 29, 2010) ................................................... 39-40

*Walden v. Fiore*, 571 U.S. 277 (2014) ................................................... 15

*Wolstenholme v. Hirst*, 271 F. Supp. 3d 625 (S.D.N.Y. 2017) ................................................... 29

*World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*, 530 F. Supp. 2d 486 (S.D.N.Y. 2007) ................................................... 29

**Statutes**

National Stolen Property Act, 18 U.S.C. §§ 2314, 2315 ................................................... 34

Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c)-(d) ................. *Passim*

New York Debtor & Creditor Law, N.Y. D.C.L. §§ 273-279 ................................................... 6, 36, 38, 39

The Basic Law of the Hong Kong Special Administrative Region of the People's Republic of China art. 153 (1990). ................................................... 9

**Court Rules**

Fed. R. Bankr. P. 7004(f) ..........................................................................................11

Fed. R. Bankr. P. 7012(b) ...........................................................................................1

Fed. R. Civ. P. 4(f) .....................................................................................................9

Fed. R. Civ. P. 8(a) ...................................................................................................39

Fed. R. Civ. P. (b) ...............................................................................................34, 36

Fed. R. Civ. P. 12(b)(1) .........................................................................................1, 20

Fed. R. Civ. P. 12(b)(2) ..................................................................................... 1, 11-12

Fed. R. Civ. P. 12(b)(5) ..........................................................................................1, 8

Fed. R. Civ. P. 12(b)(6) .....................................................................................1, 20, 29

**Other Authorities**

Dept. of State, Hong Kong Judicial Assistance Information (June 13, 2018),
    https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-
    Information/HongKong.html ...............................................................................9

Defendant Purvi Mehta submits this memorandum of law in support of her motion to

dismiss the Complaint of Debtors Firestar Diamond, Inc., Fantasy, Inc. and Old AJ, Inc. f/k/a A.

Jaffe, Inc. (collectively, the "Debtors"), and Debtors' affiliates Synergies Corporation

("Synergies"), Firestar Group, Inc., Firestar Diamond International, Inc., Nirav Modi, Inc. and

AVD Trading, Inc. (collectively, the "U.S. Affiliates").  As set forth below, the Court should

grant the motion pursuant to Federal Rule of Bankruptcy Procedure 7012(b) and Federal Rules of

Civil Procedure 12(b)(1), 12(b)(2), 12(b)(5) and 12(b)(6) because (i) Ms. Mehta has not been

properly served, (ii) the Court lacks subject matter and personal jurisdiction, and (iii) the

Complaint fails to state a claim.

## PRELIMINARY STATEMENT

This case is styled as a traditional adversary proceeding seeking damages and to avoid

transfers of funds belonging to bankrupt United States companies.  However, in actuality, this

case is an improper attempt to recover money allegedly stolen by foreign entities and individuals

from the Punjab National Bank ("PNB") as a part of an alleged international conspiracy that the

Trustee describes as "the largest bank fraud in Indian history."  Remarkably, the Trustee

acknowledges that the Debtors and U.S. Affiliates were co-conspirators to this fraud.  Indeed, by

the Complaint's own allegations, the Debtors and U.S. Affiliates played an instrumental role in

committing the fraud.  In so alleging, it is clear that the Debtors and U.S. Affiliates were not

directly damaged by the fraud and did not transfer any funds belonging to them.  Rather, the

target of the alleged fraud was PNB, and the funds trace to PNB.  In other words, in this case, the

Debtors and U.S. Affiliates seek to avoid transfers of funds that belong to PNB, and claim

damage occasioned by their own bad acts.  These facts alone require the Court to dismiss the

Complaint because a trustee is barred from bringing claims that properly belong to a specific

creditor and, further, is barred from suing third parties for fraud in which the debtor participated.

1

In addition to these standing deficiencies, the Trustee's efforts to haul Ms. Mehta into this Court fail as a matter of law for at least three reasons.  First, the Trustee did not properly serve Ms. Mehta.  Second, the Court lacks personal jurisdiction over Ms. Mehta, a Belgian national whose contacts with the United States are marginal at best.  Third, the Trustee's four claims against Ms. Mehta for alleged violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") (Counts 1 and 2) and for avoidance and recovery of fraudulent transfers (Counts 3 and 4) omit essential elements and fail to state causes of action upon which relief can be granted. Moreover, despite spanning 866 paragraphs, 145 pages and 54 counts, the Complaint oddly does not include a substantive RICO count and conspicuously fails to allege actual facts to show that Ms. Mehta knew of or agreed to facilitate or further the fraud.  The Complaint's broad conclusory statements cannot cure these deficiencies.  For these reasons and as will be set forth in detail below, this Court should dismiss the Complaint in its entirety against Ms. Mehta.

## SUMMARY OF ALLEGATIONS[1]

## I.    The Alleged Scheme To Defraud The Punjab National Bank

According to the Complaint, this case arises out of an alleged scheme orchestrated by Nirav Modi, Ajay Ghandi and Mihir Bhansali to fraudulently obtain credit from PNB under Letters of Undertaking ("LOUs"), a financial instrument unique to India and designed to facilitate import transactions.  Compl. ¶¶ 51, 62, 63, 71, 73, 185.  To effectuate the scheme, Messrs. Modi, Ghandi and Bhansali allegedly created so-called "Shadow Entities" in Hong Kong and Dubai to engage in sham transactions that artificially inflated the import volume of Mr. Modi's companies in India and to launder the ill-gotten proceeds.  Id. ¶¶ 66, 72.

The scheme purportedly had four components: (1) bank fraud, (2) money laundering, (3)

---

[1] For purposes of this motion, Ms. Mehta treats the allegations in the Complaint as true. However, Ms. Mehta does not concede the truth, accuracy, or completeness of the allegations.

looting, and (4) obstruction of justice.  *Id.* ¶ 1.  The Complaint alleges that the scheme

occurred over at least an eight year period (*id.* ¶ 1, 62), and that no less than thirty-four

individuals and entities, including the Debtors and U.S. Affiliates, participated in the scheme.

(*id.* ¶¶ 14-16, 18-21, 24-50).  Among these individuals and entities is Purvi Mehta, Mr. Modi's

sister.  *Id.* ¶ 25.

## II.    Ms. Mehta's Purported Role In The Scheme

The Trustee's specific allegations against Ms. Mehta are limited.  Notably, there are no

substantive allegations in the Complaint that Ms. Mehta participated in the looting or obstruction

of justice components of the alleged scheme.  *See id.* ¶¶ 195-242, 243-275.  With respect to the

bank fraud and money laundering components, the Trustee alleges that Ms. Mehta's participation

is evident from the fact that she was an ultimate partial owner of the Shadow Entities located in

Dubai, as well as other entities on the margins of the alleged scheme.  *Id.* ¶¶ 2, 75-78.

However, significantly, the Trustee admits that Ms. Mehta did not form, control or

operate any of these entities (nor did she form, control or operate the Debtors or U.S. Affiliates,

for that matter).  Rather, Messrs. Modi, Bhansali and Ghandi formed, controlled and operated

these entities, and dictated how money should be funneled to, from or through these entities:

> • "During the Relevant Period, Nirav Modi, Mihir Bhansali, and Ajay Gandhi exercised direct oversight and control over numerous transactions between the U.S. Entities and Shadow Entities" (*id.* ¶ 124);

> • "[Mihir] Bhansali personally oversaw the creation of the Shadow Entities and LOU Entities and the selection of their principals, directors, officers, and employees" (*id.* ¶ 107);

> • "[Aditya] Nanavati exercised general oversight over the Hong Kong-based Shadow Entities and [Shyam] Wadhwa managed their bank accounts and finances" (*id.* ¶ 58);

> • "[Satyendra] Shukla, [Kurian] Mathews, and [Saju] Poulose also exercised broad oversight over the Dubai-based Shadow Entities' operations and finances" (*id.* ¶ 60);

3

• "Kurian Mathews, Shyam Wadhwa, and Nilesh Mistry . . . oversaw Fine Classic's [a Dubai Shadow Entity] day-to-day finances and operations" (*id.* ¶ 304);

• "Mihir Bhansali required at least two of Kurian Mathews, Satyendra Shukla, and Saju Poulose to be present in Dubai at all times to monitor Shadow Entity operations" (*id.* ¶ 113);

• "Mihir Bhansali and Nehal Modi managed and controlled Twin Fields . . . throughout the Relevant Period as the *de Jure* or *de facto* directors of Twin Fields" (*id.* ¶ 172);

• Neeshal Modi held "a power of attorney for his sister Purvi Mehta, in whose name the ill-gotten proceeds were held in bank accounts across the globe" (*id.* ¶ 5), and used it to sign an agreement in Ms. Mehta's name to purchase a Hong Kong apartment (*id.* ¶ 311);

• Mihir Bhansali "completed all of the paperwork" relating to the formation of British Virgin Island companies [which owned the Dubai Shadow Entities], "chose all of these entities' names[,]" and "declared" Ms. Mehta as one of the companies' two beneficial owners (*id.* ¶¶ 75-77);

• Mihir Bhansali directed Aditya Nanivati to name Ms. Mehta an authorized user on Hong Kong-based Firestar Diamond Ltd.'s Standard Charted Bank account, but, at the same time, instructed that the physical device necessary to approve transfers from the account be sent to Hermant Bhatt instead of Ms. Mehta (*id.* ¶ 111);

• Ajay Gandhi "outlined" steps to move Central Park Real Estate LLC beyond the reach of creditors by using Ms. Mehta to gift money to Ami Modi (*id.* ¶ 289), as well as strategized with Howard Hoff regarding "various scenarios for selling Debtor Firestar Diamond, Inc. and Central Park Real Estate LLC, the record owner of Nirav Modi and Ami Modi's New York apartment, in order to put their assets beyond the reach of creditors, including by making Ms. Mehta the owner of a trust (*id.* ¶¶ 284, 288); and

• One of Nirav Modi's accountants provided potential options to minimize taxes on Central Park Real Estate LLC, including by having Ms. Mehta contribute cash to a trust (*id.* ¶ 354).

Apart from Ms. Mehta's indirect, partial, passive ownership of entities that she did not form, control or operate, the Complaint attempts to tie Ms. Mehta to the alleged scheme by listing transactions in which Ms. Mehta sent or received proceeds of the purported fraud, almost all of which are tangential foreign transactions with no ties to the United States:

• A November 2013 gift from Ms. Mehta's husband to her, which, after being used as collateral for loans to an Indian company, was moved to Ms. Mehta's Mauritius bank account in or about 2016 (*id.* ¶ 303);

4

• A December 2016 loan assignment from Nirav Modi to Ms. Mehta relating to a loan Mr. Modi made to Delaware-based Synergies, which Synergies repaid to Ms. Mehta in July 2017 (the "Synergies-Mehta Transfer") (*id.* ¶ 283);

• December 2016 and January, March, April, July and October 2017 transfers from Dubai-based Fine Classic FZE to Ms. Mehta, including to her Mauritius bank account (*id.* ¶¶ 304, 314);

• A January or February 2017 transfer from Ms. Mehta's Mauritius bank account to a British Virgin Island company called Novelar International Holdings Ltd. (*id.* ¶ 305);

• A January or February 2017 transfer from Ms. Mehta to Singapore-based Islington International Holdings Pvt. Ltd. (*id.* ¶ 306);

• February and June 2017 transfers from Ms. Mehta to Mihir Bhansali to facilitate Mr. Bhansali's purchase of a New York apartment (*id.* ¶ 308);

• July 2017, October 2017 and November 2017 redemptions by Hong Kong-based Firestar Holdings Ltd. of non-voting shares Ms. Mehta held in the company (*id.* ¶¶ 57, 298, 321, 344-45); and

• 2017 and 2018 participation by Ms. Mehta in a transaction to facilitate Nirav Modi and Ms. Modi's purchase of a New York apartment via loans, an LLC and trust (*id.* ¶¶ 312-13, 315-18, 322-43, 346, 354, 362, 365).

The Trustee puts particular emphasis on the so-called "Synergies-Mehta Transfer," alleging that this transaction constitutes a fraudulent transfer (*id.* ¶¶ 467-83), apparently because the underlying funds allegedly originated from the purported fraud. However, this transaction is in reality a simple loan repayment and the Complaint does not allege that Ms. Mehta requested the assignment or asked for repayment. Rather, Mr. Modi chose to assign "his interest in the $14,575,000 Synergies 'loan' under an assignment agreement retroactively dated as of April 1, 2012[,]" which Synergies would repay to Ms. Mehta. *See id.* ¶¶ 283, 299.

The Trustee also emphasizes Ms. Mehta's discrete involvement in Mr. Modi's and Mr. Bhansali's apartment purchases, and an alleged investment, through Islington International Holdings Pvt. Ltd., in one of Mr. Modi's businesses in India. *Id.* ¶¶ 52, 308, 312-13, 315-18, 322-43, 346, 354, 446b, 446c, 446d. But the Complaint does not allege how a single indirect

investment could evidence participation in the broader purported fraud.  The Complaint also does

not allege that Ms. Mehta coordinated Mr. Modi's apartment purchase aside from signing

paperwork at the direction of other individuals, and does not allege how Mr. Modi's apartment

purchase or a discrete loan to Mr. Bhansali to purchase an apartment demonstrates her agreement

to participate in the alleged fraud.

Based upon on these allegations, the Complaint alleges four counts against Ms. Mehta:

(1) Conspiracy to Violate RICO, in violation of 18 U.S.C. § 1962(d), by the Debtors against all

Defendants; (2) Conspiracy to Violate RICO, in violation of 18 U.S.C. § 1962(d), by the U.S.

Affiliates against all Defendants; (3) Avoidance and Recovery of Actual Fraudulent Transfers

under N.Y. DCL §§ 276, 278, and 279 for the Synergies loan repayment; and (4) Avoidance and

Recovery of Constructive Fraudulent Transfers under N.Y. DCL §§ 273, 278, and 279 for the

Synergies loan repayment.  Compl. ¶¶ 371-483.

## III.    The Debtors And U.S. Affiliates' Purported "Injuries"

The Complaint seeks damages well in excess of $200 million, but does not establish the

Debtors and U.S. Affiliates' injuries or how such injuries were proximately caused by the alleged

scheme, except to state in conclusory fashion that the Debtors "collapsed" after PNB discovered

the fraud and sought to enforce its rights in India and elsewhere, and that the Debtors were

"impair[ed]" because of the alleged scheme's existence, without providing much detail about the

nature, cause or extent of their purported injury:

- "As a result of the Bank Fraud, PNB has asserted claims against each of the Debtors in
  excess of $1 billion on the grounds, among others, that a substantial portion of the
  proceeds of the Bank Fraud were transferred to or through the Debtors.  In addition, the
  Bank Fraud and its exposure and the seizure by Indian authorities of Modi-Controlled
  Entities in India resulted in the collapse of the Debtors' businesses and the filing of these
  chapter 11 cases." (*see id.* ¶ 193); and

- "Nirav Modi's, Mihir Bhansali's, and Ajay Gandhi's violations of 18 U.S.C. § 1956 and
  1957 directly and proximately caused injury to each Debtor's business and property by

impairing the Debtors' ability to recover the value of the Subsequent Transfers" and
""Nirav Modi, Mihir Bhansali, and Ajay Gandhi's violations of 18 U.S.C. §§ 1503 and
1512 directly and proximately caused injury to each Debtor's business and property by,
among other things, impairing Jaffe's ability to sell its assets at going-concern value . . ."
(*see id.* ¶¶ 417, 430; *see also* ¶¶ 400, 437, 444).

In other words, the Debtors' injuries were not caused by the alleged scheme itself, but rather by

PNB's discovery of same and subsequent legal actions.  Indeed, the four counts against Ms.

Mehta do not allege any injury to the Debtors or U.S. Affiliates, but rather make clear that PNB

was the target of the fraud and is the injured party:

> • "Nirav Modi, Mihir Bhansali, and Ajay Ghandi, together with their known and
> unknown co-conspirators, form an association-in-fact engaged in and affecting
> interstate and foreign commerce for a common and continuing purpose of
> formulating and implementing a common scheme to defraud PNB . . ." (*see id.* ¶
> 379); and

> • "Accordingly, each actual fraudulent transfer and each Subsequent Transfer
> constituted, involved, or resulted from an offense against India, a foreign nation,
> involving fraud, or a scheme or attempt to defraud, against PNB, a foreign bank."
> (*see id.* ¶ 405).

## IV.    The Trustee's Failure To Serve Ms. Mehta, A Belgian Resident With No Minimum Contacts With The United States

The Trustee filed the Complaint on February 25, 2020.  ECF No. 1.  The Trustee has not

yet personally served Ms. Mehta.  Declaration of Purvi Mehta ("Mehta Decl.") ¶ 3.  Rather, from

the Certificate of Service filed by the Trustee, it appears that an individual named Ho Kin Yiu

left a copy of the Complaint in the mailbox of a Hong Kong address on May 12, 2020.  ECF No.

15.  But Ms. Mehta does not reside at this address and has not resided there since February 2018.

Mehta Decl. ¶ 5.  Ms. Mehta was not physically located in Hong Kong on May 12, 2020 or at

any date since February 2018.  *Id.*

Ms. Mehta is in fact a Belgian national, and has resided in Belgium since February 2018.

Mehta Decl. ¶¶ 6-7.  Ms. Mehta previously advised the Trustee and the Court of her Belgian

nationality in a May 29, 2019 letter filed in a related adversary proceeding.  *Levin v. Modi, et al.*,

7

No. 19-ap-1103 (Bankr. S.D.N.Y.), ECF No. 29.  Despite her Belgian nationality, and despite the

fact that Ms. Mehta (1) does not and has never lived in the United States, (2) does not directly

own any United States entities, (3) does not control, manage or oversee any United States entities

or businesses, (4) does not work in the United States or directly offer or advertise services or

goods to the United States marketplace or its citizens, and (5) has not directed acts towards the

United States with any understanding or expectation that those acts would subject her to

jurisdiction in the United States (Mehta Decl. ¶¶ 12-15), the Trustee has named Ms. Mehta as a

defendant to this United States case.

## **LEGAL ARGUMENT**

### I.    **The Complaint Should Be Dismissed Pursuant To Rule 12(b)(5) Because the Trustee Failed to Properly Serve Ms. Mehta**

Before a federal court may exercise jurisdiction over a defendant, service on the

defendant must be satisfied.  *Balintulo v. Daimler AG (In re S. African Apartheid Litig.)*, 643 F.

Supp. 2d 423, 431 (S.D.N.Y. 2009).  Where a plaintiff fails to serve a defendant, the defendant

may move to dismiss the complaint under Rule 12(b)(5).  Fed. R. Civ. P. 12(b)(5).  On a

defendant's Rule 12(b)(5) motion, the plaintiff bears the burden of proof, and must "establish[]

that service was sufficient."  *Khan v. Khan*, 360 F. App'x 202, 203 (2d Cir. 2010).  "Conclusory

statements that a defendant was properly served" do not establish that service was sufficient and

cannot "overcome a defendant's own sworn affidavit that he was never served with process."

*Mende v. Milestone Tech., Inc.*, 269 F. Supp. 2d 246, 251 (S.D.N.Y. 2003) (internal quotations

and citation omitted)*.*  Therefore, "'[i]n considering a motion to dismiss pursuant to 12(b)(5) . . .,

a Court must look to matters outside the complaint to determine whether it has jurisdiction[,]'"

such as declarations by the defendant.  *Id.* (quotations and citation omitted).  Applying this

standard, the Trustee fails to establish that service on Ms. Mehta was sufficient.

Under Federal Rule of Civil Procedure 4(f), an individual residing in a foreign country

may be served "(1) by any internationally agreed means of service that is reasonably calculated

to give notice, such as those authorized by the Hague Convention on the Service Abroad of

Judicial and Extrajudicial Documents[.]"  Fed. R. Civ. P. 4(f).  Here, the Trustee represented to

the Court that Ms. Mehta is a Hong Kong resident, and that he served Ms. Mehta "in accordance

with the Hague Service Convention under Civil Rule 4(f)(1)."  ECF No. 7 ¶¶ 11, 19, 24.  The

Certificate of Service filed with the Court represents that an individual named Ho Kin Yiu served

the Summons and Complaint on Ms. Mehta "via hand delivery on May 12, 2020" at a Hong

Kong address.  *See* ECF No. 15.  However, as demonstrated by the Mehta Declaration, each of

these assertions is false.

First, Ms. Mehta is not a Hong Kong resident, but rather a Belgian resident.  Mehta Decl.

¶¶ 6-7.  Ms. Mehta has resided in Belgium since at least February 2018, a fact that the Trustee

knew or should have known before attempting to serve Ms. Mehta.  Indeed, Ms. Mehta

previously informed the Court that she was a Belgian national in connection with an earlier-filed

adversary proceeding.  *Levin v. Modi, et al.*, No. 19-ap-1103 (Bankr. S.D.N.Y.), ECF No. 29.

Second, the Trustee did not serve Ms. Mehta in accordance with the Hague Service

Convention or, in turn, with Hong Kong law.  The Hague Service Convention, which is

applicable to Hong Kong,[2] states, in pertinent part:

> The Central Authority of the State addressed shall itself serve the document or shall
> arrange to have it served by an appropriate agency, either – a) by a method
> prescribed by its internal law for the service of documents in domestic actions upon
> persons who are **within its territory**, or b) by a particular method requested by the
> applicant, unless such a method is incompatible with the law of the State addressed.

---

[2] The Hague Service Convention s applicable to Hong Kong under Article 153 of the Basic Law of the Hong Kong
Special Administrative Region of the People's Republic of China.  *See* Dept. of State, Hong Kong Judicial
Assistance Information (June 13, 2018), https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/HongKong.html.

Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or

Commercial Matters, *done* Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163 (emphasis added).

Hong Kong internal law states, in pertinent part:

> **This Order applies to the service on a person in Hong Kong** of any process in
> connection with civil or commercial proceedings in a court or tribunal of a country
> or place outside Hong Kong where the Registrar receives a written request for
> service . . .

Rules of the High Court (Cap.4A) O. 69 r. 2 (emphasis added).  Thus, both the Hague Service

Convention and Hong Kong law require the person served to be physically "within" or "in"

Hong Kong at the time of service.  *Deng Minghui v Chau Shuk Ling* [2007] 2 HKC, 414, [2007]

1 HKLRD 905 (CA) (finding ineffective service of process where plaintiff served defendant at

her Hong Kong address, but defendant had left Hong Kong for the United States seven months

prior).  Ms. Mehta was not "within" or "in" Hong Kong on May 12, 2020 or at any time after

May 12, 2020.  Mehta Decl. ¶¶ 5, 8.  Ms. Mehta was last "within" or "in" Hong Kong in

February 2018.  Mehta Decl. ¶ 8.

  <u>Third</u>, Ms. Mehta did not accept service of the Summons and Complaint via hand

delivery.  Mehta Decl. ¶ 3.  Since Ms. Mehta was in Belgium at all relevant times, Ms. Mehta

can only speculate that the Summons and Complaint were left in a letterbox at the referenced

Hong Kong address.  Mehta Aff. ¶ 4.  While letterbox service is permissible under Hong Kong

law, such service requires the defendant to be "within" Hong Kong at the time of service:

> A writ for service on a defendant **within the jurisdiction** may, instead of being
> served personally on him, be served— . . . if there is a letter box for that address,
> by inserting through the letter box a copy of the writ enclosed in a sealed envelope
> addressed to the defendant.

Rules of the High Court (Cap.4A) O. 10 r. 1 (emphasis added); *see also* Rules of the High Court

(Cap.4A) O. 69 r. 3; *Deng Minghui*, *supra*.  As noted above, Ms. Mehta was not "within" or "in"

Hong Kong on May 12, 2020 or at any time after May 12, 2020.  Mehta Decl. ¶¶ 5, 8.  Ms.

Mehta was last "within" or "in" Hong Kong in February 2018.  Mehta Decl. ¶ 8.

On these facts, the Complaint should be dismissed against Ms. Mehta.  *See Charych v. Siriusware, Inc.*, No. 17-cv-468, 2018 U.S. Dist. LEXIS 128341, at *11 (E.D.N.Y. July 30, 2018), *report and recommendation adopted*, 2018 U.S. Dist. LEXIS 170968 (E.D.N.Y. Sept. 25, 2018) (recommending action be dismissed against foreign defendant where plaintiff failed to serve defendant in accordance with Hague Convention or the foreign country's internal law); *see also Koulkina v. City of N.Y.*, 559 F. Supp. 2d 300, 311-12 (S.D.N.Y. 2008).

## II.   The Complaint Should Be Dismissed Pursuant to Rule 12(b)(2) Because the Court Lacks Personal Jurisdiction Over Ms. Mehta

It is a well-settled and uncontroversial principal of law that a court must have personal jurisdiction over a defendant.  *See, e.g.*, Fed. R. Bankr. P. 7004(f); *Lehman Bros. Special Fin. Inc. v. Bank of Am. N.A. (In re Lehman Bros. Holdings)*, 535 B.R. 608, 619 (Bankr. S.D.N.Y. 2015).  Where personal jurisdiction is absent, a defendant may move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2).  *Id.* 618.  On a Rule 12(b)(2) motion, the "plaintiff bears the burden of demonstrating personal jurisdiction over [the] person or entity against whom it seeks to bring suit."  *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010).  This means that the plaintiff must make a prima facie showing "(1) that a defendant has certain minimum contacts with the relevant forum[,] [i.e., the United States], and (2) that the exercise of jurisdiction is reasonable in the circumstances."  *SPV Osus Ltd. v. UBS AG, UBS (Luxembourg) S.A.*, 882 F.3d 333, 343 (2d Cir. 2018) (quotations and citation omitted); *In re Lehman Bros. Holdings*, 535 B.R. at 619.

In judging whether this showing has been satisfied, courts "will not draw argumentative inferences in the plaintiff's favor," nor will they "accept as true a legal conclusion couched as a factual allegation."  *O'Neill v. Asat Tr. Reg. (In re Terrorist Attacks on Sept. 11, 2001 (Asat Tr.*

*Reg.))*, 714 F.3d 659, 673 (2d Cir. 2013) (quotations and citations omitted).   Courts may also

rely on matters outside the pleadings as a "Rule 12(b)(2) motion is inherently a matter requiring

the resolution of factual issues outside of the pleadings…[thus] all pertinent documentation

submitted by the parties may be considered in deciding the motion."  *Pilates, Inc. v. Pilates Inst.*,

891 F. Supp. 175, 178 n.2 (S.D.N.Y. 1995) (quotations and citation omitted).  The Trustee does

not make this showing.

### A.    The Trustee Fails to Allege That Ms. Mehta Had Sufficient Minimum Contacts With The United States

To establish personal jurisdiction over a defendant in a bankruptcy proceeding, due

process requires a plaintiff to demonstrate that a defendant has certain minimum contacts with

the United States.  *In re Terrorist Attacks on Sept. 11, 2001 (Asat Tr. Reg.)*, 714 F.3d at

673.  Minimum contacts can be demonstrated by either a defendant's general business contacts

with the forum that are unrelated to the claims at issue (general jurisdiction), or the defendant's

specific contacts with the forum from which the claims at issue arise (specific jurisdiction).  *Id.*

673-74.  Here, it is unclear whether the Trustee intends to rely on either general or specific

jurisdiction to hail Ms. Mehta into United States court.  However, under either rubric, Ms. Mehta

does not have sufficient minimum contacts.

### 1.    The Court Lacks General Jurisdiction Over Ms. Mehta

General jurisdiction requires a plaintiff to allege the defendant's contacts with the forum

were so "continuous and systematic" that the exercise of jurisdiction over a defendant for claims

unrelated to those contacts is warranted.  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564

U.S. 915, 923-25 (2011).  "For an individual, the paradigm forum for the exercise of general

jurisdiction is the individual's domicile[.]"  *Id.* 924.  In other words, an individual must be "at

home" in the forum (*see Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)), and, absent

"'exceptional' cases[,]" an individual will not be subjected to jurisdiction in a forum where he or she is not domiciled (*Reich v. Lopez*, 38 F. Supp. 3d 436, 457 (S.D.N.Y. 2014)).

Here, the Complaint does not allege that Ms. Mehta is domiciled in the United States. Rather, it alleges that Ms. Mehta is a Hong Kong resident. Compl. ¶ 25. The Complaint also does not allege that Ms. Mehta lives or ever lived in the United States, has a home in the United States, or ever even stepped foot in the United States. The Complaint contains no allegations that any exceptional circumstances exist such that Ms. Mehta should be considered "at home" in the United States despite her overseas domicile. Meanwhile, Ms. Mehta's Declaration makes clear that she does not live in the United States and has never lived there, and has not even visited the United States since May 2016. Mehta Decl. ¶¶ 10-11. Accordingly, there is no general jurisdiction over Ms. Mehta.

## 2.    The Court Lacks Specific Jurisdiction Over Ms. Mehta

Specific jurisdiction requires a plaintiff to allege the defendant's suit-related contacts created "a substantial connection with the forum" and identify "some act by which the defendant purposefully availed itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *SPV OSUS*, 882 F.3d at 344 (quotations and citations omitted). The Complaint fails to allege sufficient suit-related contacts by Ms. Mehta for at least the following three reasons.

First, very few of the allegations in the Complaint pertain to Ms. Mehta. Those that do are overwhelmingly foreign in nature. Indeed, the Complaint's limited allegations against Ms. Mehta primarily concern (1) Ms. Mehta's indirect ownership of Dubai-based "shadow" entities through two layers of British Virgin Island entities (Compl. ¶¶ 73-78), (2) Ms. Mehta's alleged transfer of funds between Dubai, Hong Kong, Singapore and the BVI (*id.* ¶¶ 57, 298, 303-06, 314, 321, 344-45), and (3) Ms. Mehta's retention of funds in a Mauritius bank account (*id.* ¶

303-05).  Specific jurisdiction is not warranted based on these overseas transactions.  *See*

*O'Toole v. MyPlace Dev. SP. Z O.O. (In re Sledziejowski)*, Nos. 13-br-22050-RDD, 13-br-

22748-RDD, 15-br-08207-SHL, 15-br-08208-SHL, 2016 Bankr. LEXIS 3791, at *15-19 (Bankr.

S.D.N.Y. Oct. 21, 2016) (finding no specific jurisdiction where the transactions at issue were

"overwhelmingly foreign").

Second, the few allegations regarding Ms. Mehta that do touch the United States are too

attenuated to establish specific jurisdiction.  Specifically, the Complaint alleges that Ms. Mehta

indirectly owns Delaware-based Twin Fields Investments, Ltd. via two layers of British Virgin

Island companies.  Compl. ¶ 169.  The Complaint further alleges that Mihir Bhansali and Nehal

Modi "managed and controlled Twin Fields[,]" making Ms. Mehta a passive owner.  *Id.* at ¶ 172.

This type of alleged indirect, passive ownership is insufficient to establish personal jurisdiction.

*See Hinrichsen v. Hinrichsen Found.*, No. 17-cv-1152, 2018 U.S. Dist. LEXIS 4585, at *14

(S.D.N.Y. Jan. 9, 2018) (explaining that "the focus of the specific jurisdiction inquiry is on the

quality of the New York contacts . . . Here, considering the totality of the circumstances, the

quality of this New York contact—which amounts to the fact of a passive and indirect ownership

interest—is low" (internal citation omitted)).  The Complaint also alleges that Delaware-based

Synergies repaid a 2010 or 2011 loan to Ms. Mehta, which loan Mr. Modi had assigned to her

back in 2012.  Compl. ¶¶ 281, 283.  However, the "mere knowing receipt of funds in a bank

account is insufficient to establish jurisdiction." *In re Sledziejowski*, 2016 Bankr. LEXIS 3791, at

*24.  Moreover, the "unilateral activity of another party or a third person is not an appropriate

consideration when determining whether a defendant has sufficient contacts" with the forum.

*Helicopteros Nacionales de Colombia, S.A., v. Hall*, 466 U.S. 408, 417 (1984).

Third, the Complaint alleges that Ms. Mehta wired money to Mr. Bhansali, which Mr.

14

Bhansali used to purchase a New York City apartment, and that Ms. Mehta participated in a transaction to facilitate Mr. Modi's purchase of a New York apartment.  Compl. ¶¶ 308, 312-13, 315-18, 322-43, 346, 354, 362, 365.  In other words, Ms. Mehta had "contact" with the United States not because she wished to "purposefully avail" herself of the privilege of conducting activities in the United States, but rather because she transacted with individuals that happened to purchase New York property.  "[A] defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Walden v. Fiore*, 571 U.S. 277, 286 (2014).  "Due process requires that a defendant be hailed into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Id.* (*quoting Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).  Stated differently, "[t]he defendant's connection to the forum must arise out of contacts the defendant *himself* creates, and those contacts must be between the defendant and the forum [s]tate itself, not . . . persons who reside there." *In re Lehman Bros. Holdings*, 535 B.R. at 620 (internal quotations and citations omitted, emphasis in original).  For these reasons, there is no specific jurisdiction over Ms. Mehta.

### 3.    Ms. Mehta's Alleged Contacts With The United States Were Not The Proximate Cause Of The Debtors And U.S. Affiliates' Purported Injuries

Moreover, even if the above transactions were somehow sufficient to establish "minimum contacts" with the United States, they still fall short of establishing personal jurisdiction because they were not the proximate cause of the Debtors or U.S. Affiliates' injuries.  As the Second Circuit has explained: "Where the defendant has had only limited contacts with the state it may be appropriate to say that he will be subject to suit in that state **only if the plaintiff's injury was proximately caused by those contacts**." *SPV OSUS*, 882 F.3d at 344 (quotations and citation omitted) (emphasis added).  Here, the Debtors and U.S. Affiliates' purported injuries occurred

because PNB discovered the fraud, leading to the Debtors' collapse and PNB's assertion of

claims in excess of $1 billion (*see* Compl. ¶ 193) – not because of Ms. Mehta's passive, indirect

ownership of entities on the fringes of the alleged scheme, or her discrete indirect investment,

receipt of a legitimate loan repayment or participation in remote real estate transactions.  For

these reasons too, there is no personal jurisdiction over Ms. Mehta.

### 4.    The Trustee's Conclusory Conspiracy Allegations Fail To Establish Personal Jurisdiction

An alternative basis to establish personal jurisdiction over a defendant is through

conspiracy jurisdiction, which allows one conspirator's minimum contacts to confer personal

jurisdiction over a co-conspirator.  *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 86

(2d Cir. 2018).  The mere existence of a conspiracy is not enough; rather, "the plaintiff must

allege that (1) a conspiracy existed; (2) the defendant participated in the conspiracy; and (3) a co-

conspirator's overt acts in furtherance of the conspiracy had sufficient contacts with a state to

subject that co-conspirator to jurisdiction in that state."  *Id.* at 86-87.  However, a court must

approach conspiracy jurisdiction with reluctance and caution, as due process requires that "each

defendant himself or herself" create contacts with the forum:

> [A] cautious assessment of allegations of conspiracy jurisdiction seems particularly appropriate in this case, where moving plaintiffs are relying on random acts taken mainly by [co-conspirators] to establish jurisdiction over foreign defendants who had no direct contacts with plaintiffs whatsoever.  An expansive exercise of extraterritorial jurisdiction would not only create comity issues; it would contravene the central dictate of the Supreme Court's ruling in *Walden* that, under the due process analysis, we must look to the contacts that each defendant himself or herself created with the forum.

*In re Libor-Based Fin. Instruments Antitrust Litig.*, No. 11-mdl-2262, 2019 U.S. Dist. LEXIS

49700, at *29 (S.D.N.Y. Mar. 25, 2019).  This is particularly true where a plaintiff is attempting

to extend the doctrine over foreign defendants, which "risks" international comity because other

nations do not share the same expansive view of personal jurisdiction.  *Daimler*, 571 U.S. at 141-

42; *see also Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 115 (1987)).  Under

this rubric, conspiracy jurisdiction cannot hail Ms. Mehta into United States court.

First, Counts 3 and 4 of the Complaint, which seek to avoid and recover actual and

constructive fraudulent transfers against Ms. Mehta, do not allege the existence of a conspiracy.

To assert conspiracy jurisdiction, a "plaintiff must establish the court's jurisdiction with respect

to each claim asserted."  *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004)

(emphasis in original).  The Trustee does not do so with respect to Counts 3 and 4.  Second, with

regards to Counts 1 and 2, the Complaint does not sufficiently allege that Ms. Mehta participated

in a conspiracy.  As pled, the purported conspiracy here had four components: (1) bank fraud, (2)

money laundering, (3) looting, and (4) obstruction of justice.  *See* Compl. ¶ 1.  Notably, there are

no allegations in the Complaint that Ms. Mehta participated in the looting or obstruction of

justice components of the conspiracy at all.  For example, in Paragraphs 195 to 242, which

describe the looting component of the conspiracy, Ms. Mehta is not mentioned once.  Likewise,

in Paragraphs 243 to 275, which articulate the obstruction of justice component of the

conspiracy, Ms. Mehta is only mentioned in one paragraph, wherein the Complaint simply states

that Ms. Mehta sent an email to Ajay Gandhi on February 16, 2018 asking "Where can I reach u

on WhatsApp?"  *Id.* ¶ 268.

With respect to bank fraud and money laundering, the Complaint relies on Ms. Mehta's

ultimate ownership of "shadow" or "shell" entities and three transactions in which Ms. Mehta

sent or received alleged proceeds of the conspiracy, claiming that Ms. Mehta's "agreement to

join and support" the conspiracy "is demonstrated by or can be inferred from" these acts.  *See id.*

¶ 446.  However, based on the Trustee's own allegations, Ms. Mehta did not form, control,

manage, or oversee these entities and played no more than a passive role in the transactions.  *See*

17

*id.* ¶¶ 52, 283, 308, 312-13, 315-18, 322-43, 346, 354, 444b-d.  The mere ownership of a shell

company is not nefarious and is often done for legitimate corporate and tax reasons.  Likewise,

discrete investments and real estate transactions are commonplace.  The Trustee cannot establish

conspiracy jurisdiction by asking this Court to infer participation in a bank fraud from these

ordinary acts.  *See In re Terrorist Attacks on Sept. 11, 2001 (Asat Tr. Reg.)*, 714 F.3d at 673

(quoting *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010) and

*Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994) for the propositions

that a court "will not draw argumentative inferences in the plaintiff's favor" nor "accept as true a

legal conclusion couched as a factual allegation").

<u>Third</u>, the Complaint does not sufficiently allege contacts with the United States to

subject Ms. Mehta's co-conspirators, and thus Ms. Mehta, to jurisdiction in the United States.

As the Second Circuit's decision in *Charles Schwab* makes clear, the conspiracy theory of

jurisdiction requires a plaintiff to allege that a co-conspirator directed "overt acts in furtherance

of the conspiracy" to the forum.  883 F.3d at 87 (finding that co-conspirators' activities in

California could not support personal jurisdiction where those activities "had nothing to do" with

the conspiracy).  In other words, a plaintiff cannot simply claim that any act by a co-conspirator

in the forum was in furtherance of the conspiracy.  *Id*.

Here, the Complaint extensively alleges overseas acts and transactions, all directed at

India, where PNB is located, not the United States.  For example, the Complaint explains that the

gravamen of the conspiracy was to obtain fraudulent LOUs, a uniquely Indian financial

instrument, from PNB by inflating the important volume of Mr. Modi's Indian companies.  *See*

Compl. ¶¶ 62-63, 66.  The Complaint also explains that the conspiracy was effectuated by

"utilizing a web of shadow entities to engage in fraudulent and fictitious import transactions[.]"

*Id.* ¶ 71.  Notably, all of the cited shadow entities are located in either Hong Kong or Dubai.  *Id.*

¶¶ 71, 73.  By contrast, the Complaint alleges little United States acts, and those acts that are

alleged are miscellaneous transactions by the Debtors and U.S. Affiliates with the shadow

entities, and random real estate transactions that have no substantive connection to the

conspiracy.  *See id.* ¶¶ 90-104, 308, 312-13, 315-18, 322-43, 346, 354, 362, 365.  These

allegations are insufficient to establish that any one of the alleged co-conspirators committed

sufficient acts in the United States to subject the remaining thirty-three to jurisdiction.

### B.    Exercising Jurisdiction Over Ms. Mehta Would Be Unreasonable

In addition to establishing minimum contacts with the relevant forum, a plaintiff must

also allege that the exercise of jurisdiction is reasonable in the circumstances.  *In re Terrorist*

*Attacks on Sept. 11, 2001 (Asat Tr. Reg.)*, 714 F.3d at 673.  Reasonableness requires

consideration of five factors:

> (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the
> interests of the forum state in adjudicating the case; (3) the plaintiff's interest in
> obtaining convenient and effective relief; (4) the interstate judicial system's interest
> in obtaining the most efficient resolution of the controversy; and (5) the shared
> interest of the states in furthering substantive social policies.

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 129 (2d Cir. 2002)

(quotations and citation omitted)*.*

Here, Ms. Mehta will suffer substantial burden if asked to defend herself in the United

States – a country in which she has not set foot in for over four years.  Mehta Decl. ¶¶ 9, 11.

Indeed, the acts that the Trustee seeks to ascribe to Ms. Mehta occurred abroad, as Ms. Mehta

was at all relevant times located in Hong Kong or Belgium.  Mehta Decl. ¶¶ 5-6.  Moreover, the

primary acts that the Trustee seemingly relies on to connect Ms. Mehta to the conspiracy, her

indirect, passive ownership of shadow entities, are all foreign entities.  *See* Compl. ¶¶ 2, 75-78.

Thus, all of the evidence and witnesses Ms. Mehta would rely upon are overseas.  In addition, as

Ms. Mehta notes in her Declaration, she (1) does not and has never lived in the United States, (2) does not directly own any United States entities, (3) does not control, manage or oversee any United States entities or businesses, (4) does not work in the United States or directly offer or advertise services or goods to the United States marketplace or its citizens, and (5) has not directed acts towards the United States with any understanding or expectation that those acts would subject her to jurisdiction in the United States.  Mehta Decl. ¶¶ 12-15.  Thus, it would hardly be convenient, effective or efficient to sue Ms. Mehta in the United States.

Moreover, the interests of the United States and its justice system in adjudicating this case or furthering social policies are tenuous at best.  As noted above, this case arises out of a billion dollar fraud perpetrated against PNB, **an Indian bank**, using a web of **Indian companies and foreign entities located in Hong Kong and Dubai**, which had the alleged indirect effect of causing the collapse of the Debtors once **PNB and Indian authorities** discovered the fraud.  *See* Compl. ¶¶ 51, 62-193.  On these facts, it would not be reasonable to exercise jurisdiction over Ms. Mehta when Ms. Mehta has no connection to the United States and the action essentially seeks redress on behalf of an Indian bank against foreign entities and individuals.  Accordingly, the Complaint should be dismissed against Ms. Mehta for lack of personal jurisdiction.

III.    **The Complaint Should Be Dismissed Pursuant to Rules 12(b)(1) and 12(b)(6) Because The Trustee Lacks Standing**

"Standing is a threshold question in every federal case, determining the power of the court to entertain the suit."  *Picard v. JPMorgan Chase Bank & Co. (In re Bernard L. Madoff Inv. Sec. LLC)*, 721 F.3d 54, 66 (2d Cir. 2013) (internal quotations and citation omitted).  Where standing is absent, a defendant may move to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  *First Capital Asset Mgmt. v. Brickellbush, Inc.*, 218 F. Supp. 2d 369, 377-78 (S.D.N.Y. 2002); *Moore v. PaineWebber, Inc.*, 189 F.3d 165, 169 n.3 (2d Cir. 1999).  On a

motion to dismiss, "[t]he burden to establish standing remains with the party claiming that standing exists," i.e., the plaintiff. *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995). To meet this burden, the plaintiff must "clearly" allege facts to demonstrate it is the "proper party to invoke judicial resolution of the dispute" (*Thompson v. Cty. of Franklin*, 15 F.3d 245, 249 (2d Cir. 1994)), and cannot rely on argumentative averments in the pleadings; rather, standing must appear affirmatively in the record as a whole (*Bank of Am. Corp. v. Braga Lemgruber*, 385 F. Supp. 2d 200, 218 (S.D.N.Y. 2005)). As such, in analyzing whether the plaintiff has met this burden, the court may refer to evidence outside the pleadings, such as affidavits and other documents. *First Capital*, 218 F. Supp. 2d at 378; *Bank of Am. Corp.*, 385 F. Supp. at 217-18. The Trustee does not meet this burden.

### A.    The Complaint Asserts Legal Rights And Interests Of Creditors, Not The Debtors Or U.S. Affiliates

To establish standing, a plaintiff "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 118 (2d Cir. 1991) (internal quotations and citation omitted). To that end, where the plaintiff is a bankruptcy trustee, the trustee must assert claims that belong to the bankruptcy estate, and has "no standing" to assert claims on behalf of the estate's creditors. *Id*. "That is because a bankruptcy trustee is not empowered to collect money not owed to the estate; the trustee's proper task is simply to collect and reduce to money the property of the estates for which (he is trustee)." *Picard*, 721 F.3d at 67 (internal quotations and citation omitted).

To determine if a claim belongs to the bankruptcy estate or the estate's creditors, the pertinent questions are (1) whether the claim belongs to the debtor at the commencement of the bankruptcy case, and (2) whether the injury at issue was to the debtor or to its creditors. *See In*

21

*re Lehr Constr. Corp.*, No. 11-br-10723, 2015 Bankr. LEXIS 2932, at \*17 (Bankr. S.D.N.Y. Sep.

2, 2015); *Pereira v. EisnerAmper LLP (Waterford Wedgwood USA, Inc.)*, 529 B.R. 599, 603

(Bankr. S.D.N.Y. 2015).  In analyzing the first question, "courts look to the nature of the wrongs

alleged to see if the alleged injury is primary, particularized, special, direct, personal, distinct, or

individualized to creditors" versus "a general one with no particularized injury arising from it[.]"

*In re Lehr Constr. Corp.*, 2015 Bankr. LEXIS 2932 at \*17 (internal quotations and citation

omitted).  In analyzing the second question, a court may consider multiple factors, including the

injury underlying the claims, who suffered the injury and who would gain from recovery.

*Pereira*, 529 B.R. at 603.  Stated more simply, "[a]s an analytic matter . . ., determination of

standing requires inquiry as to whether the injury was to the *corporation* (with resulting claims

to be brought by or on behalf of the corporation), or was to *creditors individually* (apart from

their indirect stake in distributions from the estate that owes them money)."  *Buchwald v. Renco*

*Group, Inc. (In re Magnesium Corp. of Am.)*, 399 B.R. 722, 758 (Bankr. S.D.N.Y. 2009)

(emphasis in original).  Under this standard, the Trustee lacks standing to bring this adversary

proceeding for four reasons.

    First, the Complaint states claims rightfully belonging to the Debtors' largest creditor,

PNB, rather than the Debtors or U.S. Affiliates.  Specifically, Counts 1 and 2 claim conspiracy to

violate RICO, and allege that the target of their conspiracy was PNB:

> Nirav Modi, Mihir Bhansali, and Ajay Ghandi, together with their known and
> unknown co-conspirators, form an association-in-fact engaged in and affecting
> interstate and foreign commerce for a common and continuing purpose of
> formulating and implementing a common scheme to defraud PNB for their personal
>
> enrichment through a pattern of fraud, lies, deceit, and corruption.

*See* Compl. ¶ 379.  Likewise, Counts 3 and 4 seek to avoid and recover fraudulent transfers, and

allege that the purpose of these transfers was to defraud PNB:

> Accordingly, each actual fraudulent transfer and each Subsequent Transfer constituted, involved, or resulted from an offense against India, a foreign nation, involving fraud, or a scheme or attempt to defraud, against PNB, a foreign bank.

*Id.* ¶ 405. The Complaint also makes explicit that the "mechanics of the bank fraud" was a scheme to obtain loans, credits, and other funds from PNB. *Id.* ¶ 62. The Trustee has no standing to bring these claims on behalf of PNB. *See Picard v. JPMorgan Chase & Co.*, 460 B.R. 84, 91 (S.D.N.Y. 2011) (finding bankruptcy trustee could not pursue common law causes of action premised on Ponzi scheme on behalf of the bankruptcy estate's creditors). To find otherwise would "usurp the creditors' right to determine whether and in what forum to vindicate their legal injuries," and risk subjecting defendants to "the danger of duplicative recoveries." *See id.* (internal quotations and citations omitted).

   <u>Second</u>, Counts 3 and 4 seek to recover money that belongs to PNB, not to Synergies. Notably, the Complaint claims that the funds underlying this transfer were "illicit proceeds" of the bank fraud and were allegedly laundered through Synergies:

> 297.   The laundering of funds through the Firestar Entities' corporate restructuring involved several steps. . . . FIPL would then make a $115 million capital contribution to FHL.

> 298.   Of this $115 million, FHL would use . . . $20 million to infuse capital in Synergies.

> 299.   Synergies would then use $14,575,000 of the new capital to "repay" Purvi Mehta for the "loans" Nirav Modi originally made to Synergies in 2010 and 2011 and subsequently assigned to Purvi Mehta in 2016.

> *            *            *

> 472.  . . . Nirav Modi, Mihir Bhansali, Ajay Gandhi, and their coconspirators
>
> approved the Synergies-Mehta Transfer in order to launder and siphon illicit proceeds of the Bank Fraud . . .

*See* Compl. ¶¶ 297-99, 472. The Trustee has no standing to avoid and recover a transfer of stolen funds that are not the "property of the debtor" or Synergies. *See Gowan v. Patriot Grp.,*

*LLC (In re Dreier LLP)*, 452 B.R. 391, 415 (Bankr. S.D.N.Y. 2011); *Harris v. Coleman*, 863 F. Supp. 2d 336, 343-44 (S.D.N.Y. 2012) (finding plaintiff did not state claim for fraudulent conveyance under N.Y. DCL because "[t]here is no way that Harris could have defrauded his creditors through this transfer as the allegedly fraudulent Coleman Assignment conveyed something to TCI that Harris never owned"); *Lopresto v. Dep't of Revenue* (*In re Iorizzo)*, 114 B.R. 19, 23-24 (E.D.N.Y. 1990) (finding money stolen by debtor and associated companies was "certainly not part of the bankrupt's estate").

      <u>Third</u>, the Complaint fails to allege injury to the Debtors or U.S. Affiliates. Rather, the only specific allegation of injury is to PNB, who the Complaint alleges sustained "a total loss . . . in excess of $1 billion[.]" *See* Compl. ¶ 193. By contrast, all of the allegations of injury to the Debtors and U.S. Affiliates are general and conclusory (*see, e.g.*, *Id.* ¶ 439). The Trustee cannot rely on such conclusory allegations in an attempt to negate the fact that the injury is specific and particular to PNB. *See Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995) ("General, conclusory allegations need not be credited, however, when they are belied by more specific allegations of the complaint."); *In re Lehr Constr. Corp.*, 2015 Bankr. LEXIS 2932 at *19 (explaining that in "assessing trustee standing, a trustee cannot simply allege damage to the debtor to negate the particularized nature of a harm done to a creditor" (internal quotation and citation omitted)). Moreover, to the extent the Trustee attempts to claim injury by vaguely alleging that exposure of the bank fraud "resulted in the collapse of the Debtors' businesses" (*see* Compl. ¶ 193), this was merely an indirect byproduct of the fraud. An incidental injury is insufficient to confer standing. *Miller v. Helmsley*, 745 F. Supp. 932, 937-38 (S.D.N.Y. 1990) (explaining that plaintiff who was not the target of the racketeering scheme did not have standing despite the fact that he sustained injury as a result of the scheme and *citing Warren v. Mfrs. Nat'l*

*Bank of Detroit*, 759 F.2d 542 (6th Cir. 1985) for the proposition that a plaintiff does not have

standing where his injuries were "merely incidental" and the "result of the bankruptcy").

Fourth, by the Complaint's own words, the Trustee brings this adversary proceeding not

to recover for injuries on behalf of the Debtors or U.S. Affiliates, but rather to obtain damages

because "PNB has asserted claims against each of the Debtors in excess of $1 billion." *See*

Compl. ¶ 193. This is not a viable means to establish standing and has previously been rejected

by this Court. *See McHale v. Citibank, N.A. (In re 1031 Tax Grp., LLC)*, 420 B.R. 178, 196

(Bankr. S.D.N.Y. 2009) (finding trustee lacked standing to bring claims to "recover damages for

being 'subjected to claims by more than 300 creditors'"); *Am. Tissue, Inc. v. Donaldson, Lufkin

& Jenrette Secs. Corp.*, 351 F. Supp. 2d 79, 90 (S.D.N.Y. 2004) (where debtor alleged damages

comprised of $300 million owed to creditors, explaining that "insofar as [the debtor] seeks to

recover money owed to creditors, it lacks standing). For these reasons, all of which demonstrate

that the Trustee is asserting legal rights and interests of PNB, not the Debtors or U.S. Affiliates,

the Complaint should be dismissed.

> **B.    The Trustee Lacks Standing Under The Doctrines Of *In Pari Delicto* And
> The *Wagoner Rule***

The Second Circuit recognizes the twin doctrines of *in pari delicto* and the *Wagoner*

rule. *See Feltman v. Kossoff & Kossoff LLP (In re TS Emp't, Inc.)*, 597 B.R. 543, 548-49 (Bankr.

S.D.N.Y. 2019). *In pari delicto* states that one wrongdoer may not recover against another, and

therefore a bankruptcy trustee is barred from suing third parties for fraud in which the debtor

participated. *In re Granite Partners,* 194 B.R. 318, 328 (S.D.N.Y. 1996); *see Picard v. HSBC

Bank PLC*, 454 B.R. 25, 37 (S.D.N.Y. 2011) (finding that while *in pari delicto* is an affirmative

defense, "prudential considerations deprive[] a trustee from even having standing to bring . . . a

common law claim that is clearly defeated by the doctrine of *in pari delicto*"). Relatedly, the

*Wagoner* rule states that when a bankrupt corporation has joined with a third party in defrauding

its creditors, the trustee cannot recover against the third party for the damage.  *In re 1031 Tax*

*Grp., LLC*, 420 B.R. at 197 (explaining that the "*Wagoner* rule is a prudential standing rule").

Underpinning both of these doctrines is the principle that a trustee essentially steps into the shoes

of a bankrupt corporation's management, and cannot recover for a wrong that management and,

by extension, the trustee, took part in.  *See In re Magnesium Corp. of Am.*, 399 B.R. at 765.

Here, the Complaint alleges that the Debtors and U.S. Affiliates and their management

were integral co-conspirators in the bank fraud.  Indeed, the Complaint includes entire sections

titled "The Debtors' and U.S. Affiliates' Role in the Bank Fraud" and "Involvement of the U.S.

Entities' Directors and Officers in the Bank Fraud," and explains in great detail the Debtors and

U.S. Affiliates' extensive role in the fraud.  *See* Compl. ¶¶ 98, 103 (emphasis added); *see also*

*id.* ¶¶ 91-93, 95, 100-102, 283.  On this record, the Trustee cannot pursue claims on behalf of the

complicit Debtors and U.S. Affiliates, let alone recover damages.  Accordingly, the Trustee lacks

standing to bring this adversary proceeding, and the Complaint should be dismissed.

### C.     The Trustee Lacks Standing To Bring RICO Claims

As noted above, the Trustee lacks standing to pursue any of its claims against Ms. Mehta

under the doctrines of *in pari delicto* and the *Wagoner* Rule.  However, the Trustee separately

lacks standing to pursue its RICO claims against Ms. Mehta.  "A RICO plaintiff only has

standing if, and can only recover to the extent that, he has been injured in his business or

property by the conduct constituting the [RICO] violation[,]" and only when his or her "actual

loss becomes clear and definite."  *Denney v. Deutsche Bank AG*, 443 F.3d 253, 266 (2d Cir.

2006) (internal quotations and citations omitted).

Thus, to have standing, a plaintiff must allege facts demonstrating injury to his property

in a clear and definite amount (*id.* at 266), and that he "was injured by specific racketeering acts

directed at him, not third parties" (*Chera v. Chera*, No. 99-cv-7101, 2000 U.S. Dist. LEXIS

13749, at *41 (E.D.N.Y. Sep. 20, 2000)).  *See Terminate Control Corp. v. Horowitz*, 28 F.3d

1335, 1344 (2d Cir. 1994) (explaining that "in order to merit standing, a civil RICO plaintiff

must establish that the RICO violation at issue was a proximate cause of the injury to the

plaintiff's business or property for which redress is sought"); *see also Motorola Credit Corp. v.*

*Uzan*, 322 F.3d 130, 135 (2d Cir. 2003) (where amount of damages was not "clear and definite,"

holding that "Plaintiffs lack statutory standing under RICO because their claims are unripe").

Stated another way, the RICO plaintiff must be the "primary target of the alleged RICO activity"

(*A. Terzi Prods. v. Theatrical Protective Union, Local No. One*, 2 F. Supp. 2d 485, 496

(S.D.N.Y. 1998)), and the extent of damages must be known, not speculative or unprovable (*Sky*

*Med. Supply Inc. v. SCS Support Claims Servs.*, 17 F. Supp. 3d 207, 231 (E.D.N.Y. 2014)).  This

standard is "more rigorous" than standing under Article III.  *Denney*, 443 F.3d at 266.  The

Trustee does not satisfy this more rigorous test.

      As noted above, the Complaint does not allege injury to the Debtors' and U.S. Affiliates,

but rather to PNB, who was the target of the bank fraud. *See* Section III.A, *infra*.  As also noted

above, the few allegations the Complaint does make regarding the Debtors and U.S. Affiliates

show that any purported injury they suffered was merely an indirect byproduct of the bank fraud

committed against PNB.  *See* Section III.A, *infra*.  But a plaintiff "does not have standing if he

suffers an injury that was indirectly (and hence not proximately) caused by the racketeering

activity or RICO predicate acts[.]"  *Baisch v. Gallina*, 346 F.3d 366, 373 (2d Cir. 2003).  "When

factors other than the defendant's RICO violation are an intervening direct cause of a plaintiffs

injury, that same injury cannot be said to have occurred by reason of the defendant's actions."

*Makowski v. United Bhd. & Joiners of Am.*, No. 08-cv-6150, 2010 U.S. Dist. LEXIS 77775, at

*25 (S.D.N.Y. Aug. 2, 2010) (internal quotations and citation omitted).

Moreover, even if the Complaint's allegations regarding the Debtors and U.S. Affiliates' purported injury were credited as direct, there is still no standing because the amount of the injury is wholly unclear and uncertain. Indeed, vague allegations that exposure of the bank fraud "resulted in the collapse of the Debtors' businesses" (*see* Compl. ¶ 193) or that co-conspirators committed acts that amorphously "impair[ed]" the Debtors (*see id.* ¶¶ 400, 417, 430, 437, 44) are too speculative and the amount of any resulting damages would be unprovable. Accordingly, the Trustee has no standing to bring RICO claims against Ms. Mehta.

### D.      PNB Is Better Situated To Bring RICO Claims

Related to the RICO standing requirement is the concept that where there is a better situated direct injured party to bring RICO claims, a RICO complaint by an indirectly injured party may be dismissed. *See Hemi Grp., LLC v. City of N.Y.*, 559 U.S. 1, 10 (2010); *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 460 (2006); *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 270-74 (1992). As explained by the Supreme Court, the "requirement of a direct causal connection is especially warranted where the immediate victim[] of an alleged RICO violation can be expected to vindicate the laws by pursuing [its] own claims." *Anza*, 547 U.S. at 460. This better situated plaintiff concept is underpinned by three considerations: (1) the difficulty in ascertaining the amount of the indirectly injured party's damages, (2) the complicated rules that courts would have to adopt to "apportion damages among plaintiffs removed at different levels of injury[,]" and (3) directly injured victims' ability "to vindicate the law . . ., without any of the problems attendant upon suits by plaintiffs injured more remotely." *Holmes*, 503 U.S. at 269-70.

Here, there is unquestionably a better situated plaintiff to bring RICO claims against the defendants – PNB. In fact, PNB has already appeared in the underlying bankruptcy proceeding, filed claims against the Debtors and sought discovery, and therefore is actively pursuing relief.

*See, e.g.*, *In re Firestar Diamond, et al.*, No. 18-bk-10509 (Bankr. S.D.N.Y.), ECF No. 224

(PNB's Rule 2004 Motion, noting that "the direct precipitating cause for these bankruptcy cases

was the discovery of a massive fraud in the Republic of India" and that "PNB is the single largest

victim").   Moreover, it would be difficult if not impossible to ascertain the amount of the Debtors

and U.S. Affiliates' purported damages, or to apportion these damages among them.   Indeed, the

Debtors and U.S. Affiliates' purported damages – their collapse and vague impairment – are

amorphous.   S*ee* Compl. ¶¶ 193, 400, 417, 430, 437, 44.   It would require broad and burdensome

expert analysis to reduce any of these purported damages to a specific sum.   As such, under the

better situated plaintiff rule, the RICO claims should be dismissed.

## IV.   The Trustee's Claims Against Ms. Mehta Fail to State a Claim Upon Which Relief May Be Granted and Should Be Dismissed

A complaint must plead "enough facts to state a claim to relief that is plausible on its

face" (*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)), including facts to establish each

element of the claims (*LPD N.Y., LLC v. Adidas Am., Inc.*, No. 15-cv-6360, 2019 U.S. Dist.

LEXIS 54321, at *18 (E.D.N.Y. Mar. 29, 2019)), and that the claims are timely (*see Noskov v.

Roth*, No. 19-cv-7431, 2020 U.S. Dist. LEXIS 126411, at *8 (S.D.N.Y. July 17, 2020)).   Where

the plaintiff fails to do so, a motion to dismiss under Rule 12(b)(6) is proper and should be

granted.   *See Wolstenholme v. Hirst*, 271 F. Supp. 3d 625, 644 (S.D.N.Y. 2017); *Contrera v.

Langer*, 290 F. Supp. 3d 269, 277 (S.D.N.Y. 2018).   Under this standard, the Trustee's RICO

and fraudulent conveyance claims fail as a matter of law.

### A.   The RICO Claims Should Be Dismissed As Time-Barred

RICO claims have a four-year statute of limitations.   *World Wrestling Entm't, Inc. v.

Jakks Pac., Inc.*, 530 F. Supp. 2d 486, 530 (S.D.N.Y. 2007).   "The limitations period begins to

run when the plaintiff discovers or should have discovered the RICO injury."   *Frankel v. Cole*,

313 F. App'x 418, 419 (2d Cir. 2009) (quotations and citation omitted).  Thus, the analysis is

two-fold: "The first step . . . is to determine when plaintiffs sustained the alleged injury for which

they seek redress[,]  [t]he second step is to determine when plaintiffs discovered or should have

discovered that injury."  *Id*. (internal citations omitted).

Here, the Complaint alleges that "no later than 2010 . . ., Nirav Modi orchestrated and

directed" the RICO conspiracy.  Compl. ¶ 62.  As part of this conspiracy, Messrs. Modi,

Bhansali and Ghandi purportedly injured the Debtors and U.S. Affiliates by committing

predicate acts of mail and wire fraud "during and after the Relevant Period," with "Relevant

Period" defined as "lasting from at least 2010 to mid-2018[.]"  *Id.* ¶ 1, 388.  Accordingly, even

assuming, *arguendo*, the Trustee's claims that the Debtors and U.S. Affiliates were injured, the

Debtors and U.S. Affiliates first sustained these injuries in 2010.  Moreover, given the

Complaint's admittance that the Debtors and U.S. Affiliates were co-conspirators, they were

necessarily aware of the injury when it first occurred.  On these facts, the RICO claims should be

dismissed as time barred or, at the very least, the Trustee should not be permitted to recover for

injuries before February 25, 2016.

### B.    The RICO Claims Should Be Dismissed For Failure To Allege Domestic Injury

It is well-settled that private RICO plaintiffs must allege domestic injury.  *City of Almaty

v. Ablyazov*, 226 F. Supp. 3d 272, 278 (S.D.N.Y. 2016); *Aviles v. S&P Glob., Inc.*, 380 F. Supp.

3d 221, 266 (S.D.N.Y. 2019).  The civil RICO statute does not allow a plaintiff to recover for

foreign injuries (*id.*), as there is a presumption against extraterritoriality (*RJR Nabisco, Inc. v.

European Cmty.*, 136 S. Ct. 2090, 2106 (2016)).  "Where a domestic injury has not been shown,

the RICO claim is dismissed."  *Martin Hilti Family v. Knoedler Gallery, LLC*, 386 F. Supp. 3d

319, 345 (S.D.N.Y. 2019).  Here, as explained above, the pertinent injury is to PNB, not the

Debtors or U.S. Affiliates.  But, even if PNB's injuries could be imputed to the Debtors or U.S. Affiliates, the injuries occurred in India, not the United States.

First, the Trustee's own allegations admit that PNB's property was located in India when it was stolen.  PNB is an Indian bank majority owned by the central government of India.  *See* Compl. ¶ 62.  Absent "some extraordinary circumstance," injury to tangible property is only domestic if the property "was located in the United States when it was stolen or harmed[.]" *Bascuñán v. Elsaca*, 874 F.3d 806, 820-21 (2d Cir. 2017).  Second, the Trustee's own allegations likewise admit that acts in the United States were generally confined to Nirav Modi and his co-conspirators' use of the Debtors and U.S. Affiliates to facilitate the alleged bank fraud.  *See* Compl. ¶¶ 91-93, 95, 98, 100-103, 283.  However, "a defendant's use of the U.S. financial system to conceal or effectuate his tort does not, on its own, turn an otherwise foreign injury into a domestic one." *Bascuñán*, 874 F.3d at 819.  Moreover, while the Trustee makes reference to discrete, isolated real estate transactions in the United States, these allegations are not sufficiently tied to the alleged bank fraud.  *See, e.g.*, Compl. ¶ 308.  But, even if they were, "the alleged investment of the stolen funds in New York real estate projects" does not transform foreign harm into domestic injury.  *City of Almaty*, 226 F. Supp. 3d at 285.

Third, the Trustee's own allegations further admit that the RICO conspiracy was essentially foreign, with only a few attendant acts in the United States.  *See, e.g.*, Compl. ¶¶ 2, 62-63, 71.  A scheme that is "principally foreign in nature and only incidentally touche[s] the United States" is not sufficient to show domestic injury.  *Sonterra Capital Master Fund, Ltd. v. Barclays Bank PLC,* 366 F. Supp. 3d 516, 557 (S.D.N.Y. 2018).  Fourth, the Trustee's own allegations even further admit that the Indian government has initiated proceedings against Mr. Modi and his co-conspirators.  *See* Compl. ¶ 188.  Under these circumstances, it would cause

"international friction" to allow the Trustee to recover for foreign injuries in this civil RICO action. *See RJR Nabisco*, 136 S. Ct. at 2107 (explaining that "[a]llowing recovery for foreign injuries in a civil RICO action, including treble damages, presents [a] danger of international friction"); *Dandong Old North-East Agric. & Animal Husbandry Co. v. Gary Ming Hu*, No. 15-cv-10015, 2017 U.S. Dist. LEXIS 122471, at *37 (S.D.N.Y. Aug. 3, 2017) (finding no domestic injury where "the Chinese government has prosecuted [defendant]" and explaining that "Allowing [Plaintiff's] RICO claims to proceed under these circumstances would be at odds with the Supreme Court's directive that the need to enforce the presumption against extraterritoriality is 'at its apex' when remedies available in United States courts may conflict with those available abroad" (quotations and citations omitted)). According, the RICO claims should be dismissed for failure to allege domestic injury.

## C.    The Complaint Does Not State RICO Claims Against Ms. Mehta

To state a cause of action for conspiracy to violate RICO, a plaintiff is required to allege the following elements: (1) a substantive RICO violation, (2) a conspiracy to commit a substantive RICO violation, and (3) that the defendant "knew about and agreed to facilitate the scheme." *Egerique v. Chowaiki*, No. 19-cv-3110, 2020 U.S. Dist. LEXIS 73060, at *22-23 and 31 (S.D.N.Y. Apr. 24, 2020); *see also Frydman v. Verschleiser*, 172 F. Supp. 3d 653, 671 (S.D.N.Y. 2016) (quoting *Baisch v. Gallina*, 346 F.3d 366, 377 (2d Cir. 2003) and stating that "[t]he Court of Appeals for the Second Circuit has explained that, in a civil RICO conspiracy case, the plaintiff must establish that each defendant 'knew about and agreed to facilitate the scheme'"); *see also Dandong*, 2017 U.S. Dist. LEXIS 122471, at *37-38 (explaining that to state a cause of action for RICO conspiracy, "a plaintiff must allege facts demonstrating an intent to further an endeavor which, if completed, would satisfy all of the elements of the substantive offense under 18 U.S.C. § 1962(c) (internal quotations and citation omitted)).

These elements are construed narrowly, particularly where foreign defendants are involved, and courts are encouraged to "strive to flush out frivolous RICO allegations at an early stage of litigation." *See Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 655 (S.D.N.Y. 1996); *Dandong*, 2017 U.S. Dist. LEXIS 122471, at *26; *see also Egerique*, 2020 U.S. Dist. LEXIS 73060, at *2-3 (noting that civil RICO claims are "notoriously" and "appropriately" "difficult to plead[,]" and should be dismissed at the pleading stage where the plaintiff has not alleged viable civil RICO claims). Here, the Trustee fails to set forth these requisite elements.

### 1.    The Complaint Does Not Allege A Substantive RICO Claim

As an initial matter, "[a]plaintiff cannot successfully plead a RICO conspiracy where he has failed to state a claim for a substantive violation of the civil RICO statute." *Armutcuoglu v. Lev*, No. 17-cv-0627, 2018 U.S. Dist. LEXIS 48469, at *11 (S.D.N.Y. Mar. 23, 2018) (citing *Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055, 1064 (2d Cir. 1996)). "Proper pleading of a substantive RICO violation is required to sustain a RICO conspiracy claim." *Condos Bros. Constr. Corp. v. Main St. Am. Assurance Co.*, 280 F. Supp. 3d 349, 356 (E.D.N.Y. 2017). Where a plaintiff's "'prior claims do not state a cause of action for substantive violations of RICO,'" a RICO conspiracy claim is properly dismissed. *First Capital Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d 159, 182 (2d Cir. 2004) (*quoting Discon*, 93 F.3d at 1064)). Here, the Complaint contains no separate substantive RICO claim. Rather, the Trustee attempts to allege a substantive RICO violation by enmeshing the substantive allegations in the first RICO conspiracy claim. The RICO conspiracy claims should be dismissed for this reason alone.

But even if the Trustee could make out a RICO conspiracy claim without a separate substantive RICO claim, the Complaint still fails because the substantive allegations contained within the RICO conspiracy claim are infirm. Indeed, the mail and wire fraud claims are insufficiently particularized and fail to establish scienter, and are based on time-barred conduct.

*See* Compl. ¶¶ 386-393; *Jus Punjabi, LLC v. Get Punjabi, Inc.*, No. 14-cv-3318, 2015 U.S. Dist.

LEXIS 66006, at *12 (S.D.N.Y. May 20, 2015) (elements of mail and wire fraud).  The National

Stolen Property Act ("NSPA") claims do not meet their heightened pleading standard, and are

also based on time-barred conduct.  *See id.* ¶¶ 394-400; *Bd. of Managers of Trump Tower at City

Ctr. Condo. v. Palazzolo*, 346 F. Supp. 3d 432, 456 (S.D.N.Y. 2018) (Rule 9(b) applies to

predicate acts based on fraud).  The money laundering claims are merely conclusory and, again,

are based on time-barred conduct.  *See id.* ¶¶ 401-17; *Jus Punjabi*, 2015 U.S. Dist. LEXIS

66006, at *18 (elements of money laundering).  The obstruction of justice claims do not allege

facts, versus conclusory allegations, that any of the defendants' intent or purpose was to obstruct

the bankruptcy court.  *See id.* ¶¶ 418-430; *Bologna v. Allstate Ins. Co.*, 138 F. Supp. 2d 310, 321

(E.D.N.Y. 2001) (elements of obstruction of justice).  The bankruptcy fraud claims do not satisfy

Rule 9(b).  *See id.* ¶¶ 431-37.  This is fatal to the Trustee's RICO conspiracy claims.

### 2.    The Complaint Does Not Allege That Ms. Mehta Knew Of Or Agreed To Facilitate Or Further The Bank Fraud

The Complaint fails to allege that Ms. Mehta actually knew about or "agreed" to join the

conspiracy, or to engage in any action to facilitate or further the alleged conspiracy.  Rather, the

Complaint attempts to tie Ms. Mehta to the conspiracy by citing her indirect ownership of

various foreign "shadow" or "shell" entities (*see* Compl. ¶¶ 73, 75-78, 169, 178), and referencing

transactions in which Ms. Mehta sent or received alleged proceeds of the fraud (*see id.* ¶¶ 57,

283, 298, 303-06, 308, 312-18, 322-43, 346, 354, 362, 365).  However, the Complaint also

makes clear that Ms. Mehta was merely a passive owner of these entities, and that these entities

were controlled, managed, and overseen by other individuals.  *See id.* ¶¶ 58, 60, 107, 113, 124,

172, 304.  Likewise, the Complaint makes clear that other individuals directed these transfers to

further the conspiracy.  *See id.* ¶¶ 283-84, 288, 299, 354.  Most tellingly, the Complaint further

makes clear that third parties used Ms. Mehta to advance the conspiracy without her knowledge

or direct involvement. *See id*. ¶¶ 5, 75-77, 111, 311. In short, the Complaint does not allege Ms.

Mehta's direct and knowing involvement, or that she personally facilitated or furthered the fraud.

Accordingly, the RICO conspiracy claims should be dismissed for failure to state a claim.

### 3.    The Complaint Does Not Allege That Ms. Mehta Committed A Substantive RICO Violation

Given the Complaint fails to state a RICO conspiracy claim against Ms. Mehta, the only

way Ms. Mehta could be found liable under RICO is if she, herself, committed a substantive

RICO violation. To state a claim for a substantive RICO violation, a Complaint must allege "(1)

that the defendant (2) through the commission of two or more acts (3) constituting a pattern (4)

of racketeering activity (5) directly or indirectly invests in, or participates in (6) an enterprise (7)

the activities of which affect interstate or foreign commerce." *Allstate Ins. Co. v. Rozenberg*,

590 F. Supp. 2d 384, 389 (E.D.N.Y. 2008) (quotations and citation omitted).

As noted above, the substantive allegations in the RICO conspiracy claims against all of

the defendants are infirm. *See* Section IV.C.1, *infra*. But, even if they were not infirm against

all defendants, they are as against Ms. Mehta. Notably, the Complaint does not allege that Ms.

Mehta committed two or more predicate acts. Rather, as explained above, the Complaint alleges

only (i) that she was a passive owner of "shadow" or "shell" entities, (ii) that these entities were

controlled, managed, and overseen by other individuals, (iii) that other individuals directed

transfers to or from Ms. Mehta, and (iv) that third parties used Ms. Mehta to advance the

conspiracy without her knowledge or direct involvement. Accordingly, other individuals and

entities may have committed predicate acts, but Ms. Mehta did not. Moreover, the Complaint's

reference to Ms. Mehta's participation in a discrete investment and real estate transactions does

not suffice. "[I]solated" and "sporadic" acts with "very little link[ing]" them to the alleged

racketeering cannot serve as a predicate for a RICO violation.  *See Armutcuoglu*, 2018 U.S. Dist. LEXIS 48469, at \*8-9.  For these reasons, the RICO claims should be dismissed for failure to state a claim.

> ### D.   The Complaint Does Not State A Cause Of Action For Actual Fraudulent Transfer With Respect To The Synergies-Mehta Transfer

To assert an actual fraudulent transfer claim under N.Y. DCL § 276, a plaintiff must allege "(1) the property subject to the transfer, (2) the timing and, if applicable, frequency of the transfer and (3) the consideration paid with respect thereto[,]" in addition to the transferor's fraudulent intent.  *45 John Lofts, LLC v. Meridian Capital Grp., LLC (In re 45 John Lofts, LLC)*, 599 B.R. 730, 741 (Bankr. S.D.N.Y. 2019) (quotations and citation omitted)); *In re Dreier LLP*, 452 B.R. at 428 ("to state a claim under NYDCL § 276 the Complaint need only sufficiently allege fraudulent intent by the transferor").  The plaintiff must allege these facts with particularity under Rule 9(b).  *In re 45 John Lofts, LLC*, 599 B.R. at 739-40; *Holliday v. K Rd. Power Mgmt., LLC (In re Bos. Generating LLC)*, No. 12-br-01879, 2020 Bankr. LEXIS 1593, at \*68-69 (Bankr. S.D.N.Y. June 18, 2020).  And, while "[c]ourts often apply a more relaxed standard to the particularity requirement when a trustee in bankruptcy alleges actual fraud. . . .[,] [t]his relaxed standard does not eliminate the particularity requirement, [but] the degree of particularity required should be determined in light of the circumstances of the case."  *In re Collins*, 540 B.R. 54, 64-65 (Bankr. E.D.N.Y. 2015) (internal quotations and citations omitted).  Even under this relaxed particularity standard, the Trustee fails to state a claim for actual fraudulent transfer for the following two reasons.

First, the Complaint makes no allegations at all with respect to consideration in Count 3. This is fatal to the Trustee's claim.  *See Liquidation Tr. v. Daimler AG (In re Old CarCo LLC)*, 435 B.R. 169, 192 (Bankr. S.D.N.Y. 2010) (holding that "the allegations of the Complaint are

insufficient because . . . they do not adequately plead the consideration received"). <u>Second</u>, the

Complaint does not adequately allege that Synergies made the transfer with the intent to hinder,

delay or defraud creditors. Rather, the Complaint conclusorily alleges only that "Nirav Modi,

Mihir Bhansali, Ajay Gandhi, and their co-conspirators approved the Synergies-Mehta Transfer

in order to launder and siphon illicit proceeds of the Bank Fraud and other valuable assets[.]"

*See* Compl. ¶ 472. This allegation is not direct evidence of fraudulent intent, and does not

amount to "circumstantial evidence from which the requisite intent may be inferred." *See*

*Official Comm. of Unsecured Creditors of Vivaro Corp. v. Leucadia Nat'l Corp. (In re Vivaro*

*Corp.)*, 524 B.R. 536, 554 (Bankr. S.D.N.Y. 2015). Indeed, "[a]s direct evidence of fraudulent

intent is not easily obtained, courts examine the circumstances surrounding a transfer and draw

an inference of such intent if certain factors that frequently accompany fraudulent transfers are

present." *In re Old CarCo LLC*, 435 B.R. at 191. These factors, i.e., badges of fraud, include

the relationship of the parties, the inadequacy of the consideration, whether the transferor

retained the property, the timing, secrecy, haste or unusualness of the transaction, whether

fictitious parties were utilized, and the solvency of the transferor. *In re Vivaro Corp.*, 524 B.R.

at 554.

      Here, the Trustee does not sufficiently allege these badges of fraud. For example, as

noted above, Count 3 makes no allegations regarding the adequacy of consideration at all.

However, the allegations in the Complaint actually evidence that the transfer was a loan

repayment validly assigned to Ms. Mehta. *See* Compl. ¶¶ 281, 283. Specifically, the Complaint

alleges that: (1) "Between October 20, 2010 and March 11, 2011, Nirav Modi personally

transferred a total of $14,575,000 to Synergies, which Synergies used to pay off purported loans"

(*see* Compl. ¶ 281); (2) "In December 2016, Nirav Modi assigned to Purvi Mehta his interest in

the $14,575,000 Synergies 'loan' under an assignment agreement retroactively dated as of April

1, 2012" (*see id.* ¶ 283); (3) Firestar Holdings Ltd. infused new capital in Synergies (*see id.* ¶

298) and (4) "Synergies would then use $14,575,000 of the new capital to 'repay' Purvi Mehta"

(*see id.* ¶ 299).  In other words, the Complaint alleges that the transfer repaid a loan that had been

assigned to Ms. Mehta.  This is fair consideration.  *See In re Brown Publ. Co.*, Nos. 10-br-73295,

12-ap-08193, 2015 Bankr. LEXIS 667, at *49-50 (Bankr. E.D.N.Y. Mar. 4, 2015) (explaining

that "a true loan between parties where the obligation to repay is acknowledged is not a

fraudulent conveyance").

Also, the facts in the Complaint demonstrate that Synergies was far from insolvent on

July 13, 2017, the date of the transfer.  Rather, at this time, Synergies received a $20 million

capital infusion (*see* Compl. ¶ 320), and had sufficient capital on hand to purchase 100% of the

outstanding common stock of Firestar Group, Inc. and wire over $1 million to other entities to

pay off invoices and loans (*see id.* ¶¶ 319, 320).  Moreover, the Complaint alleges that the "U.S.

Entities," which include Synergies, "collapsed" sometime after mid-2018, a whole year after the

loan repayment.  *See id.* ¶¶ 1, 193, 468.  The Complaint also does not allege that the timing of

repayment of the loan was suspicious.  Rather, the Complaint explains that the repayment was

reasonably made after Synergies received a $20 million capital infusion.  *See id.* ¶¶ 298-99.  On

these facts, the Trustee cannot maintain an actual fraudulent transfer claim.

E.    **The Complaint Does Not State A Cause of Action For Constructive
       Fraudulent Transfer With Respect To The Synergies-Mehta Transfer**

To assert a constructive fraudulent transfer claim under N.Y. DCL § 273, a plaintiff must

allege (1) a transfer made without fair consideration, and (2) that the transferor is insolvent or

will be rendered insolvent by the transfer.  *Sharp Int'l Corp. v. State Street Bank & Trust Co. (In*

*re Sharp Int'l Corp), 403 F.3d 43, 53 (2d Cir. 2005).  "Fair consideration" is defined as property

given either "as a fair equivalent therefor, and in good faith," or "received in good faith to secure a present advance or antecedent debt[.]"  N.Y. D.C.L. § 272.  Rule 8(a) applies to constructive fraudulent transfer claims.  *See Paradigm BioDevices, Inc. v. Viscogliosi Bros., LLC*, 842 F. Supp. 2d 661, 667 (S.D.N.Y. 2012).  But even under this more lenient pleading requirement, conclusory allegations are insufficient to withstand a motion to dismiss.  *See id*.  Like the actual fraudulent transfer claim, the Trustee fails to state a claim for constructive fraudulent transfer for substantially the same two reasons.

First, the Complaint does not allege lack of fair consideration.  Rather, the Complaint simply states in conclusory fashion that "[t]he Synergies-Mehta Transfer was made without fair consideration."  *See* Compl. ¶ 470.  This is insufficient to state a claim.  *See Waite v. Schoenbach*, No. 10-cv-3439, 2010 U.S. Dist. LEXIS 115470, at *17 (S.D.N.Y. Oct. 29, 2010) (finding that plaintiff's allegations that the "transfers were made without fair consideration" are conclusory and insufficient to withstand a motion to dismiss).  Moreover, the allegations in the Complaint indicate the opposite – that the transfer repaid a loan that had been assigned to Ms. Mehta.  This is a valid payment of an antecedent debt.  *See In re Brown Publ. Co.*, 2015 Bankr. LEXIS 667, at *49-50.  To the extent the Trustee attempts to claim lack of fair consideration because the purported money underlying the loan repayment was stolen, this still does not state a cause of action; the Trustee does not allege Ms. Mehta's lack of good faith or that she had any knowledge of the circumstances of the underlying loan, and the mere existence of an underlying fraud on creditors . . . does not transform into a constructive fraudulent transfer a payment in satisfaction of an antecedent debt that enabled the fraudsters to further such fraud."  *See Kirschner v. Agoglia (In re Refco Inc.)*, 461 B.R. 181, 198 (Bankr. S.D.N.Y. 2011).

Second, the Complaint does not allege that Synergies was insolvent at the time of the

transfer, or rendered insolvent by the transfer.  Instead, the Trustee conclusorily alleges that "[o]n the date the Synergies-Mehta Transfer was made, Synergies was insolvent or was rendered insolvent as a result of such transfer."  *See* Compl. ¶ 481.  This is insufficient to state a claim. *See Waite*, 2010 U.S. Dist. LEXIS 115470, at *17 (finding that plaintiff's allegations that the transferees "rendered Defendants insolvent" are conclusory allegations that are insufficient to withstand a motion to dismiss).  And, as noted above, the allegations in the Complaint demonstrate that Synergies was far from insolvent on July 13, 2017.  Synergies' alleged belated insolvency cannot support the Trustee's constructive fraudulent transfer claim.  *See O'Toole v. Karnani (In re Trinsum Group, Inc.)*, 460 B.R. 379, 392 (Bankr. S.D.N.Y. 2011) ("[t]he operative reference point for determining insolvency is the time at which the transfer took place[,] . . . insolvency cannot be presumed from subsequent insolvency at a later point in time").  Accordingly, the constructive fraudulent transfer claim should be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint against Ms. Mehta in its entirety.

Dated:  September 15, 2020
        New York, New York

                    DUANE MORRIS LLP

                    By:  _/s/ Frederick D. Hyman_____
                         Frederick D. Hyman, Esq.
                         Mauro M. Wolfe, Esq.
                         Evangelos Michailidis, Esq.
                         Sarah Fehm Stewart, Esq.
                         1540 Broadway
                         New York, NY 10036
                         Tel: (212) 692-1063
                         Fax: (212) 208-4521
                         Email: RHyman@duanemorris.com
                         *Attorneys for Defendant Purvi Mehta*