**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re:<br><br>FIRESTAR DIAMOND, INC., *et al.*<br>　　　　　　　　　　　　Debtors. | Chapter 11<br><br>No. 18-10509 (SHL)<br><br>Jointly Administered |
| RICHARD LEVIN, Chapter 11 Trustee of<br>FIRESTAR DIAMOND, INC., FANTASY, Inc., and<br>OLD AJ, INC. f/k/a A. JAFFE, INC.,<br><br>　　　　　　　　　Plaintiff,<br><br>　　vs.<br><br>AMI JAVERI (A/K/A AMI MODI); ET AL,<br><br>　　　　　　　　　Defendants. | Adv. Proc. No. 20-01054 (SHL) |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION TO DISMISS OF**
**DEFENDANTS CENTRAL PARK REAL ESTATE LLC AND**
**CENTRAL PARK SOUTH 50 PROPERTIES LLC**

SCHOEMAN UPDIKE KAUFMAN & GERBER LLP
551 Fifth Avenue
New York, NY 10176
Tel: (212) 661-5030

*Attorneys for Defendants Central Park Real*
*Estate LLC and Central Park South 50*
*Properties LLC*

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ...................................................................................................i

PRELIMINARY STATEMENT ............................................................................................1

FACTUAL ALLEGATIONS OF THE COMPLAINT ..........................................................4

    A.    The LLCs...................................................................................................................4

        1.    The Complaint Alleges that CPRE is an LLC Whose Purpose is to
                Hold Property Used as a Residence by Modi & Javeri, for Which
                CPRE Paid Fair Consideration...................................................................4

        2.    The Complaint Alleges That CPS50 Was Formed With, and the
                Ritz Carlton Apartment was Purchased By, Funds Paid by Purvi
                Mehta (not the Debtors or U.S. Affiliates) ................................................5

ARGUMENT ........................................................................................................................6

    I.    The RICO Claims Against the LLCs Fail to State a Claim on Which Relief
       May Be Granted and Should Be Dismissed ...........................................................7

    II.    The Trustee's Claims Against CPRE Based on the New York and Federal
       Fraudulent Transfer Statutes Fail to State a Claim Upon Which Relief
       May Be Granted ...................................................................................................12

        A.    The Trustee's Claims based on Alleged Actual Fraudulent
                Transfers (Counts 7 and 8) Must be Dismissed Because they Fail
                to Adequately Plead Specific Intent with Particularity ...........................12

        B.    The Trustee's Constructive Fraudulent Transfer Claims (Counts 9
                and 10) Must be Dismissed Because They Fail to Adequately Plead
                Lack of Fair Consideration and Insolvency ...........................................15

             1.The Trustee's Complaint Concedes that Fair Consideration Was
                  Received for the CPRE Transfers .......................................................16

             2. The Trustee's Claims for Constructive Fraudulent Transfer
                  Against CPRE Also Fail to Plausibly Allege Insolvency ....................17

    III.    If the Trustees' Claims Against the LLCs Are Not Dismissed in Full, Then
        They Must Be Dismissed, At Least in Part, Due to the Bar of the
        Applicable Statutes of Limitations.......................................................................20

i

      A.    The Trustee's Claims Based on Alleged Actual Fraudulent
Transfers Under NY DCL §§ 278, 278 and 279 (Count 8) Before
February 25, 2014 Are Time Barred .......................................................21

      B.    The Trustee's Claim Based on Constructive Fraudulent Transfers
Before February 25, 2014 Are Time Barred .............................................22

      C.    The Trustee Cannot Recover Under RICO for Injuries that
Occurred Before February 25, 2016 ........................................................22

IV.    The Trustee's RICO Claims are Barred by the Doctrine of *In Pari Delicto* .........23

V.    The Trustee Lacks Standing to Bring the RICO Claims Against the LLCs
Because the Debtors Did Not Sustain a Direct Injury as a Result of the
Alleged RICO Violation ......................................................................................26

VI.    Additional Legal Bases for Dismissal .................................................................26

      A.    Standing under the RICO Statute Is Limited to Parties Directly
Injured as a Result of the Alleged Violation ...........................................26

B.    The Debtors Were Not Injured By Reason of a Pattern of Racketeering
Activity ...................................................................................................27

C.    PNB Is Better Situated to Pursue Claims .........................................................27

CONCLUSION ..................................................................................................................28

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

4 K & D Corp. v. Concierge Auctions, LLC,
  2 F. Supp. 3d 525 (S.D.N.Y. 2014) ........................................................................ 8, 10

Anza v. Ideal Steel Supply Corp.,
  547 U.S. 451 (2006) ............................................................................................ 27, 28

Ashcroft v. Iqbal,
  556 U.S. 662 (2009) ........................................................................................ 6, 7, 10

Bell Atl. Corp. v. Twombly,
  550 U.S. 544 (2007) ....................................................................................6, 7, 8, 10

Bianco v. Erkins (In re Gaston & Snow),
  243 F.3d 599 (2d Cir. 2001) ...................................................................................... 21

Billet v. Drexler-Billet,
  2019 N.Y. Misc. LEXIS 5321 (Sup. Ct. N.Y. Oct. 4, 2019) .......................................... 21

Bingham v. Zolt,
  66 F.3d 553 (2d Cir. 1995) ........................................................................................ 23

Black Radio Network v. NYNEX Corp.,
  44 F. Supp. 2d 565 (S.D.N.Y. 1999) ............................................................................ 9

Boneta v. Rolex Watch USA,
  232 F. Supp. 3d 354 (S.D.N.Y. 2017) .......................................................................... 9

City of New York v. Bello,
  579 Fed. Appx 15 (2d Cir. 2014) ................................................................................. 9

Egerique v. Chowaiki,
  2020 U.S. Dist. LEXIS 73060 (S.D.N.Y. Apr. 24, 2020) ................................. 9, 11, 12, 25

Elsevier Inc. v W.H.P.R., Inc.,
  692 F. Supp. 2d 297 (S.D.N.Y. 2010) .......................................................................... 9

Estate of Ruffini v. Norton Law Grp. LLC (In re Ruffini)
  2014 Bankr. LEXIS 733 (Bankr. E.D.N.Y. Feb. 25, 2014) ........................................... 17

Hecht v. Commerce Clearing House, Inc.,
  897 F.2d 21 (2d Cir. 1990) ..................................................................................... 8, 9

Hemi Grp., LLC . v. City of New York,
  559 U.S. 1 (2010).......................................................................................... 26, 27, 28

Holmes v. Secs. Inv'r Prot. Corp.,
  503 U.S. 258 (1992). ............................................................................................ 26, 27

In re 45 John Lofts, LLC,
    599 B.R. 730 (S.D.N.Y. 2019) ................................................................................................. 14

In re Bernard L. Madoff Inv. Sec. LLC,
    721 F.3d 54 (2d Cir. 2013) ............................................................................................. 4, 24

In re CBI Holding Co., Inc.,
    529 F.3d 432 (2d Cir. 2008) ................................................................................................ 23

In re Collins,
    540 B.R. 54 (Bankr. E.D.N.Y. 2015) .................................................................................. 13

In re Firestar Diamond, Inc.,
    615 B.R. 161, 2020 WL 1934896 (Bankr. S.D.N.Y. 2020) ...................................19, 25, 28

In re Lehr Constr. Corp.,
    551 B.R. 732 (S.D.N.Y. 2016) ............................................................................................ 24

In re Sharp Int'l Corp.,
    403 F.3d 43 (2d Cir. 2005) ............................................................................................ 13, 17

In re Verestar, Inc.,
    343 B.R. 444 (Bankr. S.D.N.Y. 2006) ............................................................................... 12

In re Vivaro Corp.,
    524 B.R. 536, 550 (Bankr. S.D.N.Y. 2015) ............................................................... *passim*

Jaliman v. D.H. Blair & Co. Inc.,
    105 A.D.3d 646, 964 N.Y.S.2d 112 (1st Dep't 2013) ....................................................... 22

Levin, Trustee v. Modi, et al.,
    Adv. Proc. No. 19-1102 (SHL) .................................................................................... 24, 26

Katzman v. Victoria's Secret Catalogue,
    167 F.R.D. 649 (S.D.N.Y. 1996) ......................................................................................... 8

Kerik v. Tacopina,
    64 F. Supp. 3d 542 (S.D.N.Y. 2014) .................................................................................. 23

Koch v. Christie's Int'l Pub. Ltd. Co.,
    699 F.3d 141 (2d Cir. 2012) ............................................................................................... 22

Lanza v. Merrill Lynch & Co.,
    154 F.3d 56 (2d Cir. 1998) ................................................................................................. 23

Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young,
    No. 91 Civ. 2923,1994 U.S. Dist. LEXIS 2929 (S.D.N.Y. Mar. 15, 1994) ...................... 10

O'Toole v. Karnani (In re Trinsum Grp., Inc.)
    460 B.R. 379 (Bankr. S.D.N.Y. 2011) ............................................................... 17, 18, 20

Ray v. Ray,
    2019 U.S. Dist. LEXIS 56647 (S.D.N.Y. March 28, 2019 (Daniels, J.)) .............................. 16, 18, 20

Republic of Iraq v. ABB AG,
    768 F.3d 145 (2d Cir. 2014) ................................................................... 24, 25

Russello v. United States,
    464 U.S. 16 (1983) ...................................................................................... 8

Salinas v. United States,
    522 U.S. 52 (1997) ...................................................................................... 9

Staten Island Sav. Bank v. Reddington,
    260 A.D.2d 365 (2d Dep't 1999) ............................................................... 18

Targum v. Citrin Cooperman & Co., LLP,
    No. 12-CV-6909, 2013 U.S. Dist. LEXIS 164585 (S.D.N.Y. Nov. 19, 2013) ................... 8

United States Fire Ins. Co. v. United Limousine Serv.,
    303 F. Supp. 2d 432 (S.D.N.Y. 2004) ....................................................... 10

United States v. Turkette,
    452 U.S. 576 (1981) .................................................................................... 8

Vaughn v. Air Line Pilots Ass'n, Int'l,
    604 F.3d 703 (2d Cir. 2010) ........................................................................ 6

Waite v. Schoenbach,
    2010 U.S. Dist. LEXIS 115470 (S.D.N.Y. Oct. 29, 2010) ....................... 15, 18

Woori Bank v. Merrill Lynch,
    923 F. Supp. 2d 491 (S.D.N.Y. 2013) ........................................................ 21

World Wrestling Entm't, Inc. v. Jakks Pac., Inc.,
    530 F. Supp. 2d 486 (S.D.N.Y. 2007) ........................................................ 22

## Statutes

11 U.S.C. § 548 .............................................................................. 14, 15, 16, 20

18 U.S.C. § 1962 ..................................................................................... 7, 8

Bankruptcy Code § 548 ................................................................................. 16

Federal Rule of Bankruptcy Procedure Rule 7012 ........................................... 6

Federal Rule of Bankruptcy Procedure Rule 7009 ..................................... 12-13

F.R.C.P. Rule 9 ..................................................................................... 12, 13

F.R.C.P. Rule 12 ...................................................................................... 6, 8

N.Y. C.P.L.R. § 202 .................................................................................... 21

N.Y. C.P.L.R. § 213 ............................................................................... 21, 22

N.Y. Debtor & Creditor Law § 271 ............................................................... 18

N.Y. Debtor & Creditor Law § 273 ..................................................... 16, 17, 20

N.Y. Debtor & Creditor Law § 276 .................................................... 14-15, 21

N.Y. Debtor & Creditor Law § 278 ............................................................... 21

N.Y. Debtor & Creditor Law § 279............................................................................................. 14-15, 21

Defendants Central Park Real Estate LLC ("CPRE") and Central Park South 50

Properties LLC ("CPS50") (collectively, the "LLCs" or "the Central Park Defendants")

respectfully submit this memorandum of law in support of their motion to dismiss the Complaint

against them (the "Complaint").  For the following reasons, the LLCs' motion should be granted.

## PRELIMINARY STATEMENT

In this Adversary Proceeding, the Trustee attempts to involve two LLCs that hold

residences for the benefit of Nirav Modi ("Modi") and his wife, Ami Javeri ("Javeri"), in a

broad-ranging alleged Racketeer Influenced and Corrupt Organizations Act ("RICO")

conspiracy lasting from at least 2010 to mid-2018, allegedly directed at the Punjab National

Bank ("PNB").  Far from being active participants in the alleged conspiracy, the LLCs were

passive recipients and custodians of residences for Modi and Javeri, and nothing more.  The

Trustee's attempt to impute to the LLCs an intent to join a RICO conspiracy is overreaching in

the extreme and, as set forth below, the Trustee's claims against the LLCs fail to state a claim.

The Complaint should be dismissed for several reasons.  First, in his substantive

RICO claims against the LLCs, the Trustee is required to show that the Debtors and the U.S.

Affiliates[1], on whose behalf he brings those claims, sustained a direct and proximate injury as a

result of the pattern of racketeering activity.  Yet here, the Debtors' alleged injuries were only

indirect and incidental to the allegedly fraudulent scheme allegedly targeting PNB.  Moreover,

although the Complaint alleges that the LLCs conspired to violate RICO, the Trustee's only

alleged support for his RICO conspiracy claims against the LLCs consists of allegations that: 1)

---

[1]  The so-called "U.S. Affiliates were affiliates of the Debtors:  Synergies Corporation ("Synergies"),
Firestar Group, Inc. ("FGI"), Firestar Diamond International, Inc. ("FDII"), Nirav Modi, Inc. ("NMI")
and AVD Trading, Inc. ("AVD").

certain alleged primary actors in the underlying alleged RICO scheme held management roles at

the LLCs (CPRE and CPS50); and 2) CPS50 purchased an apartment using proceeds of the

alleged bank fraud and was formed for the purpose of laundering the proceeds of the alleged

bank fraud.  (Complaint, ¶ 451.)  The Trustee does not make any specific factual allegations that

would, if proven, show that the LLCs were anything other than passive bystanders in the alleged

fraud and RICO conspiracy.  Perhaps most important, the Trustee asks this Court to infer that the

LLCs agreed to enter into the alleged RICO conspiracy based on the above minimal allegations

without providing factual allegations demonstrating such an agreement, as is required by case

law.  In the end, the RICO claims against the LLCs simply do not state a claim for which relief

can be granted.

       <u>Second,</u> the Trustee's fraudulent transfer claims, which are asserted against CPRE

alone, must be dismissed because they do nothing more than mirror the statutory elements of the

claims.  The Trustee's claims for actual fraudulent transfers do not satisfy the particularized

pleading requirements for fraud and fraudulent intent, as is required under the relevant statutes

and Rules.  The Trustee's claims for constructive fraudulent transfers also fail because the

Trustee's own allegations establish that CPRE paid fair consideration for the transfers, and

because the Trustee fails to allege a plausible claim of insolvency or one that has the requisite

level of detail.

       By the Trustee's own allegations, CPRE paid fair consideration for the transfers.

The Trustee alleges that  $4,594,559.78 was transferred to CPRE by the Debtor FDI, for which

CPRE paid FGI, FDI's parent,  $6 million in 2017.  (Complaint ¶¶ 356 & 358.)  Thus, CPRE

provided more than fair consideration for the transfers by the Debtor according to the Trustee's

own allegations.  Accordingly, by the Complaint's own terms, the fundamental basis for the

Trustee's claims against CPRE for fraudulent transfer is without basis, and those claims must be dismissed.

The Trustee's allegations of insolvency, a predicate to this action, simply are not plausible. The Trustee has provided no balance sheet information to support its allegations that the Debtors were insolvent as early as 2012, six years before they filed for bankruptcy, despite successfully continuing to engage in business from 2012 until 2018. Instead, the Trustee alleges that the Debtors were insolvent as early as 2012, six years prior to the bankruptcy filing, because of a claim first asserted in 2018 by PNB, after the Debtors filed for bankruptcy. The Trustee claims that this PNB claim, first made in 2018, rendered the transfers to CPRE fraudulent as far back as 2012. The Trustee's assertion is implausible and does not suffice to withstand a motion to dismiss the Trustee's claims for fraudulent transfer.

Fourth, much of the alleged conduct purportedly giving rise to the Trustee's RICO and fraudulent transfer claims occurred outside of the relevant statute of limitations period and, thus, the claims are time-barred. The Complaint describes conduct that occurred more than eight years before the Trustee filed his Complaint on February 25, 2020. None of the Trustee's claims carries an eight-year statute of limitations or anything close to it. Instead, the Trustee's claims based on RICO carry a four-year statute of limitations, meaning that any claims allegedly occurring prior to February 25, 2016 are time barred. The Trustee's claims under N.Y. State law for actual and constructive fraudulent transfers are subject to a six-year statute of limitations, rendering any claims based on transfers prior to February 25, 2014 time-barred. As the Debtors' allegedly active involvement and participation in the alleged scheme makes clear, the Debtors were willing and active participants in their scheme. They were therefore deemed to be on

notice of their alleged injuries and of the claims from the moment the injuries were sustained and

the claims accrued.

Fifth, New York law forbids "one wrongdoer [from] ... recover[ing] against

another." Picard v. J.P. Morgan Chase & Co. (In re Bernard L. Madoff Inv. Sec. LLC.), 721 F.3d

54, 63 (2d Cir. 2013).  This is known as the doctrine of *in pari delicto*, and it "has been wrought

in the inmost texture of our common law for at least two centuries."  Kirschner v. KPMG LLP,

15 N.Y.3d 446, 464 (2010).  Because the Debtors and U.S. Affiliates here are, by the Trustee's

own allegations, primary participants in the wrongdoing, they are barred from any recovery from

the LLCs under the *in pari delicto* doctrine.  For similar reasons, the Trustee does not have

standing to bring RICO claims to recover PNB's losses or any losses that do not belong to the

Debtors.  Here, the losses for which the Trustee seeks to recover under RICO are PNB's losses

arising from the alleged fraudulent scheme.  These claims did not belong to the Debtors before

the bankruptcy filings, and the Trustee cannot bring them now.  Similarly, the Trustee asserts

claims on behalf of the U.S. Affiliates, who are also alleged to have engaged in the RICO

conspiracy.  Under the doctrine of *in pari delicto*, and because such claims are not assignable,

these claims must be dismissed.

For all of the foregoing reasons, the Complaint against CPRE and CPS50 should

be dismissed.

## FACTUAL ALLEGATIONS OF THE COMPLAINT

### A.    The LLCs

### 1.  The Complaint Alleges that CPRE is an LLC Whose Purpose is to Hold Property Used as a Residence by Modi & Javeri, for Which CPRE Paid Fair Consideration

CPRE was formed under Delaware law in 2007 (long before the alleged bank

fraud commenced in 2010) to purchase a home for Modi and his wife, Javeri.  (Complaint ¶¶

4

284-85.)  In 2007, CPRE purchased an apartment at the Essex House for $4.995 million (the

"Essex House Apartment").  (Complaint ¶ 285.)  The purchase price of the Essex House

Apartment was funded as follows:  $2 million from FDII, a non-debtor corporation formed in

Delaware, which is a U.S. Affiliate, and the $2.995 million balance from a loan from HSBC.

(Id.)

       The Complaint alleges that the Debtor FDI made $1,593,917.78 in mortgage

payments, apartment maintenance fees, real estate taxes and restoration work and/or architectural

fees (the "property-related fees") for the Essex House Apartment from March 2012 until January

2018, and paid off the $3,000,642 million mortgage principal at the end of 2017.  (Complaint ¶

351; Schedule A.)

       On December 27, 2017, CPRE was sold to the Ithaca Trust in exchange for a

payment of $6 million to FGI, the parent of Debtor FDI.  (Complaint ¶¶ 18, 356 & 358.)

       In sum, the Complaint alleges that FDI, through its parent FGI, received fair

consideration for the sale of CPRE.  Nothing in the Complaint explains how these transactions

were fraudulent, unfair, or were demonstrative of an improper diversion of funds belonging to

the Debtors.  Instead, the Complaint alleges that FDI had paid slightly less than $6 million for

the down payment and property-related fees related to the Essex House Apartment over the

course of 11 years and that FGI, FDI's parent, received $6 million in consideration for the

transfers.

    **2.**   **The Complaint Alleges That CPS50 Was Formed With, and the Ritz Carlton
       Apartment was Purchased By, Funds Paid by Purvi Mehta (not the Debtors
       or U.S. Affiliates)**

       CPS50 was formed on July 11, 2017 under New York law, to hold an apartment

located at 50 Central Park South in Manhattan (the "Ritz Carlton Apartment").  On August 2,

2017, its operating agreement was executed with Purvi Mehta ("Mehta"), as sole member, and

Deepak Sheth, as manager.  (Complaint ¶¶ 315-18.)  From the start, it was intended that Mehta

would purchase the Ritz Carlton Apartment for the benefit of CPS50, pending creation of a trust

(the Ithaca Trust) to which the LLC would be contributed/assigned.  (Complaint ¶ 317.)

On July 7, 2017, Mehta entered a contract to purchase the Ritz Carlton Apartment

for $25 million.  (Complaint ¶ 316.)  The $2.5 million down payment on the Ritz Carlton

Apartment was loaned to and paid by Javeri.  (Complaint ¶ 316.)  On August 23, 2017, Mehta, as

settlor, executed the Ithaca Trust Agreement, creating an irrevocable trust under Delaware law.

(Complaint ¶ 322.)  The Ithaca Trust was established naming Javeri and her children as the

beneficiaries and Sheth as the initial protector.  (Complaint ¶ 323.)

On August 25, 2017, Mehta assigned the Ritz Carlton Apartment  to CPS50.

(Complaint ¶ 332.)  On August 29, 2017, Mehta assigned her membership interest in CPS50 to

the Ithaca Trust.  (Complaint ¶ 335.)  On August 31, 2017, Mehta wired $23 million to the Ithaca

Trust Trustee to be used to purchase the Ritz Carlton apartment for CPS50.  (Complaint ¶ 338.)

On September 6, 2017, the closing of the purchase of the Ritz Carlton Apartment occurred.

(Complaint ¶ 340.)

## ARGUMENT

For purposes of this motion, well-pleaded allegations must be accepted as true.

But to survive a motion under Rule 12(b)(6), the Trustee must allege "enough facts to state a

claim for relief that is *plausible* on its face."  Vaughn v. Air Line Pilots Ass'n, Int'l, 604 F.3d

703, 709 (2d Cir. 2010) (emphasis in original).  See also Federal Rule of Bankruptcy Procedure

7012.  A complaint "that offers 'labels and conclusions' or 'a formulaic recitation of the

elements of a cause of action will not do.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting

Bell Atl. v. Twombly, 550 U.S. 544, 555 (2006)).  Nor does a complaint survive "if it tenders

'naked assertions' devoid of 'further factual enhancement'" or offers "[t]hreadbare recitals of the

6

elements of a cause of action, supported by mere conclusory statements." Id. (quoting Twombly,

550 U.S. at 557). While detailed factual allegations are not required, the pleading must include

more than an "unadorned, the-defendant-unlawfully-harmed-me accusation," or "'a formulaic

recitation of the elements of a cause of action." Iqbal, 556 U.S. at 678 (alteration in original)

(quoting Twombly, 550 U.S. at 555, 557).

   Here, even after taking the Complaint's well-pleaded allegations as true, the

Trustee fails to adequately allege an agreement by the LLCs to engage in the RICO conspiracy.

The Trustee's claims against the LLCs for fraudulent conveyance must be dismissed because the

Trustee has failed to adequately plead fraudulent intent for the "actual" fraudulent transfers (or

that sufficient badges of fraud existed from which to infer such intent), or that at the Debtors did

not receive fair consideration for the transfers, or even that the Debtors were insolvent at the time

of the alleged transfers, as required for the Trustee's constructive fraud transfer claims. Finally,

all of the Trustee's claims against the LLCs are barred by the doctrine of *in pari delicto* and lack

of standing, as well as by the applicable statutes of limitations.

### I. The RICO Claims Against the LLCs Fail to State a Claim on Which Relief May Be Granted and Should Be Dismissed

   To establish a RICO conspiracy claim pursuant to § 1962(d), a plaintiff must

establish "as to each alleged co-conspirator: (1) an agreement to join the conspiracy; (2) the acts

of each co-conspirator in furtherance of the conspiracy; [and] (3) that the co-conspirator

knowingly participated in the same." Nasik Breeding & Research Farm Ltd. v. Merck & Co.,

165 F. Supp. 2d 514, 541 (S.D.N.Y. 2001) (internal citation and quotation marks omitted). The

Court of Appeals for the Second Circuit has explained that, in a civil RICO conspiracy case, the

plaintiff must establish that each defendant "knew about and agreed to facilitate the scheme."

Baisch v. Gallina, 346 F.3d 366, 377 (2d Cir. 2003) (internal quotation marks and citation

omitted); see also Valenti v. Penn Mut. Life Ins. Co., 850 F. Supp. 2d 445, 450–51 (S.D.N.Y.

2012), aff'd, 511 Fed. Appx. 57 (2d Cir. 2013).

Congress enacted RICO as an "assault upon organized crime and its economic

roots." Russello v. United States, 464 U.S. 16, 26 (1983); see also United States v. Turkette, 452

U.S. 576, 589 (1981). The statute has a narrow purpose with strict legal requirements, and is not

designed as a catch-all "instrument against all unlawful acts." Hecht v. Commerce Clearing

House, Inc., 897 F.2d 21, 25 (2d Cir. 1990). For this reason, it is well settled that "[a] plaintiff's

burden is high when pleading RICO allegations." Targum v. Citrin Cooperman & Co., LLP,

No. 12-CV-6909, 2013 U.S. Dist. LEXIS 164585, at *18-19 (S.D.N.Y. Nov. 19, 2013).

"[C]ourts should strive to flush out frivolous RICO allegations at an early stage of the litigation."

Katzman v. Victoria's Secret Catalogue, 167 F.R.D. 649, 655 (S.D.N.Y. 1996) citing Figueroa

Ruiz v. Alegria, 896 F.2d 645, 650 (1st Cir. 1990).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need

detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to

relief requires more than labels and conclusions, and a formulaic recitation of the elements of a

cause of action will not do." Twombly, 550 U.S. at 555 (internal citations. and alterations

omitted).

Here, the Complaint contains general, conclusory allegations such as that "each

Defendant" "agreed to violate 18 U.S.C. § 1962(c)," "knew they were engaged in a conspiracy,"

and "agreed to conduct or participate in … the RICO Enterprise's affairs." (See, e.g., Complaint

¶¶ 445, 455, 456, 458, 462.) "Such conclusory statements, without more, are insufficient to

sustain a RICO conspiracy claim." Foster v. 2001 Real Estate, U.S. Dist. LEXIS 159489, at *16,

citing 4 K & D Corp. v. Concierge Auctions, LLC, 2 F. Supp. 3d 525, 545 (S.D.N.Y.

2014); Black Radio Network v. NYNEX Corp., 44 F. Supp. 2d 565, 581 (S.D.N.Y. 1999).  Here,

the Complaint fails to allege that CPS50 and CPRE consciously agreed to engage in the alleged

RICO conspiracy, its underlying predicate acts or that they agreed to facilitate the alleged

scheme.

        "Because the core of a RICO civil conspiracy is an agreement to commit

predicate acts, a RICO civil conspiracy complaint, at the very least, must allege specifically such

an agreement."  Hecht, 897 F.2d at 25.  The Supreme Court has specified that the Trustee must

allege that the LLCs "knew about and agreed to facilitate the scheme."  Salinas v. United States,

522 U.S. 52, 66 (1997); accord City of New York v. Bello, 579 Fed. Appx 15, 17 (2d Cir. 2014)

(summary order); Egerique v. Chowaiki, 2020 U.S. Dist. LEXIS 73060, *22-23 (S.D.N.Y. Apr.

24, 2020).

        In order to allege an agreement to participate in a RICO conspiracy, the

Complaint must allege "some factual basis for a finding of a conscious agreement among the

defendants."  Egerique, 2020 U.S. Dist. LEXIS 73060, at *64, quoting Ray Larsen Assocs., Inc.

v. Nikko America, Inc., 1996 U.S. Dist. LEXIS 11163, at *30.  "[P]arallel conduct by different

defendants affords an insufficient basis for inferring that an agreement was reached."  Elsevier

Inc. v W.H.P.R., Inc., 692 F. Supp. 2d 297, 313 (S.D.N.Y. 2010).

        Thus, the Trustee was required to plead sufficient facts from which the Court may

infer an agreement on the part of each LLC to commit a substantive RICO violation.  Boneta v.

Rolex Watch USA, 232 F. Supp. 3d 354, 360 (S.D.N.Y. 2017) (dismissing RICO civil

conspiracy count because "the Complaint makes no plausible allegation of any agreement").

Here, there is no allegation that either LLC agreed to engage in the alleged broad-ranging

conspiracy to engage in bank fraud (or any of the other acts of racketeering), which forms the basis for the RICO claim.

In this case, as in 4 K & D Corp., 2 F. Supp. 3d at 545 (dismissing civil RICO conspiracy count), the Complaint must be dismissed because it contains only conclusory allegations that the LLCs "agreed" to commit the violations. The Trustee here has alleged no facts to show that the LLCs had any "meeting of the minds" as to the alleged violations. As in Iqbal, such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555); see also United States Fire Ins. Co. v. United Limousine Serv., 303 F. Supp. 2d 432, 453-54 (S.D.N.Y. 2004); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young, No. 91 Civ. 2923, 1994 U.S. Dist. LEXIS 2929, at *98-99 (S.D.N.Y. Mar. 15, 1994) ("[N]umerous district courts within this circuit have dismissed conclusory allegations of agreement as insufficient to state a RICO conspiracy claim") (citations omitted).

Here, the Trustee's claims against the LLCs for RICO conspiracy fail because the LLCs were, at best passive bystanders in the alleged conspiracy and are not alleged with any specificity to have agreed to the conspiracy or any of the predicate acts alleged to constitute substantive RICO violations. Instead, the Trustee here asks the Court to "infer" the LLCs' agreement to participate in a conspiracy, simply by virtue of the fact that individuals associated with the underlying alleged RICO violations were associated with the LLCs. (Complaint ¶¶ 451, 452). Such association is insufficient to plead the LLCs' "agreement" to participate in the underlying RICO conspiracy. 4 K & D Corp., 2 F. Supp. 3d at 545 (granting motion to dismiss, holding that "general allegation about the structure of the business is not sufficient to establish that each defendant consciously agreed to" engage in the conspiracy).

While the allegations against each of the LLCs are insufficient, the allegations of agreement by CPRE are particularly thin – with the Trustee simply asking the Court to infer CPRE's agreement based upon the fact that Nirav Modi  allegedly controlled CPRE; that Mihir Bhansali ("Bhansali") was the director and CEO of CPRE; and that Ajay Gandhi ("Gandhi") was the CFO of CPRE.  (Complaint ¶¶ 451-52.)  The allegations that two of these three individuals – alleged to be co-conspirators –  allegedly held official roles in CPRE and the third—also alleged to be a conspirator – allegedly "controlled CPRE" –  are inadequate to sustain an inference that CPRE agreed to participate in the RICO conspiracy.  Id.  See also Egerique v. Chowaiki, 2020 U.S. Dist. LEXIS 73060, at *64 (S.D.N.Y. Apr. 24, 2020) ("as yet another pleading deficiency, the Complaint lacks sufficient allegations that the Benrimon Defendants actually agreed with Chowaiki and with each other to violate RICO's substantive provisions. Plaintiff asserts in vague and conclusory terms that Defendants 'conspired' and 'agreed' with each other. But all that the Complaint shows is that the Benrimon Defendants and Chowaiki did business together on two separate occasions. Such allegations are plainly insufficient to show a RICO conspiracy." (internal citations omitted)).

The allegations against CPS50 are similarly insufficient, essentially asking the Court to infer CPS50's agreement to participate because Modi, Deepak Sheth, Javeri, Nitin Dattani and Gandhi held roles related to CPS50.  (Complaint ¶ 452.)  These allegations ignore the admission in the Complaint that the funds derived to purchase the CPS50 property came from Mehta and Javeri (not from the Debtors or U.S. Affiliates).  To the extent that the Trustee alleges that CPS50 purchased a property using proceeds of the RICO conspiracy and that CPS50 was formed for the purpose of laundering proceeds, such allegations are similarly conclusory, and therefore insufficient to sustain the RICO claim.

11

The claims alleged against CPRE and CPS50 are similar to those in <u>Egerique</u>,
2020 U.S. Dist. LEXIS 73060, at *55[2], in which the court granted a motion to dismiss because
"beyond the allegations underlying the substantive RICO claim, Plaintiff has not pleaded any
facts from which the Court could infer a conspiracy to commit a RICO violation." Similarly,
here, the Trustee has not pleaded any facts from which the Court may infer agreement by the
LLCs to commit a RICO violation. As a result, the Trustee's RICO claims against the LLCs
must be dismissed.

II.     **The Trustee's Claims Against CPRE Based on the New York and Federal
        Fraudulent Transfer Statutes Fail to State a Claim Upon Which Relief May
        Be Granted**

Although the Trustee purports to assert actual and constructive fraudulent transfer
claims against CPRE, he does not assert any claims of fraudulent transfer against CPS50. (<u>See</u>
Complaint, Counts 7-10.) The claims the Trustee attempts to assert against CPRE fail because
the Trustee fails to satisfy the heightened pleading requirements applicable to allegations of
actual fraudulent transfers and because, by the Trustee's own allegations, the Debtors received
fair consideration for the transfers and because the Trustee's allegations that the Debtors were
insolvent is not plausible.

A.      **The Trustee's Claims based on Alleged Actual Fraudulent Transfers
        (Counts 7 and 8) Must be Dismissed Because they Fail to Adequately
        Plead Specific Intent with Particularity**

A party alleging an actual fraudulent transfer must satisfy the particularity
requirement under Rule 9(b) of the Federal Rules of Civil Procedure. <u>In re Verestar, Inc.</u>, 343
B.R. 444, 459 (Bankr. S.D.N.Y. 2006). <u>See also</u> Federal Rule of Bankruptcy Procedure, Rule

---

[2] "Because of the sanctions and stigma attendant to them, civil RICO claims are notoriously — and
appropriately — difficult to plead." <u>Egerique,</u> 2020 U.S. Dist. LEXIS 73060, at *2.

7009.  While "[c]ourts often apply a more relaxed standard to the particularity requirement when

a trustee in bankruptcy alleges actual fraud. . . . [t]his relaxed standard does not eliminate the

particularity requirement, [but] the degree of particularity required should be determined in light

of the circumstances of the case."  In re Collins, 540 B.R. 54, 64-65 (Bankr. E.D.N.Y. 2015)

(internal quotations and citations omitted).  Thus, the Trustee must allege at least "circumstantial

evidence from which the requisite intent may be inferred," provided those allegations "are

sufficient to support a strong inference of fraudulent intent."  In re Vivaro Corp., 524 B.R. at 554.

Here, the Trustee has failed entirely to plead any fraudulent intent on behalf of

CPRE as transferee, and does not sufficiently plead  that FDI made the transfers with the intent

to hinder, delay or defraud creditors.  Instead, the Complaint alleges that Nirav Modi, Bhansali,

Gandhi "and their co-conspirators approved the [transfers] in order to perpetuate the Bank Fraud

and to launder and siphon its illicit proceeds for the benefit of Modi, his family, and others."

(Complaint ¶¶ 505 & 512.)   Under Rule 9(b)'s particularized pleading requirements, the

allegation that these individuals "approved" the transfers is insufficient to prove their intent, or

more importantly the intent of FDI, to make such transfers to defraud creditors.

Moreover, the Trustee has not adequately alleged the requisite "badges of fraud"

from which fraudulent intent maybe inferred.  In re Sharp Int'l Corp., 403 F.3d 43, 56 (2d Cir.

2005).  The relevant badges of fraud include:  (1) the lack or inadequacy of consideration; (2) the

family, friendship or close associate relationship between the parties, (3) the retention of

possession, benefit, or use of the property in question; (4) the financial condition of the party

sought to be charged both before and after the transaction in question; (5) the existence or

cumulative effect of a pattern or series of transactions or course of conduct after the incurring of

debt, onset of financial difficulties, or pendency or threat of suits by creditors; (6) the general

13

chronology of the events and transactions under inquiry; (7) a questionable transfer not in the

usual course of business; and (8) the secrecy, haste or unusualness of the transaction.  In re 45

John Lofts, LLC, 599 B.R. 730, 740 (S.D.N.Y. 2019).

   Here, the Trustee does not allege these requisite badges of fraud.  With respect to

the first "badge," as discussed above, the Trustee has alleged that fair consideration was paid to

FDI for the transfers, with FDI receiving $6,000,000 as consideration for $5,856,335 in transfers

to or for the benefit of CPRE.  (Complaint ¶¶ 351 & 358.)  Beyond the fact that Bhansali and

Gandhi served as CEO and CFO of CPRE, while also serving as CEO and CFO of FDI and FGI,

respectively (Complaint ¶ 55), the Trustee does not allege any "close relationship" between FDI

and CPRE and there is no allegation that FDI retained possession of the underlying residence.

As discussed further above, the Trustee provides no allegation of the financial condition of FDI

before or after the transfers, instead asserting that a claim by PNB first asserted in 2018 rendered

FDI insolvent as far back as 2012, which is simply not plausible.  See infra Section II.B.2;

Declaration of Beth L. Kaufman in Support of Motion to Dismiss dated September 15, 2020

("Kaufman Decl.") ¶¶ 2-4.  Contrary to any allegation that the transfers involved a "secret" or

"hasty transfer not in the usual course of business," the alleged transfers occurred regularly in the

ordinary course of business between 2012 and 2018, nearly all on a monthly basis.  (Complaint,

Schedule A.)  Thus, there was nothing hasty or secret about these transfers.

   While the existence of several badges of fraud can be used to infer actual intent,

In re Arctrade Fin. Techs. Ltd., 337 B.R.791, 809 (Bankr. S.D.N.Y. 2005), here none of the

badges of fraud exists and, in fact, the Trustee himself acknowledges that fair consideration was

received, which is the antithesis of fraud.  (Complaint ¶¶ 351 & 358.)  Under these

circumstances, the Trustee's claims alleging actual fraudulent transfers under 11 U.S.C. §§

548(a)(1)(A), 550(a) (Count 7), and N.Y. Debtor & Creditor Law ("NY DCL") §§ 276, 278 and

279 and 11 U.S.C. §§ 544(b)(1) and 550(a) (Count 8), should be dismissed, along with the

Trustee's claim for reasonable costs and expenses related to those claims.

> **B.**     **The Trustee's Constructive Fraudulent Transfer Claims (Counts 9
> and 10) Must be Dismissed Because They Fail to Adequately Plead
> Lack of Fair Consideration and Insolvency**

Counts 9 and 10 of the Complaint allege that FDI made numerous cash transfers

for the benefit of CPRE within a period of two years and six years, respectively, and that FDI was

"insolvent on the date of each CPRE [] transfer," or "was made, or became insolvent as a result of

such transfer," without more.  (Complaint ¶¶ 521 & 528.)   The Complaint also alleges that FDI

"received less than reasonably equivalent value in exchange for the CPRE [] Transfers."

(Complaint ¶¶ 520 & 527.)   The Complaint then cites a series of cash transfers over a period of

two to six years prior to the Debtor's Chapter 11 filing, made by FDI to various third parties to

pay for property-related fees.  (Complaint, Schedule A.)  The Trustee does not allege, nor could

he, any fraudulent intent on the part of CPRE related to these transfers.

Courts in this District have routinely held that similar conclusory allegations do

not suffice to state a constructive fraudulent conveyance claim.  See Doubleline Capital LP v.

Odebrecht Fin., Ltd., 323 F. Supp. 3d 393, 466 (S.D.N.Y. 2018) ("conclusory allegations do not

suffice to state a constructive fraudulent conveyance claim").  See also Waite v. Schoenbach,

2010 U.S. Dist. LEXIS 115470, at *17 (S.D.N.Y. Oct. 29, 2010) ("Plaintiff's allegations that the

'transfers were made without fair consideration' and 'rendered Defendants insolvent' are

conclusory allegations that are insufficient to withstand a motion to dismiss").

**1. The Trustee's Complaint Concedes that Fair Consideration Was Received for the CPRE Transfers**

The Trustee's allegations reveal that the Debtors received sufficient consideration for the transfers.  As acknowledged by the Complaint, in 2007, long before the alleged bank fraud commenced, CPRE purchased an apartment at the Essex House for $4.995 million (the "Essex House Apartment").  The Essex House Apartment was funded by payment of $2 million paid by FDII, a Delaware Corporation, with the balance funded by a mortgage through HSBC.

The Complaint alleges that FDI made $856,335 of the mortgage payments for the Essex House Apartment from 2011 to 2017 and paid the $3 million remaining balance at the end of 2017.  (Complaint ¶ 351.)  On December 27, 2017, CPRE was sold to the Ithaca Trust for a payment of $6 million to FDI's parent, FGI.  (Complaint ¶ 358.)  In sum, the Complaint alleges that the Debtors received fair consideration for the purchase of CPRE.

To defeat a motion to dismiss for constructive fraudulent transfer under NY DCL § 273, the Trustee must allege a lack of fair consideration or lack of good faith on the part of the transferee, which the Trustee cannot do here.  In re Vivaro Corp., 524 B.R. 536, 550 (Bankr. S.D.N.Y. 2015), citing Gowan v. Patriot Grp., LLC (In re Dreier LLP), 452 B.R. 391, 443 (Bankr. S.D.N.Y. 2011).  "Courts use the term 'fair consideration' interchangeably with 'reasonably equivalent value,' relevant in Bankruptcy Code section 548 fraudulent transfer claims, when examining constructive fraud claims."  Id.  Similarly, by its terms, 11 U.S.C. § 548(a)(1)(B) requires as its first element that the Debtor "received less than a reasonably equivalent value in exchange for such transfer or obligation."  11 U.S.C. § 548(a)(1)(B)(i).

"'[L]ack of fair consideration' is '[a]n essential element of a claim pursuant to DCL §§273… [and] 275.'"  Ray v. Ray, 2019 U.S. Dist. LEXIS 56647, at *14 (S.D.N.Y. March 28, 2019 (Daniels, J.)).  Under New York law, the "fair consideration" test provides that (1) the

16

recipient of the debtor's property must either "(a) convey property in exchange or (b) discharge

an antecedent debt in exchange; and (2) such exchange must be a fair equivalent of the property

received; and (3) such exchange must be in good faith." In re Sharp, 403 F.3d at 53-54 (citations

and internal quotation marks omitted).

The question of "reasonably equivalent value" requires the court to "compare

what was given with what was received." Estate of Ruffini v. Norton Law Grp. LLC (In re

Ruffini), 2014 Bankr. LEXIS 733, at *22 (Bankr. E.D.N.Y. Feb. 25, 2014), cited in In re Vivaro

Corp., 524 B.R. at 550.  Here, by the Trustee's own admissions, the transferor/Debtor paid

$5,856,335 to or for the benefit of CPRE between 2011 and 2017 and received $6,000,000 for

CPRE in 2017.  (Complaint ¶¶ 351 & 358.)   Under any analysis, the Debtor here received more

in exchange than the amount of the allegedly fraudulent transfers.  Thus, the Trustee cannot state

a claim based on constructive fraudulent transfer under either New York or federal bankruptcy

law.

### 2.  The Trustee's Claims for Constructive Fraudulent Transfer Against CPRE Also Fail to Plausibly Allege Insolvency

New York law is clear that "[w]ith regard to insolvency under NY DCL section

273, an entity is insolvent when the 'present fair salable value of [the debtor's] assets is less than

the amount that will be required to pay [the debtor's] probable liability on [its] existing debts as

they become absolute and matured.'"  Under NY DCL § 271(1), insolvency is measured from the

point at which the transfers took place and therefore "cannot be presumed from

subsequent insolvency at a later point in time." O'Toole v. Karnani (In re Trinsum Grp., Inc.),

460 B.R. 379, 392 (Bankr. S.D.N.Y. 2011).

"[T]he mere existence of a contingent debt, without more, is insufficient to

support a finding that such a debt represent[s] a 'probable liability'" where there is "no evidence

as to the probability, at the time of the challenged conveyance, that [the] contingent liability would be imposed." Staten Island Sav. Bank v. Reddington, 260 A.D.2d 365, 366 (2d Dep't 1999) cited in Ray, 2019 U.S. Dist. LEXIS 56647, at *18.

Indeed, courts in this District have held that a complaint that provided far more than is provided here -- net income figures, net cash flow figures, and revenue decline percentage figures for the relevant timeframe -- did not sufficiently allege that the debtors were insolvent at the time of, or rendered insolvent by, allegedly fraudulent transfers In re Vivaro Corp., 524 B.R. at 551. See also In re Trinsum Grp., Inc, 460 B.R. at 392 (stating that the Complaint should include "some sort of 'balance sheet' test or information . . . that the [c]ourt can use to infer that the corporation's liabilities exceeded their assets at the time the transfers took place" and "[w]ithout providing allegations of the underlying factual figures, Counts II, III, and IV fail on their face.").

Notably, here, the Trustee has not alleged any specific financial information about the Debtors or U.S. Affiliates during the relevant timeframe, much less alleged net income figures, net cash flow figures or revenue decline. Instead, the Trustee alleges only and in conclusory fashion that "FDI was insolvent on the date of each CPRE" transfer or became insolvent as a result of such transfer. (Complaint ¶¶ 521, 528.) Such allegations are insufficient to state a claim. Waite, 2010 U.S. Dist. LEXIS 115470, at *17 (finding that plaintiff's allegations that the "transfers were made without fair consideration" and "rendered [d]efendants insolvent" were conclusory allegations that were insufficient to withstand a motion to dismiss).

NY DCL Section 271 defines insolvency as the "probable liability on . . . existing debts" exceeding "the present fair salable value of . . . assets." NY DCL § 271(1). An adequate pleading of insolvency "requires some sort of "balance sheet' ... information ... that the Court can

use to infer that the corporation's liabilities exceeded their assets *at the time the transfers took place*." In re Trinsum Grp., Inc., 460 B.R. 379, 392 (Bankr. S.D.N.Y. 2011) (emphasis added). The Trustee makes no attempt to provide balance sheet information, and in fact declined the LLCs' requests for such information. Kaufman Decl. ¶¶ 2-4. To the contrary, FDI did business for a full six years after the first transfers challenged by the Trustee in 2012. The Trustee alleges that the Debtor FDI was insolvent as early as 2012 based on a claim asserted by PNB for the first time in November 2018. See Proof of Claim of Punjab National Bank Against Firestar Diamond, Inc., In re Firestar Diamond, et al., No. 18-bk-10509 (Bankr. S.D.N.Y. Nov. 29, 2018); Kaufman Decl. ¶ 3.

It was not until 2018 that PNB asserted a claim against the Debtors under RICO and state law fraud statutes, which carry statutes of limitations of four years and six years, respectively. Thus, even under the Trustee's theory, any claims by PNB against the Debtors would be valid for a period of, at most, six years prior to the date that the Trustee filed its Proof of Claim on November 18, 2018, or from November 18, 2012. Even under the Trustee's unsupportable definition of insolvency, the Trustee's claim for constructive fraudulent transfer would similarly be limited to that period.

The reason the Trustee would not share the Debtors' balance sheet information with the LLCs – or stipulate that the Debtors' balance sheets did show that they were solvent prior to the disclosure of PNB's claim is apparent – the Debtors were solvent at the time of the relevant transfers. This case is analogous to Innovative Custom Brands, Inc. v. Minor, 2016 U.S. Dist. LEXIS 8354, at *5-8 (S.D.N.Y. Jan. 25, 2016), in which the Court granted a motion to dismiss where, prior to an alleged creditor's action, the Debtor "had more than sufficient funds with which to pay its creditors." As in Innovative Custom Brands, the Trustee here has failed to

provide "any 'balance sheet' information to suggest 'that the corporation's liabilities exceed[ed] [its] assets at the time the transfers took place." Id. at *8 citing In re Trinsum Grp., Inc., 460 B.R. at 392-93 (finding net income and cash flow figures alleged in the complaint insufficient to adequately plead insolvency).

In Ray, the court concluded that issues such as fair consideration, whether "a person acted in good faith," and insolvency were not questions of fact that "requir[ed] discovery." 2019 U.S. Dist. LEXIS 56647 at *20-21 (granting motion to dismiss). Instead, the Ray court held that "[e]ven under the. . . liberal pleading requirements of Rule 8," a complaint must "contain factual allegations that would indicate. . . the factual basis for the belief that these transfers were made without fair consideration." In re Vivaro Corp., 524 B.R. at 551 (quoting Safety-Kleen Sys., Inc. v. Silogram Lubricants Corp., 2013 U.S. Dist. LEXIS 180219, at *25 (E.D.N.Y. Nov. 15, 2013)). As a result, the Trustee has failed to adequately plead insolvency.

Under these circumstances, the Trustee's claims alleging constructive fraudulent transfers under 11 U.S.C. §§ 548(a)(1)(B), 550(a) (Count 9) and NY DCL §§ 273, 278 and 279 and 11 U.S.C. §§ 544(b)(1) and 550(a) (Count 10) should be dismissed, along with the Trustee's claim for reasonable costs and expenses related to those claims.

### III. If the Trustees' Claims Against the LLCs Are Not Dismissed in Full, Then They Must Be Dismissed, At Least in Part, Due to the Bar of the Applicable Statutes of Limitations

In trying to assert RICO and fraudulent transfer claims against the LLCs, the Trustee alleges conduct going back a decade before this action was commenced. All of the RICO and fraudulent transfer claims against the LLCs are based, at least in part, on conduct that occurred outside the applicable statutes of limitations.

The determination of the applicable statute of limitations is governed by New York's choice of law rules.  See Bianco v. Erkins (In re Gaston & Snow), 243 F.3d 599, 601-02 (2d Cir. 2001).  Where the plaintiff is a New York resident, courts must apply New York's statutes of limitations.  NY CPLR 202.  "Courts within the Second Circuit" applying CPLR § 202 "have consistently held that a business entity's residence is determined by its principal place of business."  Woori Bank v. Merrill Lynch, 923 F. Supp. 2d 491, 494 (S.D.N.Y. 2013), aff'd, 542 Fed. App'x 81 (2d Cir. 2013) (summary order).  Because the Trustee stands in the shoes of the Debtors and because the principal place of business of each Debtor is New York (Complaint ¶¶ 14-16), the statute of limitations for the fraudulent transfer claims is governed by New York law.

> **A.    The Trustee's Claims Based on Alleged Actual Fraudulent Transfers Under NY DCL §§ 278, 278 and 279 (Count 8) Before February 25, 2014 Are Time Barred**

The Trustee's claims based on alleged actual fraudulent transfers to CPRE under Count 8 are subject to the statute of limitations provided under NY CPLR 213(8), which provides that such a claim must have been brought by no later than the greater of six years from the date the cause of action accrued or two years from the date FDI actually or should have discovered it.  Where, as here, the transferor was uniquely aware of all of the facts, including the alleged fraud, underlying the transfers, the statute of limitations applicable to the Trustee's claims is six years.  Billet v. Drexler-Billet, 2019 N.Y. Misc. LEXIS 5321, at *28-29 (Sup. Ct. N.Y. Oct. 4, 2019) (dismissing claim based on six-year statute of limitations because "plaintiff's own Complaint establishes conclusively that he was on notice of the claim long before he filed this action….").

Here, where FDI, the transferor in whose shoes the Trustee stands, was an actual
participant in the alleged fraud, there can be no question that FDI was on notice of its purported
claim as of the date of the first allegedly fraudulent transfer, on March 1, 2012. (Complaint ¶¶
91-99, 98.) The Trustee filed the Complaint on February 25, 2020 and any conduct alleged to
have occurred before February 25, 2014 is time barred. To the extent that the allegations against
CPRE are based on conduct that allegedly occurred before February 25, 2014, the Trustee's
claims in Count 8 must be so limited.

### B.    The Trustee's Claim Based on Constructive Fraudulent Transfers Before February 25, 2014 Are Time Barred

The statute of limitations applicable to the Trustee's constructive fraudulent
transfer claims is six years under NY CPLR 213(1). Jaliman v. D.H. Blair & Co. Inc., 105
A.D.3d 646, 646-47, 964 N.Y.S.2d 112, 114 (1st Dep't 2013). Thus, the Trustee's claims for
constructive fraudulent transfer based on transfers prior to six years before the Complaint was
filed (i.e., before February 25, 2014) must be dismissed as time barred. To the extent that the
allegations against CPRE are based on conduct that allegedly occurred before February 25, 2014,
the Trustee's claims in Counts 9 and 10 must be limited to only such conduct as occurred after
February 25, 2014.

### C.    The Trustee Cannot Recover Under RICO for Injuries that Occurred Before February 25, 2016

The RICO claims, as well, should be partially dismissed as time barred. Civil
RICO claims (and related conspiracy claims) are subject to a four-year statute of
limitations. Koch v. Christie's Int'l Pub. Ltd. Co., 699 F.3d 141, 148 (2d Cir. 2012) (civil
RICO); World Wrestling Entm't, Inc. v. Jakks Pac., Inc., 530 F. Supp. 2d 486, 530 (S.D.N.Y.
2007) (civil RICO conspiracy). A RICO claim accrues when the plaintiff "discover[ed] or
should have discovered the injury" from the racketeering conduct. Koch, 699 F.3d at 150

22

(quotations omitted); see also Lanza v. Merrill Lynch & Co., 154 F.3d 56, 60 (2d Cir. 1998).  Where a plaintiff alleges that the same pattern of racketeering activity caused multiple injuries over time, "a new claim accrues, triggering a new four-year limitations period, each time plaintiff discover[d], or should have discovered, a new injury caused by the predicate RICO violations."  Bingham v. Zolt, 66 F.3d 553, 558 (2d Cir. 1995).  Thus, the Trustee can recover under RICO "only for injuries discovered or discoverable within the four-year 'window' before suit was filed," making claims based on injuries discovered prior to the four-year window time-barred and unsalvageable.  Kerik v. Tacopina, 64 F. Supp. 3d 542, 558 (S.D.N.Y. 2014) (quoting *Bingham*, 66 F.3d at 560).

The Trustee filed his Complaint on February 25, 2020, so he cannot recover for any RICO injuries that the Debtors or the U.S. affiliates discovered or should have discovered on or before February 25, 2016.  Here, the Debtors and the U.S. affiliates are alleged participants in the scheme to defraud PNB—they were not victims of the alleged fraud—and thus were necessarily aware of any injury at the moment it occurred.  As a result, the Debtors and the U.S. affiliates discovered or should have discovered their injuries from any pre-February 25, 2016 transfers on or before that date, and any civil RICO claim under Counts 1 or 2 alleged against the LLCs based on those injuries is time-barred.

### IV.   The Trustee's RICO Claims are Barred by the Doctrine of *In Pari Delicto*

By stepping into the proverbial shoes of the Debtor entities and their U.S. Affiliates, the Trustee has necessarily assumed not only the claims of the Debtors and their U.S. Affiliates but also the limitations on those claims.  In re CBI Holding Co., Inc., 529 F.3d 432, 447 (2d Cir. 2008) (trustee "can maintain only those actions that the debtors could have brought prior to the bankruptcy proceedings").  The Trustee cannot bring the RICO claims asserted in his

Complaint because the Debtors and their U.S. Affiliates could not bring such claims, given their own alleged conduct in perpetrating them.

The common law defense of *in pari delicto* is a complete defense in private lawsuits under the RICO statute. Republic of Iraq v. ABB AG, 768 F.3d 145, 162-63 (2d Cir. 2014). The *in pari delicto* defense has two elements: (1) that the plaintiff "bears at least substantially equal responsibility for the violations he seeks to redress," and (2) application of the defense "[must] comport with the purposes of the statute on which the federal cause of action is based." Republic of Iraq, 768 F.3d at 162, 167 (citing Bateman Eichler, Hill Richards, Inc. v. Berner, 472 U.S. 299, 310-11 (1985)).[3]

Application of this defense need not await trial. Courts apply the *in pari delicto* doctrine at the pleadings stage where, as here, "the outcome is plain on the face of the pleadings." In re Bernard L. Madoff Inv. Sec. LLC, 721 F.3d 54, 65 (2d Cir. 2013). The Complaint in this proceeding demonstrates on its face that the doctrine applies.

With respect to the LLCs, the Debtors and their U.S. Affiliates bear not only substantially equal responsibility for the alleged fraudulent scheme, but the Trustee's allegations make it plain that if a fraudulent scheme occurred, the Debtors and their U.S. Affiliates in fact bear far greater responsibility. The Debtors and their U.S. Affiliates are alleged to have been key participants in a multi-year, billion-dollar alleged Bank Fraud carried out through complex and layered financing transactions. (Complaint ¶¶ 62, 62-104 & 193; First Amended Complaint in Levin, Trustee v. Nirav Deepak Modi, et al., Adv. Proc. No. 19-1102 (SHL), ¶¶ 23-60;

---

[3] The purposes of the *in pari delicto* doctrine are well established: "First, denying judicial relief to an admitted wrongdoer deters illegality. Second, *in pari delicto* avoids entangling courts in disputes between wrongdoers." In re Lehr Constr. Corp., 551 B.R. 732, 738 (S.D.N.Y. 2016) (citing Kirschner v. KPMG LLP, 15 N.Y.3d 446, 464 (N.Y. 2010), aff'd, 666 Fed. App'x 66 (2d Cir. 2016)).

Complaint, <u>Levin v. Synergies Corp., et al.</u>, Adv. Proc. No. 20-01014 (SHL), filed February 12, 2020.)[4]

The LLCs, on the other hand, are not alleged to have engaged in any fraudulent actions.  In fact, not one of the seven alleged actions on which the Trustee bases his claim against CPS50 or the three actions on which he bases his claim against CPRE violates any law at all. (<u>See</u> Complaint ¶¶ 451-52.)  <u>Compare</u> Complaint ¶¶ 451-52  <u>with</u>  <u>In re Firestar Diamond, Inc.</u>, 615 B.R. 161, 163, 2020 WL 1934896 at *2 (Bankr. S.D.N.Y. 2020).  Thus, the first element of the *in pari delicto* doctrine is established, because it is plain on the face of the Complaint that if there was a fraudulent scheme, the Debtors and their U.S. Affiliates bear far greater responsibility than the LLCs.

With respect to the second element of this defense, application of the *in pari delicto* doctrine is necessary to avoid defeating RICO's statutory purposes.  If the Debtors and their U.S. Affiliates were able to pursue civil RICO claims for alleged damages against the LLCs, any recovery "would not divest RICO violators of their ill-gotten gains; it would result in a wealth transfer among similarly situated conspirators."  <u>Republic of Iraq</u>, 768 F.3d at 167 (<u>citing</u> <u>Official Comm. of Unsecured Creditors of PSA, Inc. v. Edwards</u>, 437 F.3d 1145, 1155 (11th Cir. 2006)).

The allegations found in the Complaint establish both elements of the *in pari delicto* doctrine and bar the Debtors and their U.S. Affiliates – and, therefore, the Trustee – from asserting RICO claims against the LLCs.

---

[4]  The Trustee's complaint in the related adversary proceeding can be considered here.  "A court may also consider matters to which judicial notice may be taken, such as pleadings in other lawsuits and other public records."  <u>Egerique</u>, 2020 U.S. Dist. LEXIS 73060, at *20 (citations omitted).

**V.     The Trustee Lacks Standing to Bring the RICO Claims Against the LLCs Because the Debtors Did Not Sustain a Direct Injury as a Result of the Alleged RICO Violation**

A co-conspirator in a fraudulent act, such as the alleged RICO fraud alleged here, "cannot also be a victim entitled to recover damages, for he cannot have relied on the truth of the fraudulent representations, and such reliance is an essential element in a case of fraud." Cenco Incorporated v. Seidman & Seidman, 686 F.2d 449, 454 (7th Cir.1982), cert. denied, 459 U.S. 880 (1982).  As is true here, the trustee's complaint in Cenco specifically alleged that the debtors participated in the acts giving rise to the RICO claims. (Complaint ¶¶ 90-104; Cenco, 686 F.2d at 453-54.)  In Cenco, as here, because the debtors (and, here, the Debtors and U.S. Affiliates) were alleged conspirators in the purported fraud prohibited by RICO, the debtors, on the date of their bankruptcy filings, would have been unable to sue the present RICO defendants (their co-conspirators) for the fraud in question. Cenco, 686 F.2d at 454.  See also Lopez v. Dean Witter Reynolds, Inc., 591 F. Supp. 581, 588 n.4 (N.D. Cal. 1984) ("To allow one racketeer to sue another under RICO does not further the statute's objective of eradicating organized crime").

**VI.     Additional Legal Bases for Dismissal**

The LLCs also adopt the following grounds for dismissal that have been more expansively briefed by defendants Modi, Bhansali and Gandhi in Richard A. Levin, Trustee v. Nirav Modi, et al., Adv. Proc. No. 19-1102 (SHL), and defendants Purvi Mehta, Nehal Modi and Ami Javeri in this matter, and incorporate by reference the briefing on these issues by said defendants:

**A.     Standing under the RICO Statute Is Limited to Parties Directly Injured as a Result of the Alleged Violation**

RICO provides standing to bring a private cause of action to a "person injured in his business or property by reason of" a substantive RICO violation.  Hemi Grp., LLC . v. City of New York, 559 U.S. 1, 6 (2010); see also Holmes v. Secs. Inv'r Prot. Corp., 503 U.S. 258,

268 (1992). Standing to sue under the RICO statute is limited to *direct* victims of the

racketeering activity. See Hemi, 559 U.S. at 10. Indeed, the Supreme Court has emphasized that

there must be "some direct relation between the injury asserted and the injurious conduct

alleged," Id. at 9-10, and this "direct relationship" does not extend beyond the "first step" of

causation between the RICO violation itself and the alleged injury. Id. at 10 (quoting Holmes,

503 U.S. at 271). Here, the direct injuries, if any, were to PNB, not to the Debtors.

**B.     The Debtors Were Not Injured By Reason of a Pattern of
         Racketeering Activity**

Here, contrary to the Trustee's allegation that the Debtors were injured "as a

direct result and proximate result" of the alleged RICO violations (Complaint ¶¶ 458 & 462), the

only direct "victim" of the alleged pattern of racketeering activity was PNB. The Complaint

alleges that the primary purpose of the alleged RICO enterprise was to "formulat[e] and

implement[] a common scheme to defraud PNB for the Defendants' personal enrichment."

(Complaint ¶ 379). The other alleged purpose of the enterprise—to "design[], manufactur[e],

and sell[] diamonds and jewelry"—could not logically have resulted in a compensable RICO

injury. (Complaint ¶ 378). Neither the purpose nor the direct effect of the alleged racketeering

activity was to harm the Debtors, but of an alleged fraud on PNB. Therefore, the RICO causes

of action must be dismissed.

**C.     PNB Is Better Situated to Pursue Claims**

The Supreme Court has dismissed RICO claims where, as in this proceeding,

there is a better-situated injured plaintiff with an incentive to sue. Hemi, 559 U.S. at 10; Anza v.

Ideal Steel Supply Corp., 547 U.S. 451, 460 (2006); Holmes, 503 U.S. at 270. The Supreme

Court has consistently held that the "requirement of a direct causal connection is especially

warranted where the immediate victim[] of an alleged RICO violation can be expected to

vindicate the laws by pursuing [its] own claims." <u>Anza</u>, 547 U.S. at 460.  Therefore, under

controlling case law, a party does not have standing under RICO where "better situated plaintiffs

would have an incentive to sue."  <u>Hemi</u>, 559 U.S. at 11-12.  The alleged direct victim of the

fraud here—PNB-- is not only positioned to vindicate its claim, it already has begun to do so by

filing a Proof of Claim in these bankruptcy proceedings.  <u>See, e.g.</u>, Proof of Claim of Punjab

National Bank Against Firestar Diamond, Inc., <u>In re Firestar Diamond, et al.</u>, No. 18-bk-10509

(Bankr. S.D.N.Y. Nov. 29, 2018), ¶ 23.[5]

## <u>CONCLUSION</u>

For the foregoing reasons, and the reasons set forth in the motions of defendants

Modi, Bhansali, Gandhi, Mehta, Nehal Modi and Javeri, as listed in Point VI above, the Court

should dismiss the claims against CPRE and CPS50 in their entirety.

Dated:          September 15, 2020          Respectfully Submitted,

Schoeman Updike Kaufman & Gerber LLP

By: _____
          Beth L. Kaufman
          Patricia C. O'Prey

551 Fifth Avenue
New York, NY 10176

*Attorneys for Central Park Real Estate LLC and*
*Central Park 50 Real Estate LLC*

---

[5] <u>See also</u> Proof of Claim of Punjab National Bank Against Old AJ, Inc., f/k/a A. Jaffe, Inc., <u>In re Firestar Diamond, et al.</u>, No. 18-bk-10509 (Bankr. S.D.N.Y. Nov. 29, 2018) ¶ 23; Proof of Claim of Punjab National Bank Against Fantasy, Inc., <u>In re Firestar Diamond, et al.</u>, No. 18-bk-10509 (Bankr. S.D.N.Y. Nov. 29, 2018) ¶ 23.