UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

In re:                                                          Chapter 11

FIRESTAR DIAMOND, Inc., et al.,                                 No. 18-10509(SHL)

Debtors,                                                        (Jointly Administered)

-----------------------------------------------------------------X

Richard Levin, Chapter 11 Trustee of
FIRESTAR DIAMOND, INC., FANTASY, INC.,
and OLD AJ, INC., f/k/a A. JAFFE, INC.,

                         Plaintiff,
          v.                                                    Adv. Proc. No. 20-01054(SHL)

AMI JAVERI (A/K/A AMI MODI), et al.,

                         Defendants.

-----------------------------------------------------------------X


# MEMORANDUM OF LAW
## IN SUPPORT OF AMI JAVERI'S MOTION TO DISMISS

Roger J. Bernstein
535 Fifth Avenue, 23rd Floor
New York, NY 10017
Tel: (212) 748-4800
Fax: (646) 964 6633
rbernstein@rjblaw.com

Attorney for Defendant Ami Javeri

# Table of Contents

Page No.

Preliminary Statement ............................................................................................ 1

Statement of Facts ................................................................................................... 2

ARGUMENT ........................................................................................................... 5

I.    The Complaint Fails to Allege Knowing Participation by Ami Javeri
      in the Alleged RICO Conspiracy ................................................................. 5

II.   The *In Pari Delicto* Doctrine and Imputation of the Illegal Conduct of the
      Debtors' and U.S. Affiliates Managers Require Dismissal of the Trustee's Complaint ..... 8

      A.   The Trustee's RICO Claims Are Barred by the Doctrine of *In Pari Delicto* ............... 8

      B.   The Trustee's RICO Claims Are Barred by New York Agency Law
           and the Principle of Imputation ................................................................. 10

III.  The RICO Claims of the U.S. Affiliates Are Not Assignable ............................................. 13

IV.   Dismissal of the Complaint Is Also Required on Grounds Asserted
      by Other Defendants in This and Other Adversary Proceedings in this Case .................... 13

      A.   The Trustee Lacks Standing to Bring Claims Belonging to Creditors ....................... 13

      B.   The RICO Claims Must Be Dismissed Because the Debtors Did Not
           Sustain a Direct Injury As a Result of the Alleged RICO Violations ........................ 14

      C.   The Complaint Fails to Allege the Elements of a Substantive RICO Violation,
           Requiring Dismissal of the Conspiracy Claims under 18 U.S.C. § 1962(d) .............. 15

      D.   The Complaint Fails to Allege Domestic Injury ....................................................... 16

      E.   The Claims Based on Conduct Prior to February 25, 2016 Must Be Dismissed ........ 16

CONCLUSION ......................................................................................................... 17

## Table of Authorities

**Cases**                                                                                    Page No.

*B.A.S.S. Group, LLC v. Coastal Supply Co., Inc.*, 2009 WL 1743730 (Del. Ch. 2009) .............. 11

*Bascuñán v. Elsaca*, 874 F.3d 806 (2d Cir. 2017) ........................................ 16

*Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299 (1985) ......................... 9

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ................................. 5

*Bingham v. Zolt*, 66 F.3d 553 (2d Cir. 1995) ............................................. 17

*City of Almaty v. Ablyazov*, 226 F. Supp. 3d 272 (S.D.N.Y. 2016) ............................ 16

*Feingold v. Liberty Mut. Group*, 847 F. Supp. 2d 772 (E.D. Pa. 2012),
   *aff'd*, 562 Fed. Appx. 142 (3d Cir. 2014) .............................................. 13

*First Capital Asset Mgmt, Inc. v. Satinwood, Inc.*, 385 F.3d 159 (2d Cir. 2004) ........................ 15

*First Interstate Bank of Nevada, N.A. v. Natl. Republic Bank of Chicago*,
   1985 WL 1118 (N.D. Ill. 1985) ......................................................... 13

*Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21 (2d Cir.1990) ......................... 5

*Hemi Group, LLC. v. City of New York*, 559 U.S. 1 (2010). ...................................... 14

*In re Adelphia Communications Corp.*, 48 Bankr. Ct. Dec. 191,
   2007 WL 2403553 (Bankr. S.D.N.Y. Aug. 17, 2007), .......................................... 2, 5

*In re Bernard L. Madoff Inv. Sec. LLC*, 721 F.3d 54 (2d Cir. 2013) ............................ 9

*In re CBI Holding Co., Inc.*, 529 F.3d 432 (2d Cir. 2008)............................................ 8

*In re Gaston & Snow*, 243 F.3d 599 (2d Cir. 2001)................................................. 10

*In re Hunt*, 149 B.R. 96 (Bankr. N.D. Tex 1992) ....................................... 10

*In re Lehr Constr. Corp.*, 551 B.R. 732 (S.D.N.Y. 2016),
   *aff'd*, 666 Fed. Appx. 66 (2d Cir. 2016)................................................... 9

*Kalimantano GmbH v. Motion in Time, Inc.,* 939 F. Supp.2d 392 (S.D.N.Y. 2013) .................. 13

*Kerik v. Tacopina*, 64 F. Supp. 3d 542 (S.D.N.Y. 2014)............................................. 17

*Kirschner v. KPMG LLP*, 15 N.Y.3d 446 (2010) .................................................... 11, 12

*Koch v. Christie's Int'l Pub. Ltd. Co.*, 699 F.3d 141 (2d Cir. 2012) ............................ 16

*Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*,
      191 F.3d 229 (2nd Cir. 1999) ............................................................... 15

*Malvar Egerique v. Chowaiki*, 2020 WL 1974228 (S.D.N.Y. Apr. 24, 2020) .................... 5, 9, 15

*Official Comm. of Unsecured Creditors of PSA, Inc. v. Edwards*,
      437 F.3d 1145 (11th Cir. 2006 ............................................................... 10

*Picard v. JPMorgan Chase & Co.*, 460 B.R. 84 (S.D.N.Y. 2011) ............................... 14

*Republic of Iraq v. ABB AG*, 768 F.3d 145 (2d Cir. 2014). .................................... 8, 10

*RJR Nabisco, Inc. v. European Cmty.*, ___ U.S. ___, 136 S. Ct. 2090 (2016) ........................ 16

*Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114 (2d Cir. 1991) .................... 13

*Stewart v. Wilmington Tr. SP Services, Inc.*, 112 A.3d 271 (Del. Ch. 2015),
      *aff'd*, 126 A.3d 1115 (Del. 2015) ........................................................... 11, 12

*Wang v. Yien-Koo King*, 2019 WL 1763230 (S.D.N.Y. 2019) .................................... 15

*Wolstenholme v. Hirst*, 271 F. Supp. 3d 625 (S.D.N.Y. 2017) ................................. 5

*World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*, 530 F. Supp. 2d 486, (S.D.N.Y. 2007) ........... 16

This Memorandum of Law is submitted in support of the motion of defendant Ami Javeri to dismiss the Complaint against her (the "Complaint").  For the following reasons, her motion to dismiss should be granted.

## Preliminary Statement

Given the length of the factual portion of the Complaint -- sixty-nine pages and 370 separate numbered paragraphs -- and the Court's familiarity with it, this Memorandum of Law will not provide a reprise of the Complaint's fact allegations.  Rather, we will focus on the many instances in which the Complaint omits any actions by Ami Javeri that would link her to the predicate acts allegedly committed by others.  The Complaint offers family relationships as its only basis for attempting to plead a RICO conspiracy cause of action against Ami Javeri.  It fails to allege any actions on her part that would demonstrate conscious agreement to any of the alleged predicate acts in the Complaint.

First, the First and Second "Counts" in the Complaint must be dismissed because they do not contain the required factual basis for a RICO conspiracy cause of action against these defendants.  In its allegations concerning Ami Javeri, the Complaint relies only on entirely lawful actions.  These actions fail to demonstrate any awareness of, let alone conscious agreement to, allegedly fraudulent activities engaged in by others.  *See* Part I, *infra.*

Second, the Complaint must be dismissed because the doctrines of *in pari delicto* and imputed wrongdoing bar this suit by the Trustee.  Although these doctrines may already have been considered by the Court in other pending adversary proceedings, the specific factual circumstances applicable to Ami Javeri require dismissal of this Complaint as to her on these grounds.  *See* Part II, *infra.*

Third, the assigned claims of the "U.S. Affiliates" should be dismissed.  In the

circumstances of this case these assignments should be held to be invalid.  *See* Part III, *infra.*

Fourth, the  grounds for dismissal already advanced by other defendants apply here.  To identify these grounds clearly for the Court while avoiding unnecessary repetition, each of these grounds is briefly noted while adopting (and cross-citing) the memoranda of law filed by other defendants supporting dismissal of the Complaint on these grounds.  *See* Part IV, *infra.*

## Statement of Facts

The Debtors are New York diamond and jewelry companies that were acquired in the mid-2000s by companies controlled by Nirav Modi.  Through intermediate entities, Nirav Modi acquired a 95% interest in Debtor Firestar Diamond Inc. ("FDI") in 2005 and a 95% interest in Debtor Old AJ, Inc. ("AJ") in 2007.  Debtor Fantasy, Inc. ("Fantasy") was incorporated in 2012 and is 100% owned by FDI.  Complaint, ¶¶ 18, 19 & 54.  The Complaint does not allege that defendant Ami Javeri had any role at all in carrying out any of these acquisitions, or in operating any of the acquired companies.  *See* Complaint, ¶¶ 1-61.  Nor does it allege that she had any role in forming or operating Synergies Corp. ("Synergies"), Firestar Group, Inc. ("FGI"), Firestar Diamond International, Inc. ("FDII"), Nirav Modi, Inc. ("NMI"), or AVD Trading, Inc. ("AVD") (collectively, the "U.S. Affiliates"), other companies in the diamond and jewelry business that have assigned their putative RICO claims to the Trustee.  Complaint, p. 1 & ¶ 22.[1]

The Complaint devotes twenty-five pages and one hundred and thirty-five numbered paragraphs to describing an alleged scheme to defraud the Punjab National Bank ("PNB") in India. The scheme is alleged to have involved falsified letters of undertaking ("LOUs") that Indian importers use to finance acquisitions from exporters outside India.  The Complaint alleges that three Indian companies owned by Nirav Modi, which the Complaint defines as the "LOU Entities" (Complaint, ¶ 66), submitted inflated invoices to PNB far in excess of the value of the

---

[1] The Debtors and the U.S. Affiliates are referred to collectively herein as the "U.S. Entities".

items that these entities were supposedly importing.  It alleges that the supposed exporters that were paid with the loan proceeds were actually companies controlled by Nirav Modi, and that many fraudulent transactions were used to inflate the amount of the invoices that were the basis for LOU loans.  Complaint, ¶¶ 62-89.

The Complaint is devoid of any allegation that Ami Javeri participated in *any* of the allegedly fraudulent LOU borrowing from PNB during the seven-year relevant period.  *See* Complaint, ¶ 62-165.  The Complaint does not allege any facts that would evidence knowledge on the part of Ami Javeri of the alleged inflation and fraud in the LOU loans.  The Complaint only alleges that defendant Ami Javeri was a "partner" in each LOU Entity and that she opened bank accounts for two of them.  Complaint, ¶¶ 67, 69.  These are entirely lawful acts.

The Complaint further alleges that the proceeds of the fraudulently obtained LOUs were paid to a group of diamond companies in Hong Kong and Dubai described as "Shadow Entities." Complaint, ¶ 57.  The Trustee alleges that the Shadow Entities were controlled by Nirav Modi and made to look like real exporters while participating in circular transactions to defraud PNB in the LOU borrowings.  Complaint, ¶¶ 71-83.  However, the Complaint does not allege that Ami Javeri had any role whatsoever in the "Shadow Entity" transactions.  *See* Complaint, ¶¶ 71-125. Moreover, the Complaint is devoid of any allegation that Ami Javeri even knew that these allegedly fraudulent transactions were taking place.

The Complaint further alleges that "substantial amounts of the Debtors' cash and inventory" were transferred from the Debtors to overseas entities controlled by Nirav Modi. Complaint, ¶¶ 195-242.  There is no allegation, however, that Ami Javeri participated in or knew about these transactions.  The Complaint also alleges that Mihir Bhansali and Ajay Gandhi, who had operational control of the Debtors, made "fraudulent omissions, misstatements, and

3

misrepresentations" and provided false information at several points in the Debtors' bankruptcy filings and proceedings. Complaint, ¶¶ 243-274. The Complaint contains no allegations that Ami Javeri had any role in the Bankruptcy Court proceedings or knew anything about these alleged predicate acts.

Finally, the Complaint identifies two apartments on Central Park South, one purchased in March of 2007 (the "Essex House Apartment") and the other in September of 2017 (the "Ritz Carlton Apartment"), which were bought as personal residences for Ami Javeri and her husband Nirav Modi. Complaint, ¶¶ 285, 337 & 340. The Complaint alleges that her husband intended to transfer assets beyond the reach of creditors by transferring ownership of the two LLCs that own the apartments to the Ithaca Trust. However, the Complaint never alleges that Ami Javeri had any knowledge of an alleged plan to secret assets. Nor does it allege that she knew anything about the origin of the funds used to purchase and maintain these apartments. *See* Complaint, ¶¶ 284-370. In fact, the Complaint only names Purvi Mehta, Mihir Bhansali, Deepak Sheth, Abhay Javeri and Ajay Gandhi – but *not* Ami Javeri -- as the individuals who "worked together" in transferring ownership of the apartments as an alleged effort to insulate assets from creditors. Complaint, ¶ 370.

4

## ARGUMENT

**I.    The Complaint Fails to Allege Knowing Participation by Ami Javeri in the Alleged RICO Conspiracy**

A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Where the plaintiff fails to do so, a motion to dismiss under Rule 12(b)(6) is proper and should be granted.  *See, e.g, Wolstenholme v. Hirst*, 271 F. Supp. 3d 625, 644 (S.D.N.Y. 2017) (claim should be dismissed where the plaintiff has not sufficiently alleged the elements necessary to state a claim).

Under both *Twombly* and controlling Second Circuit precedent, a civil complaint alleging a conspiracy under 18 U.S.C. § 1962(d) to violate RICO "must allege some factual basis for a finding of a conscious agreement among the defendants."  *In re Adelphia Communications Corp.,* 48 Bankr. Ct. Dec. 191, 2007 WL 2403553, at *18 (Bankr. S.D.N.Y. 2007), citing *Hecht v. Commerce Clearing House, Inc*., 897 F.2d 21, 25 (2d Cir.1990).  Furthermore, a RICO conspiracy complaint must allege "agreement to commit predicate acts and knowledge that those acts were part of a pattern of racketeering activity in violation of section 1962(a)–(c)."  *Hecht, supra*, 897 F.2d at 25 (citations omitted).  Thus, a RICO conspiracy cause of action requires "specific factual allegations to support the conclusion that each of the defendants consciously agreed to commit the predicate acts alleged."  *Foster v. 2001 Real Estate*, 2015 WL 7587360, at *6 (S.D.N.Y. 2015).  Conclusory statements about a defendant's knowledge are not sufficient to demonstrate the "meeting of the minds" required for a RICO conspiracy violation.  *Malvar Egerique v. Chowaiki*, 2020 WL 1974228, at *21 (S.D.N.Y. Apr. 24, 2020) (citation omitted).

The Trustee's allegations fail to meet this standard with respect to Ami Javeri. The Complaint does not allege that Ami Javeri had any role in the operation of the LOU Entities, let alone a role in the submission of the allegedly fraudulent loan documents.  Nor does it allege that

5

she gave any false testimony, transferred Debtor assets overseas, laundered money, or knowingly

assisted others in such activities.  The Complaint does not allege that the entirely lawful routine

actions she carried out – opening a bank account and being a partner in two of her husband's

companies -- were undertaken by her for the purpose of submitting fraudulent LOUs.  It does not

allege that she knew anything about the submission of fraudulent LOUs.  Absent knowledge of

any of the alleged predicate acts, there is no basis for RICO conspiracy liability.

Lacking any contact between Ami Javeri and the alleged predicate acts of bank fraud,

mail and wire fraud, money laundering, and obstruction of justice, the Trustee turns to entirely

lawful actions by Ami Javeri.  However, Ami Javeri's lawful actions do not constitute a basis for

inferring conscious agreement to any of the alleged predicate acts.  The alleged actions fail to

show that Ami Javeri had any knowledge of the predicate acts alleged in the Complaint.

Specifically, in Paragraph 447 of the Complaint the Trustee asserts that:

> Defendant Ami Javeri's agreement to join and support the RICO Conspiracy is
> demonstrated by or can be inferred from, among other things, the following:

> a.  Javeri served as a partner of all three LOU entities and, in 2010, opened bank
>     accounts for Solar and Stellar used to defraud PNB.

> b.  Javeri is the primary beneficiary of the Ithaca Trust and the beneficial owner of
>     the Ritz Carlton Apartment and the Essex House Apartment.

> c.  Javeri received more than $30 million in proceeds of the Bank Fraud from Purvi
>     Mehta in May and June 2017.

> d.  Javeri wired more than $30 million in proceeds of the Bank Fraud
>     to Purvi Mehta between September and November 2017.

> e.  Javeri fled India just weeks before the fraudulent LOUs issued in 2017 became
>     due and the Bank Fraud was exposed.

> f.  Javeri appointed Nehal Modi as Ithaca Trust Protector in May 2017.[2]

None of these alleged actions demonstrates any knowledge of, let alone conscious

---

[2]  The Complaint also alleges that this occurred in May of 2018.  *See* Complaint, ¶ 365.

agreement to, the LOU fraud and the other alleged predicate acts. The Court cannot find that Ami Javeri "agreed" to join the conspiracy because the Complaint fails to allege her involvement in or knowledge of any of the alleged acts of racketeering activity.

As to (a), serving as a partner in her husband's companies and opening bank accounts for two of those companies in 2010 does not translate into knowledge of how he ran the companies in the following eight years, let alone into knowledge of inflated loan applications he allegedly created after 2010. As to (b), beneficial ownership of the apartments paid for by her husband, and as to being the beneficiary of a trust created by her husband, if a spouse's largesse were a basis for inferring knowledge of fraud, then every spouse who benefits from the efforts of a higher-earning spouse would be part of a RICO conspiracy. As to (c) and (d), the Complaint alleges that Ami Javeri received a substantial sum of money from her sister-in-law and subsequently transferred it back. Again, these alleged actions stop far short of being a basis for inferring agreement to engage in a scheme to defraud. Although the Complaint labels these funds as "proceeds of the Bank Fraud", there are no facts that would show that Ami Javeri knew the alleged origin of these funds to be LOU transactions at all, let alone fraudulent ones.

As to (e), which alleges that Ami Javeri "fled India before the fraudulent LOUs issued in 2017 became due and the Bank Fraud was exposed", the Trustee conveniently omits the facts that Ami Javeri was residing in New York where her children were in school and was only in India for the Christmas holiday season. (Even though these facts are not directly cognizable on a motion to dismiss, they demonstrate how little weight should be given to the "flight" allegation.) Furthermore, it is only speculation that she had any knowledge "before" the alleged exposure of the bank fraud that it was going to occur.

In item (f) the Complaint incorrectly alleges that Ami Javeri appointed Nehal Modi as

7

Trust Protector.  This is an apparent drafting error by the Trustee as in fact this appointment was made by Abhay Javeri, not by Ami Javeri.  In any event, there would be nothing illegal or even untoward about appointing one's brother-in-law as Trust Protector for a trust of which one is the beneficiary.  This innocuous alleged fact does not demonstrate agreement to the commission of any acts of racketeering.

On this motion, the Court is not called upon to choose between competing inferences in favor of one party or the other.  Rather, these entirely lawful actions do not support a conclusion that Ami Javeri consciously agreed to any predicate acts of other individuals that allegedly constituted fraud, money laundering, and so forth.  Since the Complaint falls short of providing the required factual basis for a RICO conspiracy claim against Ami Javeri, the First and Second "Counts" of the Trustee's Complaint must be dismissed as to her.

## II.   The *In Pari Delicto* Doctrine and Imputation of the Illegal Conduct of the Debtors' and U.S. Affiliates Managers Require Dismissal of the Trustee's Complaint

By stepping into the proverbial shoes of the Debtor entities and their U.S. Affiliates, the Trustee has necessarily assumed not only the claims of the Debtors and their U.S. Affiliates, but also the limitations on those claims.  *In re CBI Holding Co., Inc*., 529 F.3d 432, 447 (2d Cir. 2008) (trustee "can maintain only those actions that the debtors could have brought prior to the bankruptcy proceedings").  The RICO claims asserted in the Complaint are barred by the wrongful pre-petition conduct of the Debtors and their U.S. Affiliates.

### A.   The Trustee's RICO Claims Are Barred by the Doctrine of *In Pari Delicto*

The common law defense of *in pari delicto* is a complete defense in private lawsuits under the RICO statute.  *Republic of Iraq v. ABB AG*, 768 F.3d 145, 162-63 (2d Cir. 2014).  The *in pari delicto* defense has two elements: (1) that the plaintiff "bears at least substantially equal responsibility for the violations he seeks to redress," and (2) that application of the defense

"[must] comport with the purposes of the statute on which the federal cause of action is based."
*Republic of Iraq*, 768 F.3d at 162, 167 (citing *Bateman Eichler, Hill Richards, Inc. v. Berner*,
472 U.S. 299, 310-11 (1985)).[3]

Application of this defense need not await trial. Courts apply the *in pari delicto* doctrine
at the pleadings stage "where . . . the outcome is plain on the face of the pleadings." *In re
Bernard L. Madoff Inv. Sec. LLC*, 721 F.3d 54, 65 (2d Cir. 2013). The Complaint in this
proceeding demonstrates on its face that the doctrine applies.

The Trustee's own allegations demonstrate that the Debtors and their U.S. Affiliates bear
far greater responsibility than Ami Javeri for the alleged fraudulent scheme. The Debtors and
their U.S. Affiliates are alleged to have been key participants in a multi-year, billion-dollar bank
fraud carried out through complex and layered financing transactions. Complaint, ¶¶ 62-80, 89,
90-99 & 193; First Amended Complaint in *Levin, Trustee v. Nirav Deepak Modi, et al.,* Adv.
Proc. No. 19-1102 (SHL), ¶¶ 23-60; Complaint, *Levin, Trustee v. Synergies Corp., et al.*, Adv.
Proc. No. 20-01014 (SHL), at *inter alia* ¶¶ 10-27, 39-43, 47-59 & 71-72 (detailing fraudulent
activities of U.S. Affiliates).[4] Ami Javeri, on the other hand, is not alleged to have engaged in
any fraudulent actions. In fact, not one of the six alleged actions on which the Trustee bases his
Complaint against Ami Javeri violates any law at all. *See* Complaint, ¶ 447. Thus, it is plain on

---

[3] The purposes of the *in pari delicto* doctrine are well established: "First, denying judicial relief to an
admitted wrongdoer deters illegality. Second, *in pari delicto* avoids entangling courts in disputes
between wrongdoers." *In re Lehr Constr. Corp.*, 551 B.R. 732, 738 (S.D.N.Y. 2016), *aff'd*, 666 Fed.
Appx. 66 (2d Cir. 2016) (citing Kirschner v. KPMG LLP, 15 N.Y.3d 446, 464 (N.Y. 2010).

[4] The Trustee's complaints in the related adversary proceedings can be considered here. "A court may
also consider matters to which judicial notice may be taken, such as pleadings in other lawsuits and
other public records." *Malvar Egerique v. Chowaik*i, 2020 WL 1974228, at *7 (S.D.N.Y. Apr. 24,
2020) (citations omitted).

the face of the Complaint that the Debtors and their U.S. Affiliates bear far greater responsibility

than Ami Javeri.

With respect to the second element of this defense concerning statutory policy, not only

would application of the *in pari delicto* doctrine not impair RICO enforcement; its application is

also necessary precisely to avoid defeating RICO's statutory purposes.  The purpose of the

private right of action in the RICO statute is to enable victims of RICO violations to seek

redress; it is not intended to permit members of a RICO enterprise to sue one another.  "To allow

one racketeer to sue another under RICO does not further the statute's objective of eradicating

organized crime." *In re Hunt*, 149 B.R. 96, 102 (Bankr. N.D. Tex 1992).  If the Debtors and

their U.S. Affiliates were able to pursue civil RICO claims for alleged damages, any recovery

"would not divest RICO violators of their ill-gotten gains; it would result in a wealth transfer

among similarly situated conspirators." *Republic of Iraq*, 768 F.3d at 167 (quoting *Official*

*Comm. of Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145, 1155 (11th Cir. 2006)).

In short, the allegations found in the Complaint establish both elements of the *in pari*

*delicto* doctrine and bar the Debtors and their U.S. Affiliates – and, therefore, the Trustee – from

asserting the RICO claims in Counts One and Two against Ami Javeri.

## B.    The Trustee's RICO Claims Are Barred by New York Agency Law and the Principle of Imputation

The wrongdoing of the officers of the Debtors and the U.S. Affiliates as their agents is

imputed to these corporations as principals under both New York and Delaware law.  New York

law is applicable with respect to all state law issues in this adversary proceeding, including

therefore choice of law.  *In re Gaston & Snow*, 243 F.3d 599, 604-07 (2d Cir. 2001).  The

Debtors and their U.S. Affiliates are principally Delaware corporations, but at least one (Old A.J.

Inc.) is a New York corporation.  However, a determination as to whether Delaware or New

York law is applicable is unnecessary because both states impute the misconduct of corporate officers to the corporation that they manage.

Under New York agency principles, "managers' misconduct within the scope of their employment is imputed [to the corporation] and bars a trustee from suing to recover for a wrong that he himself essentially took part in." *Kirschner v. KPMG LLP*, 15 N.Y.3d 446, 465 (2010) (citation omitted). There is no allegation here that Nirav Modi, Mihir Bhansali, or Ajay Gandhi were acting outside the scope of their employment. Quite aside from the balancing of wrongdoing and policy considerations that underlies the *in pari delicto* doctrine, imputation of officer wrongdoing to a corporation bars its lawsuit as a matter of law: "To allow a corporation to avoid the consequences of corporate acts simply because an employee performed them with his personal profit in mind would enable the corporation to disclaim, at its convenience, virtually every act its officers undertake." *Id.* at 467.

Similarly, under Delaware law, "[a] basic tenet of corporate law, derived from principles of agency law, is that the knowledge and actions of the corporation's officers and directors, acting within the scope of their authority, are imputed to the corporation itself. Delaware law adheres to this general rule of imputation -- of holding a corporation liable for the acts and knowledge of its agents -- even when the agent acts fraudulently or causes injury to third persons through illegal conduct." *Stewart v. Wilmington Tr. SP Servs., Inc.*, 112 A.3d 271, 302-03 (Del. Ch. 2015), *aff'd*, 126 A.3d 1115 (Del. 2015). "Delaware courts consistently have imputed to a corporation the knowledge of an officer or director of the corporation when acting on its behalf." *B.A.S.S. Group, LLC v. Coastal Supply Co., Inc.*, 2009 WL 1743730, at \*7 n.72 (Del. Ch. 2009) (citations omitted). Accordingly, the Debtors and U.S. Affiliates are barred by their own officers' manifest illegal conduct from bringing this case.

Under New York law, "[a]dverse interest" of corporate management is a narrow exception to the presumption of imputation.  It only applies "where the corporation is actually the victim of a scheme undertaken by the agent to benefit himself or a third party personally, which is therefore entirely opposed (i.e., 'adverse') to the corporation's own interests." *Kirschner*, 15 N.Y.3d at 467 (citation omitted).  Under New York law the "adverse interest" exception applies only where the agent has "*totally abandoned* his principal's interests" and is "acting entirely for his own or another's purposes." *Id.* at 466 (emphasis in original; citation omitted).  Actions that benefit both the corporation and its managers do not bring this exception into play.  *Id.* at 467.  Delaware follows the same rule, and emphasizes that as long as there is any benefit to the corporation from the officers' wrongful conduct the doctrine does not apply. *See Stewart*, 112 A.3d at 309 ("total abandonment, such as siphoning corporate funds or other outright theft, is likely to be a 'highly unusual case.' Thus, the adverse interest exception is applied narrowly, lest it be expanded to the point of covering more terrain than the rule itself") (citations omitted).

In this case the allegations of the Complaint readily refute the existence of the "total abandonment" required for application of the adverse interest exception.  For instance, the Complaint alleges that officers Bhansali and Gandhi "controlled the finances of the Debtors" and "coordinated and directed fraudulent transactions" that were "integral to the Bank Fraud", but nowhere alleges that Bhansali and Gandhi were stealing from or defrauding the Debtors.  *See* Complaint, ¶¶ 102-103.

In short, the rule requiring imputation of wrongdoing to the Debtors and their U.S. Affiliates, quite apart from the *in pari delicto* doctrine mandates dismissal of the Complaint.

### III.    The RICO Claims of the U.S. Affiliates Are Not Assignable

The Trustee sues herein as assignee of the ostensible RICO claims of the U.S. Affiliates. Complaint, Preface at p. 1 & ¶ 22.  A significant body of case law, including cases in this judicial district, holds that RICO claims are assignable.  *See, e.g., Kalimantano GmbH v. Motion in Time, Inc., 939* F. Supp.2d 392, 400 n.2 (S.D.N.Y. 2013).  However, RICO treble damages are punitive in nature, *see First Interstate Bank of Nevada, N.A. v. Natl. Republic Bank of Chicago*, 1985 WL 1118, at *3 (N.D. Ill. 1985), and as a general matters "causes of action in the nature of a penalty are not assignable."  *Feingold v. Liberty Mut. Group*, 847 F. Supp. 2d 772, 776 (E.D. Pa. 2012), *aff'd*, 562 Fed. Appx. 142 (3d Cir. 2014) (applying state law).  However, the private treble damages provision in RICO, 18 U.S.C. § 1964, is silent on this issue, and the U.S. Supreme Court and the Court of Appeals for the Second Circuit have yet to consider whether RICO treble damages actions are assignable.  The Complaint alleges that the U.S. Affiliates are part and parcel of the alleged bank fraud and the U.S. Affiliates, as members of the alleged racketeering conspiracy, are precluded from seeking compensation. Their only claims for damages, therefore, are punitive in nature and not assignable.

### IV.    Dismissal of the Complaint Is Also Required on Grounds Asserted by Other Defendants in This and Other Adversary Proceedings in this Case

Defendant Ami Javeri also moves for dismissal of the Complaint on the following grounds, which are pending before the Court in *Levin, Trustee v. Nirav Deepak Modi, et al.*, Adv. Proc. No. 19-1102 (SHL), and in motions filed by other defendants in this adversary proceeding.

#### A.    The Trustee Lacks Standing to Bring Claims Belonging to Creditors

The Trustee does not have standing to assert claims that belong to the creditors of the U.S. Entities.  The Complaint alleges that "Nirav Modi, Mihir Bhansali, Ajay Gandhi, and their

13

co-conspirators implemented a scheme to defraud PNB by fraudulently obtaining LOUs . . . ."

Complaint, ¶ 379.  The Trustee cannot recover for the massive injuries allegedly sustained by

PNB.  *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 118 (2d Cir. 1991); *Picard v.

JPMorgan Chase & Co.*, 460 B.R. 84, 91 (S.D.N.Y. 2011) (trustee lacked standing to bring

claims inuring to the benefit of brokerage firm's customers).  Although the Trustee seeks to act

on behalf of the Debtors, there can be no doubt that the claims being asserted here are in reality

claims for the losses of PNB, a creditor of the U.S. Entities, and therefore are claims which the

Trustee is not entitled to bring.

> **B.    The RICO Claims Must Be Dismissed Because the Debtors Did Not
> Sustain a Direct Injury As a Result of the Alleged RICO Violations**

The right to sue for damages under RICO is limited to direct victims of the alleged

racketeering activity.  *Hemi Group, LLC. v. City of New York*, 559 U.S. 1, 6 (2010).  A party

lacks standing to pursue an action under RICO where the direct cause of its alleged harm was a

set of actions "distinct from the alleged RICO violation."  *Hemi*, 559 U.S. at 10.   Here the direct

"victim" of the alleged pattern of bank fraud was PNB.  Given the breadth and depth of the

alleged fraud against PNB, any injury subsequently incurred by the Debtors following discovery

of the bank fraud must be considered to be secondary.  The alleged injuries to the Debtors

following exposure of the bank fraud in 2017-18 were an indirect consequence of the alleged

fraud on PNB.  The Debtors' purported injuries (administrative costs and asset transfers) were

one step removed from the scheme to defraud PNB.  Therefore the RICO causes of action must

be dismissed.  *See* Defendant Nirav Deepak Modi's Memorandum of Law In Support of His

Motion to Dismiss the First Amended Complaint in *Levin, Trustee v. Nirav Deepak Modi, et al.*,

Adv. Proc. No. 19-1102 (SHL) ("Nirav Modi Memo. of Law"), at pp. 20-24.

The RICO claims must also be dismissed because there is a better-situated injured

plaintiff with an incentive to sue. *Hemi*, 559 U.S. at 11-12. A party does not have standing

under RICO where "better situated plaintiffs would have an incentive to sue." *Hemi*, 559 U.S. at

11-12. PNB, the alleged direct victim of the fraud, is not only well-positioned to vindicate its

claim, it already has appeared in this Court in order to assert RICO and fraud violations against

the Debtors. *See* Proof of Claim of Punjab National Bank Against Firestar Diamond, Inc., *In re

Firestar Diamond, et al.*, No. 18-bk-10509 (Bankr. S.D.N.Y. Nov. 29, 2018), ¶ 23. The

allegations in PNB's proof of claim mirror the core allegations in the Trustee's Complaint.

Furthermore, a lawsuit by the Debtors in addition to the PNB claim would require "complicated

rules apportioning damages among plaintiffs removed at different levels of injury from the

violative acts, in order to avoid the risk of multiple recoveries." *Laborers Local 17 Health &

Benefit Fund v. Philip Morris, Inc.*, 191 F.3d 229, 237 (2d Cir. 1999) (citation omitted). *See also*

Nirav Modi Memo. of Law, at pp. 24-26.

### C.   The Complaint Fails to Allege the Elements of a Substantive RICO Violation, Requiring Dismissal of the Conspiracy Claims under 18 U.S.C. § 1962(d)

The RICO conspiracy claim must fail because the Trustee fails to plead the required

elements of the substantive RICO violations. *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*,

385 F.3d 159, 182 (2d Cir. 2004) (RICO conspiracy claim properly dismissed where "Plaintiffs

did not adequately allege a substantive violation of RICO"); *Wang v. Yien-Koo King*, 2019 WL

1763230 (S.D.N.Y. 2019). The mail and wire fraud claims are insufficiently particularized, fail

to establish scienter, and are based on time-barred conduct occurring prior to February 20, 2016.

*See* Nirav Modi Memo. of Law, at pp. 29-30 and 34-36. The fraud allegations supporting the

National Stolen Property Act claims are equally deficient. *See id*. at pp. 31-32. The money

laundering claims are merely conclusory. *See id.* at pp. 32-33.

### D.       The Complaint Fails to Allege Domestic Injury

A plaintiff seeking to allege a civil RICO violation must adequately plead a 'domestic injury.'" *Malvar Egerique*, 2020 WL 1974228, at *11.  The civil RICO statute does not allow a plaintiff to recover for foreign injuries, as there is a presumption against extra-territoriality, *i.e.,* there is a presumption that the civil RICO statute and its underlying predicate statutes do not extend outside the United States. *RJR Nabisco, Inc. v. European Cmty.*, ___ U.S. ___, 136 S. Ct. 2090, 2106 (2016).  Here, the Complaint fails to adequately allege that PNB's injuries occurred in the United States.  First, the Trustee's own allegations admit that PNB's property was not located in the United States when it was allegedly fraudulently obtained by Nirav Modi and his co-conspirators.  Injury to tangible property is only domestic if the property "was located in the United States when it was stolen or harmed[.]" *Bascuñán v. Elsaca*, 874 F.3d 806, 820-21 (2d Cir. 2017).  Second, "a defendant's use of the U.S. financial system to conceal or effectuate his tort does not, on its own, turn an otherwise foreign injury into a domestic one." *Bascuñán*, 874 F.3d at 818-19.  Similarly, "the alleged investment of the stolen funds in New York real estate projects" does not transform foreign harm into domestic injury. *City of Almaty v. Ablyazov*, 226 F. Supp. 3d 272, 285 (S.D.N.Y. 2016).  And the Trustee admits that the Indian government has initiated proceedings against Nirav Modi and his co-conspirators.  Under these circumstances, it would cause "international friction" to allow the Trustee to recover for foreign injuries in this civil RICO action.  See *RJR Nabisco*, 136 S. Ct. at 2107; *see also* Memorandum of Law of Purvi Mehta in Support of Motion to Dismiss, Part IV(A)(4), at pp. 36-38.

### E.       The Claims Based on Conduct Prior to February 25, 2016 Must Be Dismissed

Since civil RICO claims are subject to a four-year statute of limitations, the claims based on conduct occurring more than four years before the February 25, 2020 filing of the Trustee's

Complaint must be dismissed. *Koch v. Christie's Int'l Pub. Ltd. Co.*, 699 F.3d 141, 148 (2d Cir. 2012) (civil RICO); *World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*, 530 F. Supp. 2d 486, 530 (S.D.N.Y. 2007) (civil RICO conspiracy). A plaintiff can recover under RICO "only for injuries discovered or discoverable within the four-year 'window' before suit was filed," making claims based on injuries discovered prior to the four-year window time-barred and unsalvageable. *Kerik v. Tacopina*, 64 F. Supp. 3d 542, 558 (S.D.N.Y. 2014) (quoting *Bingham v. Zolt*, 66 F.3d 553, 560 (2d Cir. 1995)).

Because the U.S. Entities were participants in the scheme to defraud PNB, they either discovered or should have discovered their injuries from any pre-February 22, 2016 transfers on or before that date. Therefore the Trustee's civil RICO claim based on alleged losses prior to that date are time-barred.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the RICO conspiracy causes of action against Ami Javeri in Counts 1 and 2 of the Complaint.

Dated: New York, New York
         September 15, 2020

                                             *s/ Roger J. Bernstein*
                                             Roger J. Bernstein
                                             535 Fifth Avenue, 23rd Floor
                                             New York, NY 10017
                                             Tel: (212) 748-4800
                                             Fax: (646) 964 6633
                                             rbernstein@rjblaw.com

                                             Attorney for Defendant Ami Javeri

17