UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

In re:                                                  Chapter 11

FIRESTAR DIAMOND, Inc., et al.,                         No. 18-10509(SHL)

Debtors,                                                (Jointly Administered)

_____

Richard Levin, Chapter 11 Trustee of FIRESTAR
DIAMOND, INC., FANTASY, INC., and OLD AJ,
INC., f/k/a A. JAFFE, INC.,

                    *Plaintiff*,
        v.                                              Adv. Proc. No. 20-01054(SHL)

AMI JAVERI (A/K/A AMI MODI), *et al*.,

                    *Defendants*.

-----------------------------------------------------------------X


# MEMORANDUM OF LAW
# IN SUPPORT OF NEHAL MODI'S MOTION TO DISMISS


Roger J. Bernstein
535 Fifth Avenue, 23rd Floor
New York, NY 10017
Tel: (212) 748-4800
Fax: (646) 964 6633
rbernstein@rjblaw.com

Attorney for Defendant Nehal Modi

# Table of Contents

Page No.

Preliminary Statement.................................................................................................. 1

Statement of Facts...................................................................................................... 2

ARGUMENT ............................................................................................................. 5

I.    The Complaint Fails to Allege Knowing Participation by Defendant Nehal Modi in the
      Alleged RICO Conspiracy........................................................................................ 5

II.   The *In Pari Delicto* Doctrine and Imputation of the Illegal Conduct of the
      Debtors' and U.S. Affiliates Managers Require Dismissal of the Trustee's Complaint ....... 9

      A.  The Trustee's RICO Claims Are Barred by the Doctrine of *In Pari Delicto* ................ 9

      B.  The Trustee's RICO Claims Are Barred by New York Agency Law
          and the Principle of Imputation.................................................................... 12

III.  The RICO Claims of the U.S. Affiliates Are Not Assignable ........................................ 14

IV.   Dismissal of the Complaint Is Also Required on Grounds Asserted by
      Other Defendants in This and Other Adversary Proceedings in this Case................... 14

      A.  The Trustee Lacks Standing to Bring Claims Belonging to Creditors ........................ 15

      B.  The RICO Claims Must Be Dismissed Because the Debtors
          Did Not Sustain a Direct   Injury As a Result of the Alleged RICO Violations.......... 15

      C.  The Complaint Fails to Allege the Elements of a Substantive RICO Violation,
          Requiring Dismissal of the Conspiracy Claims under 18 U.S.C. § 1962(d) ............... 16

      D.  The Complaint Does Not Allege Domestic Injury...................................................... 17

      E.  The Claims Based on Conduct Prior to February 25, 2016 Must Be Dismissed ......... 18

CONCLUSION.......................................................................................................... 18

## Table of Authorities

**Cases**                                                              <u>Page No.</u>

*B.A.S.S. Group, LLC v. Coastal Supply Co., Inc.*, 2009 WL 1743730 (Del. Ch. 2009)............... 13

*Bascuñán v. Elsaca*, 874 F.3d 806 (2d Cir. 2017) ......................................................... 17

*Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299 (1985) ......................... 10

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................................ 5

*Bingham v. Zolt*, 66 F.3d 553 (2d Cir. 1995)................................................................. 18

*City of Almaty v. Ablyazov*, 226 F. Supp. 3d 272 (S.D.N.Y. 2016)................................ 17

*Feingold v. Liberty Mut. Group*, 847 F. Supp. 2d 772 (E.D. Pa. 2012),
    *aff'd*, 562 Fed. Appx. 142 (3d Cir. 2014)................................................................. 14

*First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159 (2d Cir. 2004) ........ 16

*First Interstate Bank of Nevada, N.A. v. Natl. Republic Bank of Chicago*,
    1985 WL 1118 (N.D. Ill. 1985),................................................................................ 14

*Foster v. 2001 Real Estate*, 2015 WL 7587360 (S.D.N.Y. 2015) ......................... 6, 7, 9

*Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 25 (2d Cir.1990) ................... 5

*Hemi Group, LLC. v. City of New York*, 559 U.S. 1 (2010) ................................... 15, 16

*In re Adelphia Communications Corp.*, 48 Bankr. Ct. Dec. 191,
    2007 WL 2403553 (Bankr. S.D.N.Y. Aug. 17, 2007) ......................................... 5, 9

*In re Bernard L. Madoff Inv. Sec. LLC*, 721 F.3d 54 (2d Cir. 2013). ......................... 10

*In re CBI Holding Co., Inc.*, 529 F.3d 432 (2d Cir. 2008)............................................. 9

*In re Firestar Diamond, Inc.*, 615 B.R. 161, 2020 WL 1934896 (Bankr. S.D.N.Y. 2020).......... 11

*In re Gaston & Snow*, 243 F.3d 599 (2d Cir. 2001)...................................................... 12

*In re Hunt*, 149 B.R. 96 (Bankr. N.D. Tex 1992) ....................................................... 11

*In re Lehr Constr. Corp.*, 551 B.R. 732 (S.D.N.Y. 2016) .......................................... 10

*Kalimantano GmbH v. Motion in Time, Inc.,* 939 F. Supp.2d 392 (S.D.N.Y. 2013). ................. 14

*Kerik v. Tacopina,* 64 F. Supp. 3d 542 (S.D.N.Y. 2014 ............................................................... 18

*Kirschner v. KPMG LLP,* 15 N.Y.3d 446 (2010) .................................................................. 12, 13

*Koch v. Christie's Int'l Pub. Ltd. Co.,* 699 F.3d 141 (2d Cir. 2012) ........................................... 18

*Malvar Egerique v. Chowaiki,* 2020 WL 1974228 (S.D.N.Y. 2020) ........................................ 6, 7

*Official Comm. of Unsecured Creditors of PSA, Inc. v. Edwards,*
    437 F.3d 1145 (11th Cir. 2006)................................................................................................ 11

*O'Malley v. New York City Tr. Auth.,* 896 F.2d 704 (2d Cir. 1990). ........................................... 7

*Picard v. JPMorgan Chase & Co.,* 460 B.R. 84 (S.D.N.Y. 2011) ............................................. 15

*Republic of Iraq v. ABB AG,* 768 F.3d 145 (2d Cir. 2014). .................................................... 9, 11

*RJR Nabisco, Inc. v. European Cmty.,* ___ U.S. ___, 136 S. Ct. 2090 (2016). ........................... 17

*Shearson Lehman Hutton, Inc. v. Wagoner,* 944 F.2d 114 (2d Cir. 1991) ................................. 15

*Stewart v. Wilmington Tr. SP Services, Inc.,* 112 A.3d 271 (Del. Ch. 2015),
    *aff'd,* 126 A.3d 1115 (Del. 2015) ...................................................................................... 12, 13

*Wang v Yien-Koo King,* 2019 WL 1763230 (S.D.N.Y. 2019)..................................................... 16

*Wolstenholme v. Hirst,* 271 F. Supp. 3d 625 (S.D.N.Y. 2017)...................................................... 5

*World Wrestling Entm't, Inc. v. Jakks Pac., Inc.,* 530 F. Supp. 2d 486 (S.D.N.Y. 2007) ............ 18

**Statutes**

18 U.S.C. § 1503.......................................................................................................................... 7

18 U.S.C. § 1512.......................................................................................................................... 7

18 U.S.C. § 1964.......................................................................................................................... 14

This Memorandum of Law is submitted in support of defendant Nehal Modi's motion to dismiss the Complaint (the "Complaint") as to him.  For the following reasons, this motion to dismiss should be granted.

## Preliminary Statement

The factual allegations on which the Complaint bases the Trustee's causes of action cover sixty-nine pages and 370 separate numbered paragraphs.  The Court is familiar with many of these allegations because of the related pending adversary proceedings before it.  Given the length of the complaint and the Court's familiarity with it, this Memorandum of Law will not provide a summary of the Complaint's allegations.  Rather, we will focus only on the allegations against Nehal Modi – and note the many instances in which the Complaint fails to link him to the predicate acts allegedly committed by others.

First, the First and Second "Counts" in the Complaint must be dismissed because they do not contain the required factual basis for a RICO conspiracy cause of action against this defendant.  With respect to Nehal Modi, the Complaint relies only on alleged actions that are not part of the alleged pattern of racketeering and on conclusory statements that are insufficient as a matter of law.  *See* Part I, *infra.*

Second, the Complaint must be dismissed because the doctrines of *in pari delicto* and imputed wrongdoing bar this suit by the Trustee.  Although these doctrines may already have been considered by the Court in other pending adversary proceedings, the specific factual circumstances applicable to Nehal Modi require dismissal of this Complaint as to him on *in pari delicto* and imputation grounds.  *See* Part II, *infra.*

Third, the assigned claims of the "U.S. Affiliates" should be dismissed.  In the circumstances of this case these assignments should be held to be impermissible.  *See* Part III, *infra.*

1

Fourth, the grounds for dismissal already advanced by other defendants apply here. To identify these grounds clearly for the Court while avoiding unnecessary repetition, each of these grounds is briefly noted while adopting (and cross-citing) the memoranda of law filed by other defendants supporting dismissal of the Complaint on these grounds. See Part IV, *infra*.

### Statement of Facts

The Debtors are New York diamond and jewelry companies that were acquired in the mid-2000s by companies controlled by Nirav Modi. Through intermediate entities, Nirav Modi acquired a 95% interest in Debtor Firestar Diamond Inc. ("FDI") in 2005 and a 95% interest in Debtor Old AJ, Inc. ("AJ") in 2007. Debtor Fantasy, Inc. ("Fantasy") was incorporated in 2012 and is 100% owned by FDI. Complaint, ¶¶ 18, 19 & 54. The Complaint does not allege that defendant Nehal Modi had any role at all in carrying out any of these acquisitions, or in operating any of the acquired companies. *See* Complaint, ¶¶ 1-61. Nor does it allege that he had any role in forming or operating Synergies Corp. ("Synergies"), Firestar Group, Inc. ("FGI"), Firestar Diamond International, Inc. ("FDII"), Nirav Modi, Inc. ("NMI"), or AVD Trading, Inc. ("AVD") (collectively, the "U.S. Affiliates"), other companies in the diamond and jewelry business that have assigned their putative RICO claims to the Trustee. Complaint, p. 1 & ¶ 22.[1]

The Complaint devotes twenty-five pages and one hundred and thirty-five numbered paragraphs to describing an alleged scheme to defraud the Punjab National Bank ("PNB") in India. The scheme is alleged to have involved falsified letters of undertaking ("LOUs") that Indian importers use to finance acquisitions from exporters outside India. The Complaint alleges that three Indian companies owned by Nirav Modi, which the Complaint defines as the "LOU Entities" (Complaint, ¶ 66), submitted inflated invoices to PNB far in excess of the value of the items that these entities were supposedly importing. It alleges that the supposed exporters that

---

[1] The Debtors and the U.S. Affiliates are referred to collectively herein as the "U.S. Entities".

were paid with the loan proceeds were actually companies controlled by Nirav Modi, and that

many fraudulent transactions were used to inflate the amount of the invoices that were the basis

for LOU loans.  Complaint, ¶¶ 62-89.

The Complaint is devoid of any allegation that Nehal Modi participated in *any* of the

allegedly fraudulent LOU borrowing from PNB during the seven years in which that borrowing

took place.  *See* Complaint, ¶ 62-165.  The Complaint does not allege any facts that would

demonstrate that Nehal Modi had any knowledge of the alleged inflation and fraud in the LOU

loans.

The Complaint further alleges that the proceeds of the fraudulently obtained LOUs were

paid to a group of diamond companies in Hong Kong and Dubai described as "Shadow Entities."

Complaint, ¶ 57.  The Trustee alleges that the Shadow Entities were controlled by Nirav Modi

and made to look like real exporters while participating in circular transactions to defraud PNB

in the LOU borrowings.  Complaint, ¶¶ 71-83.  However, the Complaint does not allege that

Nehal Modi had any role whatsoever in the "Shadow Entity" transactions.  *See* Complaint, ¶¶ 71-

125.  Moreover, the Complaint is devoid of any allegation that Nehal Modi even knew that the

so-called "Shadow Entity" transactions were taking place.

The Complaint alleges that Nehal Modi was "co-manager" of two companies that

received and "laundered" proceeds of the LOU transactions.  Complaint, ¶¶ 166-183.  However,

it does not allege that Nehal Modi's responsibilities, as against the other co-manager, included

carrying out these transactions.  It does not even allege that the so-called "laundering"

transactions were used to disguise the source of funds.  Nor does it allege that Nehal Modi had

any knowledge that the funds received by these companies were the result of the allegedly

fraudulent LOU transactions.  In several paragraphs (Complaint, ¶¶ 146-47, 158, 204, 215, 234,

3

and 448[e]), the Complaint describes Nehal Modi as a co-manager of a company called

Diamlink, or as a colleague of some of the individuals who worked there, but there are no

allegations of any fraudulent conduct involving that entity, let alone any allegation that Nehal

Modi was involved in such conduct.

The Complaint further alleges that "substantial amounts of the Debtors' cash and

inventory" were transferred from the Debtors to overseas entities controlled by Nirav Modi.

Complaint, ¶¶ 195-242.  There is no allegation, however, that Nehal Modi participated in or

knew about these transactions.  The Complaint alleges that Nehal Modi "brought in" or

recommended the hiring of several individuals who then oversaw the wind-down of Hong Kong

entities and/or shipments of inventory from New York to overseas entities.  Complaint, ¶¶ 204,

215, 217, & 229.  However, it does not allege that Nehal Modi had any knowledge of how this

inventory had been obtained or any knowledge that it represented the proceeds of allegedly

fraudulent LOU transactions.  *Id.*

The Complaint also alleges that Mihir Bhansali and Ajay Gandhi, who had operational

control of the Debtors, made "fraudulent omissions, misstatements, and misrepresentations" and

provided false information at several points in the Debtors' bankruptcy filings and proceedings.

Complaint, ¶¶ 243-274.  But the Complaint contains no allegations that Nehal Modi had any role

in the Bankruptcy Court proceedings or knew anything about these alleged predicate acts.

The Complaint then alleges that Nehal Modi – while in Dubai and Hong Kong after the

commencement of legal proceedings in India in 2018 – destroyed cell phones and records of his

brother's companies, pressured witnesses not to cooperate "with investigative authorities", and

bribed a witness to give false testimony "in Europe".  Complaint, ¶ 275 (iv, v & vi).  However,

the Complaint does not allege that this conduct was related to potential legal proceedings in the

4

United States.

In 2018, Nehal Modi became the Trust Protector of the Ithaca Trust, an entity that owns

two LLCs that in turn own apartments on Central Park South, one purchased in March of 2007

(the "Essex House Apartment") and the other in September of 2017 (the "Ritz Carlton

Apartment"). Complaint, ¶ 365. There is no allegation that there was anything improper about

Nehal Modi assuming this responsibility. The Complaint does not allege that Nehal Modi had

any knowledge of any improper purpose that others are alleged to have had in creating the Ithaca

Trust.

## ARGUMENT

## I.    The Complaint Fails to Allege Knowing Participation by Defendant Nehal Modi in the Alleged RICO Conspiracy

A complaint must plead "enough facts to state a claim to relief that is plausible on its

face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Where the plaintiff fails to do so, a

motion to dismiss under Rule 12(b)(6) is proper and should be granted. *See, e.g., Wolstenholme

v. Hirst*, 271 F. Supp. 3d 625, 644 (S.D.N.Y. 2017) (claim should be dismissed where the

plaintiff has not sufficiently alleged the elements necessary to state a claim).

Under both *Twombly* and controlling Second Circuit precedent, a civil complaint alleging

a conspiracy under 18 U.S.C. § 1962(d) to violate RICO "must allege some factual basis for a

finding of a conscious agreement among the defendants." *In re Adelphia Communications

Corp.,* 48 Bankr. Ct. Dec. 191, 2007 WL 2403553, at *18 (Bankr. S.D.N.Y. Aug. 17, 2007),

citing *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 25 (2d Cir.1990). Furthermore, a

RICO conspiracy complaint must allege "agreement to commit predicate acts and knowledge

that those acts were part of a pattern of racketeering activity in violation of section 1962(a)–(c)."

*Hecht, supra*, 897 F.2d at 25 (citations omitted). Thus, a RICO conspiracy cause of action

requires "specific factual allegations to support the conclusion that each of the defendants consciously agreed to commit the predicate acts alleged." *Foster v. 2001 Real Estate*, 2015 WL 7587360, at *6 (S.D.N.Y. 2015). Conclusory statements about a defendant's knowledge are not sufficient to demonstrate the "meeting of the minds" required for a RICO conspiracy violation. *Malvar Egerique v. Chowaiki*, 2020 WL 1974228, at *21 (S.D.N.Y. 2020) (citation omitted).

The Complaint fails to meet this standard with respect to Nehal Modi. It does not allege that he had any role in the operation of the LOU Entities, let alone a role in the submission of the allegedly fraudulent loan documents. And the Complaint contains no allegations whatsoever that would make a plausible showing that Nehal Modi had knowledge of any fraudulent LOU transactions, let alone knowledge of the alleged inflation of values. It does not allege that he had any role in or knowledge of the "Shadow Entity" transactions.

The Trustee attempts to link Nehal Modi to the other acts of racketeering by alleging that he obstructed justice in Hong Kong. Complaint, ¶¶ 275(iv). Despite the seemingly pejorative implications, this allegation does not describe a predicate act that forms part of the alleged pattern of racketeering in this case. As shown below, the U.S. obstruction statute has no overseas application and the witnesses involved were being questioned by Indian authorities. *Id.*

In its other allegations against Nehal Modi, the Complaint trades heavily in guilt by association. It describes predicate acts committed by others in various companies and then alleges that Nehal Modi worked at or was a "co-manager" of those companies. For instance, it alleges that Nehal Modi was a "co-manager" of two companies that received and "laundered" proceeds of the LOU transactions. Complaint, ¶¶ 166-183. However, it does not allege that Nehal Modi was the manager who carried out these transactions or caused them to be carried out. Nor does it allege that he had any knowledge that these transactions were taking place or that

6

they involved proceeds of fraudulent LOU transactions.

Pleading the predicate acts of others and then adding Nehal Modi's name in conclusory fashion does not establish a factual basis as to him. "[E]ach element of a RICO violation must be plausibly alleged as to each individual defendant." *Worldwide Directories, S.A. De C.V. v Yahoo! Inc.*, 2016 WL 1298987, at *5 (S.D.N.Y. 2016) (citation omitted). However, when the conduct of others, such as the other "co-manager", is separated out, all that remains is a purely conclusory allegation that Nehal Modi was a co-conspirator in these transactions. Such conclusory allegations will not sustain a RICO conspiracy claim. "[C]onclusory statements, without more, are insufficient to sustain a RICO conspiracy claim." *Foster*, 2015 WL 7587360, at *6 (citation omitted).

In Paragraph 449 of the Complaint, the Trustee offers five fact allegations which he claims demonstrate Nehal Modi's knowing agreement to join the alleged RICO conspiracy. However, none of these allegations provides the required basis for inferring knowledge on his part of the predicate acts alleged to constitute the pattern of racketeering in this case.

First, the Complaint alleges that:

a. Nehal Modi traveled overseas with Mihir Bhansali after exposure of the Bank Fraud to threaten and bribe witnesses, destroy evidence, and remove assets.

These alleged actions are not part of the pattern of racketeering alleged in the Complaint because they were not directed to any U.S. legal proceeding. The U.S. obstruction and witness tampering statutes (18 U.S.C. §§ 1503 & 1512) pertain only to grand jury and court proceedings in the United States. Therefore, "[t]o constitute an offense under [RICO], the act must relate to a proceeding in a federal court of the United States." *O'Malley v. New York City Tr. Auth.*, 896 F2d 704, 707 (2d Cir. 1990). However, the only available inference is that these actions pertained to the newly exposed fraud against PNB and the pending legal proceedings in India

7

instituted by PNB. Complaint, ¶ 189. Therefore, the cited actions are not evidence of conscious

agreement to the actual pattern of racketeering alleged in this Complaint, which according to the

Trustee was aimed at defrauding the U.S. Entities.

Second, the Trustee alleges that:

b.  Nehal Modi enlisted his personal friends, including Anthony Allicock, Rochelle
    Miller, and Tamer Abou El Ata, to divert the U.S. Affiliates' assets to Hong Kong
    following exposure of the Bank Fraud.

However, as noted above, the Complaint is devoid of any allegation that Nehal Modi had any

role in the LOU or Shadow Entity transactions. There is no allegation that Nehal Modi had any

knowledge of how the U.S. Affiliates' assets had been obtained, and the Complaint does not

allege that he had any role in or knew of the LOU transactions. There is not even an allegation

that these assets actually resulted from the alleged bank fraud. Consequently, this allegation also

fails to demonstrate knowing participation by Nehal Modi in the pattern of racketeering activity

alleged in the Complaint.

Third, the Trustee alleges that:

c.  Nehal Modi became Ithaca Trust Protector following exposure of the
    Bank Fraud.

However, there is nothing illegal about serving as Trust Protector for a trust of which one's

sister-in-law is the beneficiary. Service as a protector of an already-existing family trust is not

evidence of knowledge of any allegedly fraudulent activities of parties who earlier on created the

trust.

Fourth and finally, the Trustee alleges that:

d.  Nehal Modi, along with Mihir Bhansali, managed BBB Group as a front for the Modi
    family's money laundering efforts.

e.  Nehal Modi managed Gitanjali USA, Samuels, Diamlink, and other Choksi-controlled
    entities used to defraud PNB.

8

A general allegation of a management role such as this, however, is not a sufficient factual basis for a RICO conspiracy cause of action. *Adelphia Communications Corp.*, 2007 WL 2403553, at \*17 (allegations that failed to demonstrate actual control held insufficient). There are no allegations that Nehal Modi participated in any alleged money laundering transaction or even that he knew about the alleged money laundering. There is no allegation that Nehal Modi had any role at all in, let alone a controlling role, or knew about, "Choksi-controlled entities [being] used to defraud PNB.". *See* Complaint, ¶¶ 146-165. These allegations are merely conclusory as to Nehal Modi and have to be disregarded altogether. *Foster*, 2015 WL 7587360 at \*6 (holding conclusory statements, without more, insufficient to support a RICO conspiracy claim).

In short, since the Complaint falls short of providing the required factual basis for a RICO conspiracy claim against Nehal Modi, the First and Second "Counts" of the Trustee's Complaint must be dismissed as to him.

## II.    The *In Pari Delicto* Doctrine and Imputation of the Illegal Conduct of the Debtors' and U.S. Affiliates' Managers Require Dismissal of the Trustee's Complaint

By stepping into the proverbial shoes of the Debtor entities and their U.S. Affiliates, the Trustee has necessarily assumed not only the claims of the Debtors and their U.S. Affiliates, but also the limitations on those claims. *In re CBI Holding Co., Inc.*, 529 F.3d 432, 447 (2d Cir. 2008) (trustee "can maintain only those actions that the debtors could have brought prior to the bankruptcy proceedings"). The RICO claims asserted in the Complaint are barred by the wrongful pre-petition conduct of the Debtors and their U.S. Affiliates.

### A.    The Trustee's RICO Claims Are Barred by the Doctrine of *In Pari Delicto*

The common law defense of *in pari delicto* is a complete defense in private lawsuits under the RICO statute. *Republic of Iraq v. ABB AG*, 768 F.3d 145, 162-63 (2d Cir. 2014). The

*in pari delicto* defense has two elements: (1) that the plaintiff "bears at least substantially equal responsibility for the violations he seeks to redress," and (2) that application of the defense "[must] comport with the purposes of the statute on which the federal cause of action is based." *Republic of Iraq*, 768 F.3d at 162, 167 (citing *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310-11 (1985)).[2]

For Nehal Modi, application of this defense need not await trial. Courts apply the *in pari delicto* doctrine at the pleadings stage "where . . . the outcome is plain on the face of the pleadings." *In re Bernard L. Madoff Inv. Sec. LLC*, 721 F.3d 54, 65 (2d Cir. 2013). The Complaint in this proceeding demonstrates on its face that the doctrine applies with respect to this defendant.

The Debtors and their U.S. Affiliates bear greater, or at least equal, responsibility for the alleged violations. Whereas the Debtors and their U.S. Affiliates are alleged to have been key participants in a multi-year, billion-dollar bank fraud executed with multiple "Shadow Entities" (Complaint, ¶¶ 62-80, 89, 90-99 & 193; First Amended Complaint in *Levin, Trustee v. Nirav Deepak Modi, et al.,* Adv. Proc. No. 19-1102 (SHL), ¶¶ 23-60; Complaint, *Levin, Trustee v. Synergies Corp., et al.*, Adv. Proc. No. 20-01014 (SHL), at *inter alia* ¶¶ 10-27, 39-43, 47-59 & 71-72[3]), Nehal Modi is not alleged to have participated in any fraudulent LOU transactions at all. *See* Complaint, ¶¶ 62-134 and 193. The Trustee's key allegations against Nehal Modi, set forth

---

[2] The purposes of the *in pari delicto* doctrine are well established: "First, denying judicial relief to an admitted wrongdoer deters illegality. Second, *in pari delicto* avoids entangling courts in disputes between wrongdoers." *In re Lehr Constr. Corp.*, 551 B.R. 732, 738 (S.D.N.Y. 2016) (citing *Kirschner v. KPMG LLP*, 15 N.Y.3d 446, 464 (N.Y. 2010), *aff'd*, 666 Fed. Appx. 66 (2d Cir. 2016).

[3] The Trustee's complaints in the related adversary proceedings can be considered here. "A court may also consider matters to which judicial notice may be taken, such as pleadings in other lawsuits and other public records." *Malaver Egerique v. Chowaik*i, 2020 WL 1974228, at *7 (S.D.N.Y. Apr. 24, 2020) (citations omitted).

in the Complaint at ¶ 448, concern a limited set of activities in 2018 after the conclusion of the alleged bank fraud. They do not outweigh the Debtors' and U.S. Affiliates' alleged eight-year involvement in a multi-billion dollar fraud scheme – a scheme which the Court has described as "massive". *In re Firestar Diamond, Inc.*, 615 B.R. 161, 163, 2020 WL 1934896, at *2 (Bankr. S.D.N.Y. 2020). Under no circumstances could Nehal Modi's alleged actions that took place just in 2018 be characterized as greater participation than that of the Debtors and their U.S. Affiliates over nearly a decade. Thus as to Nehal Modi the first element of the *in pari delicto* doctrine is plain on the face of the Complaint.

With respect to the second element of this defense concerning statutory policy, not only would application of the *in pari delicto* doctrine not impair RICO enforcement; its application is also necessary precisely to avoid defeating RICO's statutory purposes. The purpose of the private right of action in the RICO statute is to enable victims of RICO violations to seek redress; it is not intended to permit members of a RICO enterprise to sue one another. "To allow one racketeer to sue another under RICO does not further the statute's objective of eradicating organized crime." *In re Hunt*, 149 B.R. 96, 102 (Bankr. N.D. Tex 1992). If the Debtors and their U.S. Affiliates were able to pursue civil RICO claims for alleged damages, any recovery "would not divest RICO violators of their ill-gotten gains; it would result in a wealth transfer among similarly situated conspirators." *Republic of Iraq*, 768 F.3d at 167 (quoting *Official Comm. of Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145, 1155 (11th Cir. 2006)).

In short, the allegations found in the Complaint establish both elements of the *in pari delicto* doctrine and bar the Debtors and their U.S. Affiliates – and, therefore, the Trustee – from asserting the RICO claims in Counts One and Two against Nehal Modi.

### B. The Trustee's RICO Claims Are Barred by New York Agency Law and the Principle of Imputation

The wrongdoing of the officers of the Debtors and the U.S. Affiliates as their agents is imputed to these corporations as principals under both New York and Delaware law. New York law is applicable with respect to all state law issues in this adversary proceeding, including therefore choice of law. *In re Gaston & Snow*, 243 F.3d 599, 604-07 (2d Cir. 2001). The Debtors and their U.S. Affiliates are principally Delaware corporations, but at least one (Old A.J. Inc.) is a New York corporation. However, a determination as to whether Delaware or New York law is applicable is unnecessary because both states impute the misconduct of corporate officers to the corporation that they manage.

Under New York agency principles, "managers' misconduct within the scope of their employment is imputed [to the corporation] and bars a trustee from suing to recover for a wrong that he himself essentially took part in." *Kirschner v. KPMG LLP*, 15 N.Y.3d 446, 465 (2010) (citation omitted). There is no allegation here that Nirav Modi, Mihir Bhansali, or Ajay Gandhi were acting outside the scope of their employment. Quite aside from the balancing of wrongdoing and policy considerations that underlies the *in pari delicto* doctrine, imputation of officer wrongdoing to a corporation bars its lawsuit as a matter of law: "To allow a corporation to avoid the consequences of corporate acts simply because an employee performed them with his personal profit in mind would enable the corporation to disclaim, at its convenience, virtually every act its officers undertake." *Id.* at 467.

Similarly, under Delaware law, "[a] basic tenet of corporate law, derived from principles of agency law, is that the knowledge and actions of the corporation's officers and directors, acting within the scope of their authority, are imputed to the corporation itself. Delaware law adheres to this general rule of imputation -- of holding a corporation liable for the acts and

knowledge of its agents -- even when the agent acts fraudulently or causes injury to third persons

through illegal conduct." *Stewart v. Wilmington Tr. SP Servs., Inc*., 112 A.3d 271, 302-03 (Del.

Ch. 2015), *aff'd*, 126 A.3d 1115 (Del. 2015).  "Delaware courts consistently have imputed to a

corporation the knowledge of an officer or director of the corporation when acting on its behalf."

*B.A.S.S. Group, LLC v. Coastal Supply Co., Inc.*, 2009 WL 1743730, at *7 n.72 (Del. Ch. 2009)

(citations omitted).  Accordingly, the Debtors and U.S. Affiliates are barred by their own

officers' manifest illegal conduct from bringing this case.

Under New York law, "[a]dverse interest" of corporate management is a narrow

exception to the presumption of imputation.  It only applies "where the corporation is actually

the victim of a scheme undertaken by the agent to benefit himself or a third party personally,

which is therefore entirely opposed (i.e., 'adverse') to the corporation's own interests."

*Kirschner,* 15 N.Y.3d at 467 (citation omitted).  Under New York law the "adverse interest"

exception applies only where the agent has "*totally abandoned* his principal's interests" and is

"acting entirely for his own or another's purposes." *Id.* at 466 (emphasis in original; citation

omitted).  Actions that benefit both the corporation and its managers do not bring this exception

into play.  *Id.* at 467.  Delaware follows the same rule, and emphasizes that as long as there is

any benefit to the corporation from the officers' wrongful conduct the doctrine does not apply.

*See Stewart v. Wilmington Tr. SP Services, Inc*., 112 A.3d 271, 309 (Del. Ch. 2015), *aff'd*, 126

A.3d 1115 (Del. 2015) ("total abandonment, such as siphoning corporate funds or other outright

theft, is likely to be a 'highly unusual case.' Thus, the adverse interest exception is applied

narrowly, lest it be expanded to the point of covering more terrain than the rule itself") (citations

omitted).

In this case the allegations of the Complaint readily refute the existence of the "total abandonment" required for application of the adverse interest exception. For instance, the Complaint alleges that officers Bhansali and Gandhi "controlled the finances of the Debtors" and "coordinated and directed fraudulent transactions" that were "integral to the Bank Fraud", but nowhere alleges that Bhansali and Gandhi were stealing from or defrauding the Debtors. *See* Complaint, ¶¶ 102-103.

In short, the rule requiring imputation of wrongdoing to the Debtors and their U.S. Affiliates, quite apart from the *in pari delicto* doctrine mandates dismissal of the Complaint.

### III.    The RICO Claims of the U.S. Affiliates Are Not Assignable

The Trustee sues herein as assignee of the ostensible RICO claims of the U.S. Affiliates. Complaint, Preface at p. 1 & ¶ 22. A significant body of case law, including cases in this judicial district, holds that RICO claims are assignable. *See, e.g., Kalimantano GmbH v. Motion in Time, Inc., 939* F. Supp.2d 392, 400 n.2 (S.D.N.Y. 2013). However, RICO treble damages are punitive in nature, *see First Interstate Bank of Nevada, N.A. v. Natl. Republic Bank of Chicago*, 1985 WL 1118, at *3 (N.D. Ill. 1985), and as a general matters "causes of action in the nature of a penalty are not assignable." *Feingold v. Liberty Mut. Group*, 847 F. Supp. 2d 772, 776 (E.D. Pa. 2012), *aff'd*, 562 Fed. Appx. 142 (3d Cir. 2014) (applying state law). However, the private treble damages provision in RICO, 18 U.S.C. § 1964, is silent on this issue, and the U.S. Supreme Court and the Court of Appeals for the Second Circuit have yet to consider whether RICO treble damages actions are assignable. The Complaint alleges that the U.S. Affiliates are part and parcel of the alleged bank fraud and the U.S. Affiliates, as members of the alleged racketeering conspiracy, are precluded from seeking compensation. Their only claims for damages, therefore, are punitive in nature and not assignable.

14

IV.     **Dismissal of the Complaint Is Also Required on Grounds Asserted by Other Defendants in This and Other Adversary Proceedings in this Case**

Defendant Nehal Modi also moves for dismissal of the Complaint on the following grounds, which are pending before the Court in *Levin, Trustee v. Nirav Deepak Modi, et al.*, Adv. Proc. No. 19-1102 (SHL), and in motions filed by other defendants in this adversary proceeding.

### A.     The Trustee Lacks Standing to Bring Claims Belonging to Creditors

The Trustee does not have standing to assert claims that belong to the creditors of the U.S. Entities.  The Complaint alleges that "Nirav Modi, Mihir Bhansali, Ajay Gandhi, and their co-conspirators implemented a scheme to defraud PNB by fraudulently obtaining LOUs . . . ." Complaint, ¶ 379.  The Trustee cannot recover for the massive injuries allegedly sustained by PNB.  *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 118 (2d Cir. 1991); *Picard v. JPMorgan Chase & Co.*, 460 B.R. 84, 91 (S.D.N.Y. 2011) (trustee lacked standing to bring claims inuring to the benefit of brokerage firm's customers).  Although the Trustee seeks to act on behalf of the Debtors, there can be no doubt that the claims being asserted here are in reality claims for the losses of PNB, a creditor of the U.S. Entities, and therefore are claims which the Trustee is not entitled to bring.

### B.     The RICO Claims Must Be Dismissed Because the Debtors Did Not Sustain a Direct Injury As a Result of the Alleged RICO Violations

The right to sue for damages under RICO is limited to direct victims of the alleged racketeering activity.  *Hemi Group, LLC. v. City of New York*, 559 U.S. 1, 6 (2010).  A party lacks standing to pursue an action under RICO where the direct cause of its alleged harm was a set of actions "distinct from the alleged RICO violation."  *Hemi*, 559 U.S. at 10.  Here the direct "victim" of the alleged pattern of bank fraud was PNB.  Given the breadth and depth of the

alleged fraud against PNB, any injury subsequently incurred by the Debtors following discovery

of the bank fraud must be considered to be secondary.  The alleged injuries to the Debtors

following exposure of the bank fraud in 2017-18 were an indirect consequence of the alleged

fraud on PNB.  The Debtors' purported injuries (administrative costs and asset transfers) were

one step removed from the scheme to defraud PNB.  Therefore the RICO causes of action must

be dismissed.  *See* Defendant Nirav Deepak Modi's Memorandum of Law In Support of His

Motion to Dismiss the First Amended Complaint in *Levin, Trustee v. Nirav Deepak Modi, et al.*,

Adv. Proc. No. 19-1102 (SHL) ("Nirav Modi Memo. of Law"), at pp. 20-24.

The RICO claims must also be dismissed because there is a better-situated injured

plaintiff with an incentive to sue.  *Hemi*, 559 U.S. at 11-12.  A party does not have standing

under RICO where "better situated plaintiffs would have an incentive to sue."  *Hemi*, 559 U.S. at

11-12.  PNB, the alleged direct victim of the fraud, is not only well-positioned to vindicate its

claim, it already has appeared in this Court in order to assert RICO and fraud violations against

the Debtors.  *See* Proof of Claim of Punjab National Bank Against Firestar Diamond, Inc., *In re*

*Firestar Diamond, et al*., No. 18-bk-10509 (Bankr. S.D.N.Y. Nov. 29, 2018), ¶ 23.   The

allegations in PNB's proof of claim mirror the core allegations in the Trustee's Complaint.

Furthermore, a lawsuit by the Debtors in addition to the PNB claim would require "complicated

rules apportioning damages among plaintiffs removed at different levels of injury from the

violative acts, in order to avoid the risk of multiple recoveries."  *Laborers Local 17 Health &*

*Benefit Fund v. Philip Morris, Inc.*, 191 F.3d 229, 237 2d Cir. 1999) (citation omitted).  *See also*

Nirav Modi Memo. of Law, at pp. 24-26.

**C.     The Complaint Fails to Allege the Elements of a Substantive RICO Violation,
Requiring Dismissal of the Conspiracy Claims Under 18 U.S.C. § 1962(d)**

The RICO conspiracy claim must fail because the Trustee fails to plead the required

elements of the substantive RICO violations. *First Capital Asset Mgmt., Inc. v. Satinwood, Inc*., 385 F.3d 159, 182 (2d Cir. 2004) (RICO conspiracy claim properly dismissed where "Plaintiffs did not adequately allege a substantive violation of RICO"); *Wang v. Yien-Koo King*, 2019 WL 1763230 (S.D.N.Y. 2019).  The mail and wire fraud claims are insufficiently particularized, fail to establish scienter, and are based on time-barred conduct occurring prior to February 20, 2016. *See* Nirav Modi Memo. of Law, at pp. 29-30 and 34-36.  The fraud allegations supporting the National Stolen Property Act claims are equally deficient. *See id*. at pp. 31-32.  The money laundering claims are merely conclusory. *See id.* at pp. 32-33.

### D.    The Complaint Does Not Allege Domestic Injury

A plaintiff seeking to allege a civil RICO violation must adequately plead a 'domestic injury.'" *Malvar Egerique*, *supra,* 2020 WL 1974228, at *11.  The civil RICO statute does not allow a plaintiff to recover for foreign injuries, as there is a presumption against extra-territoriality, *i.e.,* there is a presumption that the civil RICO statute and its underlying predicate statutes do not extend outside the United States. *RJR Nabisco, Inc. v. European Cmty*., ___ U.S. ___, 136 S. Ct. 2090, 2106 (2016).  Here, the Complaint fails to adequately allege that PNB's injuries occurred in the United States.  First, the Trustee's own allegations admit that PNB's property was not located in the United States when it was allegedly fraudulently obtained by Nirav Modi and his co-conspirators.  Injury to tangible property is only domestic if the property "was located in the United States when it was stolen or harmed[.]" *Bascuñán v. Elsaca*, 874 F.3d 806, 820-21 (2d Cir. 2017).  Second, "a defendant's use of the U.S. financial system to conceal or effectuate his tort does not, on its own, turn an otherwise foreign injury into a domestic one." *Bascuñán*, 874 F.3d at 818-19.  Similarly, "the alleged investment of the stolen funds in New York real estate projects" does not transform foreign harm into domestic injury.

*City of Almaty v. Ablyazov*, 226 F. Supp. 3d 272, 285 (S.D.N.Y. 2016).  And the Trustee admits

that the Indian government has initiated proceedings against Nirav Modi and his co-conspirators.

Under these circumstances, it would cause "international friction" to allow the Trustee to recover

for foreign injuries in this civil RICO action.  See *RJR Nabisco*, 136 S. Ct. at 2107; *see also*

Memorandum of Law of Defendant Purvi Mehta in Support of Motion to Dismiss, Part IV(A)(4).

### E.    The Claims Based on Conduct Prior to February 25, 2016 Must Be Dismissed

Since civil RICO claims are subject to a four-year statute of limitations, the claims based

on conduct occurring more than four years before the February 25, 2020 filing of the Trustee's

Complaint must be dismissed.  *Koch v. Christie's Int'l Pub. Ltd. Co*., 699 F.3d 141, 148 (2d Cir.

2012) (civil RICO); *World Wrestling Entm't, Inc. v. Jakks Pac., Inc*., 530 F. Supp. 2d 486, 530

(S.D.N.Y. 2007) (civil RICO conspiracy).  A plaintiff can recover under RICO "only for injuries

discovered or discoverable within the four-year 'window' before suit was filed," making claims

based on injuries discovered prior to the four-year window time-barred and unsalvageable.  *Kerik*

*v. Tacopina*, 64 F. Supp. 3d 542, 558 (S.D.N.Y. 2014) (quoting *Bingham v. Zolt*, 66 F.3d 553,

560 (2d Cir. 1995)).

Because the U.S. Entities were participants in the scheme to defraud PNB, they either

discovered or should have discovered their injuries from any pre-February 22, 2016 transfers on

or before that date.  Therefore the Trustee's civil RICO claim based on alleged losses prior to

that date are time-barred.

### CONCLUSION

For the foregoing reasons, the Court should dismiss the RICO conspiracy causes of action

against Nehal Modi in Counts 1 and 2 of the Complaint.

Dated: New York, New York
            September 15, 2020

                                                   *s/ Roger J. Bernstein*

18

Roger J. Bernstein
535 Fifth Avenue, 23rd Floor
New York, NY 10017
Tel: (212) 748-4800
Fax: (646) 964 6633
rbernstein@rjblaw.com

Attorney for Defendant Nehal Modi