UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

| | |
|---|---|
| In re: | Chapter 11 |
| FIRESTAR DIAMOND, Inc., et al., | No. 18-10509(SHL) |
| Debtors, | (Jointly Administered) |

| | |
|---|---|
| Richard Levin, Chapter 11 Trustee of FIRESTAR DIAMOND, INC., FANTASY, INC., and OLD AJ, INC., f/k/a A. JAFFE, INC., | Adv. Proc. No. 20-01054(SHL) |
| Plaintiff, | |
| vs. | |
| AMI JAVERI (A/K/A AMI MODI), et al., | |
| Defendants. | |

-------------------------------------------------------------------X

**Declaration of Neeshal Modi in Support of**
**Motion to Dismiss the Complaint Pursuant to Fed. R. Civ. P. 12(b)(2) & (b)(6)**

I, Neeshal Modi, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 and the laws of the United States of America that the foregoing is true and correct.

1.    I am the former manager of defendant Firestar Diamond BVBA ("FDB") and an individual defendant in this adversary proceeding, and I make this declaration in support of my motion to dismiss the complaint of plaintiff Richard Levin, Chapter 11 Trustee of Firestar Diamond, Inc., Fantasy, Inc. and Old AJ, Inc. f/k/a A. Jaffe Inc. I have personal knowledge of the facts stated in this declaration, unless otherwise stated upon information and belief. If called as a witness, I could and would testify under oath as to the facts stated in this declaration.

**I.      I have Never Agreed to Join any Conspiracy**

2.      I regret ever getting involved in the family business. I have never agreed to join the alleged RICO enterprise conspiracy described in the Complaint. A copy of the Complaint is attached as **Exhibit A**. After graduating from Sir John Cass Business School at The City University London in March 2007 (B.A., Finance, Investment & Risk Management), I began learning the diamond and gem trade. In 2009, I began working at Firestar Diamond Belgium (FDB), which was set up by my older brother, defendant Nirav Modi, as an employee and director. My primary responsibilities were sourcing raw material, selling raw material, diamond manufacturing and quality control. I also set up Russian, South African and Armenian subsidiaries as part of my role. Although not mentioned anywhere in the Complaint, I also was a director of Firestar Diamond LLC ("FD Armenia"), the subsidiary in Yerevan, Armenia, and Firestar ARC BVBA ("FD ARC"), which was involved in a joint venture with a third party and was dissolved on June 24, 2013. I did not contribute any capital and, to my knowledge, I was never an owner of FDB, FD Armenia, or Firestar ARC.

3.      FDB had another 4 employees, who were involved in handling day-to-day operations such as fulfilling orders, importing and distribution. Zhanna Koblova was a general administrator, assisting a virtual back office in India with any help they required and handling day-to-day tasks in Antwerp. Noelia Osario was primarily an inventory controller, ensuring all physical inventory, consignment and any changes in the stock positions were updated and accounted for on a daily basis. Bankim Mehta and Jigar Mehta were involved in polished diamond sales. A virtual back office in India handled all payroll and bookkeeping matters. My only compensation was a gross salary of €220,000.00 per annum on which I paid all required taxes.

4.       Except for my limited association with FDB, FD Armenia and FD ARC, I am not now, and have never been, a knowing or intentional owner, partner, shareholder, member, officer, director, employee or otherwise, of any of the other corporate entities named in the Complaint – Debtors, defendants, U.S. Entities, LOU Entities, Firestar Entities, Shadow Entities, Modi-Controlled Entities – or otherwise. To my knowledge, I have never received anything of value from any of the entities described in the Complaint except my salary from FDB.

5.       In or around late 2015, while working in Mumbai, I received legal correspondence stating I was a trustee and beneficiary of the Nirav Family Trust and Nirav Modi Family Trust (jointly, the "Trusts"). Although not mentioned in the Complaint, according to Indian authorities in the same documents the Trustee apparently has based its Complaint on, the Trusts are alleged to be the owners of the LOU Entities – Diamonds 'R' Us, Solar Export and Stellar Diamond. When I asked Shayam Wadha, Nirav's company secretary, about it, he gave me a vague explanation it was in connection with a business venture and that he put me down as a Trustee. I said immediately and without hesitation I wanted no part in whatever Nirav and his associates had planned and demanded he remove me as a trustee and beneficiary of the Trusts and any other trust, entity or company of which I was unaware. A short time thereafter I received and countersigned two letters from Nirav dated December 15, 2015, resigning from the Trusts with immediate effect. Copies of the resignation letters and Trust resolutions are attached at **Exhibit B**.

6.       Every act I ever undertook in my capacity as a manager and employee of FDB was with the intention, understanding and assumption that it was legitimate and legal. I have never agreed to be a party to the alleged fraudulent activities of Nirav and his co-conspirators described in the Complaint. During the time of the events described in the Complaint, I had no suspicion, let alone knowledge, of the alleged extensive bank fraud perpetrated on Punjab National Bank and

3

the decision to inflate the sales volume of the companies involved. I never appointed any "dummy" directors and I never received instruction from Nirav or any of the co-conspirators to inflate FDB's sales volume, deliver gems and stones, or transfer money among any of the alleged Modi-Controlled Companies. All instructions relating to same were delivered to other employees of FDB presumably with the understanding that such acts were arms' length and legitimate. No employees ever came to me with concerns or complaints that they were asked to perform an illegitimate or illegal act.

7. After the disclosure and collapse of the alleged Bank Fraud, FDB filed for bankruptcy in the Commercial Court of Antwerp. To clear my name, I personally retained an independent auditing firm, Van Den Keybus Van Der Jeught, to investigate the company's accounts for any sign of malfeasance and whether I benefitted in any way. The firm issued its findings in the *Forensic Audit of Firestar Diamond, BE 0817 647 147, Concerning Purchased and Sold Goods and this from 01/04/2011 Until 20/03/2018*, dated February 28, 2019 ("Keybus Report"), a copy of which is attached as **Exhibit C**.

8. The Keybus Report confirms that all transactions between FDB and the Hong Kong entities were "genuine and for appropriate consideration" and supported by genuine documentation. Ex. C (Keybus Audit) at p. 7. More importantly, the Forensic Report confirms, "No funds have been diverted or siphoned of [*sic*] by Mr. Neeshal Modi. The only amounts paid to Mr. Neeshal Modi was his salary and no other amounts were ever paid by the Company to Mr. Neeshal Modi." *Id.*

9. FDB was declared bankrupt in the Commercial Court of Antwerp on March 19, 2018. Ilse Mertens and Eddy Van Camp, who were appointed as trustees ("Belgian Trustees") to administer the company's liquidation, commissioned PriceWaterhouseCooper ("PWC") to

4

investigate the company's accounts as well. Seven months after the Keybus Report, PWC issued its Forensic Report dated October 31, 2018 ("PWC Report"), a copy of which is attached as **Exhibit D**. I cooperated fully with PWC in its investigation. Ex. D (PWC Report) at §§ 1.1 (Scope & Approach), p. 4; § 2.11 (Interviews)(Neeshal Modi – managing director Firestar Diamond BVBA), pp. 9-10.

10. The PWC Report confirms the findings of the Keybus Report. PWC concluded specifically, "we did not identify any indication that the transactions between Firestar Diamond BVBA and the 6 Hong Kong-based companies were not genuine." *Id.* at § 1.3 (Executive Summary), p. 8; *see also* § 3.1.3.3 (Conclusion unpredictability testing), p. 43 ("…we have no indication that the selected transactions with other supplier and clients are not genuine.").

11. With respect to any improper benefit I may have accrued, the PWC Report stated, "We did not identify any indication that the operational expenses were used to siphon off funds to Neeshal Modi." *Id.* at § 1.3 (Executive Summary), p. 8. The PWC Report further concluded, "we did not identify any indication that fund transfers occurred to Neeshal Modi's personal bank account, nor that any amount is due by Neeshal Modi to Firestar Diamond BVBA on the current account he held within the Company." *Id.* at § 1.3 (Executive Summary), p. 8; *see also* § 3.3.3.5 (Conclusion) ("we did not identify any indication that fund transfers occurred to Neeshal Modi's personal bank account, nor that any amount is due by Neeshal Modi to Firestar Diamond BVBA on the current account he held within the Company.").

12. FDB's accountant, Tom Panis, declared "that he believes that Neeshal Modi is a victim in the whole situation. He was only a small part of the whole family network where everything is based on trust." *Id.* at § 2.1.2.3 (Key Points), p. 11.

5

13. I have never fled India or any other country to escape justice. The Modi family gathers every year in Mumbai for end-of-year festivities. I returned to Belgium on my scheduled flight. Only after returning to Antwerp from this vacation did I learn of the alleged fraud and corresponding investigations into the companies. Almost immediately, I offered to fully cooperate with Indian authorities to clear my name. Since February 21, 2018 – only weeks after the disclosure of the Bank Fraud – I have made no fewer than 5 offers to assist the Directorate of Enforcement and Central Bureau of Investigation in India with its investigation of and proceedings related to the Bank Fraud. *See, e.g.,* email attached as **Exhibit E**. With the approval of the Commercial Court of Antwerp, I also have assisted the Belgian Trustees collect millions of dollars in outstanding debts owed to FDB. I have frequently used my own money to fund these investigations and collections for which I have been compensated by the Trustee for my efforts.

14. I did not knowingly accept a Power of Attorney from Purvi to further the alleged enterprise and bank fraud. The Complaint also asserts erroneous facts in this regard. I did not accept a POA to purchase a house for Purvi in Hong Kong, but rather, Mumbai. See Ex. A (Complaint) at ¶ 311. The alleged 19.5 million krore purchase price was the sales price for the apartment in Mumbai. I do not know anything about purchasing an apartment in Hong Kong. To the extent there is a POA issued to me relating to the purchase of an apartment in Hong Kong, it is news to me and likely a forgery.

15. I only accepted the POA to help Purvi – as my sister – close on an apartment in Mumbai, India because she was not available and I was in the country for our annual family holiday. No money passed through my hands or accounts. I did not benefit from the purchase in any way. I simply went to a notary's office one morning to sign papers, which took all of 10 minutes or less, and that was the end of my involvement.

**II.    This Court Lacks Personal Jurisdiction Over Me**

16. This Court lacks personal jurisdiction over me. I am a Belgian citizen. I was born, grew up and have resided in Belgium my entire life, except for attending university in England. I have no personal contacts with the State of New York, or the entire United States for that matter. I am a named defendant solely in connection with my activities as a director and employee of FDB.

17. I am not domiciled in New York or the United States now or at any time previously.

18. I do not reside in New York or the United States now or at any time previously.

19. I do not own or lease any property, real or otherwise, in New York or the United States.

20. I have never been employed in New York or the United States.

21. I do not own nor have I conducted any business in New York or the United States in my personal capacity.

22. Even in my corporate capacity, I have never conducted any business in New York or the United States. Except for attending a trade show in Las Vegas in 2015 for research, during which I neither solicited nor conducted any business, I have never travelled to New York or the United States for business. I have never signed any contracts in New York or the United States, or otherwise obligated FDB to perform any acts in New York or the United States. I have never sent money to New York or the United States, or called with any regularity. My only business contacts with New York or the United States is that I signed approximately 10% of FDB's invoices, about 10% of which (1% of total) involved transactions in New York.

23. I do not have any telephone listings in New York or the United States.

24. I do not have any bank accounts or other investments (active or passive) in New York or the United States.

7

25. I do not pay taxes in New York or the United States.

26. I have not made any prior request for the relief herein.

October 15, 2020

_____
Neeshal Modi