UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

| | |
|---|---|
| In re: | Chapter 11 |
| FIRESTAR DIAMOND, Inc., et al., | No. 18-10509(SHL) |
| Debtors, | (Jointly Administered) |

-------------------------------------------------------------X

| | |
|---|---|
| Richard Levin, Chapter 11 Trustee of FIRESTAR DIAMOND, INC., FANTASY, INC., and OLD AJ, INC., f/k/a A. JAFFE, INC., | |
| Plaintiff, | |
| v. | Adv. Proc. No. 20-01054(SHL) |
| AMI JAVERI (A/K/A AMI MODI), et al., | |
| Defendants. | |

-------------------------------------------------------------X

# REPLY MEMORANDUM OF LAW
# IN SUPPORT OF AMI JAVERI'S MOTION TO DISMISS

Roger J. Bernstein
535 Fifth Avenue, 23rd Floor
New York, NY 10017
Tel: (212) 748-4800
Fax: (646) 964 6633
rbernstein@rjblaw.com

*Attorney for Defendant Ami Javeri*

**Table of Contents**

**Page No.**

**I.     The Trustee's Opposition Arguments Fail to Meet Controlling Second Circuit Standards for Alleging a RICO Conspiracy and Rely Only Upon Allegations that Fail to Show Agreement by Ami Javeri to Commit the Predicate Acts........................ 1**

**II.    The Trustee's Waiver Arguments Are Without Merit..................................................... 8**

**III.   Dismissal Should Also Be Granted on the Other Bases Asserted by Javeri............... 10**

**CONCLUSION ................................................................................................................... 10**

## Table of Authorities

**Cases**                                                             **Page No.**

*14th RMA Partners, L.P. v. Reale*, 100 F.3d 278 (2d Cir. 1996)......................................... 8

*Abbott Labs. v. Adelphia Supply USA*, 2017 WL 57802 (E.D.N.Y. Jan. 4, 2017) ......................... 3

*Bd. of Managers of Trump Tower at City Ctr. Condominium
  by Neiditch v. Palazzolo*, 346 F. Supp. 3d 432 (S.D.N.Y. 2018) ............................... 6

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................. 5

*Burke v. Dowling,* 944 F. Supp. 1036 (E.D.N.Y. 1995) .............................................. 3

*Clark St. Wine and Spirits v. Emporos Sys. Corp.*, 754 F. Supp. 2d 474 (E.D.N.Y. 2010)............ 9

*Congregacion de la Mision Provincia de Venezuela v. Curi,*
  978 F. Supp. 435 (E.D.N.Y. 1997).......................................................... 2, 3

*Dept. of Economic Dev. v. Arthur Andersen & Co. (U.S.A.),*
  924 F. Supp. 449 (S.D.N.Y. 1996)........................................................ 4, 5, 7

*Ennenga v. Starns,* 677 F.3d 766 (7th Cir. 2012) .................................................. 9

*Flexbarrow LLC v. TD Auto Fin. LLC*, 255 F Supp 3d 406 (E.D.N.Y. 2017) ............................ 3

*Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21 (2d Cir. 1990) ............................ 1, 2

*Nasik Breeding & Research Farm Ltd. v. Merck & Co., Inc.*,
  165 F. Supp. 2d 514 (S.D.N.Y. 2001)......................................................... 3

*Related Companies, L.P. v. Ruthling*, 2019 WL 10947100 (S.D.N.Y. July 23, 2019)................... 7

*Smith v. Coughlin*, 727 F. Supp. 834 (S.D.N.Y. 1989)............................................... 8

*United States v. Gordon*, 987 F.2d 902 (2d Cir. 1993).............................................. 7

*United States v. Navarrete*, 1997 WL 265249 (2d Cir. 1997)......................................... 7

*United States v. Teitler*, 802 F.2d 606 (2d Cir. 1986)............................................. 6

*United States v. Zichettello*, 208 F.3d 72 (2d Cir. 2000) ......................................... 2

Defendant Ami Javeri ("Javeri) respectfully submits this Reply Memorandum of Law in further support of her Motion to Dismiss (Dkt. No. 43) and in response to the Trustee's Omnibus Opposition to Defendant's Motions to Dismiss ("Opposition Brief" or Op. Br.").

I. **The Trustee's Opposition Arguments Fail to Meet Controlling Second Circuit Standards for Alleging a RICO Conspiracy and Rely Only Upon Allegations that Fail to Show Agreement by Ami Javeri to Commit the Predicate Acts**

The Trustee's attempt to sustain the RICO conspiracy claim against Javeri is undermined by four basic errors. First, it fails to recognize that liability for a RICO conspiracy under Section 1962(d) is not predicated on knowledge of wrongdoing or on receipt of personal benefit. Instead, a RICO conspiracy cause of action must be predicated upon agreement to the commission of two or more predicate acts. Second, the Opposition Brief fails to recognize the absence of a viable basis for the inferences that the complaint relies upon. Third, the Opposition Brief relies upon atmospherics – tendentious descriptions of alleged misconduct of others not involving Javeri in any way – as a substitute for the facts required for the meeting of the minds required for a conspiracy. Fourth, in citing case law the Opposition Brief selectively isolates phrases and words that are only a fraction of the actual decision.

First, the arguments in the Opposition Brief must be tested against Second Circuit law concerning Section 1962(d). The guidepost for evaluating RICO conspiracy allegations – and the *sine qua non* for a valid Section 1962(d) cause of action – is agreement, not knowledge or financial benefit. "Because the core of a RICO civil conspiracy is an agreement to commit predicate acts, a RICO civil conspiracy complaint, at the very least, must allege specifically such an agreement." *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 25 (2d Cir. 1990). *Hecht* is still the controlling precedent in this Circuit. *See, e.g., U1IT4less, Inc. v. FedEx Corp.*, 896 F. Supp.2d 275, 291 (S.D.N.Y. 2012) (citing *Hecht*), *aff'd on other grounds*, 871 F.3d 199 (2d Cir. 2017).

1

It follows that, as to an individual defendant in a Section 1962(d) case, the complaint must adequately allege that the defendant entered into not just any agreement, but an agreement to commit at least two of the predicate acts underlying the RICO cause of action. As Judge Seibel held in *U1IT4less*: ("[t]o allege a conspiracy under Section 1962(d), Plaintiff must plausibly <u>allege facts</u> that imply an "agreement ... to commit at least two predicate acts"). *U1IT4less*, 896 F. Supp.2d at 291 (*citing Hecht*) (emphasis supplied). A properly pleaded RICO conspiracy complaint must specify the predicate acts that an individual defendant agreed to commit. *Congregacion de la Mision Provincia de Venezuela v. Curi*, 978 F. Supp. 435, 451 (E.D.N.Y. 1997).

The Trustee argues that "[he] is not required to prove that Javeri committed, *assented to*, or even knew about any specific crime; he only needs to show that she "knew what the other conspirators 'were up to'" or that "the situation would logically lead [her] to suspect she was part of a larger enterprise." Opp. Br. at 34.[1] This proposed relaxed standard is plainly wrong in light of the Trustee's burden, as set forth in *Hecht* and subsequent cases, to allege that she agreed to the commission of two or more predicate acts. Since assent is virtually synonymous with agreement, the Trustee errs in asserting that he is not required to establish that Javeri "assented to" the predicate acts committed by others. Thus, the correct standard to apply is this: "[A] RICO conspiracy cause of action requires specific factual allegations to support the conclusion that each of the defendants consciously <u>agreed</u> to commit the predicate acts alleged." *Foster v.*

---

[1] The case that the Trustee cites clearly states that "A RICO conspiracy charge is proven if the defendant embraced the objective of the alleged conspiracy, <u>and agreed to commit ... predicate acts</u> in furtherance thereof." *United States v. Zichettello*, 208 F.3d 72, 99 (2d Cir. 2000) (emphasis supplied; citations omitted). Moreover, while *Zichettello* held that it suffices to prove that an individual defendant is aware of "the general nature of the conspiracy", 208 F.3d at 100, it is clear that "general nature" refers to the predicate acts that the defendants there agreed to, not merely to cooperative endeavors.

2

*2001 Real Estate*, 2015 WL 7587360, at *6 (S.D.N.Y. 2015) (emphasis supplied; citations omitted).

Moreover, knowledge that predicate acts are being committed is not the same as entering into agreement to commit them. Multiple cases hold that "mere knowledge of the scheme, even coupled with personal benefit, is not enough to impose liability for a RICO conspiracy." *Abbott Labs. v. Adelphia Supply USA*, 2017 WL 57802, at *9 (E.D.N.Y. Jan. 4, 2017) (citing *Curi*); *Flexbarrow LLC v. TD Auto Fin. LLC*, 255 F. Supp. 3d 406, 425 (E.D.N.Y. 2017) (*citing Curi*); *Nasik Breeding & Research Farm Ltd. v. Merck & Co., Inc.*, 165 F. Supp. 2d 514, 541 (S.D.N.Y. 2001) (citing *Curi*). *See also Burke v. Dowling,* 944 F. Supp. 1036, 1069 (E.D.N.Y. 1995) (receipt of assets allegedly obtained by fraud "does not clearly signify that recipient understood the scope of the alleged enterprise"). Thus, a complaint that alleges the receipt of personal benefits and knowledge of unlawful acts must be dismissed because knowledge is not tantamount to agreement.

Tested against these basic principles embodied in Second Circuit case law, the Opposition Brief does not salvage the complaint. The Opposition Brief is replete with emphasis on personal benefit to Ami Javeri in the form of the apartments that she occupied. But as the case law shows, even if she had knowledge of the alleged bank fraud and other predicate acts – and the complaint supplies no basis for inferring that she did --, such knowledge even when combined with a personal benefit would not be tantamount to agreement. The complaint does not allege any conduct by Javeri that would manifest agreement to the bank fraud in India, the Bankruptcy Court perjury, the shipment of diamonds abroad, or any of the other predicate acts alleged in the complaint.

3

Second, the Opposition Brief mis-states the issue raised by Javeri as to inferences. Contrary to what the Trustee contends, Javeri is not asking the Court to draw inferences in her favor instead of in plaintiff's favor. Nor she is asking the Court to ignore the obligation to draw inferences in his favor. Opp. Br. at 25. Rather, Javeri's contention is that the complaint relies upon unwarranted inferential leaps in attempting to link her actions to the predicate acts that were committed only by others. Javeri Initial Mem. at 8.

Favorable inferences are not a magic balm. The applicable test is ably articulated in *Dept. of Economic Dev. v. Arthur Andersen & Co. (U.S.A.)*, 924 F. Supp. 449, 474 (S.D.N.Y. 1996):

> An inference that supports [the pleader]'s position is a logical conclusion drawn from facts interpreted in the light most favorable to [the pleader], not a guess that is merely consistent with such facts. Circumstantial evidence is evidence that tends to prove a disputed fact whose existence follows inferentially from the existence of evidentiary facts; it is not merely evidence that is as consistent with the fact sought to be proved as with its opposite.

The arguments in the Opposition Brief do not pass this test. The Trustee argues that because Ami Javeri was designated as a "partner" in two LOU companies and opened bank accounts for them in 2010, she "knew (or, based on her status as partner of the LOU Entities, had reason to know" that many years later these companies were trading virtually exclusively with a handful of obscure Hong Kong and Dubai-based companies, and that they were incurring massive amounts of *unsecured* debt . . . ." This is nothing more than a guess. There are no allegations that she had any role whatsoever in the operation of these companies. Given the myriad ways a partner can be treated by other partners, and without even a hint of any managerial role, these cited circumstances are just as consistent with ignorance of these transactions as with knowledge. And going to a bank to fill out the paperwork needed to open an account for a company says nothing about the subsequent account activity. As in *Dept. of Economic Development,* "none of

4

the cited evidence fairly supports an inference that [Javeri] agreed to commit RICO predicate acts." 924 F. Supp. at 473. There is nothing whatever to show that she agreed to any of the transactions alleged to be predicate acts.

In *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court's decision was grounded on reasoning strikingly parallel to the above decision in *Dept. of Economic Development*. In the antitrust context, the Supreme Court held that the defendants' parallel conduct did not support an inference of conspiracy because each defendant's conduct was equally consistent with its own economic self-interest. *Twombly*, 550 U.S. at 552. The actions cited by the Trustee fail to support the RICO conspiracy allegation for the same reason: Javeri's conduct, such as accepting the benefit of an apartment provided by her spouse, or appointing her brother-in-law as Trust Protector, is entirely consistent with Javeri's self-interest and, therefore, does not tend to prove that she agreed to the RICO conspiracy.

Third, the Trustee relies upon actions of others that it does not allege that Javeri ever knew of or had reason to know of. For instance, it trumpets that Nehal Modi "was leading efforts to frustrate investigation of the Bank Fraud and fraudulently divert assets to Hong Kong while Nirav was in hiding" at the same time that he was named Trust Protector. Opp. Br. at 32. This is smoke without fire. There is no allegation that Javeri ever knew of, let alone agreed to, Nehal Modi's alleged efforts to frustrate the investigation and divert assets. Activities of others that have no link to Javeri cannot be properly considered in evaluating the sufficiency of the allegations as to her.

Similarly, the Opposition Brief argues that "[a]t a minimum, these allegations [partnership and account opening] show that Ami knew the LOU Entities existed[,] and that she was trusted with access to their bank accounts and other corporate records[,] from which she could

5

have deduced their illicit purpose and interfered with the scheme had she not been complicit." Opp. Br. at 33 (punctuation added). However, the actual allegation in the complaint is only that she opened bank accounts in 2010; the complaint does not allege that she was trusted with or had any access to bank accounts and corporate records at any time after 2010. Since the premise for this syllogism is nowhere in the complaint, the proffered conclusion ("that she could have deduced…") has no basis and must be disregarded.

Fourth, the Opposition Brief relies upon snippets from cases that do not reveal the actual grounds for the decision. The Opposition Brief cites *United States v. Teitler*, 802 F.2d 606, 614 (2d Cir. 1986), as "upholding RICO conspiracy conviction where 'the jury had before it circumstantial evidence tending to show that [the defendant] played a role in the fraud . . . includ[ing] . . . *his status as a partner* in the Teitler firm[.]' (emphasis added)." Opp. Br. at 33. Omitted without justification is the court's observation -- in the same sentence, no less -- that "the jury had before it circumstantial evidence tending to show that Jay Teitler played a role in the fraud." This evidence included Teitler's managerial actions directing a paralegal and a client to engage in fraudulent billing practices. *Teitler*, 802 F.2d at 609-610. Contrary to the selective quotation in the Opposition Brief, therefore, the Second Circuit in *Teitler* did not hold that partner status alone sufficed to establish agreement to engage in a RICO conspiracy.

The Opposition Brief also states that "courts routinely infer conspiratorial intent from the fact that a defendant received illicit proceeds." Opp. Br. at 32. However, in the cited cases the complaint alleged that the defendant himself participated in the fraudulent conduct that resulted in the receipt of "illicit" proceeds. In *Bd. of Managers of Trump Tower at City Ctr. Condominium by Neiditch v. Palazzolo*, 346 F. Supp. 3d 432 (S.D.N.Y. 2018), the court first held that the individual defendants controlled the corporate entities involved and had personally caused

6

multiple unauthorized, undisclosed and fraudulent fund transfers to the entities they controlled. 346 F. Supp. 3d at 458-59. The court then held that "Moreover, the Amended Complaint alleges that each Defendant benefitted financially from the scheme in the form of profits and income <u>derived directly from their participation in the scheme</u>." *Id.* at 464 (emphasis supplied). Similarly, in *Related Companies, L.P. v. Ruthling*, 2019 WL 10947100 (S.D.N.Y. July 23, 2019), the court held that the allegation of receipt of wrongfully diverted funds had to be "taken together" with two other allegations of actual participation in the operation of the criminal enterprise in order to support a conspiracy allegation. 2019 WL 10947100, at *7.

In this case there is no allegation that Javeri participated in any of the alleged fraudulent schemes such as the LOU fraud that allegedly generated illicit proceeds. Nor are any facts alleged from which one could infer that Ami Javeri knew the origin of the funds in question to be fraudulent LOU transactions, or even LOU transactions at all. Without any allegation that Javeri participated in the underlying predicate acts committed by others or even knew about them, the receipt of proceeds from those acts is not a basis for inferring "conspiratorial intent". Opp. Br. at 33. The receipt of funds from family members is just as likely to be the result of family duty and/or generosity, and therefore cannot support the inference that the Opposition Brief wishes to draw. *See Dept. of Economic Development, supra; Bell Atl. Corp. v. Twombly, supra.*

Lastly, the Opposition Brief attempts to draw on language about lack of surprise and co-conspirators' trust in the narcotics conspiracy cases of *United States v. Gordon*, 987 F.2d 902 (2d Cir. 1993), and *United States v. Navarrete*, 1997 WL 265249 (2d Cir. 1997). In those cases, lack of surprise upon meeting a narcotics importer at JFK airport (*Gordon,* 987 F.2d at 907), and willingness of drug couriers to trust an individual in their midst while transporting heroin (*Navarrete,* 1997 WL 265249 at *2), were grounds for inferring a defendant's participation in a

narcotics conspiracy. Narcotics are *per se* contraband; hence it is reasonable to infer membership in a conspiracy when two or more parties come together or act together in handling narcotics. Money, however, is not *per se* contraband; nor is real estate. The fact that Javeri trusted her brother-in-law Nehal Modi to be Trust Protector with respect to real estate – the subject apartments -- is simply evidence that she trusted a family member with an entirely legal item. Hence this fact is equally consistent with entirely innocent conduct. That the Trustee feels impelled to resort to citing conspiracy cases involving contraband only highlights the deficiencies in the RICO conspiracy allegations in this business case. In the context of a legitimate business that does not involve contraband, mutual trust and absence of surprise are normal, hence are not a legitimate basis for inferring knowing participation in illegal conduct.

## II.     The Trustee's Waiver Arguments Are Without Merit

The Trustee makes two waiver arguments, neither of which should be credited.

First, the Trustee contends that Javeri "waived any argument" as to the fraudulent transfer allegations in Count 5 because they were was not addressed in Javeri's motion to dismiss for failure to state a claim. However, there is only a passing reference to Javeri in Count 5, and none at all in Count 6; they are identified as "Defendants" only in Counts 1 and 2. This is a thin basis at best for a waiver contention.[2]

Most importantly, a defense of failure to state a claim is not a waivable defense. *See* Fed.

---

[2] Ami Javeri is not identified as a defendant except in the prayer for relief at the end of the complaint. Case law is divided as to whether referring to a party only in a prayer for relief constitutes the required "short and plain statement of the claim" required by Fed. R. Civ. P. 8(a). *Compare Smith v. Coughlin*, 727 F. Supp. 834, 837 n.4 (S.D.N.Y. 1989) (naming party as defendant only in prayer for relief insufficient) with *14th RMA Partners, L.P. v. Reale*, 100 F.3d 278, 281 (2d Cir. 1996) (prayer for relief in the complaint gave general partner adequate notice of claim against him although he was not mentioned in applicable count).

R. Civ. P. 12(h)(2), incorporated into the Bankruptcy Rules by B.R. 7012(b): "Failure to state a claim upon which relief can be granted, . . . may be raised: (A) in any pleading allowed or ordered under Rule 7(a); (B) by a motion under Rule 12(c); or (C) at trial." *See, e.g., Ennenga v. Starns,* 677 F.3d 766, 773 (7th Cir. 2012) ("Failure-to-state-a-claim defenses are thus excepted from the Rule 12(g)(2) consolidation requirement and not included in the Rule 12(g)(1) waiver rule"); *Clark St. Wine and Spirits v. Emporos Sys. Corp.*, 754 F. Supp. 2d 474, 480 (E.D.N.Y. 2010) ("successive 12(b)(6) motions may be allowed if the pending motion is not interposed for delay and its consideration will expedite the disposition of the case on the merits"). Therefore, if Count 5 is dismissed by reason of the motion of one of the other defendants, Javeri will not have waived the right to have it dismissed as to her for failure to state a claim.

Dismissal of the "Equity Transfer" claims in Counts 5 and 6 is being sought by defendant CPRE. As shown by the Reply Memorandum submitted by CPRE, the Trustee's allegations do not establish that a transfer of a passive real estate asset from a family business to a family trust is a fraudulent transfer. If the Court holds that Count 5 should be dismissed for failure to state a claim, Javeri's right to move to dismiss this count has not been waived. *See Clark St. Wine, supra.* In fact, in that context the Trustee will be collaterally estopped from opposing the dismissal. The same principles apply to dismissal of the "Equity Transfer" allegations in Count 6.

Second, the Opposition Brief contends that defendant Javeri (and other defendants) waived any argument that the alleged predicate acts are insufficiently particularized or time barred because "[n]one of them discusses the legal requirements for each predicate act or explain (*sic*) why the Trustee's allegations are purportedly deficient." Opp. Br. at 14. This is a rank distortion. Defendant Javeri (and other defendants) expressly incorporated by reference the arguments already made multiple times by other defendants addressing these issues. *See, e.g.,*

9

Memorandum of Law in Support of Ami Javeri's Motion to Dismiss, at 15.  No known principle of law or procedure bars incorporation by reference of arguments made by others.  This procedure is patently preferable where arguments are already fully briefed and hundreds of pages of overlapping arguments have already been submitted to the Court.  Notably, elsewhere in his Opposition Brief the Trustee expressly incorporates his own prior arguments.  *See* Op. Br. at 24.

### III.     Dismissal Should Also Be Granted on the Other Bases Asserted by Javeri

In lieu of repetition, Javeri incorporates by reference the arguments supporting the *in pari delicto* defense made by the Reply Memorandum of Law in Support of Nehal Modi's Motion to Dismiss dated March 5, 2021 and by the other defendants who have addressed this issue in their reply briefs, *e.g.,* Nirav Modi.  Javeri also incorporates by reference the reply arguments made by other defendants to the arguments in Part IV of her Memorandum of Law in Support of Ami Javeri's Motion to Dismiss (Dkt. No. 44) that are based on the same grounds as the other defendants' motions to dismiss, *i.e.,* lack of standing, lack of direct injury, failure to allege domestic injury, and statute of limitations.

### CONCLUSION

For the reasons stated above and in Ami Javeri's initial Memorandum of Law, the Court should dismiss the RICO conspiracy causes of action against her.

Dated: New York, New York
      March 5, 2021

                                                       *s/ Roger J. Bernstein*
                                            Roger J. Bernstein
                                            535 Fifth Avenue, 23rd Floor
                                            New York, NY 10017
                                            Tel: (212) 748-4800
                                            Fax: (646) 964 6633
                                            rbernstein@rjblaw.com

                                            *Attorney for Defendant Ami Javeri*