UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>FIRESTAR DIAMOND, INC., *et al.*<br><br>       Debtors. | Chapter 11<br><br>No. 18-10509 (SHL)<br><br>(Jointly Administered) |
| RICHARD LEVIN, Chapter 11 Trustee of FIRESTAR DIAMOND, INC., FANTASY, INC., and OLD AJ, INC. f/k/a A. JAFFE, INC.,<br><br>       Plaintiff,<br><br>   v.<br><br>AMI JAVERI (A/K/A AMI MODI); PURVI MEHTA (A/K/A PURVI MODI); NEHAL MODI; NEESHAL MODI; CENTRAL PARK REAL ESTATE, LLC; CENTRAL PARK SOUTH 50 PROPERTIES, LLC; TRIDENT TRUST COMPANY (SOUTH DAKOTA) INC., solely as Trustee of the ITHACA TRUST; TWIN FIELDS INVESTMENTS LTD.; AURAGEM COMPANY LTD.; BRILLIANT DIAMONDS LTD.; ETERNAL DIAMONDS CORPORATION LTD.; FANCY CREATIONS COMPANY LTD.; HAMILTON PRECIOUS TRADERS LTD.; SINO TRADERS LTD.; SUNSHINE GEMS LTD.; UNIQUE DIAMOND AND JEWELLERY FZC; WORLD DIAMOND DISTRIBUTION FZE; VISTA JEWELRY FZE; EMPIRE GEMS FZE; UNIVERSAL FINE JEWELRY FZE; DIAGEMS FZC; TRI COLOR GEMS FZE; PACIFIC DIAMONDS FZE; HIMALAYAN TRADERS FZE; UNITY TRADING FZE; FINE CLASSIC FZE; DG BROTHERS FZE,<br><br>       Defendants. | Adv. Proc. No. 20-1054 |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
PURVI MEHTA'S MOTION TO DISMISS THE COMPLAINT**

DUANE MORRIS LLP
1540 Broadway
New York, NY 10036
Tel: (212) 692-1063
Fax: (212) 208-4521
Email: RHyman@duanemorris.com
*Attorneys for Defendant Purvi Mehta*

## <u>TABLE OF CONTENTS</u>

<b>Page</b>

TABLE OF AUTHORITIES ................................................................................................ iii

LEGAL ARGUMENT .......................................................................................................1

I.    THE TRUSTEE'S PERSONAL JURISDICTION ARGUMENTS FAIL ..........................1

    A.    There is No Personal Jurisdiction Over Ms. Mehta Based On A Single
        United States Real Estate Transaction Or Loan Repayment. ................................ 1

    B.    Ms. Mehta Does Not Own Any United States Entity, And Indirect, Passive
        Ownership Does Not Establish Specific Personal Jurisdiction............................ 3

    C.    Ms. Mehta Did Not Target the United States or the Debtors and U.S.
        Affiliates. ............................................................................................................ 4

    D.    Co-conspirator Jurisdiction Cannot Save The Trustee's Infirm Allegations.......... 5

    E.    The Trustee's Claims Of Personal Jurisdiction Under the CPLR Are
        Equally Flawed. .................................................................................................. 6

    F.    The Exercise Of Jurisdiction Over Ms. Mehta Would Cause Her
        Substantial Burden............................................................................................... 8

    G.    No Jurisdictional Discovery Is Warranted........................................................... 9

II.   THE TRUSTEE IMPROPERLY ATTEMPTS REWRITE THE COMPLAINT;
    THE COMPLAINT STILL FAILS TO STATE A CLAIM AGAINST MS.
    MEHTA ......................................................................................................................10

III.  PNB — NOT THE DEBTORS OR U.S. AFFILIATES — WAS THE
    INTENDED TARGET OF THE ALLEGED CONSPIRACY .........................................12

IV.   THE TRUSTEE'S IMPUTATION ARGUMENTS ARE CONFOUNDING AND
    PLAIN WRONG........................................................................................................13

    A.    Imputation Is Not Necessary To Find The Debtors And U.S. Affiliates
        Liable. ................................................................................................................ 14

    B.    Ms. Mehta May Invoke In Pari Delicto Or The Wagoner Rule Regardless
        Of Her Alleged Wrongdoing. ............................................................................. 14

    C.    Ms. Mehta Is Not An Agent Of The Debtors Or U.S. Affiliates, Nor Did
        She Conspire With Their Agents. ....................................................................... 15

    D.    The Adverse Interest Exception Does Not Apply................................................ 18

E.    The Trustee's Sword and Shield Legal Argument Should Be Rejected............... 18

V.    THE RICO CLAIMS ARE TIME-BARRED; THE TRUSTEE'S IMPUTATION
        THEORIES DO NOT APPLY AND HE MISSTATES THE GOVERNING LAW ........19

CONCLUSION.............................................................................................................................20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 346 (S.D.N.Y. 2005) ................................5

*In re Am. Exp. Co. S'holder Litig.*, 39 F.3d 395 (2d Cir. 1994) ...............................13

*Anderson v. Aset Corp.*, 329 F. Supp. 2d 380 (W.D.N.Y. 2004).................................10

*Armstrong v. McAlpin*, 699 F.2d 79 (2d Cir. 1983)...................................................19

*BCCI Holdings (Luxembourg) v. Pharaon*, 43 F. Supp. 2d 359 (S.D.N.Y. 1999) .......................13

*Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68 (2d Cir. 2018)...........................6

*Cornale v. Stewart Stamping Corp.*, 129 N.Y.S.2d 808 (Sup. Ct. 1954) ......................16

*Dawson v. Bumble & Bumble*, 246 F. Supp. 2d 301 (S.D.N.Y. 2003) ..........................10

*Ehrenfeld v. Mahfouz*, 489 F.3d 542 (2d Cir. 2007).........................................1

*Flaxer v. Gifford (In re Lehr Constr. Corp.)*, 528 B.R. 598 (Bankr. S.D.N.Y. 2015) ...........................................................................................................18

*Gordon v. Invisible Children, Inc.*, No. 14-cv-4122, 2015 U.S. Dist. LEXIS 129047 (S.D.N.Y. Sep. 24, 2015) .............................................................4

*In re Granite Partners,* 194 B.R. 318 (S.D.N.Y. 1996)..........................................15

*Hau Yin To v. HSBC Holdings, PLC*, 700 F. App'x 66 (2d Cir. 2017) ...........................7

*Helicopteros Nacionales de Colombia, S.A., v. Hall*, 466 U.S. 408 (1984) ...................3

*Hinrichsen v. Hinrichsen Found.*, No. 17-cv-1152, 2018 U.S. Dist. LEXIS 4585 (S.D.N.Y. Jan. 9, 2018)..................................................................3

*Ins. Co. of State of Pa. v. Centaur Ins. Co.*, 590 F. Supp. 1187 (S.D.N.Y. 1984).........................9

*Jonas v. Estate of Leven*, 116 F. Supp. 3d 314 (S.D.N.Y. 2015)....................................7

*Kirschner v. KPMG LLP*, 912 N.Y.S.2d 512, 938 N.E.2d 941 (2010)..........................16

*In re Libor-Based Fin. Instruments Antitrust Litig.*, No. 11-mdl-2262, 2019 U.S. Dist. LEXIS 49700 (S.D.N.Y. Mar. 25, 2019) ..........................................6

*Mauro v. McCrindle*, 419 N.Y.S.2d 710 (2d Dept. 1979) ....................................17-18

*Meridien Int'l Bank v. Liberia*, 23 F. Supp. 2d 439 (S.D.N.Y. 1998) ............................................19

*Nat'l Union Fire Ins. Co. v. BP Amoco P.L.C.*, 319 F. Supp. 2d 352 (S.D.N.Y. 2004) ..................................................................................................................................1

*O'Neill v. Asat Tr. Reg. (In re Terrorist Attacks on September 11, 2001 (Asat Tr. Reg.))*, 714 F.3d 659 (2d Cir. 2013)...........................................................................5

*O'Toole v. MyPlace Dev. SP. Z O.O. (In re Sledziejowski)*, Nos. 13-br-22050-RDD, 13-br-22748-RDD, 15-br-08207-SHL, 15-br-08208-SHL, 2016 Bankr. LEXIS 3791 (Bankr. S.D.N.Y. Oct. 21, 2016) ........................................................3

*In re Optimal U.S. Litig.*, 813 F. Supp. 2d 383 (S.D.N.Y. 2011) ..................................................14

*In re Parmalat Sec. Litig.*, 376 F. Supp. 2d 449 (S.D.N.Y. 2005)....................................................5

*Picard v. JPMorgan Chase Bank & Co. (In re Bernard L. Madoff Inv. Sec. LLC)*, 721 F.3d 54 (2d Cir. 2013)...........................................................................................18

*Post-Effective Date Comm. of the Estate of E. End Dev., LLC v. Amalgamated Bank (In re E. End Dev., LLC)*, 555 B.R. 138 (Bankr. E.D.N.Y. 2016)...........................14-15

*POSVEN v. Liberty Mut. Ins. Co.*, 303 F. Supp. 2d 391 (S.D.N.Y. 2004) .....................................1

*In re Publ'n Paper Antitrust Litig.*, No. 3:04 MD 1631, 2005 U.S. Dist. LEXIS 19896 (D. Conn. Sep. 6, 2005) .................................................................................5

*Rosalie Estates, Inc. v. Colonia Ins. Co.*, 643 N.Y.S.2d 59 (1st Dept. 1996)................................17

*Smith v. John Hancock Mut. Life Ins. Co.*, 23 N.Y.S.2d 331 (4th Dept. 1940)..............................17

*Tamam v. Fransabank SAL*, 677 F. Supp. 2d 720 (S.D.N.Y. 2010).............................................8-9

*World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*, 530 F. Supp. 2d 486 (S.D.N.Y. 2007) ................................................................................................................................20

## Statutes And Court Rules

11 U.S.C. § 108.................................................................................................................................20

CPLR § 302(a) ..............................................................................................................................7-8

Fed. R. Civ. P. 12(b) .........................................................................................................................1

Defendant Purvi Mehta submits this reply memorandum of law in further support of her motion to dismiss the Complaint of Debtors Firestar Diamond, Inc., Fantasy, Inc. and Old AJ, Inc. f/k/a A. Jaffe, Inc. (collectively, the "Debtors"), and Debtors' affiliates Synergies Corporation ("Synergies"), Firestar Group, Inc., Firestar Diamond International, Inc., Nirav Modi, Inc. and AVD Trading, Inc. (collectively, the "U.S. Affiliates").  As set forth below and in Ms. Mehta's moving memorandum of law, the Court should grant the motion pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2) and 12(b)(6) because (i) the Court lacks subject matter and personal jurisdiction and (ii) the Complaint fails to state a claim.

## **LEGAL ARGUMENT**

## I.    **THE TRUSTEE'S PERSONAL JURISDICTION ARGUMENTS FAIL**

### A.    **There is No Personal Jurisdiction Over Ms. Mehta Based On A Single United States Real Estate Transaction Or Loan Repayment.**

The Trustee relies upon specific personal jurisdiction to hail Ms. Mehta into this Court, arguing that a single transaction in the United States is all that is required.  This overstates the law.  A single transaction "*may* suffice to invoke personal jurisdiction" "*so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted.*"  *Ehrenfeld v. Mahfouz*, 489 F.3d 542, 548 (2d Cir. 2007) (quoting *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1109 (2d Cir. 1997)) (emphasis added); *see also Nat'l Union Fire Ins. Co. v. BP Amoco P.L.C.*, 319 F. Supp. 2d 352, 358-59 (S.D.N.Y. 2004) (explaining that "Proof of a single transaction *may* suffice, provided it is purposeful" (emphasis added)).  In determining whether a plaintiff has made this requisite showing, courts should be "justifiably skeptical of attempts to assert personal jurisdiction over a defendant" based on a single transaction. *See POSVEN v. Liberty Mut. Ins. Co.*, 303 F. Supp. 2d 391, 398-99 (S.D.N.Y. 2004).

Here, the Trustee fails to demonstrate such purposeful activity by Ms. Mehta. Instead, the Trustee urges the Court to find personal jurisdiction over Ms. Mehta – a Belgian national who has never lived in the United States, never directly owned, managed or worked for any United States entity, and never directed or advertised any services or goods to the United States (Mehta Decl.[1] ¶¶ 12-15) – based on what boils down to two discrete transactions that Ms. Mehta was not personally involved in: (1) a New York real estate purchase; and (2) receipt of loan repayments from Delaware-based Synergies.

With respect to the New York real estate purchase, the Complaint admits that Ms. Mehta had no real personal involvement. Specifically, as set forth in the Complaint, Ajay Gandhi "outlined" steps to move Central Park Real Estate LLC beyond the reach of creditors by using Ms. Mehta to gift money to Ami Modi (Compl.[2] ¶ 289), Ajay Gandhi strategized with Howard Hoff regarding "various scenarios for selling Debtor Firestar Diamond, Inc. and Central Park Real Estate LLC, the record owner of Nirav Modi and Ami Modi's New York apartment, in order to put their assets beyond the reach of creditors, including by making Ms. Mehta the owner of a trust (*id.* ¶¶ 284, 288), and one of Nirav Modi's accountants provided potential options to minimize taxes on Central Park Real Estate LLC, including by having Ms. Mehta contribute cash to a trust (*id.* ¶ 354). Stated differently, Ajay Gandhi and Nirav Modi coopted[3] Ms. Mehta's

---

[1] Mehta Decl. refers to the September 11, 2020 Declaration of Purvi Modi a/k/a Purvi Mehta, filed as ECF No. 40.

[2] Compl. Refers to the February 25, 2020 Complaint of the Debtors and U.S. Affiliates, filed as ECF No. 1.

[3] The coopt of Ms. Mehta's name and without her personal involvement is a common theme in the Complaint, which also admits that Neeshal Modi and Mihir Bhansali frequently used Ms. Mehta's name to sign paperwork: (1) Neeshal Modi held "a power of attorney for his sister Purvi Mehta, in whose name the ill-gotten proceeds were held in bank accounts across the globe" (*id.* ¶ 5), and used that power to sign an agreement in Ms. Mehta's name to purchase a Hong Kong apartment (*id.* ¶ 311); (2) Mihir Bhansali "completed all of the paperwork" relating to the formation of British Virgin Island companies (which owned the Dubai Shadow Entities), "chose

name for their own use to facilitate the New York real estate purchase; Ms. Mehta was not personally involved and did not act purposefully.

With respect to the loan repayments from Delaware-based Synergies, the law does not support personal jurisdiction for such passive receipt of money from a United States entity. Rather, the "mere knowing receipt of funds in a bank account is insufficient to establish jurisdiction." *O'Toole v. MyPlace Dev. SP. Z O.O. (In re Sledziejowski)*, Nos. 13-br-22050-RDD, 13-br-22748-RDD, 15-br-08207-SHL, 15-br-08208-SHL, 2016 Bankr. LEXIS 3791, at *24 (Bankr. S.D.N.Y. Oct. 21, 2016). Moreover, the "unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts" with the forum. *Helicopteros Nacionales de Colombia, S.A., v. Hall*, 466 U.S. 408, 417 (1984). This is exactly the circumstances here: Nirav Modi unilaterally assigned his interest in the Synergies loan to Ms. Mehta (Compl. ¶ 283), and Synergies repaid the loan to Ms. Mehta (*id.* ¶ 299). Ms. Mehta did not act at all, let alone personally. There is simply no personal jurisdiction as a result of these discrete transactions.

### B. Ms. Mehta Does Not Own Any United States Entity, And Indirect, Passive Ownership Does Not Establish Specific Personal Jurisdiction.

The Trustee also appears to argue that Ms. Mehta allegedly owns Delaware-based Twin Fields, and therefore there is specific personal jurisdiction. This is neither the law nor what the Trustee alleged in his Complaint. Indirect, passive ownership is insufficient to establish personal jurisdiction. *See Hinrichsen v. Hinrichsen Found.*, No. 17-cv-1152, 2018 U.S. Dist. LEXIS 4585, at *14 (S.D.N.Y. Jan. 9, 2018) (explaining that "the focus of the specific jurisdiction

---

all of these entities' names[,]" and "declared" Ms. Mehta as one of the companies' two beneficial owners (*id.* ¶¶ 75-77); and (3) Mihir Bhansali directed Aditya Nanivati to name Ms. Mehta an authorized user on Hong Kong-based Firestar Diamond Ltd.'s Standard Charted Bank account, but, at the same time, instructed that the physical device necessary to approve transfers from the account be sent to Hermant Bhatt instead of Ms. Mehta (*id.* ¶ 111).

inquiry is on the quality of the New York contacts . . . Here, considering the totality of the
circumstances, the quality of this New York contact—which amounts to the fact of a passive and
indirect ownership interest—is low" (internal citation omitted)).

But indirect, passive ownership is exactly what the Trustee alleged:

- ***Mihir Bhansali "completed all of the paperwork" relating to the formation of British
  Virgin Island companies*** (which owned the Dubai Shadow Entities), "chose all of these
  entities' names[,]" ***and "declared" Ms. Mehta as one of the companies' two beneficial
  owners*** (Compl. ¶¶ 75-77 (emphasis added));

- "On March 16, 2010, Twin Fields Investments Ltd. ("Twin Fields") was incorporated
  in Delaware. At all relevant times, ***Purvi Mehta and Deepak Modi indirectly owned***
  100 % of the equity in Twin Fields ***through two layers of BVI shell companies***,
  including Link High International ("Link High")" (*id.* ¶ 169 (emphasis added)); and

- "***Mihir Bhansali and Nehal Modi managed and controlled Twin Fields*** and BBB
  Group throughout the Relevant Period as the *de Jure* or *de facto* directors of Twin
  Fields and BBB Group, respectively" (*id.* ¶ 172 (emphasis added)).

Stated differently, Twin Fields was managed and controlled by Mihir Bhansali and Nehal
Modi, Twin Fields was owned by two layers of BVI companies, Mihir Bhansali formed those
BVI companies, and Mihir Bhansali unilaterally "declared" Ms. Mehta as one of two beneficial
owners of the BVI companies. There can be no personal jurisdiction based on these facts.

### C.    Ms. Mehta Did Not Target the United States or the Debtors and U.S. Affiliates.

In another overbroad reading of the law, the Trustee urges that Ms. Mehta's conduct
targeted the United States and harmed the Debtors and U.S. Affiliates, thus subjecting her to
personal jurisdiction in this Court under the "effects" test. This is wrong. Court upon court in
this Circuit has cautioned that the effects test is limited, and "requires factual allegations
demonstrating that [defendant]'s suit-related conduct was expressly aimed at [the forum], in
addition to having an effect here." *Gordon v. Invisible Children, Inc.*, No. 14-cv-4122, 2015
U.S. Dist. LEXIS 129047, at *19 (S.D.N.Y. Sep. 24, 2015) (quotations and citation omitted); *see*

4

*also In re Parmalat Sec. Litig.*, 376 F. Supp. 2d 449, 454-55 (S.D.N.Y. 2005) ("It long has been recognized that effects in the United States attributable to conduct abroad may be sufficient predicate for the exercise of personal jurisdiction over the actor. But this principle is not without limits."). Mere foreseeability is not enough. *O'Neill v. Asat Tr. Reg. (In re Terrorist Attacks on September 11, 2001 (Asat Tr. Reg.))*, 714 F.3d 659, 674 (2d Cir. 2013) (holding "the fact that harm in the forum is foreseeable, however, is insufficient for the purpose of establishing specific personal jurisdiction over a defendant").

This limitation exists for good reason. Indeed, "the Second Circuit has cautioned that the effects test should 'be applied with caution, particularly in the international context[,]'" in order to avoid plaintiffs from gaining "expansive jurisdiction over foreign defendants on the basis of a few extremely vague allegations." *See In re Publ'n Paper Antitrust Litig.*, No. 3:04 MD 1631, 2005 U.S. Dist. LEXIS 19896, at *21-22 (D. Conn. Sep. 6, 2005) (quoting *Leasco Data Processing Equipment Corp. v. Maxwell*, 468 F.2d 1326, 1341 (2d Cir. 1972)); *see also In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 346, 398 (S.D.N.Y. 2005) (noting that the effects test must ensure "at a minimum" that the out-of-forum conduct meets the "important requirement[s]" set forth in the Restatement of Foreign Relations (internal quotations and citation omitted)).

Here, given Ms. Mehta's purported contacts with the United States amount to nothing more than two discrete transactions in which she was not personally involved, and indirect ownership of a Delaware entity via two layers of BVI companies, it defies credulity that Ms. Mehta aimed conduct at the United States or knew that her attenuated involvement could cause effects in the United States. There is no personal jurisdiction under the effects test.

### D.    Co-conspirator Jurisdiction Cannot Save The Trustee's Infirm Allegations.

The Trustee next tries to invoke conspiracy jurisdiction to save his claims. This attempt fails. In addition to alleging the existence of a conspiracy, the conspiracy theory of jurisdiction

requires a plaintiff to allege that the defendant at issue "participated" in the conspiracy, and that

the defendant's co-conspirators committed overt acts in furtherance of the conspiracy that had

sufficient contacts with the forum.  *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68,

86-87 (2d Cir. 2018).  Conspiracy jurisdiction should be applied cautiously, in recognition of the

fact that due process requires that "each defendant himself or herself" create contacts with the

forum.  *See In re Libor-Based Fin. Instruments Antitrust Litig.*, No. 11-mdl-2262, 2019 U.S.

Dist. LEXIS 49700, at *29 (S.D.N.Y. Mar. 25, 2019).

Here, the Complaint does not allege such participation or overt acts in furtherance of the

conspiracy directed to the United States.  The Complaint's failing in this regard is highlighted by

the transactions the Trustee chooses to cite in support of his conspiracy jurisdiction argument,

namely Ms. Mehta's (1) alleged ownership and control of Dubai-based Fine Classic, (2) indirect

ownership of foreign shadow or shell companies, (3) receipt of shareholder dividends from

overseas companies, (4) investment in India-based FIPL, (5) receipt of money in her overseas

personal bank account, (5) purchase of an apartment in Hong Kong, and (6) purported

transaction to assist in a New York real estate transaction.  *See* Opp. Br.[4] p. 85 of 96.  Save the

New York real estate transaction, all of these allegations involve foreign entities or transactions,

and are not directed at the United States.  And the New York real estate transaction appears to be

an isolated residential apartment purchase, not an overt act in furtherance of an alleged

international bank fraud.  The Trustee's conspiracy jurisdiction argument fails.

### E.    The Trustee's Claims Of Personal Jurisdiction Under the CPLR Are Equally Flawed.

The Trustee also claims personal jurisdiction over Ms. Mehta under New York's Civil

---

[4] Opp. Br. refers to the December 4, 2020 Opposition Brief by the Debtors and U.S. Affiliates, filed as ECF No. 60.

Practice Law and Rules ("CPLR") 302(a)(1) and (a)(4), arguing that the Court may exercise

personal jurisdiction over a foreign defendant who (1) "transacted business in New York" that is

"directly related" to the instant dispute" (Opp. Br. p. 90 of 96), and (2) who owned, used or

possessed New York real estate (*id*. p. 91 of 96).   This argument is also flawed.

Under CPLR 302(a)(1), it is well settled that to demonstrate a transaction of business, a

plaintiff must show "that each foreign defendant engaged in 'some act by which the defendant

***purposefully*** avail[ed] itself of the privilege of conducting activities within [New York][,]'"

which "'occurs when the non-domiciliary,' through volitional acts, '***seeks out and initiates***

***contact with New York, solicits business in New York, and establishes a continuing***

***relationship***.'"   *Hau Yin To v. HSBC Holdings, PLC*, 700 F. App'x 66, 67 (2d Cir. 2017)

(quoting *Ehrenfeld v. Bin Mahfouz*, 9 N.Y.3d 501, 508, 881 N.E.2d 830, 851 N.Y.S.2d 381

(2007) and *D&R Glob, Selections, S.L. v. Bodega Olegario Falcon Pineiro*, 29 N.Y.3d 292, 298,

56 N.Y.S.3d 488, 78 N.E.3d 1172 (2017)) (emphasis added).   "At a minimum, the defendant

must, on his or her own initiative . . . project[] himself or herself into th[e] state to engage in a

sustained and substantial transaction of business."   *Id*. at 67 (quotations and citation omitted).   As

noted above, Ms. Mehta did not purposefully act at all, and she certainly did not seek out or

initiate contact, solicit business, or establish a continuing relationship with the United States.

Rather, other parties, namely Nirav Modi, Ajay Ghandi, Mihir Bhansali and Nehal Modi, appear

to have engaged in acts with some connection to the United States, and used Ms. Mehta's name

to further their acts.   This does not support personal jurisdiction under the law.

Under CPLR 302(a)(1), a court may exercise jurisdiction arising out of a defendant's

ownership or possession of real property in the forum so long as there is "'a relationship between

the property and the cause of action sued upon.'"   *Jonas v. Estate of Leven*, 116 F. Supp. 3d 314,

333 (S.D.N.Y. 2015) (quoting *Lancaster v. Colonial Motor Freight Line, Inc.*, 177 A.D.2d 152,

159, 581 N.Y.S.2d 283 (1st Dept. 1992)).  Here, the Trustee argues that Ms. Mehta "facilitated"

the purchase of a New York residential apartment.  *See* Opp. Br. p. 91 of 96.  This word is

telling.  Indeed, by the Complaint's own allegations, it does not appear that Ms. Mehta ever

owned or possessed the apartment, as is required by New York law.  Rather, it appears that Ms.

Mehta entered into a contract to purchase the apartment (Compl. ¶ 315), but then assigned her

interest under the contract to CPS50P LLC (*id*. ¶ 332).  Moreover, the Complaint is clear that

Nirav and Ami Modi possessed the apartment as their personal residence, not Ms. Mehta.  *Id*. at

¶ 315.  At best, Ms. Mehta was a link in a chain of events that led to other entities and

individuals owning and possessing a New York apartment.  This does not meet the requirements

of CPLR 302(a)(1).  *See Tamam v. Fransabank SAL*, 677 F. Supp. 2d 720, 729 (S.D.N.Y. 2010)

(explaining that "a defendant may not be subject to personal jurisdiction under CPLR

§ 302(a)(1) simply because [its] contact with New York was a link in a chain of events giving

rise to the cause of action" (quotations and citation omitted)).

### F.    The Exercise Of Jurisdiction Over Ms. Mehta Would Cause Her Substantial Burden.

The Trustee glosses over Ms. Mehta's arguments that she would suffer a substantial

burden if required to defend herself in the United States, and instead repeats his rhetoric that Ms.

Mehta purportedly transacted business in the United States, owned property in the United States

and should have expected to be hailed into a United States court.  As noted above, these

arguments are false.  But, even accepting these arguments as true, they are weak at best, thus

requiring the Trustee to make a greater showing of reasonableness.  *Tamam*, 677 F. Supp. 2d at

731 ("The weaker plaintiff's showing of minimum contacts, the more emphasis the court should

place on the reasonableness inquiry.").  The Trustee does not do so.

Indeed, the fact that "technological advances" (Opp. Br. p. 92 of 96) exist to alleviate some of the burdens associated with litigating a case overseas does not change the fact that: (1) Ms. Mehta has not set foot in the United States in over five years; (2) all the acts that the Trustee seeks to ascribe to Ms. Mehta occurred abroad, as Ms. Mehta was at all relevant times located in Hong Kong or Belgium; and (3) all of the evidence and witnesses Ms. Mehta would rely upon are overseas. *See* Mehta Decl. ¶¶ 5-6, 9, 11. Moreover, as Ms. Mehta notes in her Declaration, she: (1) does not and has never lived in the United States, (2) does not directly own any United States entities, (3) does not control, manage or oversee any United States entities or businesses, (4) does not work in the United States or directly offer or advertise services or goods to the United States marketplace or its citizens, and (5) has not directed acts towards the United States with any understanding or expectation that those acts would subject her to jurisdiction in the United States. *Id.* ¶¶ 12-15. In other words, Ms. Mehta has limited to no resources or contacts to defend herself in the United States. Under the law, it is not reasonable to subject Ms. Mehta to such a substantial burden.

### G.    No Jurisdictional Discovery Is Warranted.

In a last ditch effort to convince this Court that this action should continue as against Ms. Mehta, the Trustee argues that jurisdictional discovery is warranted even if he "has fallen short of a prima facie showing of personal jurisdiction[.]" *See* Opp Br. p. 94 of 96. This is not true. "[D]iscovery is not warranted where plaintiff has failed to make a prima facie showing of jurisdiction." *Tamam*, 677 F. Supp. 2d at 733; *see also Ins. Co. of State of Pa. v. Centaur Ins. Co.*, 590 F. Supp. 1187, 1189 (S.D.N.Y. 1984) ("Since not even a prima facie showing of jurisdiction has been made, there is no purpose in further escalating the costs of this lawsuit by granting leave to conduct jurisdictional discovery."). Because the Trustee has not made a prima facie showing of personal jurisdiction, no jurisdictional discovery is warranted.

## II.    THE TRUSTEE IMPROPERLY ATTEMPTS REWRITE THE COMPLAINT; THE COMPLAINT STILL FAILS TO STATE A CLAIM AGAINST MS. MEHTA

In response to Ms. Mehta's moving brief, which exposed the Complaint's stunning lack of facts – versus conclusory allegations – tying her to the alleged conspiracy, the Trustee attempts to rewrite the Complaint by adding self-serving editorial explanations, tenuously connecting distinct events to simulate cause and effect, and making speculative leaps of logic to infer wrongdoing where none exists.  The Court should reject the Trustee's attempts for several reasons.

First, the Federal Rules do not permit a litigant to effectively rewrite or amend its complaint through an opposition brief.  *Dawson v. Bumble & Bumble*, 246 F. Supp. 2d 301, 316 (S.D.N.Y. 2003); *see also Anderson v. Aset Corp.*, 329 F. Supp. 2d 380, 383 (W.D.N.Y. 2004) ("the complaint says what it says, and a memorandum of law is not a proper vehicle for rewriting or amending the complaint").

Second, the Trustee's subjective characterizations of the Complaint are inconsistent with, and often belied by, the Complaint's own allegations.  For example, the Trustee cites Paragraphs 304, 314 and 453(d) for the proposition that Ms. Mehta "directly owned and controlled Fine Classic, the Shadow Entity that acted as the 'profit center' for the circular Shadow Entity transactions[.]"  *See* Opp Br. p. 85 of 96 (internal citations omitted).  In other words, the Trustee tries to paint Ms. Mehta as the mastermind of a shadow entity at the "center" of the alleged fraud.  But this is not what the Complaint says.  Rather, Fine Classic is only mentioned in ***eight*** of the Complaint's 866 paragraphs.  *See* Compl. ¶¶ 49, 71, 178, 183, 298, 304, 314, 453(d).  Surely, if Fine Classic actually were central to the alleged fraud, it would feature more heavily in the Complaint.  Likewise, the Complaint only makes a ***single*** conclusory allegation that Ms. Mehta "controlled" Fine Classic (*id.* ¶ 453(d)), but, at the same time, makes numerous other,

more specific, allegations that Nirav Modi, Mihir Bhansali, Ajay Ghandi, and certain third-

parties controlled and oversaw Fine Classic:

- "During the Relevant Period, **Nirav Modi, Mihir Bhansali, and Ajay Gandhi** exercised direct oversight and control over numerous transactions between the U.S. Entities and Shadow Entities" (*id.* ¶ 124)(emphasis added));

- "According to **Kurian Mathews, Shyam Wadhwa, and Nilesh Mistry**, who oversaw Fine Classic's day-to-day finances and operations . . . " (*id.* ¶ 304 (emphasis added));

- "**[Satyendra] Shukla, [Kurian] Mathews, and [Saju] Poulose** also exercised broad oversight over the Dubai-based Shadow Entities' operations and finances" (*id.* ¶ 60 (emphasis added)); and

- "**Mihir Bhansali** required at least two of **Kurian Mathews, Satyendra Shukla, and Saju Poulose** to be present in Dubai at all times to monitor Shadow Entity operations" (*id.* ¶ 113 (emphasis added)).

One would think that if Ms. Mehta truly controlled Fine Classic, her name would appear

alongside these actors.  Moreover, the Complaint admits that Ms. Mehta was simply a

shareholder of Fine Classic, not a director or manager.  *Id*. ¶¶ 178, 298.

Also for example, the Trustee cites Paragraphs 281-83, 300, 303-07, 320-21, 342 and

344-45 for the proposition that Ms. Mehta essentially financed a "restructuring" of the Firestar

Entities' organizational and capital structure.  But these Paragraphs demonstrate that Ms. Mehta

did no such thing.  Rather, these Paragraphs contain reference to random transactions spanning a

seven-year period and often not involving Ms. Mehta at all:

- "Between October 20, 2010 and March 11, 2011, **Nirav Modi personally transferred a total of $14,575,000 to Synergies**" (*id.* ¶ 281 (emphasis added));

- On October 1, 2016, . . . **Mihir Bhansali and Ajay Gandhi executed a stock certificate** reflecting FHL as the holder of 10,000 shares in Synergies" (*id.* ¶ 282 (emphasis added));

- "In December 2016, **Nirav Modi assigned** to Purvi Mehta his interest in the $14,575,000 Synergies "loan" under an assignment agreement retroactively dated as of April 1, 2012. This assignment was described as **a gift** in numerous emails" (*id.* ¶ 283 (emphasis added));

- "To secure the additional funding needed for these transactions, ***Nirav Modi and his co-conspirators obtained 150 LOUs*** totaling over $1 billion between February and May 2017" (*id.* ¶ 300 (emphasis added));

- "***Mayank Mehta transferred the $30 million received from Pacific*** in November 2013 to Purvi Mehta ***as a gift***" (*id.* ¶ 303 (emphasis added));

- "Between December 14, 2016 and January 12, 2017, ***Fine Classic transferred a total of $25,700,500*** to Purvi Mehta's ***Mauritius*** account" (*id.* ¶ 304 (emphasis added));

- ". . . by February 2017, $45 million in purported ***new investments had been indirectly made*** by Purvi Mehta ***in FIPL*** using the proceeds of the Bank Fraud" (*id.* ¶ 307 (emphasis added));

- "On July 13, 2017, . . . ***Synergies wired . . . $14,575,000*** to Purvi Mehta. The $14,575,000 payment to Purvi Mehta (the "Synergies-Mehta Transfer") was made under the pretext of ***paying off the loan Modi had assigned*** to Mehta" (*id.* ¶ 320 (emphasis added));

- "On July 14, 2017, ***FHL wired another $20 million*** to Purvi Mehta ***for redemption of her non-voting preference shares*** in FHL" (*id.* ¶ 321 (emphasis added));

- "On September 29, 2017 ***FHL wired $8,860,000*** to Purvi Mehta ***as a 'loan repayment'***" (*id.* ¶ 342 (emphasis added)); and

- On October 18, 2017, ***FHL wired $30,000,000*** to Purvi Mehta ***to redeem non-voting preference shares***. . . . On November 10, 2017, ***FHL wired $15,000,000*** to Purvi Mehta t***o redeem nonvoting preference shares***" (*id.* ¶¶ 344-45 (emphasis added)).

If Ms. Mehta seriously was the architect of the Firestar Entities' alleged fraudulent artifice and reorganization, then the Trustee would not highlight disconnected transactions initiated by other individuals or entities. Stated differently, the Trustee's attempts to connect Ms. Mehta to the alleged conspiracy still fail, despite his attempts to rewrite same in his opposition brief.

## III.   PNB — NOT THE DEBTORS OR U.S. AFFILIATES — WAS THE INTENDED TARGET OF THE ALLEGED CONSPIRACY

The Trustee puts little effort into rebutting Ms. Mehta's substantial arguments that the Complaint alleges injury to PNB — not the Debtors or U.S. Affiliates — occurring overseas in

India — not domestically.  Instead, the Trustee baldly claims the Debtors and U.S. Affiliates are "entitled" to damages resulting from any of the RICO predicate acts (Opp. Br. p. 36 of 96), compiles a laundry list of purported direct injuries — which are actually nothing more than ancillary effects of the foreign fraud directed to PNB — and only mentions PNB in a throwaway line, stating that he will not respond to the PNB arguments because he believes them sufficiently addressed in a parallel adversary proceeding, and it "does not matter who the conspirators intended to harm."  *See* Opp. Br. p. 39 of 96.  This is wrong.

The law is clear that a plaintiff seeking to establish standing must show "that they were the intended targets of the RICO violations, and that any alleged RICO injury must have been the 'preconceived purpose' of the RICO activities."  *BCCI Holdings (Luxembourg) v. Pharaon*, 43 F. Supp. 2d 359, 365 (S.D.N.Y. 1999) (internal quotations and citations omitted); *see also In re Am. Exp. Co. S'holder Litig.*, 39 F.3d 395, 400 (2d Cir. 1994) (affirming dismissal of RICO claims because "[t]he injuries alleged thus were neither the 'preconceived purpose' nor the 'specifically-intended consequence' of the RICO defendants' acts.").  Here, it is clear that the Debtors and U.S. Affiliates were not the intended targets of any purportedly unlawful activities, but were rather minor players in an international flow of funds that the Trustee characterizes as an international bank fraud.  The Trustee cannot – and does not – seriously refute this fact.

## IV.    THE TRUSTEE'S IMPUTATION ARGUMENTS ARE CONFOUNDING AND PLAIN WRONG

The Trustee attempts to sidestep Ms. Mehta's arguments that *in pari delicto* and the *Wagoner* rule bar Debtors and U.S. Affiliates' claims by presenting various unclear, circuitous and, frankly, baffling arguments that rely more on verbosity than substance.  Indeed, the Trustee's eight-page section on this point reads more like a law review article, citing out of jurisdiction and archaic case law, and urging a novel reading of the law.  The Court should reject

the Trustee's attempts in their entirety.

**A.    Imputation Is Not Necessary To Find The Debtors And U.S. Affiliates Liable.**

The Trustee, apparently misunderstanding Ms. Mehta's moving argument, boldly

proclaims that she may not invoke *in pari delicto* or the Wagoner rule because the alleged

misdeeds of the Debtors and U.S. Affiliates' management cannot be imputed to the companies.

But this is not Ms. Mehta's argument.  Ms. Mehta does not contend that the Debtors and U.S.

Affiliates are only liable if the conduct of their management is imputed to them.  Rather, Ms.

Mehta alleges that the Debtors and U.S. Affiliates themselves were integral co-conspirators in

the alleged fraud.  Indeed, the Complaint itself includes an entire section titled "The Debtors'

and U.S. Affiliates' Role in the Bank Fraud," and explains that they were essentially sham

entities used to funnel millions of dollars and engage in circular transactions to further the

alleged fraud.  *See* Compl. ¶¶ 90, 92.  Imputation is irrelevant on such facts.

**B.    Ms. Mehta May Invoke *In Pari Delicto* Or The Wagoner Rule Regardless Of
        Her Alleged Wrongdoing.**

The Trustee next advances the backwards argument that because "imputation operates

only to protect innocent third parties" (*see* Opp. Br. p. 58 of 96), and because Ms. Mehta is

purportedly not innocent, she cannot rely on *in pari delicto* or the *Wagoner* rule to impute the

bad acts of the Debtors and U.S. Affiliates' management to the companies.   This argument is

wrong.  *In pari delicto* "mandates that the courts will not intercede to resolve a dispute between

two wrongdoers." *In re Optimal U.S. Litig.*, 813 F. Supp. 2d 383, 395 (S.D.N.Y. 2011) (quoting

*Kirschner v. KPMG LLP*, 912 N.Y.S.2d 512, 517, 938 N.E.2d 941, 950 (2010)).  "The *Wagoner*

rule is an extension of this doctrine, created by the Second Circuit Court of Appeals[.]" *Post-*

*Effective Date Comm. of the Estate of E. End Dev., LLC v. Amalgamated Bank (In re E. End*

*Dev., LLC)*, 555 B.R. 138, 147 (Bankr. E.D.N.Y. 2016).  Both are frequently applied in the

bankruptcy context to bar a trustee from suing third parties for fraud in which the debtor

participated. *In re Granite Partners,* 194 B.R. 318, 328 (S.D.N.Y. 1996); *In re E. End Dev.,*

*LLC*, 555 B.R. at 147. If the Trustee's argument were credited, these doctrines would have no

place in our jurisprudence, as no wrongdoer could ever invoke them in defense. This cannot be

— and is not — the law.

### C.    Ms. Mehta Is Not An Agent Of The Debtors Or U.S. Affiliates, Nor Did She Conspire With Their Agents.

To the extent the Trustee is arguing that *in pari delicto* and the Wagoner Rule do not

apply because Ms. Mehta is an agent of the Debtors and U.S. Affiliates, or conspired with agents

of the Debtors and U.S. Affiliates, and thus imputation "does not furnish a basis on which an

agent may defend against a claim by the principal" (*see* Opp Br. p. 58 of 96), this argument

similarly fails.

First, the Complaint is devoid of allegations that Ms. Mehta had a connection to, let alone

was an agent of, the Debtors or U.S. Affiliates. Rather, the Complaint makes speculative

assertions that Ms. Mehta was the ultimate partial owner of foreign companies on the margins of

the alleged fraud, and participated in random transactions with other individuals or entities. *See*

Compl. ¶¶ 2, 57, 75-78, 283, 298, 303-06, 308, 312-18, 321-46, 362, 395. Accordingly, this is

not a case where an agent who perpetrated the fraud is attempting to skirt liability from the

principal corporation, and the Trustee's' overblown citations to faithless fiduciaries is inapposite.

Second, the Complaint is similarly devoid of allegations that Ms. Mehta conspired with

Nirav Modi, Mihir Bhansali or Ajay Gandhi in connection with their management of the Debtors

or U.S. Affiliates. Indeed, the Complaint devotes two entire sections of the Complaint to the

"Debtors' and U.S. Affiliates' Role in the Bank Fraud" and "Involvement of U.S. Entities'

Directors and Officers in the Bank Fraud," but only mentions Ms. Mehta twice in these sections

for an unrelated assertion about a Hong Kong entity's bank account. *See* Compl. ¶ 111. On this record, there is simply no basis from which to conclude that Ms. Mehta "transact[ed] with an agent [of the Debtors or U.S. Affiliates] in bad faith." *See* Opp. Br. p. 60 of 96.

Third, even if the Complaint contained these allegations, the Trustee's legal citations do not say what the Trustee says they do, and are questionable in terms of their persuasive value. For example, the Trustee primarily relies upon *Kirschner v. KPMG LLP*, 912 N.Y.S.2d 512, 938 N.E.2d 941 (2010), for the proposition that "imputation operates only to protect innocent third parties." Opp. Br. pp. 59-61 of 96. But *Kirschner* contains no discussion about innocent versus complicit "third parties." Rather, *Kirschner* discusses whether there is a meaningful difference between innocent stakeholders of corporate fraudsters and innocent stakeholders of a corporation's outside professionals, and whether, "to deter third-party professional (and, in particular, auditor) misconduct and negligence[,]" "innocent stakeholders of the corporation's outside professionals [should be] held responsible for the sins of their errant agents while the innocent stakeholders of the corporation itself are not charged with knowledge of their wrongdoing agents." 912 N.Y.S.2d at 525. The *Kirschner* Court concluded "no," as "altering our precedent to expand remedies for these or similarly situated plaintiffs would [not] produce a meaningful additional deterrent to professional misconduct or malpractice." *Id*. This public policy query does not apply here.

The Trustee also cites a 1954 Supreme Court case, *Cornale v. Stewart Stamping Corp.*, 129 N.Y.S.2d 808 (Sup. Ct. 1954), for the same proposition. *See* Opp. Br. p. 59 of 96. Notably, the concept of imputation, and the doctrines of *in pari delicto* and the *Wagoner* rule, are absent from this case. Instead, this case — involving an employee's theft of confidential information and a third party's participation therein — stands for the straight forward and uncontroversial

principle that an employee and his co-conspirators may not steal the employer's confidential

information and "reap the fruits" of such misconduct. Where such conduct occurs, a "court of

equity will stamp such a fiduciary as a trustee and make him account for the profits." *Id*. at 814.

This case simply does not support the Trustee's imputation arguments.

The Trustee further cites a 1940 case from the Fourth Department, *Smith v. John*

*Hancock Mut. Life Ins. Co.*, 23 N.Y.S.2d 331 (4th Dept. 1940), for the same proposition. *See*

Opp Br. pp. 59-60 of 96. However, *Smith* does not involve a third party's attempt to defend

against claims under the doctrines of *in pari delicto* or the *Wagoner* rule. Rather, *Smith* involves

a third party's attempt to recover from an insurance company notwithstanding her knowledge

that the company's agent had concealed knowledge from the company. *Id*. at 333. On these

facts, the *Smith* Court explained that third parties may not recover against a principal where they

had reason to know of the agent's misconduct. *Id*. Ms. Mehta does not seek any affirmative

recovery and this case does not apply.[5]

---

[5] The Trustee's remaining citations are similarly inapposite and unpersuasive. *Rosalie Estates, Inc. v. Colonia Ins. Co.*, 643 N.Y.S.2d 59 (1st Dept. 1996) involved an insurance company's knowing failure to deliver a demand for proof of loss to the insured, and failure to inform the insured's adjuster of this failure. On these limited facts, the *Rosalie* Court questioned whether the insurance company was "entitled to treat [the adjuster] as [the insured's] agent for the purpose of service of the demand" and noted that the "rule which imputes an agent's knowledge to his or her principal is intended to protect those who exercise good faith and, as a result, will not apply in favor of one acquainted with circumstances plainly indicating that the agent would not advise his principal." *Id*. (internal quotations and citation omitted). Because the insurance company knew the insured's adjuster did not have reason to know the insured hadn't been served, the Court refused to grant summary judgment in favor of the insurance company. *Mauro v. McCrindle*, 419 N.Y.S.2d 710, 711-12 (2d Dept. 1979) involved a defendant property owner's claim for indemnification from the employee of a general contractor who injured the plaintiff. The issue in the case was whether the defendant's indemnification claim was properly brought against the employee, versus the general contractor, and whether allowing the claim would "significantly increase[] the risk of exposure to individuals and is inconsistent with principals [sic] of absolute liability." *Id*. at 715. The *Mauro* Court found in the negative, explaining that the "imputation of absolute liability, insofar as it exists, continues to be a doctrine intended to benefit the innocent victim, rather than a mechanism for releasing the primary tort-feasor from

### D.        **The Adverse Interest Exception Does Not Apply.**

The Trustee next references the adverse interest exception to imputation, again citing

cases for principles that they do not espouse.  Like his previous arguments, the Trustee's adverse

interest exception argument should be similarly rejected.  "The adverse interest exception is

extremely narrow and should only be applied in 'cases of outright theft or looting or

embezzlement, where the fraud is committed against a corporation rather than on its behalf.'"

*Flaxer v. Gifford (In re Lehr Constr. Corp.)*, 528 B.R. 598, 609-10 (Bankr. S.D.N.Y. 2015)

(quoting *Picard v. JPMorgan Chase Bank & Co. (In re Bernard L. Madoff Inv. Sec. LLC)*, 721

F.3d 54, 64 (2d Cir. 2013)).  Where it is not possible to separate the corporation from its

fraudulent management, the adverse interest exception cannot apply.  *See In re Bernard L.*

*Madoff Inv. Sec. LLC*, 721 F.3d at 65.  This is the exact circumstance here, where the Debtors

and U.S. Affiliates were created to perpetrate the alleged fraud; they cannot be separated from

their fraudulent management.  *See* Compl. ¶¶ 90-104.  The adverse interest exception does not

apply.

### E.        **The Trustee's Sword and Shield Legal Argument Should Be Rejected.**

In yet another infirm legal argument, the Trustee offers the circular argument that Ms.

Mehta may not rely on agency-based imputation principles to hold the Debtors and U.S.

Affiliates liable for their management's misdeeds, but the Trustee may do so to impute the

moving defendant's conduct to the U.S. Entities for the purposes of the Trustee's actual

fraudulent transfer claims.  *See* Opp. Br. at pp. 57-62 of 96.   Stated differently, the Trustee

offers the same legal argument as a sword and a shield, eschewing its principles when they

would benefit the moving defendants, and invoking its protections when it suits him.  This is not

---

culpability." *Id*.  Because the employee was the primary tortfeasor, the indemnification claim
was proper. *Id*.

how the law works.

**V.      THE RICO CLAIMS ARE TIME-BARRED; THE TRUSTEE'S IMPUTATION
         THEORIES DO NOT APPLY AND HE MISSTATES THE GOVERNING LAW**

The Trustee argues that his RICO claims are timely, claiming that because "none of the
conspirators' knowledge with respect to the transactions that injured the Debtors can be imputed,
the Debtors did not discover any of the injuries underlying the Trustee's claims until the Trustee
was appointed in June 2018."  Opp. Br. pp. 68-69 of 96.  This is yet another confounding and
erroneous imputation argument.  There is no basis from which to conclude — and the Trustee
cites no law in support — that the Trustee's imputation theories discussed above (*see* Section
IV., *supra*), even if they were the law, apply in the statute of limitations context.  Indeed, this
fact is demonstrated by the Trustee's various alternative citations to cases for the proposition that
"the statute of limitations is tolled for as long as a corporate plaintiff is controlled by the alleged
wrongdoers" — i.e., while the wrongdoing agent's conduct is imputed to the company.  *See* Opp.
Br. pp. 69 of 96.

The Trustee's other statute of limitations arguments misstate the basic law.  Under the
adverse domination theory of equitably tolling, the statute of limitations "is tolled ***as to the
controlling wrongdoers*** during the period of their domination and control."  *Meridien Int'l Bank
v. Liberia*, 23 F. Supp. 2d 439, 448 (S.D.N.Y. 1998) (quotations and citation omitted, emphasis
added); *see also Armstrong v. McAlpin*, 699 F.2d 79, 87 (2d Cir. 1983) ("where an action is
brought on behalf of an entity which has been defrauded by persons who completely dominated
and controlled it, the statute of limitations is tolled ***as to the controlling wrongdoers*** during the
period of their domination and control" (emphasis added)).  Here, the Complaint does not allege
that Ms. Mehta was an owner, manager, employee or agent of the Debtors or U.S. Affiliates.
The Trustee does not deny this fact in his opposition brief, and instead readily admits that the

Complaint's allegations instead state that "Nirav Modi, Mihir Bhansali, and Ajay Ghandi dominated and controlled the Debtors[.]" *See* Opp. Br. at p. 69 of 96. Therefore, the Trustee cannot skirt Ms. Mehta's statute of limitations argument by conflating her with the Debtors and U.S. Affiliates' control persons.

The Trustee's citation to Section 108 of the Bankruptcy Code is also erroneous. Section 108 provides that "[i]f applicable nonbankruptcy law . . . fixes a period within which the debtor may commence an action, and such period has not expired before the date of the filing of the petition, the trustee may commence such action . . . two years after the order for relief." Here, the Complaint alleges a RICO conspiracy beginning "no later than 2010[.]" Compl. ¶ 62. Given RICO has a four-year statute of limitations (*World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*, 530 F. Supp. 2d 486, 530 (S.D.N.Y. 2007)), the Debtors and U.S. Affiliates should have brought their RICO claims against Ms. Mehta in 2014 — long before this bankruptcy action was filed and long before Section 108 could apply. Section 108 cannot revive already time-barred claims.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint against Ms. Mehta in its entirety.

Dated: June 24, 2021
  New York, New York

        DUANE MORRIS LLP

       By: /s/ Frederick D. Hyman
         Frederick D. Hyman, Esq.
         Mauro M. Wolfe, Esq.
         Evangelos Michailidis, Esq.
         Sarah Fehm Stewart, Esq.
         1540 Broadway
         New York, NY 10036
         Tel: (212) 692-1063
         Fax: (212) 208-4521
         Email: RHyman@duanemorris.com
         *Attorneys for Defendant Purvi Mehta*