**Hearing Date and Time:** September 28, 2021 at 10:00 a.m. EDT
**Objection Deadline:** September 21, 2021

JENNER & BLOCK LLP
Angela Allen (admitted *pro hac vice*)
William A. Williams (admitted *pro hac vice*)
353 North Clark Street
Chicago, Illinois 60654
(312) 222-9350

Carl Wedoff
919 Third Avenue
New York, New York 10022
(212) 891-1600

*Counsel for the Plaintiff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| FIRESTAR DIAMOND, INC., *et al.* | No. 18-10509 (SHL) |
| Debtors. | (Jointly Administered) |
| RICHARD LEVIN, Chapter 11 Trustee of FIRESTAR DIAMOND, INC., FANTASY, INC., and OLD AJ, INC. f/k/a A. JAFFE, INC., <br><br>     Plaintiff, <br>v. <br><br>AMI JAVERI (A/K/A AMI MODI); PURVI MEHTA (A/K/A PURVI MODI); NEHAL MODI; NEESHAL MODI; CENTRAL PARK REAL ESTATE, LLC; CENTRAL PARK SOUTH 50 PROPERTIES, LLC; TRIDENT TRUST COMPANY (SOUTH DAKOTA) INC., solely as Trustee of the ITHACA TRUST; TWIN FIELDS INVESTMENTS LTD.; AURAGEM COMPANY LTD.; BRILLIANT DIAMONDS LTD.; ETERNAL DIAMONDS CORPORATION LTD.; FANCY CREATIONS COMPANY LTD.; HAMILTON PRECIOUS TRADERS LTD.; SINO TRADERS LTD.; SUNSHINE GEMS LTD.; UNIQUE DIAMOND AND JEWELLERY FZC; WORLD DIAMOND DISTRIBUTION FZE; VISTA JEWELRY FZE; EMPIRE GEMS FZE; UNIVERSAL FINE JEWELRY FZE; DIAGEMS FZC; TRI COLOR GEMS FZE; PACIFIC DIAMONDS FZE; HIMALAYAN TRADERS FZE; UNITY TRADING FZE; FINE CLASSIC FZE; DG BROTHERS FZE, <br><br>     Defendants. | Adv. Proc. No. 20-1054 |

**NOTICE OF TRUSTEE'S MOTION FOR DEFAULT JUDGMENT
AGAINST DEFENDANTS AURAGEM COMPANY LTD.,
BRILLIANT DIAMONDS LTD., ETERNAL DIAMONDS
<u>CORPORATION LTD., AND TWIN FIELDS INVESTMENTS LTD.</u>**

On August 31, 2021, Plaintiff Richard Levin, not individually but solely in his capacity as liquidating trustee (the "**Trustee**" or "**Plaintiff**") of the above-captioned debtors ("**Debtors**"), filed a motion for entry of a default judgment ("**Motion**") against defendants Auragem Company Ltd., Brilliant Diamonds Ltd., Eternal Diamonds Corporation Ltd., and Twin Fields Investments Ltd.

A telephonic hearing on the Motion will be held before the Honorable Sean H. Lane of the United States Bankruptcy Court for the Southern District of New York on **September 28, 2021 at 10:00 a.m. (Eastern Daylight Time)**, or as soon thereafter as counsel may be heard (the "**Hearing**"). The Hearing will be conducted telephonically only. Registration may be arranged at **www.court-solutions.com.**

Objections, if any, to approval of the Motion and entry of the proposed order must: (i) be made in writing; (ii) state with particularity the grounds therefor; (iii) be filed with the Bankruptcy Court (with a copy to the Judge's chambers); and (iv) be served upon (a) counsel to the United States Trustee for Region 2, 201 Varick Street, Suite 1006, New York, NY 10014 (Attn: Richard Morrissey, Esq.); (b) counsel to the Trustee, Jenner & Block LLP, 919 Third Avenue, New York, New York 10022 (Attn: Carl Wedoff, Esq.); (c) counsel to the Debtors, Klestadt Winters Jureller Southard & Stevens, LLP, 200 West 41st St., 17th Floor, New York, NY 10036 (Attn: Ian Winters, Esq.); and (d) counsel to Punjab National Bank, Cleary, Gottlieb, Steen & Hamilton LLP, One Liberty Plaza, New York, NY 10006 (Attn: Sean O'Neal) so as to be received by each of them no later than September 21, 2021 (the "**Objection Deadline**").

If no responses or objections are served by the Objection Deadline, the relief may be granted as requested in the Motion without further notice or a hearing. You need not appear at the Hearing if you do not object to the relief requested in the Motion. The Hearing may be continued or adjourned from time to time without further notice other than an announcement of the adjourned date or dates at the Hearing or at a later hearing.

Dated: August 31, 2021
      Chicago, Illinois

By: /s/ Angela M. Allen

Angela Allen (admitted *pro hac vice*)
William A. Williams (admitted *pro hac vice*)
Jenner & Block LLP
353 North Clark Street
Chicago, Illinois 60654
(312) 222-9350
aallen@jenner.com
wwilliams@jenner.com

Carl Wedoff
919 Third Avenue
New York, New York 10022
(212) 891-1600
cwedoff@jenner.com

*Counsel for the Plaintiff*

**Hearing Date and Time:** September 28, 2021 at 10:00 a.m. EDT
**Objection Deadline:** September 21, 2021

JENNER & BLOCK LLP
Angela Allen (admitted *pro hac vice*)
William A. Williams (admitted *pro hac vice*)
353 North Clark Street
Chicago, Illinois 60654
(312) 222-9350

Carl Wedoff
919 Third Avenue
New York, New York 10022
(212) 891-1600

*Counsel for the Plaintiff*

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| FIRESTAR DIAMOND, INC., *et al.* | No. 18-10509 (SHL) |
| Debtors. | (Jointly Administered) |
| RICHARD LEVIN, Chapter 11 Trustee of FIRESTAR DIAMOND, INC., FANTASY, INC., and OLD AJ, INC. f/k/a A. JAFFE, INC., | |
| Plaintiff, | |
| v. | Adv. Proc. No. 20-1054 |
| AMI JAVERI (A/K/A AMI MODI); PURVI MEHTA (A/K/A PURVI MODI); NEHAL MODI; NEESHAL MODI; CENTRAL PARK REAL ESTATE, LLC; CENTRAL PARK SOUTH 50 PROPERTIES, LLC; TRIDENT TRUST COMPANY (SOUTH DAKOTA) INC., solely as Trustee of the ITHACA TRUST; TWIN FIELDS INVESTMENTS LTD.; AURAGEM COMPANY LTD.; BRILLIANT DIAMONDS LTD.; ETERNAL DIAMONDS CORPORATION LTD.; FANCY CREATIONS COMPANY LTD.; HAMILTON PRECIOUS TRADERS LTD.; SINO TRADERS LTD.; SUNSHINE GEMS LTD.; UNIQUE DIAMOND AND JEWELLERY FZC; WORLD DIAMOND DISTRIBUTION FZE; VISTA JEWELRY FZE; EMPIRE GEMS FZE; UNIVERSAL FINE JEWELRY FZE; DIAGEMS FZC; TRI COLOR GEMS FZE; PACIFIC DIAMONDS FZE; HIMALAYAN TRADERS FZE; UNITY TRADING FZE; FINE CLASSIC FZE; DG BROTHERS FZE, | |
| Defendants. | |

**MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANTS
AURAGEM COMPANY LTD., BRILLIANT DIAMONDS LTD.,
ETERNAL DIAMONDS CORPORATION LTD.,
AND TWIN FIELDS INVESTMENTS LTD.**

Plaintiff Richard Levin, not individually but solely in his capacity as liquidating trustee (the "**Trustee**" or "**Plaintiff**") of the above-captioned debtors ("**Debtors**"), respectfully submits this motion for entry of a default judgment ("**Default Motion**") against defendants Auragem Company Ltd. ("**Auragem**"), Brilliant Diamonds Ltd. ("**Brilliant**"), Eternal Diamonds Corporation Ltd. ("**Eternal**"), and Twin Fields Investments Ltd. ("**Twin Fields,**" and together with Auragem, Brilliant, and Eternal, the "**Default Judgment Defendants**") and states:

## Jurisdiction and Venue

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b).

2. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The Trustee consents to the entry of a final order on this Motion by this Court.

3. This Court has jurisdiction over the parties pursuant to Federal Rule of Bankruptcy Procedure 7004(f).

4. Venue is proper in this District pursuant to 28 U.S.C. § 1409(a).

## Background

5. On February 26, 2018, each of the Debtors filed a voluntary petition under chapter 11 of the Bankruptcy Code in this Court.

6. On June 14, 2018, the Court approved the appointment of Richard Levin as chapter 11 trustee (the "**Trustee**"), at which time the Trustee assumed control of the Debtors' estates and operations. (Dkt. 227.)

7. On February 25, 2020, the Trustee commenced this adversary proceeding by filing a complaint (the "**Complaint**") against the above-captioned defendants. (Adv. Dkt. 1.)

The Complaint seeks, among other things,[1] to avoid and recover from the Defendants numerous fraudulent transfers of the Debtors' assets under sections 544 and 550 of the Bankruptcy Code and former sections 273, 276, 278 and 279 of the New York Debtor and Creditor Law ("**DCL**").[2]

8. On April 10, 2020, the Court issued an order setting the Defendants' deadline to respond to the Complaint to 60 days after the Trustee effects service of the Complaint and Summons ("**Response Deadline Order**"). (Adv. Dkt. 8.)

9. On April 22, 2020, the Clerk issued a Second Summons and Notice of Pretrial Conference in an Adversary Proceedings (the "**Summons**"). (Adv. Dkt. 9.)

10. On April 23, 2020, the Trustee caused service of the Complaint and Summons to be effected on Twin Fields, a Delaware corporation, to the attention of an officer or general/managing agent, via first-class mail, postage pre-paid. (Adv. Dkt. 10.)

11. Service on Twin Fields was effective under Rule 7004(b)(3) of the Federal Rules of Bankruptcy Procedure, which authorizes first-class mail service "[u]pon a domestic or foreign corporation or upon a partnership or other unincorporated association, by mailing a copy of the summons and complaint to the attention of an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant." Fed. R. Bankr. P. 7004(b)(3).

---

[1] The Complaint also seeks to recover damages suffered as a result of the Modi family's nearly decade-long racketeering conspiracy under the Racketeering Influenced Corrupt Organizations Act ("**RICO**") 18 U.S.C. § 1962(d) (*see* Compl. ¶¶ 371-466). The RICO claims are not the subject of the instant Default Motion.

[2] New York codified the Uniform Voidable Transactions Act, effective April 4, 2020, which replaced the former DCL. The relevant claims in the Complaint and all references to the DCL in this Default Motion refer to the former DCL. The Complaint also includes claims against the Default Judgment Defendants under section 548 of the Bankruptcy Code, which are not the subject of this Default Motion.

2

12. On May 12, 2020, the Trustee caused service of the Complaint, Summons, and Response Deadline Order to be effected on Auragem, Brilliant, and Eternal, which are Hong Kong corporations, in Hong Kong via hand delivery by a Hong Kong judicial officer in accordance with Article 10(b) of the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents ("**Hague Service Convention**"). (Adv. Dkt. 12, 13, 14, 16.).

13. Service on Auragem, Brilliant, and Eternal was effective under Rule 4(f)(1) of the Federal Rules of Civil Procedure, made applicable in this adversary proceeding under Rule 7004(a)(1) of the Federal Rules of Bankruptcy Procedure. Rule 4(f)(1) authorizes service "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents. " Fed. R. Civ. P. 4(f)(1). Hong Kong is a signatory to the Hague Service Convention.

14. Twin Fields had until May 27, 2020 to answer or otherwise respond to the Complaint.

15. Auragem, Brilliant, and Eternal had until July 13, 2020 to answer or otherwise respond to the Complaint.

16. To date, no appearances have been filed on behalf of any Default Judgment Defendant.

17. By letter dated May 20, 2020 (the "**Auragem-Eternal Letter**"), Auragem and Eternal's joint and several liquidators notified the Trustee that they had "no objection to the complaint" and would not attend the scheduled pretrial conference.

18. By letter dated May 26, 2020 (the "**Brilliant Letter**"), Brilliant's joint and several liquidators notified the Trustee that they were in receipt of the Complaint and would not defend the action, make a submission in this adversary proceeding, or attend the

3

scheduled pretrial conference. A copy of the letter was filed on the docket by the Clerk of Court on June 10, 2020. (Adv. Dkt. 30.)

19.     The Default Judgment Defendants have failed to plead or otherwise defend this adversary proceeding, and other than the above-referenced Letters, the Default Judgment Defendants have failed to respond to the Complaint.

20.     The Declaration of Laureen M. Ryan (the "**Ryan Declaration**") in support of this Motion is attached hereto as Exhibit A.

## Discussion

### A. Legal Standard

21.     Rule 55 of the Federal Rules of Civil Procedure, made applicable here by Bankruptcy Rule 7055, "provides a 'two-step process' for the entry of a judgment against a party that fails to defend: first, the entry of a default, and second, the entry of a default judgment." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011) (quoting *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005)). "The first step, entry of a default, formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff." *Id.* "The second step, entry of a default judgment, converts the defendant's admission of liability into a final judgment." *Id.*

22.     A default generally is "an admission of all well-pleaded allegations against the defaulting party." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 107 (2d Cir. 2006). However, "allegations in the complaint with respect to the amount of the damages are not deemed true." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999). Accordingly, the trial court "must . . . conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Id.* (citing *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.,* 109 F.3d 105, 111 (2d Cir. 1997)). Ascertaining damages involves two steps:

4

(1) "determining the proper rule for calculating damages on such a claim," and (2) "assessing plaintiff's evidence supporting the damages to be determined under this rule." *Id.*

23. Liability for a constructive fraudulent transfer under DCL section 273 is established if the transfer is made without fair consideration and if the transferor is insolvent or will be rendered insolvent by the conveyance. *See In re Sharp Int'l Corp.*, 403 F.3d 43, 53 (2d Cir. 2005); *Fed. Nat'l*, 2014 WL 2594340, at *3 (E.D.N.Y. June 10, 2014); *In re TS Emp., Inc.*, 602 B.R. 840, 845 (Bankr. S.D.N.Y. 2019). "The element of insolvency is presumed when a conveyance is made without fair consideration, and the burden of overcoming such presumption is on the transferee." *Kim v. Ji Sung Yoo*, 311 F. Supp. 3d 598, 611 (S.D.N.Y. 2018) (citation omitted).

24. Liability for an actual fraudulent transfer under DCL section 276 is established if a transfer is made with intent to defraud on the part of the transferor. *Sharp*, 403 F.3d 56; *Fed. Nat'l*, 2014 WL 2594340, at *3; *TS Emp., Inc.*, 602 B.R. at 845. Insolvency is not an element of an actual fraudulent transfer claim.

25. After a transferee's liability is established for a constructive or actual fraudulent transfer under DCL sections 273 or 276, damages are calculated by determining "the amount of monies wrongfully received by the various transferees." *Fed. Nat'l*, 2014 WL 2594340, at *5; *TS Emp., Inc.*, 602 B.R. at 846; *cf. CAMOFI Master LDC v. Riptide Worldwide, Inc.*, No. 10 CIV. 4020 CM JLC, 2012 WL 6766767, at *15 (S.D.N.Y. Dec. 17, 2012) (remedy for fraudulent transfer "is to rescind, or set aside, the allegedly fraudulent transfer, and cause the transferee to return the transferred property to the transferor") (quoting *Grace v. Bank Leumi Trust Co. of N.Y.*, 443 F.3d 180, 189 (2d Cir. 2006))).

26. To determine the amount of damages recoverable from a fraudulent transfer defendant, courts may rely upon financial records reflecting the amount of the transfers made

to the defendant. For example, in *Federal National*, the plaintiff sought entry of a $7,813,202.73 default judgment against a former principal of a debtor under DCL sections 273 and 276. The defendant failed to defend the claims. Having established the defendant's default, all of plaintiff's factual allegations relating to liability were accepted as true, and all reasonable inferences were drawn in plaintiff's favor. *Id.* at *3 (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)). The court found the plaintiff had established that the defendant was liable both under section 273 because the plaintiff alleged the defendant had caused the debtor to transfer funds without fair consideration while the debtor was insolvent, and under section 276 because the plaintiff alleged the defendant knew the transfers intended to avoid the payment of obligation to its creditors. *Id.* After the defendant's fraudulent transfer liability was established, the *Federal National* court calculated damages by totaling the amount of transfers received by various transferees. *Id.* at *5–6. These amounts were set forth in declaration submitted by the debtor's receiver. *Id.* at *4.

27.    Federal Rule of Evidence 901 sets forth the requirements for authentication of evidence.[3] "The authentication burden is a 'light one.'" *SIPC v. Bernard L. Madoff Inv. Sec. LLC*, 592 B.R. 513, 524 (Bankr. S.D.N.Y. 2018) ("*BLMIS*") (quoting *Curtis v. Perkins (In re Int'l Mgmt. Assocs., LLC )*, 781 F.3d 1262, 1267 (11th Cir. 2015)). "The Court is not required to hear the testimony of the document's author to demonstrate its authenticity." *Id.* (citation omitted). A proponent can satisfy the rule with "circumstantial evidence of the authenticity of the underlying documents through the testimony of a witness knowledgeable about them." *Int'l Mgmt.*, 781 F.3d at 1267 (internal citations omitted); Fed. R. Evid. 901(b)(1).

---

[3] Rule 901 provides, in pertinent part: "(a) In General. To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is. (b) Examples. The following are examples only--not a complete list--of evidence that satisfies the requirement: (1) Testimony of a Witness with Knowledge. Testimony that an item is what it is claimed to be."  Fed. R. Evid. 901(a)-(b)(1).

28.     Federal Rule of Evidence 803(6) excepts business records from the hearsay rule.⁴ Business records are generally admissible where they are created "contemporaneous with the recorded event" and "maintained in the regular conduct of a business." *See In re Enron Creditors Recovery Corp.*, 376 B.R. 442, 454–55 (Bankr. S.D.N.Y. 2007). "The business records exception has been construed generously in favor of admissibility, due to the general trustworthiness of regularly kept records and the need for this type of evidence in many cases." *BLMIS*, 592 B.R. at 528 (internal citation and quotation marks omitted). To be admissible under Rule 803(6), records "do not have to be actually created by the witness testifying to authenticate them, . . . nor do they even have to be created by the entity by which the witness is employed." *In re McFadden*, 471 B.R. 136, 160 (Bankr. D.S.C. 2012). "Rule 803(6) merely requires, for records to be admissible as business records, the witness must be familiar with the company's record keeping system." *Id.* (citation omitted). Testimony that establishes a witness's familiarity "with how [records] are obtained, modified, and stored" satisfies the rule. *Id.*

### B. The Trustee is Entitled to Default Damages Against the Default Judgment Defendants.

29.     In this action, an award of default damages against the Default Judgment Defendants is appropriate under the two-step *Credit Lyonnais* framework. First, the Default Judgment Defendants' failure to respond to the Complaint establishes their liability. Second,

---

⁴ Rule 803(6) of the Federal Rules of Evidence provides that the following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness: "A record of an act, event, condition, opinion, or diagnosis if (A) the record was made at or near the time by--or from information transmitted by--someone with knowledge; (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit; (C) making the record was a regular practice of that activity;' (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness." Fed. R. Evid. 803(6).

the Ryan Declaration sets forth the amount of damages with relative certainty. Ms. Ryan is knowledgeable about the Debtors' electronic general ledger systems and can testify to the authenticity of the General Ledger Reports (attached as Exhibits 1-4 of the Ryan Declaration), which were sourced from the Debtors' general ledger data and confirmed through bank statements issued by financial institutions where cash transfers were recorded (the "**Bank Statements**") (attached as Exhibit 5 to the Ryan Declaration)[5] or transaction logs maintained by Malca-Amit USA, LLC or Malca-Amit CHB, Inc. (the "**Malca Amit Logs**"). *See* Ryan Decl. ¶¶ 20-21.

30.    The Ryan Declaration attaches the General Ledger Reports, attests to their authenticity, and demonstrates that they are admissible business records under Rule 803(6). The entries were recorded contemporaneously with transfers from the Debtors to the Default Judgment Defendants. *See* Fed. R. Evid. 803(6)(A); Ryan Decl. ¶¶ 20-23. The entries were maintained in the ordinary course of the Debtors' business. *See* Fed. R. Evid. 803(6)(B); Ryan Decl. ¶ 22. Making records of cash and inventory transfers was a regular practice of the Debtors, and substantially all of the Debtors' transfers were documented in the General Ledger. Fed. R. Evid. 803(6)(C); Ryan Decl. ¶¶ 22-23. Ms. Ryan, based on her extensive investigation of the Debtors' businesses and prepetition business operations, can competently testify to the foregoing. *See* Fed. R. Evid. 803(6)(D), Ryan Decl. ¶ 24. Ms. Ryan's testimony demonstrates the General Ledger Reports are admissible business records which can be considered in the calculation of default damages. *See, e.g.*, *Enron Creditors Recovery Corp.*, 376 B.R. at 458 (admitting reports derived from general ledger records); *Poulos v. City of New York*, No. 14-cv-3023, 2018 WL 3750508, at *4 (S.D.N.Y. July 13, 2018) (considering business

---

[5] As Exhibit 5 to the Ryan Declaration contains material designated as Highly Confidential under the *Protective Order Governing Trustee Discovery* (Dkt. 529) (the "**Protective Order**"), the Trustee is filing the exhibit under seal as authorized by paragraph 18 of the Protective Order.

records in calculation of default damages), *report and recommendation adopted*, 2018 WL 3745661 (S.D.N.Y. Aug. 6, 2018).

31.     The Bank Statements are also admissible business records under Rule 803(6). "[B]ank records are particularly suitable for admission under Rule 803(6) in light of the fastidious nature of record keeping in financial institutions." *United States v. Peninger*, 456 F. App'x 214, 218 (4th Cir. 2011) (quoting *United States v. Johnson,* 971 F.2d 562, 571 (10th Cir. 1992)). The Bank Statements were created by a federally regulated banking institution, HSBC, and maintained in the Debtors' records. As such, there are sufficient "circumstances demonstrating the trustworthiness of the documents." *See id.*

32.     For the reasons set forth above, the Debtors' transfers of $2,340,968.94 to Auragem, $10,489,448.11 to Brilliant, $1,733,815.61 to Eternal, and $21,361,542.28 to Twin Fields have been established using admissible evidence.

33.     The Clerk of this Court has entered defaults against the Default Judgment Defendants. The Trustee seeks the entry of an order in substantially the same form as that annexed hereto as Exhibit B, under Bankruptcy Rule 7055(b)(2), granting Plaintiff a judgment by default against the Default Judgment Defendants.[6]

---

[6] As required by Local Rule 7055-2, the Clerk's entries of default are attached as Exhibit D, the Complaint is attached as Exhibit E, the proposed form of default judgment is attached as Exhibit C, and a certificate of service is attached as Exhibit F.

9

WHEREFORE, the Trustee respectfully requests that this Court enter an order in the form submitted with this Motion, granting default and final judgment under Counts 11, 12, 14, 16, 24, 26, 52, and 54 of the Complaint against (i) Defendant Auragem in the amount of $2,340,969; (ii) Defendant Brilliant in the amount of $10,489,448; (iii) Defendant Eternal in the amount of $1,733,816; and (iv) Defendant Twin Fields in the amount of $21,361,542, plus post-judgment interest computed at the rate prescribed by 28 U.S.C. § 1961.

Dated: August 31, 2021
      Chicago, Illinois

By: /s/ Angela M. Allen

Angela Allen (admitted *pro hac vice*)
William A. Williams (admitted *pro hac vice*)
Jenner & Block LLP
353 North Clark Street
Chicago, Illinois 60654
(312) 222-9350
aallen@jenner.com
wwilliams@jenner.com

Carl Wedoff
919 Third Avenue
New York, New York 10022
(212) 891-1600
cwedoff@jenner.com

*Counsel for the Plaintiff*