**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| FIRESTAR DIAMOND, INC., *et al.* | No. 18-10509 (SHL) |
| Debtors. | (Jointly Administered) |
| RICHARD LEVIN, trustee for the liquidating trusts of FIRESTAR DIAMOND, INC., FANTASY, INC., and OLD AJ, INC., | Adv. Proc. No. 20-1054 (SHL) |
| Plaintiff, | |
| v. | |
| AMI JAVERI (A/K/A AMI MODI); PURVI MEHTA (A/K/A PURVI MODI); NEHAL MODI; NEESHAL MODI; CENTRAL PARK REAL ESTATE, LLC; CENTRAL PARK SOUTH 50 PROPERTIES, LLC; TRIDENT TRUST COMPANY (SOUTH DAKOTA) INC., solely as Trustee of the ITHACA TRUST; TWIN FIELDS INVESTMENTS LTD.; AURAGEM COMPANY LTD.; BRILLIANT DIAMONDS LTD.; ETERNAL DIAMONDS CORPORATION LTD.; FANCY CREATIONS COMPANY LTD.; SINO TRADERS LTD.; SUNSHINE GEMS LTD., | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S**
**MOTION TO CONFIRM ORDER OF ATTACHMENT**

REDACTED PURSUANT TO PENDING MOTION TO SEAL [ADV. DKT. 105]

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................1

STATEMENT OF FACTS .....................................................................................................3

    A.    The Modi Family's Bank Fraud.................................................................3

    B.    The Trustee's Claims Arising From the Bank Fraud.................................7

    C.    Javeri's Control Over the Ithaca Trust & Attempt to Sell the Apartments. ............8

    D.    Mehta's Application for an Injunction Barring Prosecution of This Action. .........10

    E.    The Court's Order of Attachment.................................................................11

ARGUMENT ...................................................................................................................12

I.    THE TRUSTEE IS ENTITLED TO A PRE-JUDGMENT ORDER OF ATTACHMENT. ...................................................................................................12

    A.    The Trustee Has Stated a Cause of Action. .................................................14

    B.    The Trustee Has Shown a Probability of Success on the Merits. ............14

    C.    Grounds for Attachment Exist Under N.Y. C.P.L.R. § 6201.......................16

        i.    Trident and CPRE Are Foreign Corporations Not Registered to Do Business Within New York (C.P.L.R. § 6201(1)). ...........................16

        ii.    Javeri and the Ithaca Trust Defendants Are About to Dispose of Property With the Intent to Defraud Creditors or Frustrate the Enforcement of a Judgment (N.Y. C.P.L.R. § 6201(3)). ...............17

    D.    Javeri and the Ithaca Trust Defendants Lack Any Legitimate Counterclaims.....................................................................................20

    E.    Attachment Is Necessary for the Trustee's Security. .................................21

II.    THE TRUSTEE IS ENTITLED TO DISCOVERY UNDER N.Y. C.P.L.R. § 6220.................22

III.    A MINIMAL UNDERTAKING IS APPROPRIATE UNDER N.Y. C.P.L.R. § 6212(b)........................................................................................................23

CONCLUSION ................................................................................................................25

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Adler v. Solar Power, Inc.,*
   16-CV-1635-LLS-GWG, 2019 WL 2210661 (S.D.N.Y. May 22, 2019) ...........................................16

*In re Amaranth Nat. Gas Commodities Litig.,*
   711 F. Supp. 2d 301 (S.D.N.Y. 2010) ....................................................................... 13, 16, 22, 23

*Bank of Leumi Tr. Co. of New York v. Istim, Inc.,*
   892 F. Supp. 478, 482 (S.D.N.Y. 1995)...................................................................... 13, 15, 16, 17

*Capital Ventures Int'l v. Republic of Arg.,*
   443 F.3d 214 (2d Cir. 2006)................................................................................................. 13, 21

*In re Cassandra Grp.,*
   338 B.R. 583 (Bankr. S.D.N.Y. 2006)........................................................................................ 17, 18

*Disney Enters., Inc. v. Finanz St. Honore, B.V.,*
   13-cv-6338 (NG) (SMG), 2017 WL 1862211 (E.D.N.Y. May 8, 2017) .........................................24

*Etalon Imob S.R.L. v. Schoenbach,*
   12-CV-6868 BSJ, 2012 WL 4741595 (S.D.N.Y. Oct. 3, 2012) ...................................................20, 23

*Heller Fin., Inc. v. Wall St. Imports, Ltd.,*
   140 Misc. 2d 205 (N.Y. Sup. Ct. 1988) ............................................................................................23

*In re Hypnotic Taxi LLC,*
   543 B.R. 365 (Bankr. E.D.N.Y. 2016) ................................................................................. 14, 17, 18

*ITC Ent., Ltd. v. Nelson Film Partners,*
   714 F.2d 217 (2d Cir. 1983)...............................................................................................................22

*In re Lehman Bros. Holdings Inc.,*
   469 B.R. 415 (Bankr. S.D.N.Y. 2012)...............................................................................................17

*Levin v. Modi (In re Firestar Diamond, Inc.),*
   18-10509, 2021 WL 4824114 (Bankr. S.D.N.Y. Oct. 15, 2021)............................................2, 3, 8, 16

*Mishcon de Reya New York LLP v. Grail Semiconductor, Inc.,*
   11-CV-04971 RJH, 2011 WL 6957595 (S.D.N.Y. Dec. 28, 2011) ....................................................15

*New York Dist. Council of Carpenters Pension Fund v. KW Constr.,*
   07-CV-8008, 2008 WL 2115225 (S.D.N.Y. May 16, 2008) ..............................................................23

REDACTED PURSUANT TO PENDING MOTION TO SEAL [ADV. DKT. 105]

*OSRecovery, Inc. v. One Groupe Int'l, Inc.*,
    305 F. Supp. 2d 340 (S.D.N.Y. 2004) ................................................................. 23, 24

*In re Our Distribution Co., Inc.*,
    110 B.R. 658 (Bankr. S.D.N.Y. 1990) ...................................................................... 14

*S.M. Pires v. Frota Oceanica Brasileira, S.A.*,
    800 N.Y.S.2d 354, 2005 WL 579500 (Sup. Ct. N.Y. Co. Jan. 14, 2005) ......................................... 24

*In re Schick*,
    215 B.R. 13 (Bankr. S.D.N.Y. 1997) ...................................................................... 23

*Swift Spinning Mills v. B&H Apparel*,
    No. 00 Civ. 652 (AKH), 2003 WL 942610 (S.D.N.Y. Mar. 6, 2003) .............................................. 24

*In re Syntax-Brillian Corp.*,
    No. 10-51389, 2016 WL 1165634 (Bankr. D. Del. Feb. 8, 2016) ..................................................... 17

*Thornapple Assocs. v. Sahagen*,
    06-CV-6412 (JFK), 2007 WL 747861 (S.D.N.Y. Mar. 12, 2007) ........................................ 14, 16, 22

**Statutes**

N.Y. C.P.L.R. § 6201 ........................................................................................ 3, 13, 16, 17, 20

N.Y. C.P.L.R. § 6212 ........................................................................................ 13, 14, 20, 21, 23

N.Y. C.P.L.R. § 6220 ........................................................................................ 22, 23, 25

N.Y. C.P.L.R. § 6223 ........................................................................................ 13, 21

S.D. Codified Laws § 55-1B-2 ............................................................................... 19

**Other Authorities**

Fed. R. Bankr. P. 7064 ......................................................................................... 12

Fed. R. Civ. P. 64 ................................................................................................. 12, 13

REDACTED PURSUANT TO PENDING MOTION TO SEAL [ADV. DKT. 105]

Plaintiff Richard Levin, not individually but solely as trustee ("**Trustee**") for the liquidating trusts of debtors Firestar Diamond, Inc., Old AJ, Inc., and Fantasy, Inc. (collectively, the "**Debtors**") respectfully submits this memorandum of law in support of his motion to confirm the *ex parte* order of attachment previously entered by the Court [Adv. Dkt. 104] (the "**Order of Attachment**").

## PRELIMINARY STATEMENT

On February 15, 2022, the Trustee submitted an *ex parte* and sealed motion for an order of attachment to secure the satisfaction of a future judgment in this action (the "**Attachment Motion**"). On February 22, 2022, the Court held a hearing on the Attachment Motion, at which it heard argument from the Trustee and his counsel and found that the evidentiary record supported attaching certain property of Defendant Ami Javeri ("**Javeri**") and all of the property of Defendants Central Park South 50 Properties, LLC ("**CPS50**"), Central Park Real Estate, LLC ("**CPRE**"), and Trident Trust Company (South Dakota) Inc., solely as Trustee of the Ithaca Trust ("**Trident**" and, together with CPS50 and CPRE, the "**Ithaca Trust Defendants**"). The Court entered the Order of Attachment the same day. On February 22 and 23, 2022, counsel to the Trustee served the Order of Attachment in accordance with the service requirements set forth in the Order.[1] As required by N.Y. C.P.L.R. § 6211(b), the Trustee hereby moves this Court, on notice to Javeri and the Ithaca Trust Defendants, for an order confirming the Order of Attachment and its authorization for discovery in aid of attachment. As explained more fully below, the Order of Attachment should be confirmed for the same reasons that the Court granted the Attachment Motion in the first instance.

---

[1] The Trustee will separately file an affidavit of service attesting to service of the Order of Attachment as prescribed therein.

The Trustee sought the Order of Attachment to prevent the dissipation of assets that would otherwise be available to satisfy a judgment in this action. Through his Complaint, the Trustee alleges that the defendants knowingly conspired with Nirav Modi ("**Modi**") to perpetrate a years-long, multibillion-dollar bank fraud. (*See generally* Compl., Adv. Dkt. 1., Ex. 1.)[2] As part of that fraud, the defendants laundered funds and other property through the Debtors and the Debtors' U.S. affiliates Synergies Corporation, Firestar Group, Inc., Firestar Diamond International, Inc., Nirav Modi, Inc., and AVD Trading, Inc. (collectively, the "**U.S. Affiliates**," and, together with the Debtors, the "**U.S. Entities**"), and misappropriated the U.S. Entities' assets.

As relevant here, Defendant Ami Javeri (Modi's wife), in concert with Defendant Purvi Mehta (Modi's sister), used tainted proceeds of the bank fraud to purchase two Manhattan apartments, which are held directly by two shell companies (Defendant CPS50 and Defendant CPRE). When it became clear that their racketeering and fraudulent conduct was about to be exposed, Javeri, Mehta, and their co-conspirators fraudulently attempted to remove the apartments from the reach of creditors by transferring the equity interests in CPS50 and CPRE to the Ithaca Trust, a South Dakota trust that is managed by Defendant Trident as Trustee.

Javeri claims to control CPS50, CPRE, and the Ithaca Trust and recently notified the Trustee of her intent to sell the apartments, not only without providing assurances that the sale proceeds will remain available for execution upon entry of judgment in this action, but also suggesting the assets would be dissipated and no longer available. Her timing is suspicious. On October 15, 2021, this Court denied motions to dismiss the Trustee's RICO and related claims against Modi, Mihir Bhansali (the Debtors' CEO), and Ajay Gandhi (the Debtors' CFO), which claims are based on conduct in which Javeri participated. *See Levin v. Modi (In re Firestar Diamond,*

---

[2] References to numbered exhibits are to the exhibits appended to the Declaration of Richard Levin (the "**Levin Declaration**"), submitted contemporaneously herewith.

REDACTED PURSUANT TO PENDING MOTION TO SEAL [ADV. DKT. 105]

*Inc.*), 18-10509, 2021 WL 4824114 (Bankr. S.D.N.Y. Oct. 15, 2021). ██████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████

Under the circumstances, the Trustee is entitled to security given the viable claims he has alleged in this action. Accordingly, the Trustee requests confirmation of the Order of Attachment against the assets of Javeri and the Ithaca Trust Defendants, as specified in paragraph 5 of the Order of Attachment, to secure the Trustee's judgment demand. For the reasons that follow, the Trustee satisfies the requirements for attachment under New York law, most importantly because Javeri's actions suggest she is attempting to "dispose[] of" or "secrete[] property" "with intent to defraud [her] creditors or frustrate the enforcement of a judgment that might be rendered in [the Trustee's] favor." N.Y. C.P.L.R. § 6201(3).

## STATEMENT OF FACTS

### A.    The Modi Family's Bank Fraud.

The U.S. Entities are subsidiaries of Nirav Modi's India-based flagship company Firestar International Limited (f/k/a Firestar International Private Ltd) ("**FIPL**"). (Compl. ¶¶ 14-21, 52.) FIPL and its subsidiaries (collectively, the "**Firestar Entities**") operated several legitimate business lines. (*Id.* ¶¶ 53-54, 58-59.)

Beginning around 2010, Punjab National Bank employee Gokulnath Shetty began approving import trade financing in the form of letters of undertaking ("**LOU**") to companies

REDACTED PURSUANT TO PENDING MOTION TO SEAL [ADV. DKT. 105]

owned by Modi without securing collateral and without properly recording them in PNB's books and records. (*Id.* ¶¶ 62-66, 88, 184, 187, 193-94.) By the time Shetty retired in May 2017, PNB had issued over 1,500 fraudulent LOUs, totaling approximately $3.5 billion, mostly to three India-based partnerships, Diamonds 'R' Us ("**DRUS**"), Solar Exports ("**Solar**"), and Stellar Diamond ("**Stellar**") (collectively, the "**LOU Entities**"), in which Modi and his wife Ami Javeri, among others, served as partners. (*Id.* ¶¶ 66-67, 89.)

To maximize the LOU Entities' borrowing capacity, Modi, Javeri, and Modi's sister Purvi Mehta set up numerous fictitious companies in Hong Kong and Dubai that were purportedly independent diamond and jewelry businesses, but were in fact secretly owned and controlled by the Modi family (the "**Shadow Entities**"). (*Id.* ¶¶ 71-73, 178.) Precious gems, metals, and jewelry were transferred in a "loop" between LOU Entities and Shadow Entities to fraudulently inflate the LOU Entities' import volume so that they could obtain more LOUs. (*Id.* ¶¶ 79-87.)

To support this primary loop, Modi and his co-conspirators moved substantial amounts of cash and inventory among Shadow Entities and Firestar Entities (including the U.S. Entities). (*Id.* ¶¶ 81-83.) These transactions were to provide Shadow Entities with the goods and funds needed to transact with the LOU Entities, to divert and launder the fraudulent proceeds for the Modi family's benefit, and to clear the Firestar Entities' and Shadow Entities' accounts payable and receivable to avert suspicion by auditors, lenders, and others. (*Id.* ¶ 98.) The transactions were deliberately structured to concentrate profits in certain Shadow Entities that then diverted funds to Modi family members and out of the reach of creditors. (*Id.* ¶¶ 178, 302, 314.)

Mehta directly owned and personally controlled Shadow Entity Fine Classic FZE ("**Fine Classic**"). (*Id.* ¶ 314) Fine Classic and others, including Empire Gems FZE ("**Empire**"), consistently made substantial payments to Mehta under the guise of shareholder dividends. (*Id.* ¶¶ 302.) Mehta would then hold the siphoned funds in personal bank accounts and through

REDACTED PURSUANT TO PENDING MOTION TO SEAL [ADV. DKT. 105]

various other offshore shell companies she owned. Between November 2013 and November 2017, Mehta personally received nearly $90 million in "shareholder dividends" from Fine Classic and Empire. (*Id.* ¶¶ 303-304.) She ultimately diverted at least $34 million in bank fraud proceeds to Javeri. (*Id.* ¶¶ 313, 446-47, 460-83.)

The conspirators planned to raise outside capital through an initial public offering of FIPL, which they would use to pay off the outstanding LOUs before they got caught. (*Id.* ¶ 276.) But first, they needed to sanitize years of Modi family self-dealing through a Firestar Entities "corporate restructuring," which involved FIPL making a $115 million capital contribution to Firestar Holdings Limited ("**FHL**"), the Hong Kong-based holding company that directly or indirectly owns most of the Firestar Entities, including the U.S. Entities. (*Id.* ¶¶ 276-77, 297.) FHL would then use $65 million to redeem non-voting FHL shares owned by Mehta (directly and through Fine Classic), $23 million to repay various loans from Mehta and Fine Classic, and $20 million to infuse capital into Synergies Corporation ("**Synergies**"), the holding company for Debtors FDI and Jaffe. (*Id.* ¶ 298.)

Of that $20 million, Synergies would use $14,575,000 pay off a "loan" based on funds Modi had routed through Synergies in 2010 and 2011 from his personal bank account to pay off earlier "loans" from FIPL, which were themselves based on loop transactions in which FIPL wired funds to Synergies, which immediately returned them to FIPL or to other Firestar Entities or Shadow Entities. (*Id.* ¶¶ 281, 299.) In December 2016, in connection with the restructuring, Modi gifted his interest in the loan to Mehta under an assignment agreement backdated to April 2012. (*Id.* ¶ 283.) Of the $5,425,000 in remaining new capital, Synergies used $1,047,000 to repay a purported loan from Shadow Entity Brilliant, $3,394,000 to acquire U.S. Affiliate Firestar Group, Inc. from FIPL, and $650,000 to pay off Debtor Jaffe's outstanding trade debt to FIPL. (*Id.* ¶¶ 319-20.)

REDACTED PURSUANT TO PENDING MOTION TO SEAL [ADV. DKT. 105]

While planning began in 2014, the restructuring was deferred until sufficient funds were available. (*Id.* ¶¶ 276-291.) The planning ramped back up in late 2016, likely prompted by Gokulnath Shetty's looming retirement in May 2017. (*Id.* ¶ 292.) In February 2017, to finance the restructuring, Mehta "invested" $45 million of the Shadow Entity "dividends" into FIPL in the name of a purportedly independent investment company she secretly owned. (*Id.* ¶¶ 305-07.) To secure the additional funding needed to complete the restructuring, the co-conspirators obtained 150 additional LOUs between February and May 2017 (before Shetty retired) totaling over $1 billion, which became due in late January 2018. (*Id.* ¶¶ 184, 300.)

Meanwhile, Mehta "loaned" $34 million to Javeri (at least $18 million of which Mehta had received from Fine Classic) so she could purchase a new family residence. (*Id.* ¶¶ 308-13.) In July 2017, Mehta entered into a contract to purchase Apartment 33 at the Ritz Carlton Central Park (the "**Ritz Carlton Apartment**") for $25 million. (*See* Compl. ¶¶ 312-47.) Javeri wired $2.5 million of the funds she had received from Mehta to cover the down payment. (*Id.* ¶ 316.) Mehta then formed CPS50, a Delaware LLC, and the Ithaca Trust, a nominally irrevocable trust, which named Javeri as the primary beneficiary. (*Id.* ¶¶ 318, 32-23.) Mehta assigned her interest in the purchase contract for the Ritz Carlton Apartment to CPS50, assigned her 100% interest in CPS50 to the Ithaca Trust, and contributed $23 million to the Ithaca Trust (which, in turn, contributed those funds to CPS50) to fund the closing of CPS50's purchase of the Ritz Carlton apartment. (*Id.* ¶¶ 315-18, 322-340.)

In addition, in late December 2017, after all of the other restructuring transactions had occurred as planned (resulting in Mehta receiving nearly $90 million of the $115 million funneled through FHL and Synergies), Mehta contributed an additional $6 million to the Ithaca Trust. (*Id.* ¶¶ 284-96, 303-04, 348-58.) The Ithaca Trust used those funds to purchase non-debtor U.S. affiliate Firestar Group Inc.'s 100% membership interest in CPRE, which holds title to Unit 3601 at the

REDACTED PURSUANT TO PENDING MOTION TO SEAL [ADV. DKT. 105]

Essex House in Manhattan (the "**Essex House Apartment**" and, together with the Ritz Carlton Apartment, the "**Apartments**"), originally purchased for $4.995 million. (*Id.* ¶¶ 285, 348-58.) Even though Javeri and her family used the Essex House Apartment as a personal residence, the funds the Ithaca Trust used to purchase CPRE (which holds the Essex House Apartment) came from Mehta (who, as noted, received nearly $90 million in bank fraud proceeds). (*Id.* ¶¶ 284-304, 354-58.) In addition, Debtors FDI, Jaffe, and Fantasy used their own funds to retire the mortgage on the Essex House Apartment before the Ithaca Trust purchased CPRE. (*Id.* ¶¶ 351-52.) The Ithaca Trust, CPS50, and CPRE are among the vessels through which the Modi family laundered money and siphoned funds out of the reach of their creditors.

During the first week of January 2018, Modi, Javeri, and other co-conspirators fled India before the more than $1 billion in outstanding LOUs came due at the end of the month. (*Id.* ¶¶ 184-85.) On January 18, 2018, Mehta contributed an additional $1 million to the Ithaca Trust to fund renovations to the Ritz Carlton Apartment. (*Id.* ¶¶ 359-62.)

### B.   The Trustee's Claims Arising From the Bank Fraud.

The bank fraud generated over $1 billion in claims against the U.S. Entities and devasted their legitimate businesses, forcing the Debtors to file for chapter 11 and the U.S. Affiliates to cease operations without paying creditors. To redress these injuries, the Complaint asserts the Debtors' RICO claims against all defendants, jointly and severally, seeking trebled damages in the amount of $175 million (Count 1) (*id.* ¶¶ 371-459), and asserts the U.S. Affiliates' RICO claims against all defendants, jointly and severally, seeking trebled damages in the amount of $50 million (Count 2) (*id.* ¶¶ 460-66). The Complaint also seeks additional amounts on fraudulent transfer claims asserted against certain individual defendants, including Javeri (Counts 5 and 6, seeking $6,000,000 (*id.* ¶¶ 484-500)), CPRE (Counts 7 through 10, seeking $4,594,559.78 (*id.* ¶¶ 501-31)), and Trident, as Trustee of the Ithaca Trust (Counts 5 and 6, seeking $6,000,000 (*id.* ¶¶ 484-500)).

7

**C.      Javeri's Control Over the Ithaca Trust & Attempt to Sell the Apartments.**

Among the assets of Javeri and the Ithaca Trust Defendants available to satisfy, at least in part, the Trustee's judgment demand are the Ritz Carlton Apartment and Essex House Apartment, which were originally purchased for approximately $30 million.[3] But it appears that Javeri and the Ithaca Trust Defendants are taking steps to remove the Apartments from the Trustee's reach: Javeri is attempting to sell the Apartments. ████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████ *See In re Firestar Diamond*, 2021 WL 4824114, at *11-16; ██████████████████[4]

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

---

[3] The Trustee does not concede that the Apartments are the only assets of Javeri or the Ithaca Trust Defendants available for execution or levy. The universe of assets held by Javeri or the Ithaca Trust Defendants is unknown at this stage of the litigation. However, if discovery reveals that Javeri or the Ithaca Trust Defendants hold additional assets that may satisfy a judgment, the Trustee reserves the right to execute or levy upon such assets.

[4] Javeri serves as the sole manager of CPS50, which holds title to the Ritz Carlton Apartment, and as the sole manager of CPRE, which holds title to the Essex House Apartment. ████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
█████████████████████████

REDACTED PURSUANT TO PENDING MOTION TO SEAL [ADV. DKT. 105]

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████ Times of India Article, Ex. 5.) ████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████

████████ Javeri has not yet sold the Apartments. ████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████ ████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

---

[5] On August 23, 2017, Mehta settled the Ithaca Trust as an irrevocable trust governed by Delaware law. (Compl., Ex. 1, ¶ 322.) ████████████████████████████████████████████

████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
███████████████████████████

REDACTED PURSUANT TO PENDING MOTION TO SEAL [ADV. DKT. 105]



### D.  Mehta's Application for an Injunction Barring Prosecution of This Action.

On January 25, 2022, ███████████████████████████████████ Mehta

filed a petition in the Bombay City Civil and Sessions Court that requested an order that

(1) "direct[s]" the Trustee to "withdraw" this action, (2) "direct[s]" PNB "to communicate to the

Trustee" to "refrain from continuing" this action, and (3) "direct[s]" the India Directorate of

Enforcement (the "**ED**") "to intervene in" this action and "seek [an] injunction" barring the

Trustee from levying, or enforcing a judgment against, any assets in which Mehta claims an

interest, which purportedly includes the Apartments. (Mehta Pet., Ex. 7, Prayer ¶ A-D.) Mehta's

counsel also informally requested that, pending the Indian court's adjudication of her petition,

the Trustee refrain from taking "any coercive measures for recovery of subject assets with respect

to [Mehta]" as those assets, purportedly including the Apartments, "are already the subject

matter of various proceedings in India." (Sharma 01/26/22 Email, Ex. 8.) Mehta argued that she

previously committed to provide the Apartments to the Indian government in satisfaction of

certain conditions attached to a pardon she received on criminal charges arising from the bank

fraud. (Mehta Pet., Ex. 7, ¶ 9.) She complained that the Trustee should not be permitted to

REDACTED PURSUANT TO PENDING MOTION TO SEAL [ADV. DKT. 105]

frustrate satisfaction of that condition by prosecuting this action and attaching or executing the Apartments for the benefit of the U.S. Entities' creditors. (*Id.*)

Mehta failed to disclose to the Indian court that the actual owner of the Apartments is the Ithaca Trust (holding them through its ownership interests in CPS50 and CPRE), that she has no apparent interest in or control over the Apartments, that Javeri has a beneficial interest in the Ithaca Trust, ███████████████████████████████████████████████
████████ Mehta also failed to reconcile why the Trustee's attachment or execution of the Apartments would impermissibly "frustrat[e]" her pardon and the ED's recovery efforts, and yet Javeri's sale of the Apartments poses no issue. (*Id.*)

Mehta's likely goal was not the preservation of the Apartments for the benefit of the Indian government. ███████████████████████████████████████
████████████████████████████████████████████████
█████████████████████████████████ This Court should not countenance this gambit; instead, it should confirm Order of Attachment against Javeri and the Ithaca Trust Defendants and their property to ensure the Apartments are not sold and their sale proceeds depleted before the Trustee can enforce a judgment in this action.

### E.    The Court's Order of Attachment.

On February 15, 2022, the Trustee moved for entry of the Order of Attachment *ex parte* and under seal. The Trustee alleged that attachment of property owned by Javeri and the Ithaca Trust Defendants was necessary because they were attempting to remove assets from the reach of creditors, including the Apartments that are likely assets the Trustee will seek to recover if he prevails in this action.

On February 22, 2022, the Court held an *ex parte*, sealed hearing on the Attachment Motion and entered the Order of Attachment. The Court determined that proceeding *ex parte* and under

REDACTED PURSUANT TO PENDING MOTION TO SEAL [ADV. DKT. 105]

seal was justified under the circumstances, namely to prevent the dissipation of assets before the Order of Attachment was entered if Javeri and the Ithaca Trust Defendants learned of the Attachment Motion. The Court also found that the Trustee's allegations and evidentiary proof established all requirements under applicable law to issue an attachment order. (*See* Order of Attachment, ¶ 2.)

The Order of Attachment authorized the Trustee to levy on certain property of Javeri and all property of the Ithaca Trust Defendants upon service of the Order on counsel of record to Javeri and the Ithaca Trust Defendants and upon filing the Order with the New York City Office of the City Register. (*Id.* ¶¶ 3-4.) Specifically, the Order of Attachment levies Javeri's interests in the Ritz Carlton Apartment, the Essex House Apartment, her beneficial interests in the Ithaca Trust, her interests as Investment Advisor of the Ithaca Trust, and her interests as manager of CPS50 and as manager of CPRE. (*Id.* ¶ 5.) The Order of Attachment also levies the interests of the Ithaca Trust Defendants in any and all of their assets, including, but not limited to, CPS50's legal title to the Ritz Carlton Apartment; Trident's ownership interest in CPS50, held by Trident as Trustee of the Ithaca Trust; CPRE's legal title to the Essex House Apartment; and Trident's ownership interest in CPRE, held by Trident as Trustee of the Ithaca Trust. (*Id.*) On February 22 and 23, 2022, the Trustee served the Order of Attachment as prescribed therein. (*Id.* ¶¶ 3-4.) Finally, the Order of Attachment required the Trustee to move to confirm the Order of Attachment within five days of its entry and on notice to Javeri and the Ithaca Trust Defendants. (*Id.* ¶ 7.) The Trustee now so moves.

## ARGUMENT

## I.    THE TRUSTEE IS ENTITLED TO A PRE-JUDGMENT ORDER OF ATTACHMENT.

Under Rule 64 of the Federal Rules of Civil Procedure, applicable here by Bankruptcy Rule 7064, "[a]ttachment is available in a federal court . . . under the circumstances and in the

REDACTED PURSUANT TO PENDING MOTION TO SEAL [ADV. DKT. 105]

manner provided by the law of the state in which the district court is held." *Capital Ventures Int'l v. Republic of Arg.*, 443 F.3d 214, 218–19 (2d Cir. 2006) (citations and internal quotation marks omitted); Fed. R. Civ. P. 64 ("At the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment."). New York law therefore governs the Trustee's request for a pre-judgment order of attachment.

Under New York law, the statutory showing required to confirm an order of attachment is the same showing required to obtain an *ex parte* order of attachment. *Bank of Leumi Tr. Co. of New York v. Istim, Inc.*, 892 F. Supp. 478, 481-82 (S.D.N.Y. 1995). That statutory standard provides that a court may grant a pre-judgment order of attachment once the plaintiff shows that (1) "there is a cause of action," (2) "it is probable that the plaintiff will succeed on the merits," (3) "one or more grounds for attachment provided in [N.Y. C.P.L.R.] § 6201 exist," and (4) "the amount demanded from the defendant exceeds all counterclaims known to the plaintiff." N.Y. C.P.L.R. § 6212(a). There are five grounds for attachment set forth in N.Y. C.P.L.R. § 6201, including that "the defendant . . . is a foreign corporation not qualified to do business in the state," *id.* § 6201(1), or that "the defendant, with intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered or secreted property, or removed it from the state or is about to do any of these acts," *id.* § 6201(3). Finally, the plaintiff must show a "need for the attachment," such as where necessary "to secure payment." *Capital Ventures*, 443 F.3d at 221-22 (citing N.Y. C.P.L.R. § 6223(b)).

Where "a statutory ground for attachment exists and both need and likelihood of success are established, [a court's] discretion does not permit denial of the remedy for some other reason, at least absent extraordinary circumstances and perhaps even then." *Id.* at 222; *accord In re Amaranth Nat. Gas Commodities Litig.*, 711 F. Supp. 2d 301, 305-06 (S.D.N.Y. 2010). As set forth

13

below, the Trustee satisfies all of the requirements to confirm the Order of Attachment. The Court should therefore enter an order confirming the Order of Attachment and continuing the levy of the property of Javeri and the Ithaca Trust Defendants as set forth in the Order of Attachment.

### A.    The Trustee Has Stated a Cause of Action.

The first statutory requirement for attachment is that "there is a cause of action" against the Defendants. N.Y. C.P.L.R. § 6212(a). "The standard for determining whether a cause of action exists for purposes of attachment under New York law is a liberal one. Unless the plaintiff's papers clearly establish that the plaintiff must ultimately be defeated, a cause of action exists." *Thornapple Assocs. v. Sahagen,* 06-CV-6412 (JFK), 2007 WL 747861, at *3 (S.D.N.Y. Mar. 12, 2007); *accord In re Hypnotic Taxi LLC,* 543 B.R. 365 (Bankr. E.D.N.Y. 2016).

Here, the Complaint satisfies Section 6212(a)'s first requirement by setting forth the Trustee's colorable claims for money judgments against Javeri and the Ithaca Trust Defendants in particularized detail and supported by extensive allegations—namely, RICO and/or fraudulent transfer claims against Javeri (Counts 1-2 & 5-6, Compl. Ex. 1, ¶¶ 447, 460-66, 484-500); CPS50 (Counts 1-2, Compl. Ex. 1, ¶¶ 451, 460-66); CPRE (Counts 1-2, 7-10, Compl., Ex. 1, ¶¶ 452, 460-66, 501-31); and Trident in its capacity as Trustee of the Ithaca Trust (Counts 1-2 & 5-6, Compl., Ex. 1, ¶¶ 450, 460-66, 484-500). A cause of action therefore exists against Javeri and the Ithaca Trust Defendants.

### B.    The Trustee Has Shown a Probability of Success on the Merits.

The second statutory requirement is that it is probable the plaintiff's claims will succeed on the merits. The plaintiff need only "demonstrate that it is more likely than not that it will succeed on its claims." *Thornapple*, 2007 WL 747861, at *4; *see also In re Our Distribution Co., Inc.*, 110 B.R. 658, 664 (Bankr. S.D.N.Y. 1990) ("The court need not decide the ultimate merits of the controversy to find a likelihood of success on the merits . . . ."). In addition, "the court must give

REDACTED PURSUANT TO PENDING MOTION TO SEAL [ADV. DKT. 105]

the plaintiff the benefit of all the legitimate inferences that can be drawn from the facts." *Bank of Leumi Tr.*, 892 F. Supp. 482; *Mishcon de Reya New York LLP v. Grail Semiconductor, Inc.*, 11-CV-04971 RJH, 2011 WL 6957595, at *4-5 (S.D.N.Y. Dec. 28, 2011).

As set forth above, the Complaint states detailed allegations for every claim for damages. These allegations are supported by documentary proof that is attached to the Levin Declaration. The Levin Declaration attaches the report of the Examiner, appointed by this Court, who concluded that there was "substantial evidence to support the knowledge and involvement by the Debtors and their senior officers and directors … in the criminal conduct alleged by the Indian authorities," which "has been described as the largest bank fraud in Indian history." (Examiner Rep., Ex. 9, at 1.) The Examiner further found that the settling of the Ithaca Trust and the purchase of the Ritz Carlton Apartment and Essex House Apartment bore indicia of fraud, principally based on his finding that proceeds of the bank fraud likely funded CPS50's purchase of the Ritz Carlton Apartment and the Ithaca Trust's purchase of CPRE. (*Id.* at 150-56.) The Levin Declaration also attaches numerous filings by the ED and PNB in Indian courts that assert, as a result of their independent investigations, that the Modi family's conduct was fraudulent and criminal. (*See, e.g.,* India Enforcement Directorate, Provisional Attachment Order & Complaint Against Modi, Javeri, & Mehta, Ex. 10; India Enforcement Directorate, Provisional Attachment Order & Complaint Against Modi, M. Bhansali, and R. Bhansali, Ex. 11; Punjab National Bank, Judgment Against Modi, Javeri, & Mehta, Ex. 12.) Likewise, the Levin Declaration attaches the order on Mehta's petition for a pardon, in which she admitted her knowing participation in the bank fraud. (Mehta Pardon Order, Ex. 13.) In addition, this Court has issued a judgment avoiding certain transfers from the Debtors in favor of the U.S. Affiliates as actually and constructively fraudulent. (20-1014 Judgment, Ex. 14.) Such transfers bear common indicia of fraud with the fraudulent

REDACTED PURSUANT TO PENDING MOTION TO SEAL [ADV. DKT. 105]

transfers that the complaint seeks to recover from Javeri, Trident, and CPRE, as they were all part

and parcel of the same overarching bank fraud and racketeering conspiracy.

The Court previously ruled that substantially similar allegations, many of which are based

on common facts, were sufficient to state RICO and other claims against Modi, Bhansali (the

Debtors' CEO), and Gandhi (the Debtors' CFO). *See In re Firestar Diamond*, 2021 WL 4824114, at

*11-16. The same result is likely on this Complaint. Accordingly, it is at least "probab[le]," based

upon this evidence and the Complaint's allegations, that the Trustee will prevail on his claims.

*Bank of Leumi Tr.*, 892 F. Supp. at 481.

### C.    Grounds for Attachment Exist Under N.Y. C.P.L.R. § 6201.

The third statutory requirement is that one of the N.Y. C.P.L.R. § 6201 grounds exists.

### i.    Trident and CPRE Are Foreign Corporations Not Registered to Do Business Within New York (C.P.L.R. § 6201(1)).

Trident and CPRE are both "foreign" business entities "not qualified to do business in the

state." N.Y. C.P.L.R. § 6201(1). Trident is a South Dakota corporation, and CPRE is a Delaware

limited liability company. (Compl., Ex. 1, ¶¶ 28-29.) A recent online search of the New York

Department of State's Division of Corporations database shows that neither Trident nor CPRE is

registered to do business in New York. (Trident NY SoS Search, Ex. 15; CPRE NY SoS Search,

Ex. 16.) Accordingly, Section 6201's first ground for attachment is present here with respect to

Trident and CPRE. *See, e.g., In re Amaranth Nat. Gas Commodities Litig.*, 711 F. Supp. 2d at 312

(attaching assets of non-New York LLC that the New York Secretary of State's website reflected

was not registered to do business in New York); *Adler v. Solar Power, Inc.*, 16-CV-1635-LLS-GWG,

2019 WL 2210661, at *3 (S.D.N.Y. May 22, 2019) (treating non-New York corporation as a foreign

corporation under N.Y. C.P.L.R. 6201(a)); *Thornapple*, 2007 WL 747861, at *1 (treating Delaware

LLC as a foreign entity under N.Y. C.P.L.R. 6201(a)). Because the Trustee's RICO claims are

16

asserted against all defendants jointly and severally, the attachment order may be confirmed against Trident and CPRE alone, based solely on N.Y. C.P.L.R. § 6201(1).

>    **ii.    Javeri and the Ithaca Trust Defendants Are About to Dispose of Property With the Intent to Defraud Creditors or Frustrate the Enforcement of a Judgment (N.Y. C.P.L.R. § 6201(3)).**

N.Y. C.P.L.R. § 6201(3) permits an attachment if the defendant, "with intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered or secreted property, or removed it from the state or is about to do any of these acts."

When evaluating this ground, "it is not always practicable to establish by proof the existence of a fraudulent intent even when in reality it exists. Direct proof of the fact can rarely be obtained, and when it is established it must ordinarily be inferred from the circumstances." *Bank of Leumi Tr.*, 892 F. Supp. at 483 (internal alterations omitted). Courts therefore typically "look to 'badges of fraud' to establish actual intent." *Hypnotic Taxi*, 543 B.R. at 374 (citing *In re Kaiser,* 722 F.2d 1574, 1582 (2d Cir.1983)). "[S]ix telling badges of fraud are: (1) the lack or inadequacy of consideration; (2) the family, friendship, or close associate relationship between the parties; (3) the retention of possession, benefit, or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and (6) the general chronology of the events and transactions under inquiry." *Id.* The "presence or absence of any single badge of fraud is not conclusive." *In re Syntax-Brillian Corp.*, No. 10-51389, 2016 WL 1165634, at *5 (Bankr. D. Del. Feb. 8, 2016). Instead, the "proper inquiry is whether the badges of fraud are present, not whether some factors are absent." *Id.*; *accord In re Lehman Bros. Holdings Inc.*, 469 B.R. 415, 447-49 (Bankr. S.D.N.Y. 2012); *In re Cassandra Grp.*, 338

17

B.R. 583, 598 (Bankr. S.D.N.Y. 2006) (finding actual fraudulent transfer where only one badge of fraud was present).

Here, badges of fraud exist that indicate that the proposed sale of the Apartments is made with actual intent to defraud creditors and to frustrate the Trustee's potential judgment against Javeri and the Ithaca Trust Defendants. Both Apartments were purchased for the personal benefit of the Modi family either using funds that were directly sourced from the bank fraud (*e.g.,* the Ritz Carlton Apartment, purchased using Mehta's bank fraud distributions from Shadow Entity Fine Classic) or using corporate funds of the U.S. Entities, which were also commingled with proceeds of the bank fraud (the Essex House Apartment, the mortgage of which was satisfied with funds from the U.S. Entities). After using bank fraud proceeds and the U.S. Entities' corporate assets to purchase the Apartments, Javeri, Mehta, and their co-conspirators caused CPRE and CPS50 (and, thus, the Apartments) to be transferred to the Ithaca Trust, all while Javeri and her family retained "the retention of possession, benefit or use of the property." *Hypnotic Taxi,* 543 B.R. at 374. These transactions occurred in August and December 2017 when Javeri, Mehta, and their co-conspirators were executing their plan to exit the bank fraud and launder its proceeds before the retirement of their accomplice inside PNB and the expiration of their last LOUs in January 2018.

CPRE and CPS50 (and, thus, the Apartments) have sat in the Ithaca Trust ever since. ██

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

REDACTED PURSUANT TO PENDING MOTION TO SEAL [ADV. DKT. 105]

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████

The more plausible explanation is that Javeri seeks to sell the Apartments to frustrate the Trustee's ability to collect on any judgment in this action. Importantly, on October 15, 2021, this Court denied motions to dismiss RICO and related claims arising from the bank fraud against Modi, the Debtors' CEO, and the Debtors' CFO, who were all co-conspirators of Javeri and the Ithaca Trust Defendants. ███████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████ Javeri's actions to liquidate the Apartments shortly after this Court ruled that the Trustee stated viable claims arising from the bank fraud against Javeri's co-conspirators is strong evidence that her real goal is to move assets out of the Trustee's reach before he can execute a judgment on the claims asserted in this action.

19

Most critically, Javeri offers no assurances that the proceeds from the sale of the Apartments will remain available to the Trustee for execution. ███████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████ If the Apartments are sold in the absence of a confirmed Order of Attachment from this Court, Javeri might deplete the sale proceeds from CPS50, CPRE, and the Ithaca Trust before the Trustee is able to execute a judgment. Javeri may then effectively render herself and the Ithaca Trust Defendants judgment-proof, as it is unknown at this time if Javeri or the Ithaca Trust Defendants own other valuable assets that may be readily levied upon the entry of a judgment in favor of the Trustee.[6]

Viewed in the context of the entire bank fraud and the Modi family's long-running efforts to remove assets from the reaches of their creditors and the timing of Javeri's actions in the wake of this Court's motion to dismiss ruling, the proposed sale of the Apartments appears to be another tactic to "dispose" of or "secrete" property "with intent to defraud [Javeri's and the Ithaca Trust Defendants'] creditors." N.Y. C.P.L.R. § 6201(3). Accordingly, grounds for attachment under New York law exist here.

> **D.    Javeri and the Ithaca Trust Defendants Lack Any Legitimate Counterclaims.**

The fourth requirement of N.Y. C.P.L.R. § 6212(a) is that the amount demanded must exceed all counterclaims known to the plaintiff. *See Etalon Imob S.R.L. v. Schoenbach*, No. 12-CV-6868 BSJ, 2012 WL 4741595, at *4 (S.D.N.Y. Oct. 3, 2012) (the amount demanded exceeded any counterclaims where "no counterclaims have been filed against Plaintiffs as of the date of [the

---

[6] Even if discovery reveals additional material assets that Javeri owns, the potential loss of the $30 million value of the Apartments is likely to prejudice the Trustee's collection efforts because it is not assured that any of her other assets would be sufficient to satisfy the Trustee's entire judgment.

REDACTED PURSUANT TO PENDING MOTION TO SEAL [ADV. DKT. 105]

attachment] order"). Javeri, CPS50, and CPRE have not yet answered the Complaint and therefore have not yet filed any counterclaims. (*See generally* Adv. Dkt.) While Trident has answered the Complaint, it has not asserted any counterclaims. (*See generally* Adv. Dkt. 26.) In addition, the Trustee is unaware of any counterclaims that Javeri or the Ithaca Trust Defendants could legitimately assert. Any such claims against the Debtors are most likely barred since they were not asserted before the bar date in the Debtors' chapter 11 cases. (*See* Bankr. Dkt. 482, ¶ 1 (establishing general bar date of December 11, 2018).) And any such claims could not exceed the damages to which the Trustee is entitled, as the Modi family's bank fraud and racketing conspiracy led to the accrual of over $1 billion in claims asserted by PNB against the Debtors. Accordingly, the fourth element for a pre-judgment attachment under N.Y. C.P.L.R. § 6212(a) is met.

### E.    Attachment Is Necessary for the Trustee's Security.

In addition to the *prima facie* case for attachment under N.Y. C.P.L.R. § 6212(a), New York law provides that an order of attachment can be vacated or modified if the plaintiff fails to show "the need for continuing the levy." N.Y. C.P.L.R. § 6223. The Second Circuit has held that this provision requires a plaintiff to also show that an order of attachment "is needed to secure payment or obtain jurisdiction." *Capital Ventures*, 443 F.3d at 222 (a district court lacks discretion to deny a motion for pre-judgment attachment if the elements of Section 6212 are met and the attachment "is needed to secure payment").

Here, confirming the Order of Attachment is necessary to secure payment on any potential judgment, since (1) the Apartments appear to be the only assets of Defendants CPS50, CPRE, and Trident as Trustee; (2) Javeri has claimed she lacks other sufficient assets, aside from the Apartments, to fund her current expenses; and (3) it is unknown at this time whether Javeri owns other material assets that may be available to satisfy a judgment. Under these circumstances, the

REDACTED PURSUANT TO PENDING MOTION TO SEAL [ADV. DKT. 105]

"financial position [of Javeri and the Ithaca Trust Defendants] and proposed [sale] poses a significant risk that [the Trustee] will not be able to enforce a future judgment," justifying an order of attachment. *In re Amaranth Nat. Gas Commodities Litig.*, 711 F. Supp. 2d at 312 (issuing an order of attachment where the plaintiffs sought damages of $6 billion and defendant's assets were $185 million); *accord ITC Ent., Ltd. v. Nelson Film Partners,* 714 F.2d 217, 219, 220-21 (2d Cir. 1983) (remanding with instructions to enter order of attachment where defendant did not have sufficient assets in New York to satisfy a potential $2.7 million judgment against him); *Thornapple,* 2007 WL 747861, at *6 ("[A] defendant's financial instability may justify a plaintiff's fear that a potential judgment will not be satisfied and thus provide a ground for an attachment.").

## II.    THE TRUSTEE IS ENTITLED TO DISCOVERY UNDER N.Y. C.P.L.R. § 6220.

Due to Javeri's and the Ithaca Trust Defendants' involvement in a years-long, multi-billion dollar bank fraud, which they intentionally hid and obscured from creditors, the Trustee has limited knowledge of the nature and location of Javeri's and the Ithaca Trust Defendants' other assets that may satisfy a judgment in this action. Therefore, the Trustee may encounter difficulty levying Javeri and the Ithaca Trust Defendants' property in an amount sufficient to provide security. Accordingly, the Trustee seeks discovery pursuant to N.Y. C.P.L.R. § 6220 to aid in attachment.

N.Y. C.P.L.R. § 6220 provides that "at any time after the granting of an order of attachment and prior to final judgment in the action, upon such notice as the court may direct, the court may order disclosure by any person of information regarding any property in which the defendant has an interest, or any debts owing to the defendant." N.Y. C.P.L.R. § 6220. Under this provision, courts regularly permit discovery of defendants and relevant third parties to identify the defendants' attachable property. *See Swift Spinning Mills v. B&H Apparel,* 00-CV-652 (AKH), 2003 WL 942610, at *3-4 (S.D.N.Y. Mar. 6, 2003) (granting the plaintiff's motion "to compel discovery

REDACTED PURSUANT TO PENDING MOTION TO SEAL [ADV. DKT. 105]

in aid of attachment," which included depositions of the defendants and their accountants, production of defendants' income tax returns, and access to defendant's safe deposit box); *Etalon Imob*, 2012 WL 4741595, at *5 ("So long as the order [of attachment] is outstanding and unsatisfied, a plaintiff is entitled to learn of assets [under N.Y. C.P.L.R. § 6220] to enable a sheriff to seize sufficient property to comply with the order"); *Heller Fin., Inc. v. Wall St. Imports, Ltd.*, 140 Misc. 2d 205, 206-07 (N.Y. Sup. Ct. 1988) (permitting discovery under N.Y. C.P.L.R. § 6220 against "any person," not just defendants against whom attachment is sought). As a result, in connection with confirming the Order of Attachment, the Court should confirm the Trustee's authority to seek discovery related to Javeri's and the Ithaca Trust Defendants' assets that, in addition to the Apartments, may secure the Trustee's judgment demand in this action.

## III.    A MINIMAL UNDERTAKING IS APPROPRIATE UNDER N.Y. C.P.L.R. § 6212(b).

N.Y. C.P.L.R. § 6212(b) requires that, "[o]n a motion for an order of attachment, the plaintiff shall give an undertaking, in a total amount fixed by the court, but not less than five hundred dollars, a specified part thereof conditioned that the plaintiff shall pay to the defendant all costs and damages, including reasonable attorney's fees, which may be sustained by reason of the attachment if the defendant recovers judgment or if it is finally decided that the plaintiff was not entitled to an attachment."

Courts often order undertakings that represent a small percentage of the attachment. *See, e.g., In re Amaranth Natural Gas Commodities Lit.*, 711 F. Supp. 2d at 313 (undertaking of 0.35% ($250,000) on attachment of $72.4 million); *New York Dist. Council of Carpenters Pension Fund v. KW Constr.*, 07-CV-8008, 2008 WL 2115225, at *6 (S.D.N.Y. May 16, 2008) (undertaking of 4.5% ($50,000) on attachment of $1.1 million); *OSRecovery, Inc. v. One Groupe Int'l, Inc.*, 305 F. Supp. 2d 340, 348 (S.D.N.Y. 2004) (undertaking of 0.04% ($100,000) on attachment of $250 million); *In re Schick*, 215 B.R. 13, 18 n.7 (Bankr. S.D.N.Y. 1997) (undertaking of 0.09% ($500) on attachment of

REDACTED PURSUANT TO PENDING MOTION TO SEAL [ADV. DKT. 105]

$525,000); *Disney Enters., Inc. v. Finanz St. Honore, B.V.*, 13-CV-6338 (NG) (SMG), 2017 WL 1862211, at *4 (E.D.N.Y. May 8, 2017) (undertaking of 0.5% ($3,500) on attachment of $700,000); *S.M. Pires v. Frota Oceanica Brasileira, S.A.*, 800 N.Y.S.2d 354 (table), 2005 WL 579500, at *5 (Sup. Ct. N.Y. Co. Jan. 14, 2005) (undertaking of 2.4% ($100,000) on attachment of $4.2 million).

The Trustee respectfully submits that a minimal undertaking of not more than $50,000 is appropriate here. *See OSRecovery*, 305 F. Supp. 2d at 348 (approving undertaking of 0.04% ($100,000) on attachment of $250 million). Requiring a larger undertaking will deplete limited estate assets, which is the very outcome this attachment is sought to avoid, and may impair distributions to creditors whose claims have not yet been satisfied. Conversely, the attachment and minimal undertaking will not harm Javeri or the Ithaca Trust Defendants because they will retain beneficial use of the Apartments during the pendency of this action.

*[Signature page follows]*

REDACTED PURSUANT TO PENDING MOTION TO SEAL [ADV. DKT. 105]

## CONCLUSION

For the reasons set forth herein, the Court should (i) issue an order confirming the Order of Attachment in the form attached to the confirmation motion contemporaneously filed herewith, (ii) permit the Trustee to give an undertaking of $50,000 for the attachment, (iii) authorize discovery under N.Y. C.P.L.R. § 6220, and (iv) grant such further relief as is just.

Dated:  February 25, 2022
      New York, New York

Respectfully submitted,

**JENNER & BLOCK LLP**

By: */s/ Angela M. Allen*
Vincent E. Lazar
Angela M. Allen (admitted *pro hac vice*)
William A. Williams (admitted *pro hac vice*)
Adam T. Swingle (admitted *pro hac vice*)
353 North Clark Street
Chicago, Illinois 60654
(312) 222-9350
vlazar@jenner.com
aallen@jenner.com
wwilliams@jenner.com
aswingle@jenner.com

Carl N. Wedoff
919 Third Avenue
New York, New York 10022
(212) 891-1600
cwedoff@jenner.com

*Counsel for the Trustee*

REDACTED PURSUANT TO PENDING MOTION TO SEAL [ADV. DKT. 105]