**VIA EMAIL AND ECF**
March 9, 2022

The Honorable Sean H. Lane
U.S. Bankruptcy Court for the Southern District of New York
One Bowling Green
New York, NY 10004-1408
SHL.orders@nysb.uscourts.gov

Re:   *Levin v. Javeri* et al. *(In re Firestar Diamond, Inc.),* Adv. No. 20-01054

Dear Judge Lane:

Jenner & Block LLP is counsel to Plaintiff Richard Levin, liquidating trustee of Firestar Diamond, Inc. *et al.* (the "**Trustee**"), and DuffyAmedeo LLP is counsel to Defendants Central Park South 50 Properties LLC ("**CPS50**") and Central Park Real Estate LLC ("**CPRE**") (together with the Trustee, the "**Parties**"), in the above-referenced adversary case (the "**Modi Family Action**").

As Your Honor might recall, at the February 2, 2022 hearing on the motions to dismiss filed by certain defendants in the Modi Family Action (Adv. Dkt. 39, 42, 44, 47, and 56) (the "**Motions to Dismiss**"), counsel for CPRE and CPS50 identified an apparent inconsistency among the Trustee's allegations concerning which entity—CPS50 or its sole member, the Ithaca Trust—acquired the Ritz Carlton Apartment (as defined in the complaint). For ease of reference, the pertinent pages of the hearing transcript are attached as Exhibit A.

After the hearing, as Your Honor instructed, the Parties conferred in good faith to resolve the ambiguity. We are pleased to report that the Parties have agreed to the modifications reflected in Exhibit B hereto (which contains both the modified allegations and certain related allegations for additional context). The Parties respectfully request that Your Honor consider these allegations as modified in Exhibit B for the purposes of ruling on CPRE and CPS50's Motion to Dismiss.

For the avoidance of doubt, the Parties' stipulation to the revised form of these allegations does not moot or otherwise resolve CPRE and CPS50's Motion to Dismiss. The Parties' respective legal arguments are preserved in their entirety. Thank you for your consideration of this matter.

Respectfully submitted,

*/s/ William A. Williams*
William A. Williams

*/s/ Todd E. Duffy*
Todd E. Duffy

cc:
    Richard Levin
    Angela Allen
    Carl Wedoff
    Roger Bernstein
    Mauro Wolfe
    Sarah Stewart
    Benjamin Suess

**Exhibit A**
**(Hearing Transcript Excerpts)**

```
                    UNITED STATES BANKRUPTCY COURT
                    SOUTHERN DISTRICT OF NEW YORK
```

In re:                                         Case No. 18-10509-shl
                                               New York, New York
   FIRESTAR DIAMOND, INC.                      February 2, 2022
       AND FANTASY, INC.,                      11:10 a.m. - 3:34 p.m.
                                      Debtor.

### AP: 20-01054-SHL LEVIN V. JAVERI ET AL

- DOC 38 FIRST MOTION TO DISMISS ADVERSARY PROCEEDING FILED ON BEHALF OF PURVI MEHTA

- DOC 42 MOTION TO DISMISS ADVERSARY PROCEEDING FILED ON BEHALF OF CENTRAL PARK REAL ESTATE, LLC, CENTRAL PARK SOUTH 50 PROPERTIES, LLC

- DOC 44 MOTION TO DISMISS CASE FILED ON BEHALF OF AMI JAVERI

- DOC 46 MOTION TO DISMISS CASE FILED ON BEHALF OF NEHAL MODI

- DOC 56 MOTION TO DISMISS ADVERSARY PROCEEDING FILED ON BEHALF OF NEESHAL MODI

```
                    BEFORE THE HONORABLE SEAN H. LANE
                     UNITED STATES BANKRUPTCY JUDGE
```

Firestar Diamond - 2/2/22                                              84

1   THE COURT: Again, the devil is in the details. The
2   standards for summary judgment or dismissal are markedly
3   different and they are what they are. You all know them, I know
4   them, and I'll take a look at them through the lens of the
5   applicable standard.
6   MR. BERNSTEIN: I just don't want to be misunderstood
7   about our "inference" argument. As I said, it's not that we
8   want them drawn our way, it's that the facts alleged here don't
9   support the ones they want to draw.
10  THE COURT: No, I understand that. You all draw
11  markedly different inferences from the facts here, and so I
12  think your argument is that no inferences can be drawn, and I
13  think the trustee's argument is that lots of inferences can be
14  drawn, and I think I understand how you approach it, and I think
15  I understand how they approach it, and so I'll just have to
16  figure that out at the end of the day.
17  MR. DUFFY: Your Honor, may I be heard quickly?
18  THE COURT: Sure.
19  MR. DUFFY: There are two comments that I want to
20  make. Number one, I'd like, for the record, just noted that as
21  I mentioned, there is an allegation on the one hand at paragraph
22  450(c) that says CPS-50 purchased the Ritz Carlton apartment,
23  but at -- I'm sorry. At 451, it says that the Ritz Carlton
24  apartment was purchased by CPS-50, but prior to that, at 450(c)
25  and 338 to 340, it says that the trust purchased the apartment,

Firestar Diamond - 2/2/22                                              85

1   and the trustee hasn't responded to that.
2            Number two, with respect to alter ego, the standard is
3   particularly high in New York for alter ego and imputation.  And
4   this is --
5            THE COURT:  Well, let me ask.  Isn't imputation next
6   on the list of things to discuss?
7            MR. DUFFY:  I'm not sure, Your Honor.
8            THE COURT:  I'll have to go back and look at the
9   list --
10           MR. DUFFY:  I can take a look.
11           THE COURT:  -- you gave me at the beginning.
12           MR DUFFY:  Sure.  If I'm getting ahead of myself, I
13  apologize, Your Honor.
14           THE COURT:  No, no, that's all right.  So, let me do
15  this while somebody checks that list for me.  Let me ask the
16  trustee to respond to that specific point that you've identified
17  about what appear to be inconsistent.  Now, lots of people plead
18  in the alternative, but I think you're talking about something
19  different, which is a different allegation as to who purchased
20  what.
21           MR. DUFFY:  That's right.
22           THE COURT:  And so, let me ask the trustee to weigh in
23  on that.
24           MR. WILLIAMS:  Sure.  The way the transaction flowed,
25  and this is consistent with what's in the complaint, is that

Firestar Diamond - 2/2/22                                86

1   CPS-50 itself purchased the Ritz Carlton apartment.  The equity
2   of CPS-50 was then transferred to the Ithaca Trust.  So, to the
3   extent I would have to go back and look at the specific language
4   that Mr. Duffy is referring to, it might be the case that it was
5   a shorthanded fact that the funds used to acquire the Ritz
6   Carlton apartment flowed through the Ithaca Trust, so it might
7   be that that's where the confusion is, but from just a simple
8   standpoint, the LLC itself acquired the property, not the trust
9   directly.
10            MR. DUFFY:  Your Honor, can I read directly from the
11  complaint?  Paragraph 451(f) says, CPS-50 purchased the Ritz
12  Carlton apartment using the proceeds of the bank fraud.
13  Paragraph 450(c) says, the Ithaca Trust purchased the Ritz
14  Carlton apartment using the proceeds of the bank fraud received
15  from Purvi Mehta.
16            THE COURT:  All right.
17            MR. WILLIAMS:  So, the response to that is the 450(c)
18  where it's referring to the Ithaca Trust purchasing the Ritz
19  Carlton apartment, it's more accurate to say that it indirectly
20  purchased it through the LLC, but I don't think that necessarily
21  makes a substantive different in this motion to dismiss anyway.
22            THE COURT:  I don't know what impact that has, if any.
23  I haven't teased that out.  So, let me ask, rather than get
24  waylaid on that particular point, not that it isn't an important
25  point, is for the parties to talk.  And it maybe that it's for

Firestar Diamond - 2/2/22                                            87

1   everybody's benefit that the record is clarified, so that people
2   are not guessing exactly what happened.  And then you can tell
3   me what that record is for purposes of my understanding of the
4   pending motions.  Because again, people will win various parts
5   of a motion, lose various parts, but lack of clarity is good for
6   nobody.  And so, we want to make sure we have the facts right.
7   So, if I ask Mr. Duffy, if you can talk to trustee's counsel and
8   see if there's a way to nail that down so that's it's clear, and
9   then you can also talk about whether there's anything that you
10  need to change about your argument based on that.  So, I'd be
11  willing to accept a two- or three-page letter from each side if
12  somehow if it's necessary to clarify the record, and if that
13  clarification changes anybody's position.
14           MR. WILLIAMS:  Very good, Your Honor.
15           THE COURT:  It's a very sort of hard target point, so
16  I would think it wouldn't require a whole lot of briefing.  But
17  you can't really know what to say until you have nailed that
18  exactly, how to properly characterize the transaction.
19           MR. DUFFY:  Okay.  Very well, Your Honor.  That's
20  fine.  I'm happy to speak with trustee's counsel, and I'm sure
21  it won't be a problem.
22           THE COURT:  All right.  Thank you.  And, again, among
23  the other challenges in this case, I don't want to have a
24  potential concern about relying on something that's incorrect if
25  there's room for different interpretations or a particular

**Exhibit B**
**(Revised Allegations Concerning Ritz Carlton Apartment)**

316. On July 7, 2017, Purvi Mehta entered into a contract to purchase the Ritz Carlton Apartment for $25 million. That same day, Ami Modi wired, as a down payment, $2.5 million of the funds Purvi Mehta had transferred to her in May and June 2017 to a Katz & Matz LLP escrow account. Ami Modi and Purvi Mehta accounted for this transfer as a "partial repayment" of the loan from Purvi Mehta.

. . .

318. On July 11, 2017, Defendant CPS50 was formed and, on August 2, 2017, its operating agreement was executed with Purvi Mehta as sole member and Nirav Modi's uncle Deepak Sheth as its manager.

. . .

322. On or around August 23, 2017, Purvi Mehta, as settlor, executed an instrument (the "**Ithaca Trust Agreement**") creating the Ithaca Trust as an irrevocable trust under Delaware law.

. . .

332. On August 25, 2017, Purvi Mehta, on her own behalf, and Deepak Sheth, as manager of CPS50P LLC, executed an agreement under which Mehta assigned her interest in the Ritz Carlton sale contract to CPS50P LLC.

333. On August 28, 2017, Deepak Sheth, in his capacity as Investment Advisor of the Ithaca Trust, signed and delivered a letter directing Commonwealth as Ithaca Trustee to: (a) accept an assignment from Purvi Mehta of the 100% membership interest in the CPS50; (b) execute an Amended and Restated Operating Agreement for CPS50; and (c) make an initial

capital contribution in the amount of $23,000,000 to CPS50 by wiring that amount to the Katz & Matz LLP escrow account to fund the purchase of the Ritz Carlton Apartment.

. . .

335. On August 29, 2017, Purvi Mehta assigned the membership interest in CPS50 to the Ithaca Trust.

336. On August 30, 2017, Modi emailed Day Pitney attorneys and other professionals informing them that $23 million had been wired from Mehta to Commonwealth and directing Commonwealth to further wire the funds to attorneys at Katz & Matz to ~~execute~~ fund CPS50's ~~the~~ purchase of the Ritz Carlton Apartment. Mehta was not on the email thread.

337. Also on August 30, 2017, Katz & Matz attorney Steven Matz emailed Nirav Modi and others with instructions for the September 7, 2017 closing of ~~the Ithaca Trust's~~ CPS50's purchase of the Ritz Carlton Apartment. Once again, Mehta was not on the email thread.

338. On August 31, 2017, Mehta transferred $23 million to Commonwealth, as trustee of The Ithaca Trust. Commonwealth then, as a capital contribution to CPS50, transferred those funds to the Katz & Matz escrow account for CPS50's purchase of the Ritz Carlton Apartment.~~,~~ ~~where they were subsequently used to buy the Ritz Carlton Apartment.~~

340. On September 6, 2017, Katz & Matz, on behalf of CPS50, issued a $22,567,465.92 check to the sellers of the Ritz Carlton Apartment in connection with the closing of the sale.

. . .

450. The Ithaca Trust's agreement to join and support the RICO Conspiracy is demonstrated by or can be inferred from, among other things, the following:

   a. Nirav Modi enjoys complete control over the Ithaca Trust, the Ithaca Trustee, the Ithaca Protector, the Ithaca Investment Advisor, the Ithaca Trust Agreement, and all of the assets in the Ithaca Trust.

b. The Ithaca Trust was settled by Purvi Mehta, one of the Modi family's primary money laundering conduits.

c. The Ithaca Trust funded CPS50's purchased of the Ritz Carlton Apartment using the proceeds of the Bank Fraud received from Purvi Mehta.