UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>FIRESTAR DIAMOND, INC., *et al*.<br><br>    Debtors, | Chapter 11<br><br>No. 18-10509 (SHL)<br><br>(Jointly Administered) |
| Richard Levin, Chapter 11 Trustee of FIRESTAR DIAMOND, INC., FANTASY, INC. and OLD AJ, INC., f/k/a A. JAFFE, INC.,<br><br>    Plaintiff,<br><br>  vs.<br><br>AMI JAVERI (A/K/A AMI MODI), *et al.,*<br><br>    Defendants. | Adv. Proc. No. 20-01054 (SHL) |

**MEMORANDUM OF LAW IN OPPOSITION
TO PLAINTIFF'S MOTION TO CONFIRM EX PARTE ORDER OF
ATTACHMENT**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ..................................................................................................... 2

ARGUMENT ........................................................................................................................ 5

I.     THE ATTACHMENT ORDER SHOULD BE DISSOLVED, NOT CONFIRMED ........ 5

   A.    The Trustee Does Not Have Valid Causes of Action ..................................................... 7

   B.    The Trustee Has Not Demonstrated a Probability of Success on the Merits Supported by

   Evidence ................................................................................................................................ 8

      1.    The Trustee Was Required to Proffer Evidence for Each Element of His Claims ..... 8

      2.    The Trustee's Affidavit, Admittedly Based on "Opinion," Is Not Evidence .......... 10

      3.    The Trustee's Exhibits Do Not Show a Probability of Success on the Merits ........ 11

         a.    The Complaint Is Not Evidence ........................................................................ 11

         b.    The Examiner's Report Is Not Evidence ........................................................... 12

         c.    Exhibit 10 Does Not Support Probability of Success on the Merits ..................... 14

         d.    Exhibit 11 Does Not Support Probability of Success on the Merits ..................... 16

         e.    Exhibit 12 Does Not Support Probability of Success on the Merits ..................... 16

         f.    Exhibit 13 Does Not Support Probability of Success on the Merits ..................... 17

         g.    Exhibit 14 Does Not Support Probability of Success on the Merits ..................... 17

   C.    The Trustee Did Not Provide Evidence of Damages ..................................................... 18

   D.    Grounds for Attachment Do Not Exist Against Ami or CPS50 .................................. 20

i

II.       █████████████  SHOULD NOT BE ATTACHED ............................................. 24

III.     THE ORDER ATTACHES PROPERTY AND INTERESTS THAT ARE NOT ATTACHABLE ....................................................................................................... 26

   A.   The Trust Advisor and LLC Manager Positions Are Not Attachable Property ............ 27

   B.   The Trust Property Is Not Attachable. .......................................................................... 28

IV.    IF THE ATTACHMENT IS CONFIRMED, IT SHOULD BE CONFIRMED ONLY IN PART 29

   A.   The Court Should Permit Ami to Receive Living Expenses ......................................... 30

   B.   The Amount of the Undertaking Should Be Increased ................................................. 30

CONCLUSION ...................................................................................................................... 32

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Abacus Federal Sav. Bank v. Lim,*
    8 A.D.3d 12 (1st Dep't. 2004) ........................................................... 21, 22

*Bank of Leumi Tr. Co. of New York v. Istim, Inc.,*
    892 F. Supp. 478 (S.D.N.Y. 1995) ............................................. 6, 21, 22

*Buy This, Inc. v. MCI Worldcom Commc'ns, Inc.,*
    178 F. Supp. 2d 380 (S.D.N.Y. 2001) ............................................. 5, 6

*Chevron Corp. v. Donziger,*
    840 F. Supp. 2d 773 (S.D.N.Y. 2012) ........................................... 18, 19

*Congregation Erech Shai Bais Yosef, Inc. v. Werzberger,*
    189 A.D.3d 1165 (2d Dep't 2020) ................................................ 30, 31

*Crawford v. Franklin Credit Mgmt. Corp.,*
    758 F.3d 473 (2d Cir. 2014) ............................................................ 8, 9

*Disney Enters., Inc. v. Finanz St. Honore, B.V.,*
    2017 WL 1862211 (E.D.N.Y. May 8, 2017) ..................................... 31

*DLJ Mortg. Cap., Inc. v. Kontogiannis,*
    594 F. Supp. 2d 308 (E.D.N.Y. 2009) ................................. 5, 6, 8, 20

*Duemler v. Wilmington Trust Co.,*
    2004 WL 5383927 (Del.Ch. Nov. 24, 2004) ................................... 23

*Encore Credit Corp. v. LaMattina,*
    2006 WL 148909 (E.D.N.Y. Jan. 18, 2006) ............................... Passim

*Faberge Int'l Inc. v. Di Pino,*
    109 A.D.2d 235 (1st Dep't 1985) ........................................................ 6

*Genger v. Genger,*
    152 A.D.3d 444 (1st Dep't 2017) ....................................................... 6

*Henek v. CSC Holdings, LLC,*
    449 F. Supp. 3d 35 ........................................................................... 11

*Hotel 71 Mezz Lender LLC v. Falor,*
    14 N.Y.3d 303 (2010) ...................................................................... 24

*In re Amaranth Nat. Gas Commodities Litig.*,
711 F. Supp. 2d 301 (S.D.N.Y. 2010) ....................................................... 31

*In re FiberMark, Inc.*,
339 B.R. 321 (Bankr. D. Vt. 2006) ........................................................ 13

*In re Hypnotic Taxi LLC*,
543 B.R. 365 (Bankr. E.D.N.Y. 2016) ............................................... 20, 23

*In re Refco Inc. Sec. Litig.*,
2013 WL 12191891 (S.D.N.Y. Mar. 11, 2013) ................................. 12, 13

*In re Rickel & Assocs., Inc.*,
272 B.R. 74 (Bankr. S.D.N.Y. 2002) ................................................. 12, 13

*In re Schick*,
215 B.R. 13 (Bankr. S.D.N.Y. 1997) ..................................................... 31

*JSC VTB Bank, etc. v. Mavlyanov*,
154 A.D.3d 560 (1st Dep't 2017) ..................................................... 30, 31

*M.F. Hickey Co. v. Port of New York Authority*,
23 A.D.2d 739 (1st Dep't 1965) ............................................................ 26

*Martin Hilti Family Trust v. Knoedler Gallery, LLC*,
386 F. Supp. 3d 319 (S.D.N.Y. 2019) .................................................. 8, 9

*Medical Bldgs. Assoc., Inc. v. Abner Props. Co.*,
103 A.D.3d 488 (1st Dep't 2013) ..................................................... 30, 31

*Mitchell v. Fid. Borrowing LLC*,
34 A.D.3d 366 (1st Dep't 2006) .............................................................. 6

*Mitchell v. Garrison Protective Servs., Inc.*,
579 F. App'x 18 (2d Cir. 2014) ............................................................. 26

*Nanjing Textiles IMP/EXP Corp. v. NCC Sportswear Corp.*,
2006 WL 2337186 (S.D.N.Y. Aug. 11, 2006) ...................................... 11

*New York Dist. Council of Carpenters Pension Fund v. KW Constr.*,
2008 WL 2115225 (S.D.N.Y. May 16, 2008) ....................................... 31

*OSRecovery, Inc. v. One Groupe Int'l, Inc.*,
305 F. Supp. 2d 340 (S.D.N.Y. 2004) ................................................... 31

*Prentiss v. Greene*,
    193 A.D. 672 (1st Dep't 1920) .......................................................................... 18, 19

*S.M. Pires v. Frota Oceanica Brasileira, S.A.*,
    800 N.Y.S.2d 354 (table), 2005 WL 579500 (Sup. Ct. N.Y. Co. Jan. 14, 2005) ..................... 31

*Silverman Partners, L.P. v. First Bank*,
    687 F. Supp. 2d 269 (E.D.N.Y. 2010) ........................................................ 6, 8, 10, 14

*Skyline Steel, LLC v. PilePro, LLC*,
    2015 WL 5076695 (S.D.N.Y. Aug. 27, 2015) .................................................... 5, 10

*Thornapple Assocs. v. Sahagen*,
    2007 WL 747861 (S.D.N.Y. Mar. 12, 2007) .................................................... 6, 7, 8

**Statutes and Rules**

6 Del. C. §18-401 and § 18-101(12) .......................................................................... 27

6 Del. C. § 18-701 ........................................................................................................ 28

11 U.S.C.A. § 548 (a)(1)(A) ........................................................................................ 10

11 U.S.C.A. § 548(a)(1)(B) .......................................................................................... 10

12 Del. C. § 3301(5) ..................................................................................................... 23

12 Del. C. § 3313(b) ..................................................................................................... 22

NY Real Prop. Law §§ 339-z, 339-aa .......................................................................... 32

NY LLC Law § 414 ....................................................................................................... 27

NY LLC Law § 601 ....................................................................................................... 28

NY DCL § 273 ........................................................................................................... 9, 10

NY DCL § 276 ........................................................................................................... 9, 29

S.D. Codified Laws § 47-34A-404.1 ............................................................................ 27

S.D. Codified Laws § 55-1B-2(1) ................................................................................ 22

CPLR 5201 ............................................................................................................. 26, 28

CPLR 5205(c) ........................................................................................................... 26, 28, 29

CPLR 6201 ..................................................................................................................... 5, 19

CPLR 6202 ......................................................................................................................... 26

CPLR 6211 ..................................................................................................................... 1, 3, 5

CPLR 6220 ............................................................................................................................. 4

**Other Authorities**

*Am I My Brother's Keeper: Willful Misconduct and the Directed Trustee Under the Uniform
   Directed Trust Act,*
   44 ACTEC L.J. 207 (2019) ..................................................................................... 23

Defendant Ami Javeri ("Ami") respectfully submits this Memorandum of Law in Opposition to (i) the Motion to Confirm the *ex parte* Order of Attachment filed by Plaintiff Richard Levin, as Trustee for the liquidating trusts of debtors Firestar Diamond, Inc., Old AJ, Inc., and Fantasy, Inc., (the "Trustee") (Dkt. 107) and (ii) the Trustee's supplemental motion to attach related to the ███████ (Dkt 116).[1] For the reasons stated herein, both motions should be denied.

## PRELIMINARY STATEMENT

There is a clear process for seeking a pre-judgment attachment in New York. The plaintiff must come to court with evidence in the form of an affidavit and other written evidence showing that the motion should be granted. CPLR 6212(a). On a motion to confirm an attachment, it is the plaintiff's burden to prove the grounds for the attachment exist, that it is probable the plaintiff will succeed on the merits, and that there is a continuing need for the levy. CPLR 6211(b). The Trustee did not do this here.

Instead of supporting his motion with evidence, the Trustee submitted a brief affidavit reasserting the allegations in the Complaint and describing his desire to execute on a potential future judgment against property held in trust. Instead of submitting written evidence showing a likelihood of success on the merits or an intent to defraud creditors, the Trustee submitted a copy of the Complaint, copies of complaints filed in India, a copy of the Examiner's Report, a stipulated judgment against other parties, and other documents that do not substantiate the Trustee's allegations. These documents are a house of cards.

The Examiner's Report relied on complaints filed by Indian authorities to describe what the Examiner carefully called the "Alleged Fraudulent Circumstances." *See, e.g.,* Declaration of

---

[1] Central Park South 50, LLC ("CPS50") and Central Park Real Estate, LLC ("CPRE"), two entities managed by Ami, also submit this opposition to the motion to confirm the attachment directed at them. We understand that Trident has not taken any position with respect to the attachment and we anticipate it will not do so.

Robert Levin in Support of the Motion to Confirm to the Attachment ("Levin Decl."), Ex. 9 ("Examiner's Report") at 24, n. 68. Indian authorities then relied on the Examiner's Report in additional complaints. *See*, *e.g.,* Levin Decl., Ex. 10, ¶ 8.6, Ex. 11, ¶ 8.4. The Trustee apparently relied on these Indian complaints when writing his Complaint in this matter and relies on them again now in support of his attachment motions. But continually recycling the same allegations does not prove them. Relying on allegations from an Indian case may be good enough in drafting a complaint, but it is not sufficient to attach someone's property.[2]

The Trustee has not shown the required likelihood of success on the merits. He has not shown what damages he may recover. He has not shown that Ami has an intent to defraud her creditors or frustrate the enforcement of a judgment. For these reasons, the Trustee's motion to confirm the attachment should be denied.

The Order of Attachment and the Trustee's supplement relating to the ▮▮▮▮▮▮ seek to attach several things that are not attachable, including property held in a trust created by someone other than the defendant and positions in LLCs and the trusts that are not assignable or transferrable. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. The Order should not be confirmed and the motion to attach the ▮▮▮▮▮ should be denied for these reasons.

**STATEMENT OF FACTS**

In November 2021, Ami Javeri, as manager of Central Park South 50, LLC ("CPS50"), hired a real estate broker to sell the LLC's sole asset, Apt. 33 in 50 Central Park South. Levin

---

[2] There are additional reasons to doubt the accuracy of the allegations in the Indian court documents. The U.S. State Department's 2021 Human Rights Report on India notes that "[s]ignificant human rights issues included credible reports of . . . extrajudicial killings by the government or its agents, [and] arbitrary arrest and detention by government authorities." It further noted that the Indian "judicial system experienced delays, capacity challenges, and corruption." *India 2021 Human Rights Report*, https://www.state.gov/wp-content/uploads/2022/03/313615_INDIA-2021-HUMAN-RIGHTS-REPORT.pdf.

2

Decl., Ex. 3. In December 2021, , Ami's counsel in South Dakota informed Mr. Levin, the Trustee here, of the filing in South Dakota and that Ami intended to sell the properties, reinvest in lower-priced units, and maintain any funds as trust assets to fund the cost of ownership. Levin Decl., Ex. 3.

In response, the Trustee filed an *ex parte* motion seeking an order of attachment under CPLR 6211 against Defendants Ami Javeri, CPS50, Central Park Real Estate LLC ("CPRE"), and the Trident Trust Company, solely as Trustee of The Ithaca Trust ("Trident"). Dkt. 110-1. The *ex parte* motion sought to attach Ami's beneficial interests in the Ithaca Trust, her interests as Investment Advisor of the Ithaca Trust, her interests as manager of CPS50 and as manager of CPRE, and any other property she owned or that was in her possession, custody, or control. Dkt.

110-1. The *ex parte* motion also sought to attach the Ritz Carlton Apartment, CPS50's legal title to the Ritz Carlton Apartment, Trident's ownership interest in CPS50, the Essex House Apartment, CPRE's legal title to the Essex House Apartment, Trident's ownership interest in CPRE, and any other property owned by or in the possession custody or control of Trident, CPS50, and CPRE. *Id.* The Court then entered an order attaching Ami's interests in the apartments, her beneficial interests in the Ithaca Trust, and her interests as investment advisor to the Ithaca Trust and as manager of CPS50 and CPRE. Dkt. 104 (the "Order"). The Order did not attach any other property or interests in Ami's ownership, possession, custody, or control. The Order did attach any and all of the assets of CPS50, CPRE, and Trident as trustee for The Ithaca Trust, including:

> (i) CPS50's legal title to the Ritz Carlton Apartment; (ii) Trident's ownership interest in CPS50 (including any membership units, shares, or other certificates or securities evidencing such ownership interest), held by Trident as Trustee of the Ithaca Trust; (iii) CPRE's legal title to the Essex House Apartment; and (iv) Trident's ownership interest in CPRE (including any membership units, shares, or other certificates or securities evidencing such ownership interest), held by Defendant Trident as Trustee of the Ithaca Trust.

Dkt. 104 at 2. The Trustee subsequently filed this motion to confirm attachment on February 25, 2022. The parties then stipulated to extending the briefing schedule on the motion to permit settlement discussions. Dkt. 122.

The Trustee's motion also sought discovery in aid of attachment under CPLR 6220, which the Court ordered. The Trustee served document requests on Ami and the other defendants. Based on documents produced in response to the discovery requests, the Trustee filed a supplement to his motion to confirm the attachment on March 22, 2022. Dkt. 116 (the "Supplement"). ██

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

## ARGUMENT

## I.  THE ATTACHMENT ORDER SHOULD BE DISSOLVED, NOT CONFIRMED

"Because attachment is a harsh remedy the statute must be strictly construed in favor of those against whom it may be applied." *DLJ Mortg. Cap., Inc. v. Kontogiannis*, 594 F. Supp. 2d 308, 319 (E.D.N.Y. 2009) (finding plaintiff failed to show probability of success on the merits of RICO conspiracy claim); *Encore Credit Corp. v. LaMattina*, 2006 WL 148909 at *2 (E.D.N.Y. Jan. 18, 2006) (denying order of attachment where plaintiff did not prove fraudulent intent.). A plaintiff seeking an attachment has the burden of proving four elements set out in CPLR 6212(a), namely that there is a cause of action, that it is probable that the plaintiff will succeed on the merits, that grounds for the attachment exist under CPLR 6201, and that the amount demanded by the plaintiff exceeds all counterclaims known to the plaintiff. CPLR 6212(a); *Buy This, Inc. v. MCI Worldcom Commc'ns, Inc.*, 178 F. Supp. 2d 380, 382 (S.D.N.Y. 2001) (denying attachment where counterclaim plaintiff failed to prove grounds existed under CPLR 6201). On a motion to confirm an attachment issued *ex parte*, the plaintiff also has the burden of proving the need for continuing the levy. CPLR 6211(b), 6223(b).

To meet this burden, the plaaintiff must show these elements through an "affidavit and such other written evidence as may be submitted." CPLR 6212(a). This is "heavy burden," and it cannot be satisfied through allegations alone. *Skyline Steel, LLC v. PilePro, LLC*, 2015 WL 5076695, at *2 (S.D.N.Y. Aug. 27, 2015) (denying motion for attachment where affidavit did not show probability of success on the merits). In *DLJ Mortgage*, for example, the Court denied a RICO plaintiff's motion for attachment against a defendant stating:

> Though DLJ's complaint and moving papers are long on allegations of [defendant's] past wrongs and alleged current transgressions, entirely absent from these submissions are allegations—or, more to the point, evidentiary facts—demonstrating that [the defendant] has intentionally attempted to secrete his assets to avoid his creditors or hinder a judgment in plaintiff's favor, or that he is on the verge of doing so.

594 F. Supp. 2d at 321. In *Silverman Partners, L.P. v. First Bank*, 687 F. Supp. 2d 269, 293 (E.D.N.Y. 2010), the Court denied a motion for an attachment because the affidavit submitted "largely reiterates the allegations against [the defendant] in the plaintiff's complaints, and alone, does not rise to the level of showing probable success on the merits." Indeed, courts regularly deny motions for an attachment when the plaintiff does not provide evidence to support its motion. *E.g., Buy This, Inc.*, 178 F. Supp. 2d at 382; *Encore Credit Corp*, 2006 WL 148909 at *2; *Genger v. Genger*, 152 A.D.3d 444, 445 (1st Dep't 2017) (reversing trial court because "plaintiff submitted no affidavit or written evidence" supporting probability of success); *Mitchell v. Fid. Borrowing LLC*, 34 A.D.3d 366, 366 (1st Dep't 2006) (reversing attachment where plaintiff "merely alleged" that defendant had intent to defraud plaintiff.); *Faberge Int'l Inc. v. Di Pino*, 109 A.D.2d 235, 239 (1st Dep't 1985) (affirming denial of attachment where plaintiff "failed to meet this burden with substantial written evidence as required by the statute"); *cf. Bank of Leumi Tr. Co. of New York v. Istim, Inc.*, 892 F. Supp. 478, 483 (S.D.N.Y. 1995) (plaintiff met burden by "submitting affidavits which make a *prima facie* evidentiary showing of secretion of assets.").

The Trustee has not provided an affidavit or other written evidence supporting the existence of a cause of action, his probability of success on the merits, including any damages, or any fraudulent intent on the part of Ami, Trident, CPRE, or CPS50. The motion to confirm the attachment order should be denied. The supplemental motion to attach ███████████████

███████████████████████████████████████████████████████

### A.    The Trustee Does Not Have Valid Causes of Action

CPLR 6212(a) requires the Trustee to show there is a cause of action. The Trustee asserts that he has a cause of action and contends that "this aspect of the standard is satisfied unless the plaintiff's papers clearly establish that the plaintiff must ultimately be defeated." Memorandum of Law in Support of Plaintiff's Motion to Confirm Order of Attachment ("Br.") at 14 (quoting *Thornapple Assocs. v. Sahagen*, 2007 WL 747861, at *3 (S.D.N.Y. Mar. 12, 2007)).

The Trustee asserts RICO claims against Ami, CPRE, and CPS50 and fraudulent transfer claims against CPRE. Ami and the entities have moved to dismiss the RICO claims against them and if the Court grants that motion the Trustee will not have that cause of action.[3]

CPRE also moved to dismiss the fraudulent transfer claims against it on the grounds that fair consideration was paid. The Trustee's claims shifted over the motion briefing, and is now contradicted by the documents attached to the Trustee's attachment motion. In the Complaint, the Trustee made three allegations:

- On January 2, 2018, the Ithaca Trust purchased CPRE from the Debtor's parent for $6 million provided to it by Purvi Mehta.

- Previously, the Debtor had paid for the mortgage on the Apartment owned by CPRE.

- The year before Synergies had paid Purvi Mehta $14.75 million in repayment of a loan that her brother, Nirav Modi had made to Synergies. Compl. ¶¶ 281-83, 299, 320.

In the briefing, the Trustee alleged that purchase of CPRE was fraudulent because the Debtor had paid the mortgage on the apartment but received none of the proceeds. *See* Trustee's Omnibus Opposition to Defendants' Motions to Dismiss ("Omnibus Opposition"), Dkt. 60 at 64.

---

[3] Importantly, the Trustee has not asserted any fraudulent transfer claim related to ███████████████ Thus, the Trustee does not have additional causes of action with respect to ███████

However, that argument is flatly contradicted by the Examiner's Report which states that the Debtor's parent paid $4.2 million to the Debtor the day after the closing.[4] Furthermore, the Trustee does not trace or even connect any transfer of property of the Debtor or the U.S. Affiliates to this purchase. Accordingly, there is no fraudulent transfer claim related to CPRE or the payments on the Essex House Apartment mortgage.

**B.** **The Trustee Has Not Demonstrated a Probability of Success on the Merits Supported by Evidence**

**1.** **The Trustee Was Required to Proffer Evidence for Each Element of His Claims**

In asserting that he "need only 'demonstrate that it is more likely than not that it will succeed on its claims,'" Br. at 14 (quoting *Thornapple Assocs., Inc. v. Sahagen*, 2007 WL 747861, at *4 (S.D.N.Y. Mar. 12, 2007)), the Trustee ignores that he must "show proof stronger than that required to establish a prima facie case." *Thornapple*, 2007 WL 747861 at *4; *DLJ Mortgage*, 594 F. Supp. 2d at 319; *Silverman Partners*, 687 F. Supp. 2d at 293. Thus, to show probability of success on the merits, the Trustee must supply evidence supporting the elements of the Trustee's RICO conspiracy claims against each of the defendants and the elements of the Trustee's fraudulent transfer claims. *DLJ Mortgage*, 594 F. Supp. 2d at 319; *Silverman Partners*, 687 F. Supp. 2d at 293; *Cf. Thornapple,* 2007 WL 747861 at *4 (finding affidavits and documents tended to prove elements of account-stated claim). However, the Trustee's declaration and exhibits do not provide evidentiary support for these claims.

To establish a RICO conspiracy claim, a plaintiff "must prove (1) that there existed a conspiracy to commit acts that, if successful, would constitute a substantive civil RICO violation;

---

[4]"When Firestar Group, Inc. received the $6 million payment from The Ithaca Trust, Firestar Group Inc. sent a $4,200,000 transfer to FDI on January 3, 2018. FDI's books accounted for this payment as 'FG- Loan Repayment.'" Examiner's Report at 154-155.

(2) that defendant agreed to join in, and knowingly participated in, that conspiracy; and (3) that defendant acted in furtherance of the conspiracy in some manner (although not necessarily by the commission of any RICO predicate acts himself)." *Martin Hilti Family Trust v. Knoedler Gallery, LLC*, 386 F. Supp. 3d 319, 340 (S.D.N.Y. 2019) (citing *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 487 (2d Cir. 2014)). To prove a substantive RICO violation, in turn, "a plaintiff must establish (1) that the defendant (2) through the commission of two or more acts (3) constituting a pattern (4) of racketeering activity (5) directly or indirectly . . . participates in (6) an enterprise (7) the activities of which affect interstate or foreign commerce." *Martin Hilti Family Trust*, 386 F. Supp. 3d at 339 (internal quotations omitted). Finally, a plaintiff must also prove an injury to the plaintiff's business or property and that the injury was caused by the violation of the statute. *Id*. Here, the Trustee has acknowledged that the conspiracy claims against Ami and the other defendants depend on the Trustee being able to prove substantive RICO claims against "substantive conspirators" Nirav Modi, Mihi Bhansali, and Ajay Ghandi in a separate adversary proceeding. *See* Omnibus Opposition, Dkt. 60 at 14. Thus, to demonstrate a likelihood of success on the merits on this motion for an attachment, the Trustee needed to produce affidavits or other written evidence supporting the existence of the RICO violations by the alleged substantive conspirators, including evidence of the enterprise and the pattern of racketeering activity, evidence for two or more predicate acts by the alleged substantive conspirators. The Trustee then needed to also supply evidence supporting the allegation that Ami agreed to join the conspiracy, knowingly participated in it, and that she acted in furtherance of the conspiracy. The Trustee has not provided such evidence.

The Trustee has alleged actual and constructive fraudulent transfers relating to CPRE and the Essex House Apartments. *See* Compl. Counts 5-10. For actual fraudulent transfers under both

the Bankruptcy Code and the New York Debtor and Creditor Law, the plaintiff must prove that the debtor made a transfer of its interest in property "with the actual intent to hinder, delay or defraud any creditor of the debtor." 11 U.S.C.A. § 548(a)(1)(A); NY DCL § 276. For constructive fraudulent transfers, the plaintiff must prove that the debtor (1) received less than reasonably equivalent value and (2) was insolvent on the date the transfer was made or became insolvent as a result of the transfer. 11 U.S.C.A. § 548(a)(1)(B); NY DCL § 273. First, the Trustee has not alleged any fraudulent transfer claims related to ███████████ Second, the Trustee does not even allege that the Debtors (or the U.S. Affiliates) made any transfer of their property interests regarding CPS50 or the Ritz Carlton Apartment. With respect to both the Essex House and Ritz Carlton Apartments, the Trustee's affidavit and exhibits do not support a finding that any transfers were made with the actual intent to hinder, delay, or defraud creditors, and the affidavit and exhibits, at a minimum, provide no evidence regarding the solvency of any of the Debtors or U.S. Affiliates.

## 2. The Trustee's Affidavit, Admittedly Based on "Opinion," Is Not Evidence

As an initial matter, the Trustee affirmed that his declaration is based in part on his "opinion." Levin Decl. ¶ 3. The Trustee then asserted that "Defendant Javeri was directly involved in Nirav Modi's years-long and multibillion-dollar bank fraud" and summarized the allegations in the Complaint. Levin Decl. ¶ 4. The only relevant paragraph in Levin's Declaration is paragraph 4.[5] Levin's conclusory statements summarizing the allegations in the Complaint are not sufficient evidence to grant an attachment. *Silverman Partners*, 687 F. Supp. 2d. at 293-294 ("testimony largely reiterat[ing] the allegations against [defendant] contained in plaintiffs' complaints . . . does not rise to the level of showing probable success on the merits"); *Skyline Steel*, 2015 WL 5076695,

---

[5] In the only other substantive paragraph, the Trustee states his intent to recover the Apartments if he succeeds in this action and notes that his ability to recover could be impaired "if the proceeds from any sale of the Apartments are depleted." Levin Decl. ¶ 5. As discussed in the Statement of Facts, the point of the sale is to reduce costs to the trust, thus preserving the trust assets.

at *3 (S.D.N.Y. Aug. 27, 2015) (denying motion for attachment based on conclusory affidavit); *Nanjing Textiles IMP/EXP Corp. v. NCC Sportswear Corp.*, 2006 WL 2337186, at *6 (S.D.N.Y. Aug. 11, 2006) ("Conclusory allegations cannot supply the basis for granting the harsh remedy of attachment.").

### 3. The Trustee's Exhibits Do Not Show a Probability of Success on the Merits

The Trustee's exhibits are similarly insufficient to support an order of attachment. In the memorandum supporting confirmation, Levin cites the Complaint in this matter, the Examiner's Report, two complaints filed in India (Levin Decl. Ex. 10-11), an Indian judgment (Levin Decl. Ex. 12), an order of an Indian court on Purvi Mehta's application for a pardon (Levin Decl. Ex. 13), and a judgment entered by this Court against the U.S. Affiliates (Levin Decl. Ex. 14). Br. at 15. The evidentiary failings of these documents are perhaps obvious but will be detailed below.

Even if the Trustee's exhibits were appropriate evidence, the content of these documents does not support a finding of a probability of success on the merits. For the RICO claims, the Trustee has alleged that Ami's intent to join the RICO conspiracy can be inferred from the allegations that 1) she "served as a partner" in the three LOU Entities and opened bank accounts for Solar and Stellar; 2) she is the primary beneficiary of the Ithaca Trust; 3) she received and returned money from Purvi Mehta in 2017; 4) she left India in January 2018; and 5) she appointed Nehal Modi as Ithaca Trust Protector in May 2017.[6] *See* Compl. ¶ 447. None of the Trustee's exhibits say anything more than what was alleged in the Complaint.

### a. The Complaint Is Not Evidence

---

[6] The Omnibus Opposition makes clear that the Trustee is asking the Court to infer Ami's intent from these allegations. *See* Dkt. 60 at 31-35 (discussing inferences that could be drawn from the allegations). However, the documents the Trustee submitted on this motion show that Ami was not actually a partner in any of the LOU Entities. Exhibit 12 to the Trustee's declaration indicates that the partners of the LOU Entities were two trusts in India. Levin Decl., Ex. 12 at 20-21. The Examiner's Report also states that the partners were two trusts and the bank accounts were opened by other people along with Ami. Examiner's Report at 29.

A complaint in any matter is not evidence and the Complaint here is no different. *Henek v. CSC Holdings, LLC*, 449 F. Supp. 3d 35, 38, n. 2 (E.D.N.Y. 2020) ("The complaint, of course, is not evidence[.]") Nor are the complaints filed in India. Even well-pleaded complaints contain hearsay evidence and do not present competent, relevant testimony based on personal knowledge and on the authenticated, admissible documents that are necessary to prove a prima facie case. The problem is compounded in this case because the Complaint here is built in part on complaints filed in India. *See* Compl. ¶¶ 188-189, 304, 314. The Indian complaints attached to the Trustee's Declaration, meanwhile, rely on the Examiner's Report. *See, e.g.,* Levin Decl. Ex. 10, ¶ 8.6; Ex. 11 at 13. The Examiner's Report relies on complaints filed in India. Examiner's Report at 24. This continual recycling of allegations does not create evidence.

At the *ex parte* hearing on the Trustee's *ex parte* motion for an order of attachment, the Trustee's counsel clearly understood they were trying to bootstrap allegations into evidence. He stated:



Transcript of Hearing on Ex Parte Motion for Order of Attachment ("Tr."), February 22, 2022, Dkt. 118, at 23:7-17. The Trustee would be entitled to any legitimate inferences if there were any evidence submitted here. The Trustee is not entitled to inferences from allegations stacked on allegations. The Complaint (and Exhibit 10) are not evidence showing that Ami Javeri agreed to join a RICO conspiracy and knowingly participated in it, much less proving the alleged underlying substantive RICO claims. Nor are they evidence of fraudulent transfers.

**b. The Examiner's Report Is Not Evidence**

The Trustee points to the Examiner's Report in support of his motion to confirm, arguing that it supports a finding of probability of success on merits. Br. at 15, Levin Decl. Ex. 9. "But a Bankruptcy Examiner's report is hearsay when offered, as here, to prove the truth of the facts and conclusions propounded in it. And courts routinely find that there is no hearsay exception that would permit a Bankruptcy Examiner's report to be admitted into evidence."[7] *In re Refco Inc. Sec. Litig.*, 2013 WL 12191891, at *11 (S.D.N.Y. Mar. 11, 2013) (citing *In re Rickel & Assocs., Inc.*, 272 B.R. 74, 87 (Bankr. S.D.N.Y. 2002)). If the Trustee "wish[es] to 'prove' the accuracy of the Examiner's conclusions [he] must do so with admissible evidence. The facts, as found by the Examiner, are not 'true' just because they are in the Report." *In re FiberMark, Inc.*, 339 B.R. 321, 327 (Bankr. D. Vt. 2006). The Examiner's Report here is not evidence that can support the Trustee's motion to confirm the order of attachment.

Moreover, the Trustee mischaracterizes the Examiner's Report. The Trustee writes:

> The Examiner further found that the settling of the Ithaca Trust and the purchase of the Ritz Carlton Apartment and Essex House Apartment bore indicia of fraud, principally based on his finding that proceeds of the bank fraud likely funded CPS50's purchase of the Ritz Carlton Apartment and the Ithaca Trust's purchase of CPRE.

Br. at 15. However, the Examiner's Report does not state that the bank fraud "likely" funded the purchase of the apartments. Rather, it notes that the funds for the apartment purchases came from Purvi Mehta's personal accounts.[8] Examiner's Report at 154-155. Nor did the Examiner conclude

---

[7] The Trustee submitted the Examiner's Report to prove the truth of the facts and conclusions in it. He writes, "The Levin Declaration attaches the report of the Examiner, appointed by this Court, who concluded that there was 'substantial evidence to support the knowledge and involvement by the Debtors and their senior officers and directors in the criminal conduct alleged by the Indian authorities.'" Br. at 15. It is worth noting, of course, that Ami Javeri, Trident, the Ithaca Trust, CPRE, CPS50, and Purvi Mehta are not the Debtors or their senior officers and directors.

[8] The Examiner's Report also apparently misunderstood the Ithaca Trust. The Examiner wrote "[t]he beneficiaries of the Trust were Modi and his wife and children." Examiner's Report at 150. Nirav Modi was not a beneficiary of the Ithaca Trust. The only beneficiaries are Ami Javeri and her children. *See* Levin Decl., Ex. 17 at 2. Purvi Mehta's

that these transactions "bore indicia of fraud." Rather, the Examiner stated that he viewed the apartment transactions as "suspect" due to their timing, the "ease" of using luxury real estate to launder money, and "the backdrop of this fraud-related case." In short, the Examiner assumed fraud existed and decided these transactions *might* be part of that assumed fraud.[9] This is not sufficient to support an attachment motion.

In *Silverman Partners*, the plaintiff submitted three affidavits in support of its motion for an attachment, including one from a forensic accountant. 687 F. Supp. 2d at 294. The accountant's affidavit noted "certain round dollar figure transactions among accounts that were notated as being to 'cover invoices.'" *Id*. The accountant then stated that "these payments warrant further scrutiny." *Id*. The court denied the motion for the order of attachment because the accountant's statements did not establish a probability of success on the merits. *Id*. The Examiner's Report here is no better.

### c. Exhibit 10 Does Not Support Probability of Success on the Merits

Exhibit 10 is a complaint by the Directorate of Enforcement seeking an order confirming a provisional attachment on the Essex House and Ritz Carlton Apartments.[10] This complaint contains the same allegations against Ami as the Complaint in this matter, namely that she allegedly is a "partner" in Diamonds R Us, Solar Exports, and Stellar; that she is the beneficiary

---

parents and Mihir Bhansali are residual beneficiaries who would receive any trust property not otherwise distributed should all other beneficiaries die or the trust terminate. *Id*. at 3-4.

[9] The Examiner's Report is clear about this assumption, stating:

> Because the Examiner's charge is focused on investigating the extent of involvement, if any, by the Debtors and their officers and directors in the Alleged Fraudulent Circumstances, the key allegations charged by Indian authorities are summarized below. The Examiner did not investigate the truth of the allegations involving solely Firestar India or overseas operations except to the extent necessary and for the purpose of his investigative directive.

Examiner's Report at 24-25.

[10] The Trustee describes this document as a "provisional attachment order and complaint," *see* Levin Decl., ¶ 16, but there is no order attached to this document. It appears to simply be a complaint seeking a provisional attachment.

of the Ithaca Trust, and that the Ithaca Trust purchased the Essex House Apartment and the Ritz Carlton Apartment. Levin Decl., Ex. 10, ¶¶ 5, 8.6-8.8, 9.1-9.7. There are no further facts evidencing the alleged substantive RICO claims or evidencing Ami's agreement to join a RICO conspiracy and knowingly participate in it.

This complaint is based in part on the Examiner's Report, which, as just discussed, is hearsay. Levin Decl. Ex. 10, ¶ 8.6. This document is also hearsay and contains hearsay within hearsay. *See, e.g.,* Exhibit 10, ¶ 8.3 (recounting out of court statement of Shri Raghuraman).

The allegations in Exhibit 10 are also conclusory. For example, paragraph 8.8 states "[f]rom the above discussion, it is clear that the ultimate source of the funds to purchase the above property namely Essex House 160, Central Park South, New York is the tainted funds generated from fraudulently issued LoUs from Punjab National Bank." But the discussion above this paragraph does not support this conclusion. Rather, it alleges, like the Complaint here, and based on the Examiner's Report, that the funds the Ithaca Trust used to purchase the Essex House Apartment came from Purvi Mehta. Levin Decl., Ex. 10, ¶ 8.6.

The portions of this complaint relating to the Ritz Carlton Apartment are similarly conclusory. Exhibit 10 states "[f]rom the above discussion and the money trail formed, it is clear that the ultimate source of funds to purchase the above property namely 50, Central Park South is stolen funds from Punjab National Bank." Levin Decl., Ex. 10, ¶ 9.7. Again, the discussion above this paragraph is based on the Examiner's Report. Levin Decl. Ex. 10, ¶ 9.6. The exhibit purports to show the money used to purchase the Ritz Carlton Apartment going from Fine Classic to Purvi Mehta to Ami Javeri, then back to Purvi Mehta, then to the Ithaca Trust for the purchase of the Ritz Carlton Apartment. *Id.* But this is different from what is alleged in the Complaint in this matter. The Complaint alleges that Purvi Mehta funded the Ithaca Trust *before* Ami returned the

funds that Purvi had loaned her in May 2017. Compl. ¶¶ 338-339.

This document is not admissible evidence supporting a probability of success on the merits.

### d. Exhibit 11 Does Not Support Probability of Success on the Merits

Exhibit 11 is another complaint from India seeking a provisional order on a different property—50 Riverside Boulevard—but Ami is not a defendant in that case, and she is mentioned only as a "partner" in the LOU Entities. *See* Levin Decl. Ex. 11, ¶ 5(i). Like Exhibit 10, this complaint is hearsay, and, like Exhibit 10, it contains the same allegations as the Complaint in this matter. *See* Compl. ¶ 308. There are no further facts evidencing the alleged substantive RICO claims or Ami's agreement to join the alleged RICO conspiracy and knowingly participate in it. Nor are there any facts proving the purchases of the Essex House and Ritz Carlton Apartments were fraudulent transfers.

### e. Exhibit 12 Does Not Support Probability of Success on the Merits

Exhibit 12 is an Order purportedly issued by the Debts Recovery Tribunal in Mumbai. Ami is named as a defendant, but this exhibit, like the last two, mentions Ami only as a "partner" in Diamonds R Us, Solar, and Stellar. Levin Decl. Ex. 12, ¶¶ 2-4. According to this document, however, the actual partners of Stellar and Solar are the Nirav Family Trust and the Nirav Modi Family Trust. Ami was apparently only considered a "partner" insofar as she was a trustee for these two trusts. *See* Levin Decl., Ex. 12 ¶¶ 19-20. This document does not include factual, non-conclusory evidence against Ami and does not mention the Essex House Apartment, the Ritz Carlton Apartment, CPRE or CPS50. It calls Ami "defendant no. 7" and then repeatedly refers to "defendants no. 1 to 16." *See, e.g.,* Ex. 12, ¶ 29. There are no specific facts proving RICO predicate acts, a pattern of racketeering activity, or the existence of a RICO conspiracy. Again, this document does not evidence an agreement to join the alleged RICO conspiracy, nor does it show that the real

estate transactions were fraudulent.

### f. Exhibit 13 Does Not Support Probability of Success on the Merits

Exhibit 13 purports to be an application by Purvi Mehta for a provisional pardon, but once again, Ami is not mentioned in this document. It does not provide any facts supporting the existence of a RICO enterprise, predicate acts, or a pattern of racketeering activity by the alleged "substantive conspirators." It also does not show an agreement by Ami to join an alleged RICO conspiracy and her knowing participation in it.

At the hearing on the Trustee's *ex parte* motion for an attachment, the ████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ███ But it is not clear what the supposed admission is. The paragraph states that Purvi "did not contest" certain attachments, including provisional attachments on the apartments. The document does not explain what bases for "contesting" these purported attachments were available to her nor does it explain why she did "contest" the provisional attachment on a $6 million bank account in Singapore. *See* Ex. 13 at 4-6. Purvi Mehta is not the owner of the Apartments, and she may not have had a right to contest the attachments. It is not accurate to characterize this as an admission that the properties were purchased with proceeds of the bank fraud given the ambiguity in the document. Again, this document is hearsay and cannot be used against Ami, CPRE, CPS50 and The Ithaca Trust.

### g. Exhibit 14 Does Not Support Probability of Success on the Merits

Exhibit 14 is a stipulated judgment entered by this Court but cannot evidence fraudulent transfers, substantive RICO claims, or a RICO conspiracy claim. The settlement agreement

between the Trustee and the U.S. Affiliates specifically states that the U.S. Affiliates "deny liability for the claims asserted by the Trustee, deny many of the allegations upon which such claims are premised, and believe they have defenses to one or more such claims." *In re Firestar Diamond, Inc.*, 19-bk-10509, Dkt. 1366-1 at 3. In short, the U.S. Affiliates did not agree to the substance of the judgment and decided to settle the case because they had no remaining assets. *Id*.

The Trustee simply has not shown any proof "stronger than that required to make a prima facie case" on either the RICO conspiracy or fraudulent transfer claims. To the extent there are any facts to be gleaned from the documents the Trustee submitted, those facts merely restate the allegations in the Complaint, and do not evidence RICO predicate acts, the existence of a pattern of racketeering activity, the existence of a RICO conspiracy or an agreement by Ami Javeri to join the conspiracy and knowingly participate in it. The exhibits also do not show that the transactions at issue were fraudulent.

While the foregoing discussion focuses on Ami, the same arguments apply on behalf of Trident, the Ithaca Trust, CPRE, and CPS50. The Trustee notes in his memorandum that the RICO conspiracy claim is alleged against each of the defendants jointly and severally, but most of the exhibits make no mention of the Ithaca Trust, CPRE or CPS50.

### C.  The Trustee Did Not Provide Evidence of Damages

The Trustee's *ex parte* motion initially sought attachment of up to $75,000,000. Dkt. 110-1. The Order does not specify any amount attached as required by CPLR 6212(a). Dkt. 104. The Trustee's moving papers seeking confirmation and the Supplement also do not specify any amount for the attachment. More importantly, the Trustee's Declaration provides no evidence of any damages suffered by either the Debtors or the U.S. Affiliates. "Implicit in the requirement that the applicant for an order of attachment demonstrate a probability of success on the merits is that the

applicant demonstrate also a likelihood of recovery of the amount sought to be attached." *Chevron Corp. v. Donziger*, 840 F. Supp. 2d 773, 775 (S.D.N.Y. 2012) (denying motion for attachment where the plaintiff "put in no proof of any damages"). Furthermore, "where an order of attachment 'is sought upon an unliquidated claim, it must clearly appear by prima facie evidence at least that the plaintiff is entitled to recover the amount of damages which he demands.'" *Id.* (quoting *Prentiss v. Greene*, 193 A.D. 672, 679 (1st Dep't 1920). Given that the Court must specify the amount of the attachment, proof of damages must be submitted by the plaintiff so that the attachment does not affect more property than necessary. *See Prentiss*, 193 A.D. at 679.

The Trustee, like Chevron, provided no proof of any damages. Levin's Declaration contains one substantive paragraph, and it does not discuss damages at all.[11] None of the documents submitted as exhibits are evidentiary proof of damages suffered by the Debtors or the U.S. Affiliates. The Complaint, for example, has several "schedules" attached to it purporting to show summaries of allegedly fraudulent transfers, but Levin's Declaration does not provide any documentary proof of those transfers or of any other damages allegedly suffered by the Debtors or the U.S. Affiliates. Absent such proof, the motion to confirm and the motion to attach the ▉▉▉ ▉▉▉ should be denied.[12]

---

[11] The Trustee argues that any counterclaims by the defendants "could not exceed the damages to which the Trustee is entitled, as the Modi family's bank fraud and racketeering conspiracy led to the accrual of over $1 billion in claims by PNB against the Debtors." Br. at 21. The Trustee made no showing that PNB's claim against the Debtors is an appropriate measure for RICO damages and the Trustee's argument is inconsistent with the position the Trustee took in the Omnibus Opposition. There, the Trustee said he was seeking damages for two types of injuries—the "fraudulent transfers" and the "unnecessary professional fees" incurred as a result of the alleged obstruction of justice and bankruptcy fraud. Omnibus Opposition, Dkt. 60 at 22-23. The Trustee submitted no proof of either type here.

[12] The Trustee seeks a $6 million money judgment related to the sale of CPRE and, at most, $4,594,559.78 from CPRE. The Examiner's Report states that The Ithaca Trust paid FGI $6 million for CPRE and $4,200,000 of that $6 million was sent to FDI. Examiner's Report at 154-155. Thus, even if the Trustee's conclusory affidavit and exhibits somehow constitute evidence supporting a probability of success on the merits of the fraudulent transfer claim, and the Court finds all the other elements for an order of attachment are satisfied, the attachment would be limited to an amount necessary to secure the Trustee's hypothetical judgment of at most $394,559.78.

### D. Grounds for Attachment Do Not Exist Against Ami or CPS50

Grounds for an attachment under CPLR 6201(3) do not exist for Ami or CPS50.[13] To establish grounds for attachment under CPLR 6201(3), "the plaintiff must prove both that the defendant (1) has assigned, disposed of, encumbered, or secreted property, or removed it from the state, or is about to do any of these acts; and (2) has acted or will act with the intent to defraud creditors or to frustrate the enforcement of a judgment that might be rendered in plaintiff's favor. *DLJ Mortgage*, 594 F. Supp. 2d at 319 (citing *Encore Credit Corp*, 2006 WL 148909, at *3). The Trustee argues that "badges for fraud" exist and again recounts the allegations in the Complaint. Br. at 18 (citing *In re Hypnotic Taxi LLC*, 543 B.R. 365 (Bankr. E.D.N.Y. 2016)). But this misses the point of the statute. "Because fraud is not lightly inferred, plaintiff's moving papers must contain evidentiary facts as opposed to conclusions proving the fraud. Affidavits containing allegations raising a mere suspicion of an intent to defraud are insufficient. Rather, it must appear that such fraudulent intent really exists in the defendant's mind." *DLJ Mortgage*, 594 F. Supp. 2d at 320 (citations and quotations omitted).

The Trustee has not shown any badges of fraud that allow an inference of an intent to defraud nor has the Trustee shown that Ami or CPS50 are about to assign, dispose of, encumber or secrete property.[14] Here, Ami Javeri hired a broker to sell the apartments in November 2021.

---

[13] Trident Trust Company and CPRE are nondomiciliaries. CPLR 6201(1). But as demonstrated throughout this memorandum, the Trustee has not made a sufficient evidentiary showing to justify an attachment on any of the defendants' property. The Trustee's motion to confirm should be denied as to Trident and CPRE.

[14] The Trustee identifies the supposed badges of fraud as "(1) the lack or inadequacy of consideration; (2) the family, friendship or close associate relationship between the parties; (3) the retention of possession, benefit or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and (6) the general chronology of the events and transactions under inquiry." Br. at 17 (quoting *Hypnotic Taxi*, 543 B.R. at 374.).

A sale of the apartments for fair market value to an unrelated third party so that Ami can find a different, less-expensive place to live is the exact opposite of a sale lacking consideration to a close friend or family member where Ami would retain the possession of the apartments.

The Trustee asserts in his memorandum that "[b]oth apartments were purchased for the personal benefit of the Modi family either using funds that were directly sourced from the bank fraud (e.g., the Ritz Carlton Apartment, purchased using Mehta's bank fraud distributions from Shadow Entity Fine Classic) or using corporate funds of the U.S. Entities, which were also commingled with proceeds of the bank fraud (the Essex House Apartment, the mortgage of which was satisfied with funds from the U.S. Entities)." Br. at 18. This bald assertion is not even supported by the Complaint, much less competent evidence.

At best, the Trustee asserts that the Court can find a badge of fraud based on three events: (i) In October 2021, the Court denied a motion to dismiss in *Levin v. Modi*, Adv. Proc No. 19-1102 (SHL); (ii) in November 2021, Ami hired a broker to sell the apartment, and (iii) █████████

██████████████████████████████████████████████████████

████████████████████████████████

First, the Trustee has not explained why the Court's order in another matter makes a petition filed three months later suspicious, and "[a]ffidavits containing allegations raising a mere suspicion of an intent to defraud are insufficient" to justify the harsh remedy of attachment. *Encore Credit Corp.* 2006 WL 148909 at *3.

Second, the sale of property on its own is not a badge of fraud. "Removal, assignment or

other disposition of property is not a sufficient ground for attachment; fraudulent intent must be proven, not simply alleged or inferred, and the facts relied upon to prove it must be fully set forth in the moving affidavits." *Encore Credit Corp.*, 2006 WL 148909 at *3 (quoting *Abacus Federal Sav. Bank v. Lim*, 8 A.D.3d 12 (1st Dep't. 2004).); *Bank of Leumi Tr. Co. of New York v. Istim, Inc.*, 892 F. Supp. 478, 483 (S.D.N.Y. 1995). (stating "[i]t is well established in New York that the mere removal or other disposition of property by a debtor is not a sufficient ground for an attachment.").

Third, as the Trustee notes, the apartments have been held in the Ithaca Trust for several years. Br. at 18. There have been no other attempts to sell the properties and the sale here would be at fair market value to an unrelated third party through a broker hired for that purpose. The proceeds of any sale would be used to purchase less-expensive apartments and the remainder returned to the Trust to invest. Income from the investments would then be used for Ami's living expenses and those of her children who are also trust beneficiaries.

Fourth, fraudulent intent cannot be inferred from the amendments to the Ithaca Trust Agreement ████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████ ▪

Thus, the Trustee has offered only three events, none of which allow an inference of fraud. This Court entered an order denying motions to dismiss in a different case. More than a month later, Ami hired a broker to publicly sell the Ritz Carlton Apartment. More than a month after that, the Ithaca Trust agreement was amended to exclude references to Delaware law, which had no apparent impact on the Trustee's ability to recover against Trident Trust Company. ████████████

████████████████████████████████████████████████████████

████████████ This course of conduct is readily distinguishable from cases like *Hypnotic Taxi* where a defendant, after a suit was filed to collect unpaid loans, created multiple trusts in foreign countries for the benefit of his family members and then deposited his ownership of his businesses, real estate owned by the businesses and his personal real estate in those trusts, allowing himself to retain the use and control of the real estate. *See Hypnotic Taxi*, 543 B.R. at 369. ████████████

---

[15] ████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████ The Court cannot infer

fraudulent intent from these facts.

## II.   ████████████████████ **SHOULD NOT BE ATTACHED**

The Trustee cannot attach ████████████████████████████████

████████████████████████████████████████████████. Hence this Court

lacks jurisdiction to adjudicate matters involving ████████████. "[W]here personal jurisdiction is

lacking, a New York court cannot attach property not within its jurisdiction." *Hotel 71 Mezz*

*Lender LLC v. Falor*, 14 N.Y.3d 303, 311 (2010) (citation omitted).

Even if attachment were somehow available as to this non-domiciliary, the Trustee's

showing in support of its motion to an attachment of ████████████████ is even weaker

than its showing in support of its motion to confirm the attachment of the Ithaca Trust and its

assets. In his supplement, the Trustee asserts that the ████████████████ should be attached

for the same reasons set forth in his original memorandum of law in support of the *ex parte*

attachment motion and the motion to confirm the Order. Trustee's Supplement to Motion to

Confirm Order of Attachment ("Supplement"), Dkt. 116. ¶ 5. But neither the Trustee's original

memorandum in support of the *ex parte* attachment nor his memorandum of law in support of the

confirmation motion mention ████████████████ is not mentioned in any of the

exhibits to the Levin Declaration. It is not mentioned by the Indian authorities in their complaints

in India. It is not mentioned in the Examiner's Report. The Trustee made no allegations about ████ ████████ in his Complaint. There has been no evidentiary showing by the Trustee that the assets of the ████████ are in any way derived from the alleged bank fraud or that the assets were derived from the Debtors or the U.S. Affiliates, much less that the assets were the result of fraudulent transfers from the U.S. Entities or that the transfers injured the U.S. Entities as part of a RICO conspiracy. The Trustee admits his "investigation is ongoing with respect to t████████████████████████," and asserts only that "████████████████████████████████████ ████████████████████ Supplement ¶ 5. The Trustee did not provide his basis for this "appearance." At best, the Trustee' argument in support of attaching ████████████ ████████████████████████ This is a rank attempt to prove guilt by association and the Court must not accept it.

Nor has the Trustee shown any grounds for attaching Ami's interest in ████████ or the funds to be released to her. ████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████ As with the motion to confirm, the Trustee has not explained why this timing is suspicious and the Trustee's suspicions do not justify the harsh remedy of attachment. *Encore Credit Corp.* 2006 WL 148909 at *3.

Finally, for reasons laid out below, the Ami's position as manager of ████████████ ████████████████████████████████████████████.

## III.  THE ORDER ATTACHES PROPERTY AND INTERESTS THAT ARE NOT ATTACHABLE

In essence, the Trustee is seeking an order of attachment on three things: the Essex House Apartment, the Ritz Carlton Apartment, and ███████████████████. The Order of Attachments states it is attaching several "interests," including "Javeri's interests as Investment Advisor of the Ithaca Trust," and "Javeri's interests as manager of CPS50 and as manager of CPRE." Dkt. 104, ¶ 5. ████████████████████████████████

████████████████████████████████████████████████

████████████████████████ *See* Supplement, Ex. C. The Trustee has not explained at any point what he is trying to attach in these "interests," but to the extent he is seeking to attach Ami's position or role as investment advisor or manager of the LLCs, those are not attachable. Additionally, the Order (and the proposed order relating to ████████████) seek to attach property held in trust by Trident as trustee for the Ithaca Trust and the ████████. This property and Ami's interest as trust beneficiary are also not attachable. The Order should not be confirmed as to these "interests" and property.

CPLR 6202 permits attachment on debt or property against which a money judgment may be enforced as provided in CPLR 5201, which, in turn, allows the enforcement of money judgments against property which can be assigned or transferred by the debtor unless it is exempt from application to the satisfaction of a judgment. *Mitchell v. Garrison Protective Servs., Inc.*, 579 F. App'x 18, 22 (2d Cir. 2014) (stating "if the debtor's rights in the property do not include the right to assign or transfer it, it is not 'property' for the purposes of § 5201."); *M.F. Hickey Co. v. Port of New York Authority*, 23 A.D.2d 739 (1st Dep't 1965) ("A money judgement can only be enforced against a property right to the extent that the judgment debtor can assign or transfer it.").

CPLR 5205(c) exempts from the application to the satisfaction of a money judgment all property held in trust where the trust was created by a person other than the defendant.

### A.     The Trust Advisor and LLC Manager Positions Are Not Attachable Property

Again, it is not apparent what is attached by the Order's references to "Javeri's interest as Investment Advisor to the Ithaca Trust" and "Javeri's interests as manager of CPS50 and as manager of CPRE." It is also unclear what the Trustee's proposed order, which refers to similar "interests" relating to the ███████. If the Trustee is trying to attach Ami's position or role as investment advisor and manager of the LLCs, those positions or roles are not assignable or transferrable and therefore cannot be attached.

CPS50, CPRE, and ████████████ are governed by LLC statutes in New York, Delaware, and South Dakota, respectively. These statutes do not permit an LLC manager to assign to transfer their position as manager of the LLC, but instead require the LLC members to select and remove managers. *See* NY LLC Law § 414 (stating that LLC managers may be removed or replaced by a vote of the majority in interest of the members of the LLC); 6 Del. C. §18-401 and § 18-101(12) (requiring managers to be named in or designated pursuant to a limited liability agreement or similar instrument under which the LLC is formed); S.D. Codified Laws § 47-34A-404.1 (requiring managers to be appointed and removed by the "vote, approval, or consent" of a majority of the members). These positions are thus not attachable since they are not assignable or transferrable by the manager.

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

**[REDACTED]** Ami's position as investment advisor therefore cannot be attached.

The Order should not be confirmed as to these positions and the motion to attach the investment advisor and LLC positions under **[REDACTED]** should be denied.

### B.     The Trust Property Is Not Attachable.

The Order attaches Ami's interests in the Ritz Carlton Apartment, the Essex House Apartment, any and all assets of CPS50, CPRE, and Trident as trustee for the Ithaca Trust, including the legal title to the Ritz Carlton Apartment, the legal title to the Essex House Apartment, and Trident's ownership interests in CPS50 and CPRE. *See* Dkt. 104, ¶ 5. The Complaint alleges, and **[REDACTED]** Compl. ¶¶ 322-323, Levin Decl. Ex. 17. The Ithaca Trust is the sole member of CPS50 and CPRE. Under both New York and Delaware law, which govern CPS50 and CPRE respectively, a member's interest in a limited liability company is personal property and the member has no interest in the specific property of the LLC. NY LLC Law § 601; 6 Del. C. § 18-701. Thus, the personal property held in the trust—including the membership interests in the LLCs—is exempt under CPLR 5205(c) as property held in trust when the trust was created by another person.

Furthermore, **[REDACTED]**

**[REDACTED]** Accordingly, Ami's beneficial

interest in the trust is not assignable or transferrable under CPLR 5201 and cannot be attached.

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████████ Ami's interests

in these funds are thus not attachable under CPLR 5205(c). ████████████████

████████████████████████████████████████████████████████████████

████████████████████████████

CPLR 5205(c)(5) provides that otherwise exempt trust property may be applied to the satisfaction of a money judgment (and thus also subject to attachment) if it is "deemed to be [a] voidable transaction[]." While the Complaint asserts that the sale of CPRE to the Ithaca Trust is a voidable transaction under DCL § 276, *see* Compl. ¶¶ 484-492, the Trustee has not provided any evidence in his affidavit or attached exhibits that would make a prima facie showing in support of this claim, for reasons discussed above. The situation is worse with regard to CPS50: the Trustee provided no evidence supporting a determination that the transaction is voidable or, much less, even pleaded a cause of action. And, as discussed above, the Trustee provided no evidence whatsoever to suggest ███████████████████████████ are the result of voidable transactions.

The Trustee should not be allowed to attach trust property on his bare allegation that the trust property originated with some unalleged and unproven foreign fraud. Nor should the Trustee be allowed to attach trust property on a bare allegation that he will seek to avoid the transactions as fraudulent if he happens to prevail in this matter when he has not put forward any evidence supporting his likelihood of success on the merits.

**IV.    IF THE ATTACHMENT IS CONFIRMED, IT SHOULD BE CONFIRMED**

**ONLY IN PART**

### A. The Court Should Permit Ami to Receive Living Expenses

If the Court confirms the attachment, it should be confirmed only in part to allow Ami to receive funds from ████████████ and The Ithaca Trust to pay for the expenses of the apartments and the living expenses for Ami and her children. ███████████████████████████

███████████████████████████████████████████████████████████████████████

██ The Trustee previously stipulated to permitting Ami to use assets under her control for her family living expenses and to pay charges and other expenses related to the apartments. *See* Dkt. 122. Indeed, if the Apartment charges go unpaid, the parties may lose these valuable assets to foreclosure. Thus, if the Court confirms the attachment, then it should create similar exceptions permitting Ami to pay for her living expenses, those of her children, and the expenses of the Apartments.

### B. The Amount of the Undertaking Should Be Increased

If the order of attachment is confirmed, the Court should increase the amount of the undertaking required from the Trustee. The Trustee argued that a minimal undertaking was appropriate because courts have required small undertakings in other cases, and because requiring a larger undertaking "will deplete limited estate assets, which is the very outcome this attachment is sought to avoid." Br. at 23-24. However, by focusing on the Trustee's assets and the relative size of attachments in other cases, the Trustee misunderstands the purpose of the undertaking. The bond required by CPLR 6212(b) exists to protect the person whose assets are attached. The statute is clear on this point. The undertaking is required to state that part of the undertaking is "conditioned that the plaintiff shall pay to the defendant all costs and damages, including reasonable attorney's fees, which may be sustained by reason of the attachment . . . and the balance

conditioned that the plaintiff shall pay to the sheriff all his allowable fees." CPLR 6212(b).

To protect the defendant, New York courts require the amount of the undertaking to be "rationally related to the potential damages in the event the attachment is found to have been unwarranted." *JSC VTB Bank. v. Mavlyanov*, 154 A.D.3d 560, 563 (1st Dep't 2017) (quoting *Medical Bldgs. Assoc., Inc. v. Abner Props. Co.*, 103 A.D.3d 488, 488 (1st Dep't 2013)); *see also Congregation Erech Shai Bais Yosef, Inc. v. Werzberger*, 189 A.D.3d 1165, 1168 ( 2d Dep't 2020) ("The amount of the undertaking . . . must not be based upon speculation and must be rationally related to the damages the defendants might suffer.").

The Trustee has not shown that a $50,000 undertaking is rationally related to the amount of damages defendants might suffer here. Instead, the Trustee argues that a $50,000 attachment is appropriate because it represents 0.065% of the amount to be attached. *See* Memorandum of Law in Support of Plaintiff's Ex Parte Motion for an Order of Attachment, Dkt. 110-2 at 22. The Trustee cites *In re Amaranth Nat. Gas Commodities Litig.*, 711 F. Supp. 2d 301, 313 (S.D.N.Y. 2010), but in that case, the court found that a larger undertaking was not necessary because the plaintiffs had decided to not seek attachment of additional funds.[16] Thus, a smaller amount was rationally related to the damages the defendant might suffer by the attachment. The Trustee also cites *In re Schick*, 215 B.R. 13, 18 n.7 (Bankr. S.D.N.Y. 1997) and *Disney Enters., Inc. v. Finanz St. Honore, B.V.*, 2017 WL 1862211, at *4 (E.D.N.Y. May 8, 2017), but in those cases the court entered a minimal undertaking because the plaintiff had already prevailed on the merits. Here, the Trustee has neither prevailed on the merits nor shown a probability of success on the merits, and a minimal

---

[16] The Trustee also cites *New York Dist. Council of Carpenters Pension Fund v. KW Constr.*, 07-CV-8008, 2008 WL 2115225, at *6 (S.D.N.Y. May 16, 2008); *OSRecovery, Inc. v. One Groupe Int'l, Inc.*, 305 F. Supp. 2d 340, 348 (S.D.N.Y. 2004); *S.M. Pires v. Frota Oceanica Brasileira, S.A.*, 800 N.Y.S.2d 354 (table), 2005 WL 579500, at *5 (Sup. Ct. N.Y. Co. Jan. 14, 2005). Each of these cases was cited by the Court in *In re Amaranth*, and they are not apparently relevant. *See In re Amaranth Nat. Gas Commodities Litig.*, 711 F. Supp. 2d at 313, n. 73, 74.

undertaking is inappropriate. By contrast, in *JSC VTB Bank*, the First Department required a $1 million undertaking on an attachment of the defendant's business because a "$1 million valuation of that corporation is supported by objective evidence; indeed, even plaintiff assigns it that value." 154 A.D.3d at 563.

Ami and the other defendants will likely suffer significant harm from the Order of attachment. Attaching trust property has made it difficult for the defendants to ensure that expenses and fees for the apartments are paid on time. If the condominium fees are not paid, the condominiums can file liens against the apartments and foreclose on those liens. NY Real Prop. Law §§ 339-z, 339-aa. If the properties were foreclosed and sold, the defendants would suffer damages in the value of the property, which the Trustee acknowledges are worth at least $30 million, and any other costs Ami may incur to find new housing. Additionally, Ami has incurred attorney's fees in opposing this motion to confirm. The Trustee would also lose a valuable asset to foreclosure. Accordingly, if the court confirms the order of attachment, it should increase the required undertaking to protect the defendants.

## CONCLUSION

For the foregoing reasons, the Trustee's motion to confirm the Order of Attachment and the Trustee's supplemental motion for an order of attachment relating to ██████████ should be denied in their entirety. In the alternative, the motion should be only partially confirmed to permit Ami access to funds to support herself and her children and to pay expenses of the Apartments, and the amount of the undertaking should be increased.

Dated: New York, New York
     September 30, 2022

AMINI LLC

By:   */s/ Bijan Amini*
     Bijan Amini

Avery Samet
Reece Dameron
131 West 35th Street, 12th Floor
New York, New York 10001
(212) 490-4700
bamini@aminillc.com
asamet@aminillc.com
rdameron@aminillc.com
Co-Counsel for Ami Javeri

By:     */s/ Roger J Bernstein*
Roger J. Bernstein
551 Fifth Avenue, 12th Floor
New York, NY 10176
(212) 748-4800
rbernstein@rjblaw.com
Co-Counsel for Ami Javeri