UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re:

FIRESTAR DIAMOND, INC. AND FANTASY, INC.,

Debtor.

Case No. 18-10509-shl
White Plains, New York
December 14, 2022
10:19-10:46; 11:19-11:26

- AP: 20-01054-SHL LEVIN VS. JAVERI ET AL, Trustee's Request For Discovery Conference Re Doc 104, order Of Attachment

- AP: 20-01054-SHL LEVIN VS. JAVERI ET AL, Trustee's Request For Discovery Conference Re Doc 122 So ordered Stipulation And order Re: Partial Stay

- A P P E A R A N C E S -

For the Trustee:                    CARL N. WEDOFF, ESQ.
                                    ANGELA M. ALLEN, ESQ. (IL Ofc)
                                    WILLIAM WILLIAMS, ESQ. (IL ofc)
                                    Jenner Block LLP
                                    1155 Avenue of the Americas
                                    New York, New York 10036
                                    212-891-1600

For Ami Javeri, CPRE, CPS50:        REECE CAMPBELL DAMERON, ESQ.
                                    Amini LLC
                                    131 W 35th Street, Suite 12th Fl
                                    New York, New York 10001
                                    212-490-4700

For Purvi Modi:                     BENJAMIN SUESS, ESQ.
                                    Paykin Krieg Adams LLP
                                    2500 Westchester Ave, Suite 107
                                    Purchase, NY 10577
                                    917-400-2984
                                    bsuess@pka-law.com

For Trident Trust                   MARC ROWIN, ESQ.
(South Dakota):                     Lynch Rowin LLP
                                    50 Main Street, Suite 1000
                                    White Plains, New York 10606
                                    212 682-4001
                                    mrowin@lynchrowin.com

Transcriber:                        AA EXPRESS TRANSCRIPTS
                                    195 Willoughby Avenue
                                    Brooklyn, New York 11205
                                    888-456-9716
                                    contact@aaexpresstranscripts.com

(Proceedings recorded by electronic sound recording)

Firestar Diamond, AP: 20-01054 - 12/14/22                    2

1      THE COURT:  Next up is Firestar Diamond.

2    Particularly, the adversary proceeding 20-01054, Levin v.

3    Javeri, in connection with the trustee's request for a discovery

4    conference.  So let me find out who's here on behalf of the

5    plaintiff trustee.

6          MR. WEDOFF:  Good morning, Your Honor, Carl Wedoff, on

7    behalf of Richard Levin, Liquidating Trustee for the Firestar

8    Diamond Liquidating Trust.  For ease of reference, I will refer

9    to him as the trustee.  Also on the Zoom conference is my

10   colleague Angela Allen, in our Chicago office, and William

11   Williams, in Chicago as well.

12         THE COURT:  All right.  Good to have you here.  And

13   then on behalf of the defendants in the adversary proceeding.

14         MR. DAMERON:  Good morning, Your Honor.  This is Reece

15   Dameron.  On behalf of Ami Javeri.

16         THE COURT:  All right.  Good morning.

17         MR. ROWIN:  Good morning, Your Honor.

18         Speaker B: Marc Rowin for defendant Trident Trust,

19   South Dakota.

20         THE COURT:  All right.  Good morning to you as well.

21   Anyone else?  All right.  So this conference was scheduled at

22   the trustee's request.  I do appreciate the request for a

23   discovery conference, rather than seeing papers first.

24   Discovery, if you let it, can turn into a very inefficient

25   letter-writing campaign.  If I remember nothing from my early

1   years of being an associate, was writing a lot of discovery

2   letters.  And so, it's not necessarily the most productive way

3   to do it, regardless of who's right and who's wrong on

4   discovery.  So, since it was the trustee's request, I thought

5   maybe we'd start with the trustee to sort of set the stage as to

6   what we need to discuss, and then obviously, I'll canvass the

7   virtual room to hear from everybody.  But I did want to start

8   with the notion that, for this, and for all things discovery

9   related, this is definitely the right way to go, which is to

10  schedule a conference.  Nobody is waiving their right to brief

11  something if in fact we have something that's worth briefing,

12  privilege issues, or things of that sort, but it's a much more

13  productive way to go.  So with that, Mr. Wedoff?

14          MR. WEDOFF:  Thank you, Your Honor.  And we appreciate

15  Your Honor's indulgence to hear us out here.  We requested this

16  discovery conference because of defendant, Ami Javeri's ongoing

17  failure to comply with the trustee's March 7, 2022 document

18  requests.  We have engaged in multiple attempts for the better

19  part of a year to resolve this dispute without going before,

20  Your Honor, but regrettably, we have been unable to do so.  So,

21  if you'll bear with me, I just would like to walk through the

22  background as we see it.

23          On February 22, this Court entered the first

24  attachment order in this proceeding.  And in connection with

25  that attachment order, the order permitted the trustee to

1  conduct discovery of the defendant's assets.  On March 7, the

2  trustee served defendant, Ami Javeri, with requests for

3  production.  And we set an April 4 production deadline.  In the

4  main, what we were looking for, Your Honor, was information on

5  her bank accounts, corporate and trust entities, any real

6  estate, any personal property worth over $250,000, transactions

7  with her codefendants and other relevant people in this

8  litigation that exceeded $250,000, and then additional documents

9  and items pertaining to those above categories.

10          On May 6, 2022, Ms. Javeri executed a stipulation that

11  stayed the attachment proceedings.  Not the attachment, the

12  proceedings.  And they required Ms. Javeri to complete

13  production of all responsive documents by May 18, 2022.  On May

14  19, 2022, and that's after the deadline that was set by the

15  Court, .  Ms. Javeri's counsel, Roger Bernstein, sent the

16  trustee a response by email that responded to the document

17  requests very informally.  And then that day and the following

18  day, he produced a handful of bank statements and tax returns.

19  But to be clear, Your Honor, these were not responses and

20  objections that you typically see in federal litigation.

21  Basically, they say, for example, Request 7, none.  Request 8,

22  N/A.  Request 9, she will obtain insurance policies.  Request

23  10, none.  Request 11, N/A.  So, it didn't give us a lot to work

24  with, Your Honor.  Nevertheless, we continued to try to work

25  this out consensually.  On June 23, 2022, the request --

Firestar Diamond, AP: 20-01054 - 12/14/22                    5

1       THE COURT:  Let me ask.  You don't characterize it as

2   a formal response, but is that an email response, is it a sworn

3   response, is it a document with a signature on it under oath,

4   what does it look like?

5       MR. WEDOFF:  Your Honor, it's the body of an email.

6       THE COURT:  All right.

7       MR. WEDOFF:  It's not even a separate Word or PDF

8   document, it's just an email to my co-counsel, Angela Allen.

9   And it's described as an informal response, to be clear.  Mr.

10  Bernstein didn't say --

11      THE COURT:  I got it.

12      MR. WEDOFF:  June 23rd, we again requested Ms. Javeri

13  promptly produced the remaining documents.  Did the same thing

14  on July 19th.  And then between late July and early September, we

15  received various additional bank statements.  But in connection

16  with those productions, counsel acknowledged that this was just

17  a subset of responsive account statements from Ms. Javeri's

18  accounts at HSBC, JPMorgan Chase, and Wells Fargo.  And Ms.

19  Javeri still has not produced all the responsive statements from

20  those accounts.

21      On October 25, 2022, the trustee sent a spreadsheet by

22  email with a detailed list of outstanding documents.  The

23  trustee then met and conferred with Ms. Javeri's counsel on

24  October 28, November 11, and November 17.  And in each of these

25  meetings, Ms. Javeri's counsel told us that Ms. Javeri was

1   working to gather and produce additional responsive documents as

2   soon as possible.

3          Lastly, in connection with our second stipulation

4   regarding payment of apartment expenses, which Your Honor

5   entered yesterday, we noticed that Ms. Javeri had been receiving

6   substantial inflows of funds to cover apartment expenses, and we

7   asked where that money was coming from.  And we firmly believe

8   that that information is covered by our March 7, 2022 document

9   request.  And Ms. Javeri's counsel informed us that that was

10  outside of the ambit of attachment discovery, even though it

11  directly related to a stipulation that would basically come out

12  of attached funds and said that they were not going to produce

13  anything and that we should just deal with the stipulation on a

14  separate path.  We said, fine, we submitted the stipulation.

15  But I did want to raise that as another piece of ongoing

16  discovery and just not getting anything.

17          That's the history of our back and forth.  And I know

18  courts don't like to hear it, but I do think it's important to

19  show that we have been working on this for a long time.  We

20  don't come to the Court lightly.  We don't call up and schedule

21  these conferences on a whim.  We really tried to avoid this.

22  But just to recap what we have, Ms. Javeri has produced 166

23  documents.  153 of those are bank statements, three are federal

24  tax returns, and ten are apartment related bills.  As previously

25  noted, it's only a subset of account statements for certain

Firestar Diamond, AP: 20-01054 - 12/14/22          7

1   accounts.  She has not produced any statements for her accounts

2   at FineMark, although we understand that she has collected them.

3   She has produced no statements for non-U.S. accounts.  And then,

4   other than these account statements, tax returns, and apartment

5   bills, we have received nothing.

6          So, Ms. Javeri only produced these bills and tax

7   returns before the May 18 deadline.  And 118 of the bank

8   statements came on May 19 and May 20.  So that was almost seven

9   months ago.  And since we first flagged these deficiencies on

10  June 23, we've only received 35 documents, and we've received

11  nothing since early September.  So, what we ask, Your Honor to

12  do, and why we are here, are for two things.  (A) We understand

13  Ms. Javeri has collected some set of documents.  We don't know

14  the number.  We don't even know what they are fully, but we have

15  some sense that she has collected documents.  We understood that

16  they were going to be produced to us multiple times, but they've

17  never arrived.  We would ask that Your Honor direct Ms. Javeri

18  to produce what she has by Monday, December 19.  And everything

19  else, all the other deficiencies, and I can pick through them,

20  anything else that's responsive, we ask that she produce it by

21  Friday, January 6.  I know the holidays are coming up, but this

22  is not a new request.  These issues have been simmering for a

23  long time.

24          THE COURT:  All right.  Mr. Dameron?

25          MR. DAMERON:  Yes.  A couple of points.  Number one,

1   this is attachment discovery.  The order of attachment does not

2   actually permit discovery into Ms. Javeri's assets.  It directs

3   discovery of the assets of the Ithaca Trust defendants, who are

4   defined in the order as Trident CPRE and CPS 50.  Ms. Javeri is

5   not one of the Ithaca Trust defendants.  So, this discovery was

6   improper from the beginning.

7          Secondarily, the order of attachment directed the

8   attachment and levy of Ms. Javeri's interests in the two

9   apartments at issue in this case, the Essex House apartment and

10  the Ritz Carlton apartment.  That levy was completed by

11  direction of the order by serving those papers on Ms. Javeri.

12  Under those circumstances, the trustee is not entitled to any

13  further discovery of Ms. Javeri's assets.  They have no need to,

14  because the order has been satisfied.

15         Now, we have offered, Your Honor, to produce documents

16  responsive to the trustee's requests as part of merits

17  discovery.  We're happy to do that, but it has to be a two-way

18  street.  The trustee refused to engage in any discussion of

19  merits discovery, they refused to provide us search terms that

20  we could use to look through Ms. Javeri's documents, and what we

21  would like is to get this moving forward on merits.  And we'd

22  like to have a conference scheduled, so that we can have a

23  pretrial conference and move everything forward.

24         THE COURT:  All right.  Mr. Rowin, I have some

25  suspicions about where you fit in this particular puzzle, but I

1  wasn't sure if you wanted to chime in here or let Mr. Wedoff and

2  Mr. Dameron duke it out.

3      MR. ROWIN:  I will be a spectator, Your Honor.  We

4  have produced documents early in the case, and nobody has

5  objected or claimed that we owe anything else.  And obviously,

6  if served with anything, we'll comply.

7      THE COURT:  All right, thank you.  All right, Mr.

8  Wedoff, any response to Mr. Dameron?

9      MR. WEDOFF:  Yes.  Your Honor, well, first of all, I

10  would like to agree with Mr. Rowin.  And I would like to point

11  out something else about Trident Trust.  There is a trust entity

12  called the Frost Trust that we discussed at length during the

13  hearing on our attachment motion.  We only learned about that

14  from Mr. Rowin, from Trident Trust, when they produced

15  documents.  Ami Javeri did not even tell us about those assets.

16  And we are concerned that there are other assets that we do not

17  know about.  Like the source of funds to pay for her apartment

18  expenses.  She is drawing on the trust.  She's drawing on

19  attached assets to pay these expenses supposedly because she has

20  no other way to pay them.  But evidently, there are other funds

21  coming in.  We know that there are other accounts for which we

22  have not seen any statements.  And when you are a defendant in

23  an action where you are being sued for tens of millions of

24  dollars, your assets are subject to attachment.  And we need to

25  know what they are.  And the Court has already ordered

1    attachment.  And we realize the motion to confirm that

2    attachment is under submission, but if that order of attachment

3    is confirmed, then we are entitled to attach her property, and

4    we need to know what it is.

5          Now, to the point that Ms. Javeri was improperly

6    served, it's odd that she would raise that in December after

7    making every indication for the last nine months that she was

8    complying with discovery.  We don't think that's accurate.  But

9    even if it were accurate, we don't think it's a timely raised

10   objection.

11         THE COURT:  I guess for purposes of this discussion, I

12   guess I'm more concerned, more interested in what I understood

13   from Mr. Dameron's point, which is about the scope of the order

14   and the scope of what we're talking about here.  And I think Mr.

15   Dameron, I'm assuming you're talking about, I guess, paragraph 8

16   of the order, which is the discovery paragraph.  And I think it

17   may be an interesting question as to how far that goes or

18   doesn't go.  Of course, I suspect that Mr. Dameron's follow up

19   comment about merits discovery, I'm not quite sure.  We may have

20   to have a discussion about that because merits discovery isn't

21   necessarily asset discovery.  So I'm not quite sure where we're

22   going here.  But certainly to the extent that there's an

23   attachment on property, and there is an agreement -- not an

24   agreement, but a dispute about payment for the upkeep of that

25   property, that may not be something where there's a discovery

Firestar Diamond, AP: 20-01054 - 12/14/22          11

1   order currently entered, but it may be a vehicle where it's

2   appropriate to find out those issues.  And we may end up in

3   exactly the same place.

4          So whether we're talking about the current scope of

5   discovery under paragraph 8 or what we might otherwise talk

6   about, we may end up having to go there if there's a dispute

7   about that.  Certainly, that is something that was previewed way

8   back when, and the parties have worked out a stipulation.  At

9   the same time, that stipulation may be something that's

10  contingent upon various parties' understanding of certain facts.

11  And if those understandings are altered, then may lead to a

12  dispute, where all this kind of information may become highly

13  relevant regardless of what paragraph 8 says.  But for purposes

14  of right now, what can you tell me, Mr. Wedoff about Mr.

15  Dameron's reading of paragraph 8 and discovery in general in

16  this context?

17         MR. WEDOFF:  Your Honor, the defendant here is Ami

18  Javeri.  I think the way it's characterized, the order says what

19  it says.  But having agreed to produce documents over nine

20  months and just showing up in court for discovery contents, and

21  saying, oh, this wasn't properly served in the first instance, I

22  just don't --

23         THE COURT:  No, I'm not talking about service, I'm

24  talking about the scope of discovery.

25         MR. WEDOFF:  Your Honor, the scope of discovery.  We

Firestar Diamond, AP: 20-01054 - 12/14/22                 12

1   are seeking to know what assets she has to see what's

2   attachable.  And like I raised about the Frost Trust, we didn't

3   know the Frost Trust existed, so we had to come back to court.

4           THE COURT:  No, no, I get all that.

5           MR. WEDOFF:  Okay.

6           THE COURT:  But normally discovery is about merits,

7   it's not about post judgment, potential recovery on a judgment.

8   And so, attachment is something different.  So, I assume the

9   discovery here about assets is tied to the attachment request.

10  And so, I have the attachment order.  And you may be right that

11  this may be, and I think Mr. Dameron wisely segued to discovery

12  in general in the sense that he could potentially win the battle

13  today and lose the war.  But I need a hook, right?  And so, if

14  the hook is paragraph eight, paragraph 8 is, I wouldn't say

15  fairly limited, but it's fairly specific, let's put it that way.

16  So, I think some of this is avoidable because we'll end up

17  getting there anyway if we're having a fight about the apartment

18  upkeep, and what's appropriate or not in terms of upkeeping the

19  apartment, which leads to the question of what other assets are

20  there?  And that's exactly the conversation we'd have.  And then

21  we'd end up saying, well, what other assets are there?  And then

22  Mr. Wedoff would ask, and we'd have a discussion about that.

23  So, I think we seem to be inevitably headed down that path

24  anyway, regardless of what paragraph 8 says.  But for purposes

25  of, I think, my hook for discovery, unless I'm wrong, unless I'm

Firestar Diamond, AP: 20-01054 - 12/14/22          13

1  missing something, Mr. Wedoff, it's paragraph 8 of that order,

2  Docket 104.  So, am I wrong about that?

3          MR. WEDOFF:  No, I think you're right about that, Your

4  Honor.  But if you look at what we're asking for, I do think it

5  ties in with the apartments.  And I'd have to look at the second

6  order because, again, this wasn't limited to the apartments.

7  There was another order dealing with the Frost Trust.  But I do

8  think that's right.  But I think everything we're asking for,

9  Your Honor, does tie back to the stuff.  It's about real

10 estate --

11         THE COURT:  No, no.  You're giving me common sense

12 and --

13         MR. WEDOFF:  No, no, I think you're right.

14         THE COURT:  So, I'll make the following joke.  The law

15 sometimes doesn't really deal in common sense.  So, I have the

16 order, and I have sort of the order based sort of situation with

17 discovery.  I don't have the second order in front of me.  I

18 don't know what the scope of that is.  Given where we are, the

19 trustee can easily make another request.  And say, to the extent

20 that the existing orders don't cover these things, even as

21 something as simple as the upkeep of the apartment, we need to

22 know what the assets are or aren't in terms of understanding

23 what's appropriate or not appropriate.  We've acquiesced to it

24 currently, but we may not, if there are other assets available.

25 And so, we need some disclosure.  And Judge, by the way, we

1  think this is, to the extent it's not covered by the existing

2  orders, we want you to issue another order or amend those orders

3  for the following reasons, which are the kind of things you're

4  discussing now, Mr. Wedoff.

5          So, we can do this several different ways, but I think

6  there is something to Mr. Dameron's point about looking at what

7  the order says for purposes of understanding where we are.

8  Well, I mean Mr. Wedoff, I don't know what to tell you.  It's

9  the order that you all drafted and submitted, and so, I'm not

10 disagreeing with you as to where I think we're likely to go, and

11 we may be likely to go there fairly quickly.  So, I think,

12 frankly, party should have a meet and confer because after this

13 conference, or we can take a break and you all can talk and I

14 can pop back on.  Maybe that's even more efficient, because I

15 can't see how we're not going to get there.  If we're not

16 appropriately there now, by virtue of these orders, I don't see

17 how we're not going to get there because that's why you filed an

18 attachment motion, that's why we're talking about who's paying

19 for the upkeep of the apartment, and all that.  So, that's kind

20 of where I am.

21         What I understand your arguments, Mr. Wedoff, is to

22 segue to why you think as a matter of where the case, and sort

23 of big picture, your requests make sense, they're appropriate,

24 they're reasonable.  And I think Mr. Dameron's point is, well,

25 this kind of attachment discovery and asset discovery isn't

1  normal, so it's got to be order based.  But I can always enter

2  another order.  So, that's sort of where I find myself.

3          Now, what I'd like to do is not waste everybody's time

4  and money on those sort of things.  So, I'm happy to hear

5  anything else anybody wants to say.  But I'm also happy to take

6  a break and have Mr. Wedoff and Mr. Dameron discuss a sensible

7  way forward in light of my comments and where we are.  Because

8  again, Mr. Dameron may be technically correct about the scope of

9  paragraph 8, but again, it's a motion away from or a request

10 away from expanding the scope of that in light of where the case

11 is in all other respects.

12          MS. ALLEN:  Your Honor, if I could raise one --

13          THE COURT:  Yes.  Go ahead, Ms. Allen.

14          MS. ALLEN:  We entered into a stipulation and order.

15 The defendant, Ms. Javeri, (inaudible) that provided in

16 paragraph 9, any discovery (inaudible) attachment order entered

17 on February 22, 2022 is not (inaudible).  In addition, Ms.

18 Javeri will respond to the trustee's discovery requests and

19 complete production documents requested no later than May.  This

20 is entered by (inaudible).

21          THE COURT:  Right.  But it's linked to paragraph 8,

22 and paragraph 8 says, in accordance with New York CPLR Section

23 6220, the trustee may take discovery, including, but not limited

24 to requests for production, interrogatories and depositions of

25 the Ithaca Trust defendants and any other person that may have

Firestar Diamond, AP: 20-01054 - 12/14/22        16

1  information concerning the Ithaca Trust defendant's attachable

2  property or debt.  And so, it is a very specific statement.

3          Again, what I'm hearing from Mr. Wedoff are the

4  reasons why this is an appropriate area of inquiry.  And I think

5  I'm signaling as clearly as I can, that I don't disagree with

6  Mr. Wedoff on that point.  But to the extent that there is the

7  order, at least in paragraph 8, and maybe there's something more

8  in the Frost Trust order that is broader than this, but from my

9  point of view, we're going to get there very quickly and that's

10 why I want the parties to talk about it rather than waste time

11 on motion practice.  Because the trustee's requests, given the

12 context of the case, seems entirely reasonable.  Even if you

13 just consider the existing dispute I have in front of me, which

14 deals with the apartment, and who's paying for maintenance of

15 the apartment, and the questions that raises or doesn't raise.

16 Because if it was based on the understanding of the trustee that

17 there weren't other assets, but the trustee can't verify that,

18 well then the trustee is going to turn and say, judge, we're

19 happy to do that as long as we don't think there's other means

20 to pay for the apartment upkeep.  And we don't know that, and we

21 need those documents.  And so there we are.

22          So, I'm not saying it's inappropriate request, but I

23 am saying we probably need an order.  And I can order it from

24 the bench, but again, this is part of -- we're on step, in this

25 case, like 50 and we probably need to go to step 1000 to get

Firestar Diamond, AP: 20-01054 - 12/14/22        17

1  things done.  So there's a lot of other conversations.  So,

2  consistent with discovery, generally, my thought would be to

3  have you all have a conversation for me to come back in say, 15

4  or 20 minutes.  But again, maybe there's something else I'm

5  missing as a source of authority.  And I appreciate, Ms. Allen,

6  you brought that particular order up.  I think it helps a little

7  bit, but it's still tied to paragraph 8.

8         So, Mr. Wedoff, I realize I cut you off to sort of

9  give you my thinking on some of this, but I wanted to give you a

10 chance to finish any other statements that you wanted to make or

11 things you wanted to point me to.

12        MR. WEDOFF:  No, Your Honor, that's okay.  And I think

13 if Your Honor would indulge us, I would suggest that Mr.

14 Dameron, Ms. Allen and myself speak and reconvene at 11 a.m.

15 eastern time if that works for everyone else on the call.

16        THE COURT:  All right, Mr. Dameron, what do you think

17 of that approach?

18        MR. DAMERON:  Yeah, I think that works.  We can do

19 that.

20        THE COURT:  All right, so I think it's about a quarter

21 two now, is that right?

22        MR. WEDOFF:  Yes.

23        MR. DAMERON:  Yes.

24        THE COURT:  All right.  So, here's what I'm going to

25 do.  I'm going to give you to 11:15, just so you're not crammed.

Firestar Diamond, AP: 20-01054 - 12/14/22                    18

1   And if you have extra time you can all get a cup of coffee, but

2   you have enough time to at least discuss things, and I'll jump

3   back on.  I'll get off now and jump back on Zoom at 11:15, and

4   I'll talk to you all then.  Thank you.

5           MR. WEDOFF:  Okay, thanks.

6           MR. DAMERON:  Thank you, Your Honor.

7           (Off the record.)

8           THE COURT:  Hello again.  We're back to discuss the

9   state of discovery.  And so, what can you tell me?

10          MR. WEDOFF:  Good morning, Your Honor.  I think what

11  we can tell you is, we've made a little bit of progress.  And

12  Mr. Dameron can jump in and correct me if I'm misstating

13  anything.  What Mr. Dameron has agreed to produce are documents

14  relating to payments of expenses on the apartments that are

15  subject to attachment, and those are payments that are reflected

16  in the records that Ms. Javeri produced to the trustee.  He's

17  going to produce documents, account statements or whatever

18  documentation that relates to those payments by January 6, 2023.

19  In addition, the trustee, and Ms. Javeri will endeavor to submit

20  a scheduling order on merits discovery following the Court's

21  form of order in due course.  We hope to get that submitted

22  shortly, but we need to discuss internally and with one another

23  dates, etcetera.  So, those two items, I think, are resolved.

24  We're going to go back and consider whether or not we need to

25  seek another order or move to compel with respect to other

Firestar Diamond, AP: 20-01054 - 12/14/22          19

1  areas, other documents that we think maybe were covered by the

2  previous order and were not produced, or whether we need an

3  additional order.  But at least with the subset of documents

4  that relate to payments on the apartment, Ms. Javeri has agreed

5  to produce those by a date certain, and we'll consider whether

6  we take any other action with the balance of the document

7  request.

8          THE COURT:  All right, Mr. Dameron?

9          MR. DAMERON:  Yeah, that's correct.  That's correct.

10          THE COURT:  All right.  So, during the break I did

11  take a look at the second stipulation and order, which was

12  entered on the 13th of this month, and it did strike me  that

13  paragraph 11 says, Ami Javeri agrees not to transfer any assets

14  under her direct or indirect control, including assets under the

15  direct or indirect control of a third party ordinarily takes

16  instruction for Amy Javeri for as long as the stay is provided

17  for herein are in effect.  And she won't do it without the

18  express written consent of the trustee.

19          And so, my point earlier about we may not be there

20  today, but we're getting there.  I mean, I don't know how you

21  really enforce or understand that paragraph without having some

22  level of transparency as to what those assets are.  And so, I

23  didn't want to offer false hope.  I'm looking at what I have,

24  but again, it seems pretty easy to understand where we need to

25  go, and where it's appropriate to go.  I guess that's the better

1  way to say it.  So, before people spend a lot of time and money

2  on this, on filing additional motions or orders to expand the

3  scope of what's discoverable, paragraph 11 sort of does reflect

4  what the parties understand the state of play is.  I don't know

5  how you can actually understand and enforce paragraph 11 of that

6  stipulation and order without having some level of transparency.

7  Actually, let me get rid of the qualifier, some level of

8  transparency.  Without having transparency.  So, I think people

9  need to figure that out quickly, and I think it's appropriate to

10 come up with a stipulation and order coming out of today that

11 talks about when things are going to be produced about assets.

12 That's what I would prefer to do because I'm telling you now, if

13 the trustee makes a request, I can see numerous independent

14 bases for the trustee making a request that in an abundance of

15 caution, not agreeing necessarily with my view of the world, but

16 if there's additional language that needs to be in an order,

17 they're going to get it.  Because there are numerous ways in

18 which that's an appropriate request, even if it isn't currently

19 memorialized in an order.

20        So my suggestion is to not waste everybody's time and

21 effort on that.  But again, I'm the option of last resort.  So

22 if that's where it ends up, then that's where it ends up.  And

23 so, I would think that information about the assets under her

24 direct or indirect control, information about that, is relevant

25 as of the date of the signing of this stipulation, November 30th.

Firestar Diamond, AP: 20-01054 - 12/14/22          21

1      Again, I see your point, Mr. Dameron, in terms of what

2  the existing orders say or don't say, but I agree with the

3  trustee's view about how to understand what the needs of the

4  case are and what's appropriate.  And so, I think that order is

5  coming one way or the other.  So, I encourage you to try to work

6  something out so we can have order rather than chaos and save

7  people time and money.  So that's what I would suggest.

8      MR. DAMERON:  Thank you, Your Honor.

9      THE COURT:  All right.  With that, anything else that

10  we need to discuss here this morning?

11      MR. WEDOFF  No.  Thank you, Your Honor.

12      THE COURT:  All right, thank you very much, and happy

13  holidays to all of you and yours.  Be well and stay healthy.  I

14  hope to be able to stop saying the last part about stay healthy,

15  but our court just issued another thing.  The district court

16  issued something saying, if you're in common areas you should

17  wear masks.  So, hopefully everybody stays healthy, and do enjoy

18  the holidays.  So, thanks so much.  Be welcome.

19                        - o0o -

20                      CERTIFICATION

21  I, Rochelle V. Grant, approved transcriber, certify that the

22  foregoing is a correct transcript from the official electronic

23  sound recording of the proceedings in this matter.

24  *Rochelle V. Grant*

25  December 31, 2022