**Reply Deadline**: May 22, 2023
**Hearing Date**: June 5, 2023 at 2:00 p.m. EDT

JENNER & BLOCK LLP
Vincent E. Lazar
Angela M. Allen (admitted *pro hac vice*)
William A. Williams (admitted *pro hac vice*)
353 North Clark Street
Chicago, Illinois 60654
(312) 222-9350

Carl N. Wedoff
1155 Avenue of the Americas
New York, New York 10036
(212) 891-1600

*Counsel for the Trustee*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: <br><br> FIRESTAR DIAMOND, INC., *et al.* <br><br> Debtors. | Chapter 11 <br><br> No. 18-10509 (SHL) <br><br> (Jointly Administered) |
| RICHARD LEVIN, trustee for the liquidating trust of FIRESTAR DIAMOND, INC. and OLD AJ, INC., <br><br> Plaintiff, <br><br> v. <br><br> AMI JAVERI (A/K/A AMI MODI); PURVI MEHTA (A/K/A PURVI MODI); NEHAL MODI; CENTRAL PARK REAL ESTATE, LLC; CENTRAL PARK SOUTH 50 PROPERTIES, LLC; TRIDENT TRUST COMPANY (SOUTH DAKOTA) INC., solely as Trustee of the ITHACA TRUST; TWIN FIELDS INVESTMENTS LTD.; AURAGEM COMPANY LTD.; BRILLIANT DIAMONDS LTD.; ETERNAL DIAMONDS CORPORATION LTD.; FANCY CREATIONS COMPANY LTD.; SINO TRADERS LTD.; SUNSHINE GEMS LTD., <br><br> Defendants | Adv. Proc. No. 20-1054 (SHL) |

## TRUSTEE'S OPPOSITION TO AMI JAVERI'S MOTION
## FOR AN ORDER DIRECTING THE PAYMENT OF EXPENSES

TABLE OF CONTENTS

Table of Authorities ................................................................................................................ ii

Preliminary Statement ............................................................................................................. 1

Facts ....................................................................................................................................... 2

        A.    Javeri Purchased the Apartments with Fraud Proceeds and
             Attempted to Sell the Apartments. ................................................................. 2

        B.    The Trustee Moved to Attach the Apartments and ██████████ ................ 3

        C.    The Trustee Stipulated to Payment of Apartment Expenses in
             Connection with a Sale of the Apartments. ..................................................... 5

        D.    Javeri Refused to Comply with the Trustee's Stipulation. .............................. 7

        E.    Javeri Failed to Provide a Complete Discovery Response. ............................. 8

        F.    Javeri Demands Indefinite Payment of Apartment Expenses. ....................... 10

Argument ............................................................................................................................... 11

I.    Legal Standard ............................................................................................................. 11

II.   Rapidly Dissipating Attached Assets Does Not Maintain the Status Quo ................ 12

III.  The Expenses Are Not Reasonable, and Modifying the Attachment is
      Unnecessary to Avoid Severe Hardship. ................................................................... 13

IV.  Modifying the Attachment is Unnecessary to Pay the Expenses. ............................ 13

V.   The Trustee Has Not Asked the Court to "Force" Javeri to Sell the
      Apartments. ................................................................................................................ 16

Conclusion ............................................................................................................................. 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Dist. Att'y of Suffolk Cnty. v. Grazio,*
    108 N.Y.S.3d 750 (Sup. Ct. 2019) ................................................................................. 12

*Elliott Assocs., L.P. v. Republic of Peru,*
    948 F. Supp. 1203 (S.D.N.Y. 1996) ............................................................................... 11

*In re Firestar Diamond, Inc.,*
    634 B.R. 265 (Bankr. S.D.N.Y. 2021) ............................................................................. 2

*Iraq Telecom Ltd. v. IBL Bank S.A.L.,*
    43 F.4th 263 (2d Cir. 2022) ............................................................................................ 11

*JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc.,*
    306 F. Supp. 2d 482 (S.D.N.Y. 2004) ................................................................. 12, 13, 14

*Lang v. State,*
    696 N.Y.S.2d 3 (1st Dep't 1999) .................................................................................... 11

*Meridien Int'l Bank Ltd. v. Gov't of Republic of Liberia,*
    1996 WL 22338 (S.D.N.Y. Jan. 22, 1996) ................................................................ 11, 13

*Mishkin v. Kenney & Branisel, Inc.,*
    609 F. Supp. 1254 (S.D.N.Y. 1985) ............................................................................... 12

*Wallkill Med. Dev., LLC v. Catskill Orange Orthopaedics, P.C.,*
    131 A.D.3d 601 (2d Dep't 2015) .................................................................................... 14

*Wang v. Beijing Fine Wine and Liquor, Inc.,*
    2022 WL 1286713 (N.Y. Sup. Ct. Queens County Mar. 04, 2022) ................................ 14

**Statutes**

CPLR § 6223 .............................................................................................................................. 11

**Other Authorities**

Fed. R. Evid. 1006 ...................................................................................................................... 10

Plaintiff Richard Levin, not individually but solely as liquidating trustee ("**Trustee**") for the liquidating trust of debtors Firestar Diamond, Inc. and Old AJ, Inc., respectfully submits this opposition ("**Opposition**") to Defendant Ami Javeri's *Motion for an Order Directing the Payment of Expenses* ("**Motion**") [Dkt. 156].

## Preliminary Statement

Javeri asks the Court to direct rapid dissipation of attached assets—$340,000 to be paid immediately, with tens of thousands of additional dollars to be paid each month—to maintain two ultra-luxury Manhattan apartments (the "**Apartments**")[1] purchased shortly before the Petition Date with fraud proceeds for her and her family's use. The Ritz Carlton Apartment, purchased for approximately $25 million in 2017, is used by Javeri and her youngest daughter. The Essex House Apartment, purchased for approximately $6 million in 2017, is used solely by Javeri's adult son. The demands are in addition to hundreds of thousands of dollars in Apartment expenses already paid from ▇▇▇▇▇▇▇ under agreements with the Trustee and Trident Trust Company (South Dakota) Inc. ("**Trident**").

Javeri attempts to justify her extraordinary request by claiming the payments are for "living expenses" and will maintain the "status quo." But the living expenses are facially unreasonable, and the "status quo" Javeri seeks to maintain is rapid dissipation of attached assets to maintain her opulent, fraud-fueled lifestyle. Even if Javeri could justify these exorbitant expenditures, she has failed to provide the Trustee with Court-ordered discovery responses showing the extent of her assets and her ability to pay the expenses without using attached funds, and the limited document productions she has made suggest she is able to pay the expenses without modifying the attachment. The Court should deny the Motion.

---

[1] The Apartments means real property located at 50 Central Park South, Unit 33, New York, NY 10019 (the "**Ritz Carlton Apartment**") and at 160 Central Park South, Unit 3601, New York, NY 10019 (the "**Essex House Apartment**").

**Facts**

**A.   Javeri Purchased the Apartments with Fraud Proceeds and Attempted to Sell the Apartments.**

In the months leading up to the Petition Date, Ami Javeri, with her sister-in-law Purvi Mehta and others, coordinated the purchase of the Apartments with proceeds of the Modi fraud. In May and June 2017, Javeri's sister-in-law Purvi Mehta transferred $34 million of fraud proceeds to Javeri to purchase a new residence for Javeri's family. The funds were ultimately used to purchase the Ritz Carlton Apartment for $25 million. *See Complaint* [Dkt. 1] ¶¶ 312-47. In late December 2017, Mehta contributed $6 million of fraud proceeds to the Ithaca Trust. *Id.* ¶¶ 284-96, 303-04, 348-58. The Ithaca Trust used those funds to purchase non-debtor U.S. affiliate Firestar Group Inc.'s 100% membership interest in CPRE, which holds title to the Essex House Apartment, which was originally purchased for $4.995 million. *Id.* ¶¶ 285, 348-58.

On November 17, 2021—approximately one month after this Court denied motions to dismiss the Trustee's RICO and other claims against Modi, Bhansali, and Gandhi, which claims are based in part on conduct in which Javeri also participated, *see In re Firestar Diamond, Inc.*, 634 B.R. 265, 311 (Bankr. S.D.N.Y. 2021)—Javeri executed an agreement with a broker to list both Apartments for sale. *Declaration of Richard Levin in Support of Plaintiffs Motion to Confirm Order of Attachment* [Dkt. 109] ("**Levin Decl.**"), Ex. 2, at 1.

In seeking to the sell the Apartments, Javeri stated that ownership of the Apartments results in "enormous expenses" that "can no longer be paid or afforded." Levin Decl., Ex. 4 ¶ 18. She noted that monthly common charges for the Ritz Carlton Apartment were $8,500 and monthly real estate taxes are $6,683.33, reflecting at least $15,183.33 in monthly charges related to that apartment, about $182,000 annually. Levin Decl., Ex. 2 ¶ 2.

2

Javeri also proposed ████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
██████████████████████████████████

On January 14, 2022, ████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
██████████████████████████████

### B.    The Trustee Moved to Attach the Apartments and ████████████.

On February 15, 2022, the Trustee moved for entry of the Order of Attachment *ex parte* and under seal after learning of Javeri's efforts to sell the Apartments. The Trustee alleged that attachment of property owned by Javeri and the Ithaca Trust Defendants was necessary because they were attempting to remove assets from the reach of creditors through the attempted sale. On February 22, 2022, the Court entered the *Order of Attachment* [Dkt. 104] ("**Attachment Order**"), finding that the Trustee's allegations and evidentiary proof established all requirements under applicable law to issue an attachment order. *Id.* ¶ 2. The Attachment Order levies, among other things, (i) Javeri's interest in the Apartments, and (ii) any all interests of CPS50, CPRE, and Trident (together, the "**Ithaca Trust**

3

**Defendants**"). *Id.* ¶ 5. It also authorized the Trustee to "take discovery . . . of the Ithaca Trust Defendants and any other person or entity that may have information concerning the Ithaca Trust Defendants' attachable property or debt." *Id.* ¶ 8. On February 25, 2022, the Trustee filed his *Motion to Confirm the Order of Attachment* [Dkt. 107] ("**Motion to Confirm**").

On February 24, 2022, the Trustee served discovery on Trident, seeking documents and communications pertaining to all trusts in which Javeri claims an interest and the assets of any such trusts. On March 10, 2022, Trident began producing responsive documents, which disclosed ███████████████████████████████████████████████ ███████████████████████████████████████ On March 22, 2022, the Trustee filed his *Supplement to Motion to Confirm Order of Attachment* [Dkt. 116], seeking to attach ███████████████████████████████

On September 30, 2022, Javeri filed her *Opposition to the Motion to Confirm* [Dkt. 132] ("**Attachment Opp.**"). Javeri expressed a continued desire to sell the Apartments, ███████████████████████████████████████████████ ███████████████████████████████████" *Id.* at 22.

Javeri also argued, without any citation to any authority, that the Court should permit her to receive living expenses:



*Id.* at 29.

4

The Motion to Confirm was argued on October 26, 2022 and remains under submission to the Court.

### C. The Trustee Stipulated to Payment of Apartment Expenses in Connection with a Sale of the Apartments.

On March 7, 2022, the Trustee served his *First Request for Production of Documents* (the "**RFPs**") on Javeri. [Dkt. 143-1.] Among other things, the RFPs requested "[a] complete listing of all active and inactive financial accounts" in which Javeri had an interest and "[a]ll bank statements (including copies of checks) for all bank accounts" in which Javeri had an interest.

On May 6, 2022, the Trustee, Javeri, and her husband Nirav Modi (a defendant in *Levin v. Modi*, Adv. No. 19-1102 (Bankr. S.D.N.Y.)) executed a stipulation that was so-ordered by the Court the same day. *Stipulation and Order* [Dkt. 122] ("**May 6 Order**"). Under the May 6 Order, the Trustee was authorized to support and facilitate the payment of certain specified expenses from attached property. *Id.* ¶ 5 & Ex. A. Javeri and Modi were ordered:

> not to transfer any assets under their direct or indirect control, including assets under the direct or indirect control of a third party who ordinarily takes instruction from Nirav Modi or Ami Javeri, for as long as the stays provided for herein remain in effect, without the express written consent of the Trustee. Such prohibited transfers do not include domestic expenditures by Ami Javeri for family living expenses, consistent with historical expenditures, and the details of which will be provided to the Trustee.

*Id.* ¶ 7. Javeri was ordered to notify the Trustee of any offers received for either of the Apartments and not to accept any offer or execute any deed without the prior written consent of the Trustee. *Id.* ¶ 8. Javeri was also ordered to "respond to the Trustee's [RFPs] and complete production of the documents requested no later than May 18, 2022." *Id.* ¶ 9. The May 6 Order also stayed all proceedings relating to the Motion to Confirm through July 8, 2022. *Id.* ¶ 2. By agreement of the Trustee, Javeri's time to respond to the Motion to Confirm was extended three times. *See Agreement* [Dkt. 126] (extending Javeri's time to respond to

5

Motion to Confirm from July 8, 2022 to July 29, 2022); *Memorandum Endorsed Order* [Dkt. 127] (extending Javeri's time to respond to the Motion to Confirm from July 29, 2022 to September 2, 2022); *Memorandum Endorsed Order* [Dkt. 133] (extending Javeri's time to respond to Motion to Confirm from September 2, 2022 to September 30, 2022). The Trustee agreed to the May 6 Order and the three aforementioned extensions because Javeri represented that she would market and sell the Apartments to reduce the considerable carrying costs associated with the property and corresponding diminution of assets available to satisfy an eventual judgment. *See, e.g.*, Mot. 4 ("Ami's goal was to sell the Apartments and use the proceeds to purchase less expensive housing for herself and her children"); Levin Decl., Ex. 4 ¶ 18.

Over the next several months, Trident, in accordance with the May 6 Order, paid hundreds of thousands of dollars to cover expenses identified therein. These expenses included condominium association fees, property taxes, utilities, HVAC service, security, and other Apartment-related charges. *See* May 6 Order ¶ 5 & Ex. A.

Despite Javeri's agreement and this Court's order that she produce documents in response to the RFPs, her production was lackluster. On December 13, 2022, after lengthy discussions between the parties concerning her failure to produce, Javeri executed a second stipulation with the Trustee (and without her husband Nirav Modi) that largely restated the terms of the May 6 Order and under which Javeri again agreed "not to transfer any assets under [her] direct or indirect control, including assets under the direct or indirect control of a third party who ordinarily takes instruction from Ami Javeri, . . . without the express written consent of the Trustee." *Second Stipulation and Order* ¶ 11 [Dkt. 141] (the "**December 13 Order**"). The December 13 Order expired on January 31, 2023. *Id.* ¶ 10.

In accordance with the December 13 Order, Trident released ████████████ ███████████████████████████████████████████. *See* December 13 Order

6

¶ 3 (itemizing $82,831.56 in expenses to be paid); Allen Decl. ¶ 1 (Jan. 13 email from Javeri's counsel to Trustee's counsel requesting authorization for payment of $12,393.79 for Ritz-Carlton Apartment charges and alarm systems); Allen Decl. ¶ 2 (Jan. 13, 2023 email from Trustee's counsel authorizing payment Ritz-Carlton Apartment charges and alarm systems). Like the expenses paid under the May 6 Order, these expenses included condominium association payments, utilities, property taxes, HVAC service, security, and Apartment-related fees. December 13 Order ¶¶ 2–3.

### D.   Javeri Refused to Comply with the Trustee's Stipulation.

On December 14, 2022—the day after the December 13 Order was entered—the Court held a conference regarding Javeri's failure to respond to the Trustee's RFPs. Trustee's counsel provided the timeline of events, including Javeri's repeated representations that she would comply with discovery. *See* Tr. of 12/14/2022 Hr'g 3:14-7:23 ("**12/14 Tr.**") [Dkt. 144.]

In response, Javeri's counsel contended, for the first time, that "discovery was improper from the beginning" because paragraph 8 of the Attachment Order authorized discovery only against CPS50, CPRE, and Trident. *See* 12/14 Tr. 8:1-6. Javeri's counsel also contended that because the levy on the Apartments was completed, the Trustee was not entitled to any further discovery on Ms. Javeri's assets. *See* 12/14 Tr. 8:7-14.

On January 27, 2023, after Javeri rebuffed additional requests to Javeri to comply with the RFPs, the Trustee filed the *Motion for an Order (I) Confirming the Trustee's Authority to Take Discovery of Defendant Ami Javeri under CPLR § 6220; (II) directing Defendant Ami Javeri to Respond to the Trustee's March 7, 2022 Document Requests; and (III) Granting Related Relief* (the "**Discovery Motion**") [Dkt. 142].

On February 21, 2023, the Court held a hearing on the Discovery Motion, and on February 23, 2023, the Court entered an order (the "**February 23 Order**") [Dkt. 148]

7

granting the Discovery Motion, which ordered Javeri to "complete production of documents responsive to the RFPs no later than March 23, 2023." *Id.* ¶ 2.

      **E.**      **Javeri Failed to Provide a Complete Discovery Response.**

On March 23, 2023, Javeri produced 6,134 pages of documents to the Trustee. Along with the transmittal, Javeri's counsel wrote, "We have a small number of documents we are continuing to review and will let you know if we need to make a supplemental production." Allen Decl. Ex. 3. To date, Javeri has not made a supplemental production.

There are several deficiencies in the March 23 Production. *See generally* Allen Decl., Ex. 4. Javeri has failed to provide any statements for an account at FineMark National Bank and Trust, although Javeri's counsel stated on November 3, 2022 that he had statements for this account but did not want to produce them without Bates stamps. *See* Allen Decl., Ex. 4 ¶ 5. Other deficiencies in Javeri's productions include, but are not limited to, the following:

1. Javeri has failed to provide any responsive text messages, WhatsApp messages, or other non-email electronic communications.

2. Javeri has failed to provide a full production of monthly statements for her U.S. bank accounts.

3. Javeri has failed to provide monthly statements for her non-U.S. bank accounts, including the Diamond R Us, Stellar Diamonds, and Solar Exports accounts reflected in her FinCEN Reports of Foreign Bank and Financial Accounts.

4. Javeri has failed to provide a full production of checks and statements for her U.S. bank accounts.

5. Javeri has failed to provide her federal tax return for 2021.

6. Javeri has failed to provide documentation relating to the Diamond Holdings loan.

8

Despite her failure to produce all required documents, Javeri's partial discovery responses suggest she has access to or control over non-attached assets sufficient to pay the expenses. Javeri insured ███████████████████████████████████████████████████████████████████████████████████████████ It is unclear what happened to the proceeds of the sale. Javeri's productions also show at least $198,515.04 in U.S. bank accounts for which she has produced records as of December 31, 2022 and January 31, 2023 as follows:

| # | Account Name | Account No. | Bank Statement Date | Balance |
|---|---|---|---|---|
| 1 | Ami Javeri | Wells Fargo x6751 | January 31, 2023 | $ 118,919.85 |
| 2 | Ami Javeri | Wells Fargo x4728 | January 31, 2023 | 5,921.36 |
| 3 | Ami Javeri | TD Bank x3636 | December 31, 2022 | 70,409.99 |
| 4 | Ami Javeri | TD Bank x0285 | January 31, 2023 | 3,263.84 |
|   |   |   | Total: | $ 198,515.04 |

Allen Decl., Exs. 7–9.

Her limited discovery responses also reflect rapid dissipation of assets that would otherwise have been available to satisfy a judgment. Between the Petition Date (February 26, 2018) and the end of 2021, Javeri spent at least $21,125 at the Four Seasons Resort, $81,454.77 at Dior, and $96,077.26 at Chanel. She also deposited $300,000 into a 529 educational savings account.

---

█████████████████████████████████████████████████████████████████████

| Expenditure / Purchase Type | 2017 | 2018 | 2019 | 2020 | 2021 | Total |
|---|---|---|---|---|---|---|
| Art Service | | $1,656 | $3,750 | $3,125 | $2,596 | **$11,127** |
| Education | 12,736 | 114,196 | 30,133 | 1,132 | | **$158,197** |
| Event Tickets | | | 10,957 | 6,001 | | **$16,958** |
| Luxury Clothing / Department Store | 47,712 | 134,813 | 140,802 | 44,039 | 64,977 | **$432,343** |
| Travel | | | 45,769 | 60,427 | | **$106,196** |
| Wellness Service | 9,005 | 22,811 | 20,943 | 3,594 | | **$56,353** |
| Bill Pay (Acct. 47096) | | | 67,603 | 169,800 | | **$237,403** |
| 529 Fund / College Savings | | 300,000 | | | | **$300,000** |
| **Total:** | **$69,453** | **$697,805** | **$431,856** | **$51,890** | **$67,573** | **$1,318,577** |

*See Supplemental Declaration of Richard Levin in Support of Plaintiff's Motion to Confirm Order of Attachment* [Dkt. 135] Ex. 12 [Dkt. 135-12] (credit card statement showing $14,878.87 Chanel purchase and $3,695.00 Hermes purchase on 8/23/2018), Ex. 13 [Dkt. 135-13] at 2 (credit card statement showing $12,687.00 Dior purchase on 12/10/2021, $1,915.94 Chanel purchase on 12/13/2021, $4,482.00 Prada purchase on 12/26/2021, and $2,776.32 Chanel purchase on 12/29/2021).[3]

### F.    Javeri Demands Indefinite Payment of Apartment Expenses.

By her Motion, Javeri requests the Court direct Trident to pay more than $340,000 in past-due Apartment related expenses, with undoubtedly more to come: $220,264.49 for common area charges and electricity at the Ritz-Carlton Apartment, *see Declaration of Ami Javeri in Support of her Motion for the Payment of Apartment Expenses* [Dkt. 157] ("**Javeri Decl.**") ¶¶ 2-3; $4,103.51 for heating and ventilation charges at the Ritz-Carlton Apartment, *id.* ¶ 4; $604.26 for alarm system charges at the Ritz Carlton Apartment, *id.* ¶ 5; $166.94 in property taxes for the Ritz-Carlton Apartment, *id.* ¶ 6; $6,280.in insurance premiums for the Ritz-Carlton Apartment, *id.* ¶ 7; $1,921 in insurance premiums for the Essex House

---

[3] Javeri's spending records are voluminous. The Trustee will make the remaining documents available for examination or copying, or both, by other parties at a reasonable time and place in accordance with Rule 1006 of the Federal Rules of Evidence.

10

Apartment, *id.*; and $116,726.66 in property taxes at the Essex House Apartment, *id.* ¶ 8. This demand is in addition to the hundreds of thousands of dollars paid under the May 6 Order and $95,225.35 paid under the December 13 Order. In addition to the Apartment expenses, Trident "is continuing to incur fees, costs and expenses" that have not been paid. *Declaration Of Marc Rowin Regarding Ami Javeri's Motion To Compel The Payment Of Expenses* ¶ 2 [Dkt. 159].

## Argument

Javeri requests an order "directing the payment of expenses for the Apartments." Mot. 6. The Trustee has moved to attach ▉▉▉▉▉▉ [Dkt. 107, 122], but the Court has not ruled on the Trustee's motion, and, as Javeri acknowledges in her Motion, ▉▉▉▉▉▉ is not currently attached. Mot. 5. The Trustee assumes for purposes of this Opposition that Javeri seeks a modification of any order of attachment that the Trustee has sought, but the Court has not issued, with respect to ▉▉▉▉▉▉

### I.     Legal Standard

CPLR § 6223, "Vacating or modifying an attachment," does not authorize modification of an attachment to pay for a defendant's living expenses. *See Lang v. State*, 696 N.Y.S.2d 3, 6 (1st Dep't 1999). However, attachment is a discretionary remedy, and the Second Circuit has held that upon a defendant's showing of "extraordinary circumstances," a court may consider non-statutory factors in determining whether to modify an attachment. *Iraq Telecom Ltd. v. IBL Bank S.A.L.*, 43 F.4th 263, 272-73 (2d Cir. 2022) (non-statutory factors include "the impact an attachment would have on nonparties . . . . [or] on a nation's economy."); *accord Elliott Assocs., L.P. v. Republic of Peru*, 948 F. Supp. 1203, 1214 (S.D.N.Y. 1996) (denying attachment due to consequences on the Peruvian economy); *Meridien Int'l Bank Ltd. v. Gov't of Republic of Liberia*, 1996 WL 22338, at *6 (S.D.N.Y. Jan. 22, 1996) (vacating attachment in light of "uncontroverted evidence of the hardship that the people of

11

Liberia have suffered and will continue to suffer without the funds that are subject to the Attachment"). At least one court has stated that defendants could apply to modify blanket attachments on their assets in order "to permit *reasonable* payments of personal living expenses." *JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc.*, 306 F. Supp. 2d 482, 488 (S.D.N.Y. 2004) (emphasis added); *cf. Dist. Att'y of Suffolk Cnty. v. Grazio*, 108 N.Y.S.3d 750, 753 (Sup. Ct. 2019) (noting *plaintiff's* suggestion "that any defendant may move to modify any allegedly onerous [order] . . . to provide for any defendant's reasonable living expenses and attorney's fees").

## II.   Rapidly Dissipating Attached Assets Does Not Maintain the Status Quo.

Javeri argues that the attachment should be modified, and the expenses paid, to "maintain the status quo." Mot. 6. She cites no case law for this proposition. However, maintaining the "status quo" under an order of attachment should preserve assets, not deplete them. *See Mishkin v. Kenney & Branisel, Inc.*, 609 F. Supp. 1254, 1256 (S.D.N.Y. 1985) (noting plaintiff's request to attach assets to preserve the status quo). Javeri contends that ▮ Mot. 1. This "status quo" began in May 2022—*after* the Court issued the Attachment Order—under an agreement with the Trustee expressly conditioned on timely responses to the RFPs and Javeri's agreement "not to transfer any assets under [her] direct or indirect control," and with the understanding that the Apartments would be sold. Javeri now seeks to obtain the benefit of these agreements—massive dissipation of attached assets for her personal benefit—without any of the attendant burdens. The Trustee never agreed to an indefinite dissipation of ▮ and never agreed to any dissipation ▮ without a sale. Prior to entering these agreements, Javeri sought to sell the Apartments because she could no longer afford the "enormous expenses" associated with them, Levin Decl., Ex. 4 ¶ 18,

12

and she should not be able to use the Attachment Order to improve her position. Her "status quo" argument lacks merit and should be rejected out of hand.

### III. The Expenses Are Not Reasonable, and Modifying the Attachment is Unnecessary to Avoid Severe Hardship.

Javeri next argues that because attachment is a discretionary remedy, ▮▮▮▮ attachment should be modified to avert "hardship" and fund her "normal living expenses." Mot. 7. But the hardship necessary to modify an attachment must be "severe" or "irremediable," *Meridien Int'l Bank Ltd.*, 1996 WL 22338 at *4, and the living expenses must be "reasonable," *JSC*, 306 F. Supp. 2d at 488. Javeri fails to make either showing.

Javeri fails to show why attaching ▮▮▮▮ imposes a "severe" hardship necessitating dissipation of hundreds of thousands—and potentially millions—of dollars in attached funds. Any attachment imposes some hardship on a defendant because it restrains a defendant's property. But Javeri identifies no authority, and the Trustee is not aware of any authority, that allows a RICO conspiracy defendant to rapidly dissipate attached funds simply because the defendant was rapidly spending money before the conspiracy was uncovered—much less that doing so is necessary to prevent a "severe hardship." Indeed, the attachment provision would be eviscerated if attached assets could be rapidly dissipated simply because a defendant was accustomed to profligate spending. Javeri accuses the Trustee of creating a "crisis"—but the "crisis" is simply that she cannot freely spend fraud proceeds to maintain $30 million in real estate for three people, including her adult son. Javeri does not even attempt to explain why these expenses are reasonable, nor can she. The Court can and should deny the Motion on this basis alone.

### IV. Modifying the Attachment is Unnecessary to Pay the Expenses.

Even if the Court concluded that these enormous expenses were reasonable and that failure to pay them would create a "severe" hardship, Javeri has failed to show that granting

13

the Motion is necessary to pay the expenses. In her declaration, Javeri avers, "I do not have personal assets sufficient to pay [the expenses] without ▮▮▮▮▮▮▮▮▮▮▮▮. Between May 2020 and July 2022, I was able to pay some expenses for the Ritz-Carlton and Essex House Apartments by drawing on a loan provided by Diamond Holdings, Ltd. to my husband. I understand Diamond Holdings is not willing to lend further funds." Javeri Decl. ¶ 9; *accord* Mot. 6 ("▮▮▮▮▮▮▮▮ is the only source of funds available to Ami to pay the overdue expenses at issue."). This contention is unsubstantiated. The Trustee has not sought or obtained a blanket attachment on all Javeri's assets; Javeri has failed to provide complete responses to Court-ordered discovery that would reflect her ability to pay the expenses without the need for modification of the attachment; and the limited discovery responses Javeri has provided reflect access to or control over substantial assets and resources other than ▮▮▮▮▮▮▮▮.

*First*, the lack of a blanket attachment weighs against granting the Motion. In *JSC*, the single case Javeri cites in support of modifying an attachment to pay living expenses, the Court granted the plaintiff blanket attachments on several individual defendants' assets before suggesting that the defendants could apply to modify the attachments to pay for reasonable living expenses. 306 F. Supp. 2d at 488.[4] Because all of the *JSC* defendants' assets were attached, they would necessarily look to attached property to pay their expenses. Here,

---

[4] Javeri also relies on *Wallkill Med. Dev., LLC v. Catskill Orange Orthopaedics, P.C.*, 131 A.D.3d 601, 603 (2d Dep't 2015), and *Wang v. Beijing Fine Wine and Liquor, Inc.*, 2022 WL 1286713, at *2 (N.Y. Sup. Ct. Queens County Mar. 04, 2022), for the proposition that expenses should be paid in the normal course. Each of these cases involved preliminary injunctions (not orders of attachment) against corporate defendants (not individuals) and enjoined transfers outside the ordinary course of business (since enjoying all activity would cause the businesses to cease operations). Moreover, in *Wallkill*, the *plaintiff* sought a preliminary injunction that included an exception for the defendants to use assets in the "ordinary course of business"—it was not a caveat carved out by the court or argued for by the defendant. *Wallkill Med. Dev., LLC*, 15 N.Y.S. at 603.

14

the Trustee has not sought or obtained a blanket attachment on Javeri's assets—he has obtained an attachment on the Apartments and has sought an attachment on ▮▮▮▮▮▮▮.

*Second*, Javeri has failed to provide Court-ordered discovery responses that would permit the Court to determine whether, in fact, Javeri lacks personal assets sufficient to pay the expenses without funds ▮▮▮▮▮▮▮. But Javeri has failed to provide the Trustee with complete responses to the RFPs, which would allow the Court to gauge the veracity of her statement. *See* Allen Decl., Ex. 4 (May 15, 2023 letter from Trustee's counsel to Javeri's counsel outlining extensive deficiencies in Javeri's document production). Despite agreeing to provide responses to the RFPs a year ago (by May 18, 2022), the Trustee had to engage in motion practice and obtain an additional Court order before Javeri would agree to honor her prior agreement. [Dkt. 142, 143, 147.] And even after the Court ordered Javeri to complete her responses to the RFPs by March 23, 2023, *see generally* February 23 Order, Javeri's productions were still woefully incomplete.

Critically, Javeri has failed to provide any statements for an account at FineMark National Bank and Trust, although Javeri's counsel stated on November 3, 2022 that he had statements for this account, but did not want to produce them without Bates stamps. Allen Decl., Ex. 5. Javeri has also failed to provide foreign bank statements, non-email electronic communications, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See generally* Allen Decl., Ex. 4.

*Third,* the limited responses Javeri has provided suggest substantial additional assets. Javeri maintains several banks accounts, and four U.S. accounts had balances totaling nearly $200,000 as of December 31, 2022 and January 31, 2023 (the most recent dates for which Javeri provided statements). Allen Decl., Exs. 7–9.[5] Javeri funded a

---

[5] Javeri avers the current balance of these accounts is $113,298.40. Javeri Decl. ¶ 10.

sumptuous lifestyle long after petition date, spending hundreds of thousands of dollars of luxury goods, European vacations, and "wellness" services, and secreting $300,000 in an educational account. [*See* Dkt. 135-12, 135-13.] Moreover, Javeri's counsel stated in open court that Javeri "comes from her own wealthy family involved in the jewelry business" and "these expenses that she spends are part of her normal day-to-day living and have been since she was an infant." Tr. of 10/26/22 Hr'g at 31:17–23 [Dkt. 137]. Javeri cannot square her bare contention that ▮▮▮▮▮▮▮▮▮▮ is the only source of available assets to pay the expenses when she purports to have engaged in lavish spending since infancy.

Therefore, even if the expenses were reasonable and necessary to avoid a severe hardship, Javeri's failure to show she is unable to pay the expenses without modifying an attachment on ▮▮▮▮▮▮▮▮▮▮ is fatal to her Motion.

## V. The Trustee Has Not Asked the Court to "Force" Javeri to Sell the Apartments.

Finally, Javeri contends that the Court does not have the authority to "force" Javeri to sell the Apartments. Mot. 9–10. This is a straw-man argument. The Trustee has not argued that the Court can "force" Javeri to sell the Apartments prior to entering judgment in this action. Nor did the Trustee introduce the concept of selling the Apartments. As Javeri concedes, she attempted to sell the Apartments in order "to purchase less expensive housing for herself and her children," and this attempted sale precipitated the Trustee's attachment efforts. *See* Mot. 4; Attachment Opp. 22. While a sale would allow Javeri to bring her expenses to a more reasonable level, the Trustee has not asked the Court to force a sale and the Court does need to determine its ability to do so.[6] Rather, the Court must decide the instant Motion,

---

[6] Javeri also attempts to relitigate the size of the bond, arguing the bond is "incapable of compensating Ami" for the value of the Apartment and outstanding expenses. Mot. 9. Briefing on the Motion to Confirm is closed and the Court should disregard this argument.

16

which asks for authority to dissipate hundreds of thousands of dollars in attached funds immediately, and dissipate hundreds of thousands, if not millions, more dollars prior to entry of judgment. For reasons set forth above, the Court should deny the request.

## Conclusion

For the reasons set forth herein, the Court deny the Motion.

Dated: May 15, 2023
      Chicago, Illinois

Respectfully submitted,

JENNER & BLOCK LLP

By: */s/ Angela M. Allen*
Vincent E. Lazar
Angela M. Allen (admitted *pro hac vice*)
William A. Williams (admitted *pro hac vice*)
353 North Clark Street
Chicago, Illinois 60654
(312) 222-9350
vlazar@jenner.com
aallen@jenner.com
wwilliams@jenner.com

Carl N. Wedoff
1155 Avenue of the Americas
New York, New York 10036
(212) 891-1600
cwedoff@jenner.com

*Counsel for the Trustee*

17