UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>FIRESTAR DIAMOND, INC., *et al*.<br><br>                Debtors, | Chapter 11<br><br>No. 18-10509 (SHL)<br><br>(Jointly Administered) |
| Richard Levin, Chapter 11 Trustee of FIRESTAR DIAMOND, INC., FANTASY, INC. and OLD AJ, INC., f/k/a A. JAFFE, INC.,<br><br>                Plaintiff,<br><br>vs.<br><br>AMI JAVERI (A/K/A AMI MODI), *et al.*,<br><br>                Defendants. | Adv. Proc. No. 20-01054 (SHL) |

**DEFENDANT AMI JAVERI'S REPLY IN SUPPORT OF HER MOTION FOR AN ORDER DIRECTING THE PAYMENT OF EXPENSES**

**TABLE OF CONTENTS**

|  | Page |
|---|---|
| PRELIMINARY STATEMENT | 1 |
| ARGUMENT | 2 |
| I. Levin Falsely States He Never Agreed to the Disbursement of Funds Absent a Sale. | 2 |
| II. The Funds Will Be Used to Maintain the Status Quo | 3 |
| III. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ | 4 |
| A. The Allen Declaration Supports the Motion | 4 |
| B. Levin Did Not Raise the Purported Discovery Deficiencies in a Timely Manner | 5 |
| C. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ | 6 |
| IV. Levin's Other Arguments Are Either False or Irrelevant | 6 |
| A. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ | 6 |
| B. Ami Is Not Seeking a Modification of the Attachment | 7 |

Defendant Ami Javeri ("Ami") respectfully submits this reply memorandum in support of her motion for the payment of apartment expenses. For the reasons laid out below, in her opening brief, Dkt. 153, and supporting documentation, the motion should be granted.

### PRELIMINARY STATEMENT

The situation is now critical. ███████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
Plaintiff Richard Levin ("Plaintiff" or "Levin") refuses to agree to allow the expenses to be paid.

Levin offers no legitimate reason for opposing Defendant's motion. He argues he never agreed to the payment of expenses without a sale of the apartments. That is false. He complains that the expenses are "unreasonable." That is irrelevant. He argues Ami must have other resources based on the sale of a painting Ami never owned. He argues that it must be difficult to vacate or modify an attachment, but ████████████████████████. His position lacks all merit and merely demonstrates that his goal is to improperly use the attachment and this litigation to punish a defendant without due process.

████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████

1

## ARGUMENT

Through this motion, Ami is asking the Court to issue an order allowing Defendant Trident Trust Company (South Dakota), Inc. ("Trident") ███████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ██████████. As discussed below, this does not require a modification of the existing Preliminary Attachment Order, Dkt. 104, ████████████████████████████████████████. This Court has the authority to "tak[e] any action or mak[e] any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." 11 U.S.C. § 105(a). "The applicability and use of § 105(a) is typically left to the bankruptcy court." *MA Salazar, Inc. v. Inc. Vill. of Atl. Beach*, 499 B.R. 268, 273 (E.D.N.Y. 2013) (citing *Adams v. Zarnel (In re Zarnel)*, 619 F.3d 156, 172 (2d Cir.2010)). The Court issued the Preliminary Attachment Order and it has the authority to implement or enforce that order by protecting the assets that have been attached, ████████████████████████████████████████████████████████.[1]

### I. Levin Falsely States He Never Agreed to the Disbursement of Funds Absent a Sale.

████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████ October. 26, 2022 Hrg. Tr. at 30:24-31:2. Levin then agreed to the Second Stipulation on December 1, 2022. Dkt. 138, 141. Under the plain terms of that stipulation,

---

[1] In the alternative, Ami has met the standards for a preliminary injunction under Bankruptcy Rule 7065 and Fed. R. Civ. P. 65. Ami's showings on the motion to dismiss and motion to confirm the attachment demonstrate her likelihood of success on the merits or sufficiently serious questions going to the merits to them fair ground for litigation. The balance of hardships decidedly tip in Ami's favor as well ████████████████████████████████████████
████████████████████████████████████████

2

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬ Even the First Stipulation did not require a sale of the Apartments. Rather, the First Stipulation permitted Ami to continue to market the Apartments but required her to inform Levin of offers and prohibited her from accepting any offers without Levin's express agreement. *See* Dkt. 122, ¶ 8. Nothing in that stipulation required Ami to sell the Apartments. Indeed, Levin did not even demand a sale of the apartments in January of this year when he sought to use this issue to force Ami to concede a discovery motion. Declaration of Reece Dameron, Dkt. 155, Ex. 1. ▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬ Rather, Levin has repeatedly agreed to the payment of these expenses and only changed his mind at the last moment.

## II.  The Funds Will Be Used to Maintain the Status Quo

Throughout his brief, Levin's counsel creatively use the term "dissipate" to describe the use of trust assets to pay for normal expenses for the apartments. But Levin's access to a thesaurus is not a basis for denying the motion. The expenses at issue are normal costs incurred for maintaining the apartments—property taxes, maintenance fees, a special assessment from the condo board, expenses for physical maintenance. Levin's position is that Ami should not "dissipate" assets by incurring normal expenses. This fundamentally misunderstands the nature of an attachment and the potential outcomes from his refusal to agree.

First, to get an attachment under CPLR 6201(3), as Levin seeks here, a plaintiff must provide evidentiary facts demonstrating that a defendant has "assigned, disposed of, encumbered, or secreted property" with the "intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor." *DLJ Mortg. Cap., Inc. v. Kontogiannis*, 594 F. Supp. 2d 308, 319-320 (E.D.N.Y. 2009). Failure to demonstrate an intent to defraud is fatal to

3

an attachment motion based on CPLR 6201(3). There is no doubt that Levin failed overall to demonstrate the requisite intent—he sought an attachment when the defendant informed him of her intent to sell the Apartments on the open market using an established brokerage through a court supervised process. There is no basis in Levin's motions for concluding that Ami was attempting to "assign, dispose of, encumber, or secrete" the property with the requisite intent. *See* Opposition to Motion to Confirm, Dkt. 132 at 20-25. The property would have been sold openly with Levin's knowledge and the proceeds of the sale retained in trust with the approval of a South Dakota court. Setting aside this fatal flaw in Levin's motion to confirm, he cannot show that Ami is intending to frustrate a judgment by paying bills that must be paid. Far from "dissipating" assets, Ami is seeking to pay bills required to maintain the assets. This is what Levin opposes.

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████

Levin is pushing for this outcome despite his continued refusal to engage in any discovery in this matter. Although motions to dismiss are still pending here, there is no justification for Levin refusing to provide discovery to Ami at this stage, except that he hopes he can jump to the end without even attempting to prove his case. We have Courts precisely to stop plaintiffs from doing what Levin is attempting here.

**III.    Javeri Is Incapable of Paying These Bills**

    **A.    The Allen Declaration Supports the Motion**

██████████████████████████████████████████

██████████████████████████████████████████



### B. Levin Did Not Raise the Purported Discovery Deficiencies in a Timely Manner

Levin complains that Ami has "failed to provide the Court-ordered discovery responses that would permit the Court to determine whether, in fact, Javeri lacks personal assets sufficient to pay the expenses without funds from the Frost Trust." Opp. Br. at 15. Ami produced documents to Levin, as ordered, on March 23, 2023, and, through counsel, subsequently offered to meet and confer if Levin identified any deficiencies. Despite the timely production and offer to meet and confer, Levin's counsel did not identify any deficiencies in the production until the day Levin's opposition to this motion was due—nearly two months later. Levin's counsel sent a deficiency letter at 10:26 am on May 15, 2023 and filed their opposition brief at 5:39 pm the same day. Levin's assertion that discovery is somehow incomplete cannot be a basis for denying this motion when Levin made no effort to raise purported deficiencies in the production in a timely manner.

Moreover, Levin conflates his position with the Court's by asserting that the alleged deficiencies in the discovery would not permit "the Court" to determine whether Ami has other assets. Levin might be unsatisfied, but the Court did not seek that discovery and it is not necessary to the determination of this motion.

5

### C. Levin Falsely Asserts Ami Has Other Assets

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████

*First*, Christies' website indicates that they sold a painting titled "La Terre" by Sayed Haider Raza on September 11, 2019. Christie's Live Auction 17597, Lot 182, Sayed Haider Raza, "La Terre," (September 11, 2019), https://www.christies.com/en/lot/lot-6222372. That painting was painted in 1977 and measures 68 1/2 inches by 102 3/8 inches. *Id*. ████████████

███████████████████████████████████████████████████████

██████████████ It is simply not the same painting as the one sold by Christies in 2019. Ami Suppl. Decl., ¶ 10. Levin is falsely accusing Ami of selling someone else's painting.

*Second*, Levin knows this is false. In April 2022, after the Preliminary Attachment Order had been entered, Richard Levin subpoenaed the storage unit where the painting is kept and demanded that he personally get to see it. On May 11, 2022, Richard Levin personally went to the storage unit to view the painting at issue. Ami Suppl. Decl. ¶ 10. Mr. Levin knows that this painting was not sold in 2019. The representations of Mr. Levin and his attorneys are false.

### IV. Levin's Other Arguments Are Either False or Irrelevant

#### A. Levin Demonstrates Ami Has Sharply Curtailed Her Spending

As he has since the beginning, Levin here again falls back on the argument that Ami's spending is somehow too high for his particular preferences. But, again, Levin is a plaintiff in this suit and he has neither proven his case nor taken any steps to do so. His arguments in this regard are not only irrelevant but prove the opposite of what he ████████████████████

███████████████████████████████████████████████████████

6

██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████ This fact militates in favor of granting this motion and against confirming the Preliminary Attachment Order.

### B.     Ami Is Not Seeking a Modification of the Attachment

Levin misrepresents the status of this case and the attachment here. ████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
████████

Ami is not seeking to modify the Preliminary Attachment Order. ████████████
██████████████████████████████████████████████████████
███████████████████.████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████

7

███████████████████████████

███████████████████████████

███████████████████████████

██████████████████ The Preliminary Attachment Order was not entered until nearly two years later and Levin's attachment supplement was not filed until March 2022. The motion to confirm, including the supplement relating to the Frost Trust, have yet to be decided by the Court.

To be clear, Ami maintains that the motion to confirm the Preliminary Attachment Order should be denied. Levin failed entirely to meet the statutory standards for an attachment order. He based his *ex parte* motion on the fact that Ami had informed him that she intended to sell the Apartments on the open market using a real estate broker through a court supervised process that would have ███████████████████████████ There is no factual basis from which one can infer that she intended to assign, dispose of, encumber or secrete any property with the intent required for an attachment order under CPLR 6201(3). The Court should deny Levin's motion to confirm for this reason among others raised by Ami in her opposition to the motion to confirm, Dkt. 132.

But denying the motion to confirm, as the Court should, would not resolve the issue in this motion. ███████████████████████████████████████████████ As discussed in Ami's opening brief, ███████████████████████████████████ ██████████████████ But doing so resulted in the Preliminary Attachment Order here. The expenses were then paid by agreement, including Levin's express agreement, until he decided he could use this problem as leverage. His intransigence is now causing this crisis. Not Ami, not Ami's spending, not Trident, not discovery, not the attachment. Just Levin.

8

Indeed, if the Court denies the motion to confirm, as it should, and also denies this Motion, Ami would likely return to the South Dakota Courts to supervise the disbursement of funds to her for the payment of the Apartment expenses. The case would then be in the position it was 15 months ago when Ami initially sought the supervision of the South Dakota Courts regarding the Ithaca and Frost Trusts. If that is what it takes, then the Court should do it.

## CONCLUSION

For the foregoing reasons and the reasons stated in her opening brief, Dkt. 153, 156, and the supporting documents, the Court should grant Defendant Ami Javeri's Motion for the Payment of Apartment Expenses and enter an order substantially in the form attached to the Motion, Dkt. 156-1.

Dated: New York, New York
May 22, 2023

AMINI LLC

By:  /s/ Reece Dameron
Bijan Amini
Avery Samet
Reece Dameron
131 West 35th Street, 12th Floor
New York, New York 10001
(212) 490-4700
bamini@aminillc.com
asamet@aminillc.com
rdameron@aminillc.com
*Co-Counsel for Ami Javeri*

Roger J. Bernstein
551 Fifth Avenue, 12th Floor
New York, NY 10176
(212) 748-4800
rbernstein@rjblaw.com
*Co-Counsel for Ami Javeri*