UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re:

FIRESTAR DIAMOND, INC. AND FANTASY, INC.,

Debtor.

Lead Case 18-10509-shl
New York, New York
ECRO: Alianna Persaud

SEPTEMBER 26, 2023
11:41 a.m. - 12:13 p.m.

AP: 20-01054-SHL LEVIN V. JAVERI ET AL

- HEARING TIME CHANGED FROM 10:00 TO 11:30 BY COURT

- DOC 171 MOTION TO WITHDRAW BIJAN AMINI AS ATTORNEY FOR
  CENTRAL PARK REAL ESTATE; CENTRAL PARK SOUTH PROPERTIES LLC

- DOC 175 MOTION TO WITHDRAW ROGER J. BERNSTEIN AS ATTORNEY FOR
  DEFENDANT, AMI JAVERI

BEFORE THE HONORABLE SEAN H. LANE
UNITED STATES BANKRUPTCY JUDGE

- A P P E A R A N C E S -

| | |
|---|---|
| For the Trustee:<br>(virtual) | CARL N. WEDOFF, ESQ.<br>Jenner Block LLP<br>1155 Avenue of the Americas<br>New York, New York 10036<br>212-891-1600<br>cwedoff@jenner.com |
| For Ami Javeri:<br>(in person) | BIJAN AMINI, ESQ.<br>REECE CAMPBELL DAMERON, ESQ.<br>Amini LLC<br>131 W. 35th Street, Suite 12th Floor<br>New York, New York 10001<br>212-490-4700 |
| For Ami Javeri:<br>(virtual) | ROGER J. BERNSTEIN, ESQ.<br>551 Fifth Avenue, 12th Floor<br>New York, New York 10176-0001<br>(212) 748-4800<br>rbernstein@rjblaw.com |
| Transcriber: | AA EXPRESS TRANSCRIPTS<br>195 Willoughby Avenue<br>Brooklyn, New York 11205<br>888-456-9716<br>contact@aaexpresstranscripts.com |

(Proceedings recorded by electronic sound recording)

AP: 20-01054 Levin v. Javeri et al - 9/26/23                              3

1    THE COURT:  All right.  And with that, I believe the

2    next matter that's on is Firestar Diamond Inc and Fantasy Inc

3    on, more particularly, for adversary proceeding 20-1054, Levin

4    vs. Javeri et al.  And I do see there's some folks here in the

5    courtroom, and we are set up for fully hybrid with the

6    anticipation of things being somewhat of a moving target in

7    light of the AO's amended guidance.  So, let me find out who's

8    here and live in court and get those appearances.

9    MR. AMINI:  Good morning, Your Honor.  Bijan Amini,

10   together with Reece Dameron for Amini, LLC.  And the defendant,

11   Ami Javeri and the two corporate LLCs that we represent.  I call

12   them CPRE and CPS 50.  I could look in --

13   THE COURT:  That's fine.  I know who you're talking

14   about.

15   MR. AMINI:  All right.

16   THE COURT:  That's fine.

17   MR. AMINI:  Thank you.

18   THE COURT:  So, Mr. Wedoff, let me ask if you can hear

19   everybody in court okay?

20   MR. WEDOFF:  Yes, pretty well.  Carl Wedoff, Jenner

21   and Block.  On behalf of the trustee.

22   THE COURT:  All right.  Good morning to you.  Good

23   morning to you all.  And let me ask if there's anyone else who's

24   on the line for this.

25   MR. BERNSTEIN:  Yes.  Roger Bernstein, Your Honor.

AP: 20-01054 Levin v. Javeri et al - 9/26/23                4

1    Possibly visible.  I'm supposed to be.

2           THE COURT:  You are visible, indeed.  We can all see

3    you since we have a couple of large monitors set up here in the

4    courtroom.  So, good to have you here as well.  Anyone else

5    who's here for this case?

6           (No response.)

7           THE COURT:  All right.  So, if I understand correctly,

8    we're here for the motions to withdraw that are at dockets

9    numbers 171 and 175.  I didn't know if there was any status

10   report that's worth giving before that.  My sense is that the

11   motions to withdraw will somewhat encompass status.  So, unless,

12   Mr. Wedoff, you have some burning issue that you want to get out

13   there, my intent would be to turn it over to the movements.

14          MR. WEDOFF:  I agree, Your Honor.  I defer to the

15   movements.

16          THE COURT:  All right, thank you.  So, counsel, take

17   it away.

18          MR. AMINI:  Thank you, Your Honor.  I came in person

19   because I have three important matters, three important points I

20   wanted to make to the court.  Two are simply legal matters, and

21   the third is a plea.  So, the first is that there's nothing in

22   the opposition to deny our motion to withdraw.  It's pretty

23   standard fair that if the client doesn't pay your fees, you're

24   allowed to leave, I believe in this country.  And I'm unaware of

25   any case law that says, in the ordinary course of a case, if

AP: 20-01054 Levin v. Javeri et al - 9/26/23            5

1   that happens, you can be kept in.  Most of the cases say, if

2   there's a delay, or would cause a significant delay.  And I

3   think virtually every one of those cases, the delay in mind is a

4   trial, which in this case is not even projected for next year.

5            So, discovery has not yet formally -- there was a

6   stipulation entered by Your Honor in July about discovery in

7   this case.  We have an agreement with the other side that our

8   time to run to respond to theirs, effectively, the 30 days

9   starts today, so we can see if we can get out by now.  The only

10  two reasons given so far is Trident, the trustee of these trusts

11  that contain some funds from which the client believes we should

12  be paid, says we haven't asked them for the money, but we're not

13  engaged directly by them.  We submitted the bills.  And I don't

14  think --

15           THE COURT:  I took their pleading to be more their

16  desire to explain their position on the record than anything

17  else.

18           MR. AMINI:  I appreciate that.  Thank you, Your Honor.

19  Then I won't address it any further.  Mr. Levin's pleading was,

20  keep them in for discovery.  And, you know, I thought about

21  getting into a long discussion about that, and then realized,

22  there's no record before Your Honor about any of that.

23           THE COURT:  Well, I took it to be more limited than

24  that, and he can straighten me out if I've got it wrong.  But I

25  took it to be for pending discovery, not an unlimited you should

AP: 20-01054 Levin v. Javeri et al - 9/26/23                    6

1   stick around till somebody else shows up kind of request, but

2   that there are things that have currently been discussed, that

3   have been discussed over a period of time.  And I think most

4   noteworthy would probably be the initial disclosures.  That's

5   what I took Mr. Wedoff's pleading to address.

6        MR. AMINI:  But whether that addresses that or not,

7   there's nothing in the record to indicate to you that we didn't

8   do that correctly.  You know --

9        THE COURT:  Well, I don't quite understand that

10  comment.  What I have is Mr. Wedoff saying we don't have your

11  initial disclosures, all of them, and that's what we think

12  should happen before anybody's let out.

13       MR. AMINI:  I'm sorry.  I think that's -- to correct

14  this, they gave us an initial disclosure, which is terribly

15  deficient.  We gave them an initial disclosure, which they claim

16  is deficient, and nobody has bothered to put in front of Your

17  Honor what the claims are.

18       THE COURT:  Well, I mean, I can fix that problem if

19  that's the issue.  So, again, I don't understand and Mr. Wedoff

20  can chime in a minute, but I don't understand Mr. Wedoff's

21  pleading to be something saying that you should stick around for

22  all time, or that you should stick around for the first set of

23  document requests or the second set or depositions or any of

24  that.  I distinguish it because I have certainly gotten cases

25  where someone has made that request and said a case has gone on

AP: 20-01054 Levin v. Javeri et al - 9/26/23                    7

1   too long and raised issues of delay.  But I don't take it that

2   way.  I take it to be what's in progress.  We should button that

3   up, and then you all should go on your merry way without Mr.

4   Wedoff's objection.

5           MR. AMINI:  And I would agree with Your Honor that

6   that might be a reason to keep us in for a short while.  But I

7   would also suggest to Your Honor that that, if done properly,

8   and there's nothing here that wasn't extant when we made this

9   motion on August 22nd, is put in front of you before we come here

10  today so I don't have to respond to oral allegations about the

11  discovery I've done.  I've made a representation that I have

12  done our initial disclosure.  We've given a copy to them.  They

13  gave us one back.  I have theirs with me.  I don't know if Mr.

14  Dameron brought ours.

15          THE COURT:  Yeah, I think --

16          MR. AMINI:  So, what's happening now, what I'm

17  objecting to, I guess it's an objection, I don't mean to be

18  rude.  But the objection is I shouldn't have to -- like, for

19  example, I know he sent us a letter about attachment discovery

20  yesterday.  Okay.  But we finished attachment discovery in early

21  August, so now I'm supposed to stay in the case because

22  yesterday a letter came that I have to now respond to that says,

23  no, we've done this.

24          THE COURT:  Well, we've been talking about attachment

25  discovery for some time.  I mean, attachment discovery has been

AP: 20-01054 Levin v. Javeri et al - 9/26/23          8

1  -- and I can go back through my notes on all this because I take

2  detailed notes at each conference.  Attachment discovery was

3  something that was talked about in the context of various

4  requests to unencumbered funds.  And so we've been having a back

5  and forth in various contexts about that.  And perhaps, it makes

6  sense to hear from Mr. Wedoff the specific things that he would

7  argue are covered by his objection rather than get into

8  speculating about what it covers and what it doesn't cover.

9       MR. AMINI:  Mr. Dameron is standing.  Maybe he wants

10  to now get into the engagement --

11       MR. DAMERON:  No, no.  I just wanted to clarify

12  exactly what your Honor is asking for.  If I can read from their

13  filing, he says, the trustee objects to the motions insofar as

14  movements seek to withdraw before defendants have (A) provided

15  appropriate initial disclosures, (B) completed production of

16  documents regarding the attachment request and (C) completed

17  production documents in response to their September 12, 2023

18  first request for the production of documents.  They're asking

19  not just for attachment, but also document requests they serve

20  after the conference that held on the 12th.  So, we held a

21  conference on the 12th, they served document request that --

22       THE COURT:  All right, I understand.  And so your

23  comment is designed to remind me that in your view, there's a

24  line there between the first two items and the last item.

25       MR. DAMERON:  No, I'm reminding you that they're

AP: 20-01054 Levin v. Javeri et al - 9/26/23                9

1   requesting all three items.  They want us --

2        THE COURT:  No, no, I got that, but I'm taking it, as

3   reminding me that one of those things is not like the other,

4   that one of them happened after you had announced your intention

5   to file a motion to withdraw.

6        MR. DAMERON:  Yeah, and to be clear, Your Honor, if we

7   get further into that exchange, several of the exchanges that

8   we've had with the trustee have come after we filed our motion

9   to withdraw.  We filed on the 22nd and completed production of

10  the attachment discovery on the 31st.  We have received

11  additional communications from them demanding additional

12  documents from us since then.  So, I think we are complete on

13  attachment discovery and they're trying to keep us in to do

14  merit discovery.

15       THE COURT:  Well, again, Mr. Wedoff did not file an

16  extensive pleading, so let me hear from Mr. Wedoff to try to set

17  the stage here as to what is worth discussing and what's not.

18       MR. WEDOFF:  Okay, thank you, Your Honor.  Just as a

19  preliminary statement, we do not object in principle to

20  counsel's withdrawal.  We agree that they should be entitled to

21  withdraw.  And the purpose of our pleading was to ensure that to

22  the extent practicable, we can tie up loose ends.  We can

23  certainly share with you our correspondence and the disclosures

24  that we've made.  I would represent that our current issues with

25  attachment discovery are quite limited, and I think they can be

AP: 20-01054 Levin v. Javeri et al - 9/26/23          10

1   resolved in short order.

2           With respect to initial disclosures, my understanding

3   was that, and I don't want to mischaracterize defendant's

4   position, but that the way I read their initial disclosures,

5   they basically read as, given our pending motions to dismiss,

6   it's unclear whether and to what extent we need to provide the

7   other information required under Rule 26(a)(1)(A).  Maybe they

8   have a different view about that, but whether or not that's a

9   deficiency is an open question, but we would like the

10  information that's typically provided under 26(a)(1)(A).  That's

11  Number 2.

12          And then the third bucket, yes, we did issue RFPs

13  following the last conference when it was clear that they

14  believed their initial disclosures were complete and that RFPs

15  could go forward.  Our understanding was that because they

16  basically said -- we took it as them saying we're not going to

17  participate in merit's discovery until the motions to dismiss

18  are decided.  Following our last conference, it appeared that

19  they would agree to participate in merits discovery, at least to

20  some extent.  And they requested and we agreed to an extension

21  of the deadline for their responses to our RFPs.

22          Now, just to be clear, I understand, taken to its

23  logical conclusion, if we say, you have to stay until discovery

24  resolved, that could take a long time.  I don't think that would

25  be practical or reasonable to ask.  However, given that they

1  asked for an extension till, I believe, October 26th, to respond

2  to our initial RFPs, I think some kind of response, some good

3  faith effort to respond would be reasonable.  And I believe the

4  initial disclosures and the remaining attachment discovery

5  issues can be solved.  So, I don't view this as keeping counsel

6  around indefinitely.  But I think, especially to the extent

7  we're talking about attachment discovery, I think it's

8  reasonable to clear up those issues.  If there's anything we

9  cannot resolve between ourselves, we can bring them to the court

10  on shortened notice.  But again, I think it's really just a

11  handful of items, and perhaps they're right and perhaps we're

12  wrong, and perhaps what they provided is complete.  I think some

13  of the arguments they made and some of the positions they took,

14  we actually frankly agreed with.  I think some of the items we

15  had asked for probably were outside the bounds of our attachment

16  discovery, but there are other items that we think were

17  appropriate.

18        So, it's discreet, it's not going to take six months

19  or nine months or a year to resolve, but it might take a few

20  weeks.  I think it's reasonable, at least with respect to the

21  initial disclosures and attachment discovery, to get those

22  buttoned up.  And if they can make some kind of good faith

23  effort to respond to our merits discovery, particularly since

24  they asked for an extension of their deadline to respond, I

25  think that would be appropriate as well.  But to be clear, we're

AP: 20-01054 Levin v. Javeri et al - 9/26/23          12

1   not challenging the underlying merits of their withdrawal.  We

2   think it's appropriate.  And I guess one other point I want to

3   make is they asked for a stay.  And perhaps we don't think a

4   stay is appropriate, but to the extent a stay is issued, perhaps

5   we can agree with them on something that allows our discovery

6   concerns to be ameliorated to some extent, insofar as the stay

7   is of limited duration and we're not left adrift.  My concern is

8   that merit discovery is supposed to close December 31st.  If they

9   leave shortly in the next couple of weeks, next few days,

10  there's no way that we're going to be able to reach that target.

11  And then who knows when replacement counsel will be found?

12          THE COURT:  All right.  So, let me share a couple of

13  observations.  I think I read the tone of Mr. Wedoff's papers

14  correctly.  I took the brevity of them to be that he wasn't

15  trying to pick a big fight and keep you all around forever.  And

16  that's because of what the case law says.  Frankly, in these

17  circumstances, judges often have as big, if not a bigger,

18  concern than counsel.  Because I know with Mr. Bernstein's

19  filing that we've had two sets of counsel have been retained in

20  this case, and they're both leaving.  We haven't even gotten to

21  merits discovery.  I know we've had a lot of activity, but we

22  haven't gotten to merits discovery.  That's the kind of thing

23  that concerns the judge in terms of your ability to move

24  forward.  But that's just background, I suppose.

25          As to the issues, my way of thinking of it is in two

AP: 20-01054 Levin v. Javeri et al - 9/26/23          13

1   buckets.  There are things that have been the subject of

2   conversations and requests or would otherwise have been required

3   up to this point.  That's the initial disclosures and the

4   attachment discovery.  It seems fair to have those get buttoned

5   up.  It doesn't sound like that is too large a hurdle.  Initial

6   disclosures are done in every case, and the attachment

7   discovery, I think at this point, if I understand Mr. Wedoff's

8   comment correctly, there wasn't that much left.

9          As for merits discovery, that's sort of in a different

10  bucket, right?  Because that was propounded after, I think you

11  all announced your intention to withdraw.  Now, again, the case

12  doesn't stop because somebody intends to withdraw.  I understand

13  the position you are in as counsel.  At the same time, the way I

14  think of that is that to the extent that your client wants to

15  stay, I ordinarily don't stay anything.  Somebody comes,

16  somebody goes, that's life in the big city.  And nothing is

17  delayed as a result of this circumstance.  And particularly

18  here, where we've gone through now two sets of counsel by this

19  particular client.

20         So, I suppose one way to think about the stay request

21  is, if producing certain sort of core documents as part of

22  merits' discovery in good faith, not say, make a complete

23  production, but to sort of get things moving, that might buy

24  you, or buy your client, I guess, more appropriately, Mr.

25  Wedoff's consent to a limited stay.  Because otherwise I'm not

AP: 20-01054 Levin v. Javeri et al - 9/26/23                14

1   staying anything.  I never do it.  I'll do something like that

2   if parties agree.  But my general view as a litigator in federal

3   courts before taking the bench, counsel coming and going, it is

4   what it is, but it doesn't change the fact that a case has to go

5   forward.  So, my thought would be, I'm happy to give you all a

6   chance to have a chat about initial disclosures and attachment

7   discovery with the thought that that seems to be and my hope

8   would be that it's a fairly discreet list of things.  And as for

9   merits discovery, I put that in a different bucket, which is, if

10  your client wants to stay, there may be certain documents that

11  you have where your client says, all right, give me an amount of

12  time to figure out what I'm going to do from here in terms of

13  counsel or handling the case generally, that I'm willing to

14  provide a certain amount of documents in response to the first

15  document request that will buy Mr. Wedoff's consent to a stay of

16  30 days, 60 days, or whatever it is.  It's not going to be sine

17  die, it's not going to be particularly lengthy, but I think it

18  might get a 30 or 60 day extension if you have documents you've

19  already collected and your client says, well, if that will get

20  me a 30 or 60 day extension, release those.  So, that's

21  something that you can say to your client, and the ball is kind

22  of in your client's corner then, if your client wants to make

23  that call.  And if your client doesn't, then we're sort of back

24  to first principles, which is to say, I'm not going to think

25  about the merits discovery, but I'm also not going to grant any

1   sort of stay.  And so, again, the stay, I think, is a function

2   of an agreement among the parties.  As your last parting gift to

3   your client, sometimes that's how it works.

4          So, what I would suggest doing at this point is, I am

5   happy to leave the line open, turn off the record function for

6   me to leave the courtroom to give you all a chance to chat

7   briefly.  I will tell you that if you're chatting with Mr.

8   Wedoff on Zoom, that green glowing circle on that other table is

9   actually the Zoom microphone.  These microphones are interior

10  sort of courtroom microphones, way before Zoom was ever

11  something that we thought about in court.  So, you might want to

12  move over to that table to use that so no one has any issue

13  hearing anybody.  So, what I'd like to do is give you a couple

14  of minutes to chat, and then I'll come back out.

15          MR. AMINI:  Can I be heard just briefly?

16          THE COURT:  Sure.

17          MR. AMINI:  In this back and forth, I don't want the

18  court to lose track.  This case is really about the husband and

19  his partners, and the --

20          THE COURT:  The case is the case.  I've written a

21  really long opinion, I have another really long opinion, I have

22  several of them.  I know exactly what the case is about.

23  There's all sorts of allegations.  They are what they are.  It

24  makes no sense to me to try to minimize the case, to say, well,

25  it's not that big a deal.  You're seeking to withdraw.  Even Mr.

AP: 20-01054 Levin v. Javeri et al - 9/26/23                    16

1    Wedoff doesn't oppose you on that.

2         MR. AMINI:  It's something different, Your Honor.  I'm

3    sorry.  If you allow me just a moment, okay?  I'm not really

4    talking about the part you're asking me to do now.  But if I

5    have to do that part, then don't I really also have to look at

6    the current disclosures?  And don't I now have to bring the

7    motion?

8         THE COURT:  No, because I'm setting the terms of your

9    withdrawal.

10        MR. AMINI:  But understand something, if I don't go

11   after theirs, you've just told me there's no stay.  So, she's

12   already in a bad spot, because before I got here, lawyers didn't

13   do things, so she's already got a bunch of stuff I can't attack.

14   So, now you're saying they've made a disclosure --

15        THE COURT:  Listen, first of all -- first of all, let

16   me stop you here.  You're making this way too complicated.

17   Before this motion was ever filed, there was an email request

18   for a stay.  And I said, why would I stay the proceeding, I

19   never stay proceedings when there are requests to withdraw.

20   What I just told you is, to the extent that you all, as a matter

21   of horse trading, figure out a way to do that in a way that's

22   beneficial to your client and beneficial to Mr. Wedoff, great.

23   If you don't, fine.  I'm trying to work with you, but if it's

24   going to be sort of weaponized in that way, then I'll just say,

25   the hell with it, I could care less.  And so I want you to deal

AP: 20-01054 Levin v. Javeri et al - 9/26/23          17

1  with the first two punch items, and that's not optional because

2  those have been outstanding.  So, that's where I am.

3          MR. AMINI:  Fine, Your Honor.

4          THE COURT:  As a matter of fact, my thought is, I

5  won't leave the line open if it's not going to be productive.

6  There's no point in keeping core personnel in the courtroom if

7  we're going to end up where we're going to end up.  So, it's

8  your call.

9          MR. AMINI:  Your Honor, in fairness, I don't know what

10 to do, because I don't know what I'm going to be asked.

11         THE COURT:  Okay, that's fine.  My ruling is, that

12 given all the facts and circumstances of the case, I will grant

13 the motion to withdraw that's been filed by all the counsel here

14 on the condition that the existing obligations that predate the

15 motion are completed, and those are the initial disclosures and

16 the attachment discovery.  And people have various views about

17 completeness or whatever.  The requests are what they are, and

18 people can disagree.  If there's a dispute, then that's what I'm

19 here for, and I'll figure it out.

20         And I am not going to extend that to the merits

21 discovery.  I do think there was notice given that you were

22 going to file a motion to withdraw.  And so, I don't blame Mr.

23 Wedoff for doing that, because, after all, the case will

24 continue, and he'll file -- that is a merits discovery request,

25 and the time is ticking, and Ms. Javeri, will have to decide,

AP: 20-01054 Levin v. Javeri et al - 9/26/23          18

1  and the other defendants decide what they want to do, but the

2  general rules apply.  And the general rule is that when someone

3  files a motion to withdraw, it doesn't stay the underlying

4  proceeding.  There's legions of cases that say that and numerous

5  judges.  That's an easy one.  I think I learned that probably

6  the second week I was a law clerk in 1991.  So, that's --

7          MR. BERNSTEIN:  Your Honor, can I --

8          THE COURT:  Yes?  Mr. Bernstein?

9          MR. BERNSTEIN:  I'm sorry.  Roger Bernstein.  I know

10  this has all gone very well or continuously.  I have not been

11  involved in the discovery or initial disclosure process

12  whatsoever, and I wasn't expecting to stay involved in it.  I

13  think that ball is clearly in new counsel's court.  So, unless

14  Your Honor thinks otherwise --

15          THE COURT:  Listen.  People are in the case till

16  they're not in the case.  I saw what you filed, and I'm not

17  going to opine about who's got what responsibility, unless

18  there's a dispute about it.  And so, if there is a dispute, then

19  I'll deal with it.  But I really am not in a position to start

20  making findings or conclusions on that because I'm just not well

21  informed.  I understand what you filed, and I certainly have

22  seen who's appeared in the case in the last year for the

23  conversations that have taken place.  So, I'm certainly aware of

24  all that.  All right, so with that -- go ahead, counsel.

25          MR. AMINI:  Your Honor, just for record, I need to ask

AP: 20-01054 Levin v. Javeri et al - 9/26/23          19

1   Your Honor for a stay of Your Honor's order with respect to our

2   withdrawal because --

3          THE COURT:  You want to stay the granting of your own

4   motion?

5          MR. AMINI:  I want to stay the case while --

6          THE COURT:  No, if you want to stay the case, you need

7   to file a motion.  I've already told you, my view is that I do

8   not stay a case based on a request to withdraw.  But if you want

9   to file a motion, it's your right to file whatever motion you

10  want.  I'm telling you, I'm unaware of any judge who does that,

11  frankly.  But you can file whatever motion you want.

12         MR. AMINI:  I misspoke.  I think I need to make a

13  motion to stay the action on behalf of the clients, the three

14  clients.  Need to make right now a motion to your Honor to stay,

15  so as to allow them to get counsel.

16         THE COURT:  So, what I was going to say is that the

17  order that provides for withdrawal will say that all the clients

18  who no longer have counsel, when counsel is permitted to

19  withdraw, will have 30 days to get counsel.  That's what I would

20  normally do.  It doesn't stay the case, but it just essentially

21  gives some sort of guidance to folks who now no longer have a

22  lawyer.  But I'm not entering that order today because we need

23  to button up the two items in discussion.  So, what I think

24  would make sense is for folks to draft an order that says that

25  there have been motions to withdraw that have been filed.  The

AP: 20-01054 Levin v. Javeri et al - 9/26/23          20

1  court has expressed its intention to grant those motions.  Once

2  the obligations to provide initial disclosures and to complete

3  the requested attachment discovery or the pending attachment

4  discovery is completed, while that goes on, the parties who will

5  soon no longer have counsel should be aware that if they wish to

6  retain counsel, should do so, probably.

7       MR. AMINI:  Can the order be clear that we have no

8  further obligation as of today other than the two items that you

9  have, so that we do not have to respond to anything or protect

10 these clients in any way with respect to --

11      THE COURT:  Well, I think I've signaled my view based

12 on the conversation about the merits discovery request as to

13 where I'm drawing the line.  On the other hand, I don't know

14 that I can give you that sort of writ large, because I have

15 learned in this job that I cannot predict the future.  And so,

16 I'm telling you what I'm doing and how I'm trying to divide it.

17 And I think Mr. Wedoff understands my intention as well.  And

18 so, I don't expect anybody to play any games in terms of trying

19 to sneak something under the wire or do anything unusual.  I

20 think the attorneys here, you all are very good attorneys, and I

21 don't expect that to be a problem.

22      On the other hand, I can't grant your withdrawal until

23 those things are done, so I can't issue that order.  I can issue

24 an order that essentially notifies your client that withdrawal

25 is coming subject to those two things.  And so as to advise your

AP: 20-01054 Levin v. Javeri et al - 9/26/23          21

1   clients that to the extent they wish to seek new counsel, they

2   should start that process sooner rather than later.  And that

3   allows a court order then to inform them to take whatever steps

4   are necessary, so no one can then later say that they weren't

5   informed or somehow the message didn't get to them.  So, that's

6   what I would suggest.

7         MR. AMINI:  Thank you, Your Honor.

8         THE COURT:  All right.  Anything else from any other

9   party?

10        (No response.)

11        THE COURT:  All right.  With that, I would suggest

12  that kind of an interim order of the kind we just discussed so

13  that your clients are aware that the day is coming and that they

14  should start looking into finding other counsel.  And that order

15  can specify the two specific items to be completed.  And once

16  that's done, then I'm happy to grant the motion to withdraw.  If

17  there are any issues between now and then, you all should

18  consult with one another, have a meet and confer, and I'm happy

19  to meet with the parties if there are any issues.  I frankly

20  don't expect there to be at this point.  Initial disclosures are

21  required in every case at the very beginning of a case, and so,

22  they are significantly different than merits discovery in that

23  sense in terms of their scope.  And so this case has been

24  pending a long time.  There's nothing about a motion to dismiss

25  that initial disclosures are required.

AP: 20-01054 Levin v. Javeri et al - 9/26/23          22

1     And as for attachment discovery, I think we had gone

2   back and forth in some conferences about that.  And so, I think

3   if I take Mr. Wedoff's comment at face value, it sounds like

4   there's fairly discrete items left for that.  So, I'm cautiously

5   optimistic that you all will be able to get to the finish line

6   on those two items, and we can put a bow on the motion to

7   withdraw with a second order that grants your unconditional

8   withdrawal at that point.  All right, thank you very much.

9          MR. WEDOFF:  Thank you, Your Honor.

10                    - o0o -

11                 CERTIFICATION

12     I, Rochelle V. Grant, approved transcriber, certify

13  that the foregoing is a correct transcript from the official

14  electronic sound recording of the proceedings in this matter.

15

16  September 27, 2023

17

18

19

20

21

22

23

24

25