```
                    UNITED STATES BANKRUPTCY COURT
                  SOUTHERN DISTRICT OF NEW YORK (NEW YORK)

                                          .
IN RE:                                    .  Case No. 18-10509-dsj
                                          .  Chapter 11
FIRESTAR DIAMOND, INC.,                   .
                                          .
                Debtor.                   .
. . . . . . . . . . . . . . . .           .
                                          .  Adv. No. 19-01102-dsj
RICHARD LEVIN,                            .
                Plaintiff,                .
                                          .
v.                                        .
                                          .
NIRAV MODI, et al.,                       .
                Defendants.               .
. . . . . . . . . . . . . . . .           .
                                          .
RICHARD LEVIN,                            .  Adv. No. 20-01054-dsj
                Plaintiff,                .
                                          .
v.                                        .
                                          .
AMI JAVERI, et al.,                       .
                Defendants.               .
. . . . . . . . . . . . . . . .           .
                                          .
RICHARD LEVIN,                            .  Adv. No. 24-01321-dsj
                Plaintiff,                .
                                          .
v.                                        .
                                          .  One Bowling Green
RAKHI BHANSALI, et al.,                   .  New York, NY 10004-1408
                Defendants.               .
. . . . . . . . . . . . . . . .           .  Thursday, November 14, 2024
                                             11:47 a.m.


    Audio Operator:           Courtroom ECRO Personnel

    Transcription Company:    Access Transcripts, LLC
                              10110 Youngwood Lane
                              Fishers, IN 46048
                              (855) 873-2223
                              www.accesstranscripts.com


        Proceedings recorded by electronic sound recording,
    transcript produced by transcription service.
```

1

TRANSCRIPT OF MOTION FILED BY THE TRUSTEE FOR ENTRY OF A FINAL
DECREE AND ORDER CLOSING CHAPTER 11 CASES;
ADVERSARY PROCEEDING: 19-01102-DSJ LEVIN V. MODI ET AL.
1) MOTION FILED BY RAKHI BHANSALI FOR A STAY PENDING APPEAL;
OPPOSITION FILED BY THE TRUSTEE;
ADVERSARY PROCEEDING: 19-01102-DSJ LEVIN V. MODI ET AL.
1) STATUS CONFERENCE;
ADVERSARY PROCEEDING: 20-01054-DSJ LEVIN V. JAVERI ET AL.
1) STATUS CONFERENCE;
ADVERSARY PROCEEDING: 24-01321-DSJ LEVIN V. BHANSALI ET AL.
1) STATUS CONFERENCE
BEFORE THE HONORABLE DAVID S. JONES
UNITED STATES BANKRUPTCY COURT JUDGE


TELEPHONIC APPEARANCES:


For the Trustee:          Jenner & Block LLP
                          By:  CARL N. WEDOFF, ESQ.
                          1155 Avenue of the Americas
                          New York, NY 10036
                          (212) 891-1653


For Mihir Bhansali:       White and Williams, LLP
                          By:  NICOLE A. SULLIVAN, ESQ.
                          7 Times Square, Suite 2900
                          New York, NY 10036
                          (212) 631-4420


For Ami Javeri:           Akrivis Law Group PLLC
                          By:  AMIR TOOSSI, ESQ.
                          747 Third Avenue
                          32 Floor
                          New York, NY 10022
                          (347) 949-0548

1          (Proceedings commence at 11:47 a.m.)

2          THE COURT:  All right.  Okay, the next case is

3    Firestar Diamond and adversary proceedings under it.  The main

4    case number is 18-10509.  Thank you all for your patience, or

5    if you were impatient, your endurance.  And sorry to keep you

6    waiting so long.

7          I'll just say what's on the calendar is a motion for

8    entry of a final decree, an order closing the main cases, the

9    Chapter 11 cases.  There also was calendared a motion by Rakhi

10   Bhansali for a state pending appeal.  I think that's been

11   mooted by an order of the district court denying leave to

12   pursue an interlocutory appeal, and then status conferences.

13   So that's what's in my mind.

14         Let me turn it over, I guess, first to Mr. Wedoff or

15   whoever's speaking for the trustee, and you can alert me to

16   anything you want by way of developments or otherwise, and then

17   proceed with your motion.

18         MR. WEDOFF:  Okay.  Thank you, Your Honor.  Carl

19   Wedoff, Jenner & Block on behalf of the trustee.  I think you

20   captured the calendar accurately.  I think that this status

21   conference might be more involved than our motion.  So if it's

22   all the same --

23         THE COURT:  Right.

24         MR. WEDOFF:  -- I can address the motion to close the

25   case first.

1          THE COURT:  Yeah, that's fine.  I'll tell you, I read

2     the -- well, I'll just let you go ahead.  Let me -- I'm trying

3     to discipline myself and not steal everyone's thunder too much,

4     but I can't help it.

5          I've read your motion.  It makes a lot of sense to me

6     as a pragmatic matter.  I guess I just want to make sure that I

7     understand what, if anything, remains to be administered from a

8     bankruptcy case perspective.  There's bigger and more active

9     adversary proceedings pending than sometimes is the case when I

10    close.  I just want to make sure I understand what remaining

11    bankruptcy work flows from the outcome of the adversaries.

12         MR. WEDOFF:  Thank you, Your Honor.  There is no

13    remaining bankruptcy work.  There had been one appeal from a

14    claims objection decision that Judge Lane had issued, and it

15    went to the district court.  The district court affirmed Judge

16    Lane.  The claimants filed notices of appeal with the Second

17    Circuit.

18         There's two different sets of Indian banks.  One

19    appeal was dismissed for failure to pay the filing fee.  The

20    second appeal was dismissed for failure to file an appellant's

21    brief.  So both the cases have been dismissed and the mandates

22    have been issued.

23         That was only remaining matter in the bankruptcy

24    case.

25         THE COURT:  Okay.  And so --

```
 1            MR. WEDOFF:  The trustee has been --

 2            THE COURT:  -- yeah, go ahead.

 3            MR. WEDOFF:  -- fully substituted in the adversary

 4   proceedings.  We provided notice of the motion to the United

 5   States Trustee's office.  I spoke with Ms. Cornell.  I know

 6   she's not on the line.  She had conflicts.  I see Ms. Schwartz

 7   is here.  But I am authorized to represent that the United

 8   States Trustee does not object to the motion.

 9            The trustee spoke with the U.S. Trustee's office.  I

10   don't want to mispronounce the man's last name, but Victor

11   Abriano, I believe is how you say his name.

12            THE COURT:  Okay.

13            MR. WEDOFF:  He identified a couple very small

14   discrepancies in the amount of U.S. Trustee fees that we had

15   paid.  I think there was one underpayment and one overpayment,

16   but they netted out to under $100.  We will clean those up when

17   we make the final United States Trustee fee payments.

18            But I think that is all.  And you know, I'm happy to

19   talk about the substance of the motion, but it sounds like

20   you've read it already.  So don't need to waste everyone's

21   time.

22            THE COURT:  Well, I did.  Thank you.  Let me just

23   ask, so I think the one, there's Punjab -- I think it's Punjab

24   National Bank remains in play, right?  That's the one bank with

25   --
```

1          MR. WEDOFF:  Right.

2          THE COURT:  -- a live claim.  Can you explain what

3  their status is and what happens with any proceeds of the

4  trustee litigation if and when that comes in?

5          MR. WEDOFF:  Yeah, sure.

6          THE COURT:  I'm wondering if it's just that that bank

7  is the recipient of any net proceeds after admin costs are met.

8          MR. WEDOFF:  That's essentially it, Your Honor.  They

9  agreed to subordinate their claim to all, you know, pari passu

10  with all unsecured creditors.  All other allowed unsecured

11  creditor claims have been paid in full.  So basically the

12  remainder goes to PNB.

13          THE COURT:  Okay.  So they're essentially a

14  subordinated class under the confirmed plan, sitting, waiting,

15  and hoping for more money.  And the trustee is trying to

16  generate it and whatever comes in gets administered and estate

17  expenses or trustee expenses are satisfied.  And then PNB

18  receives what's left and the trustee can wind down its affairs

19  or stop existing at that time.

20          MR. WEDOFF:  That's correct, Your Honor.  And I, you

21  know, in terms of the precise mechanics, there may be a little

22  bit more to it, but that is the long and the short of it.

23          THE COURT:  Okay.  And is that -- I think you

24  understand the reason I'm asking all these questions is that to

25  grant your motion, I have to be satisfied that the estate has

 1   been fully administered, the bankruptcy estate has been fully

 2   administered.  And I know that it's not preclusive that there

 3   exists remaining adversary proceedings.  I just want to make

 4   sure that the overflow into the bankruptcy case doesn't render

 5   the case not fully administered.  So that's the statutory

 6   framework I'm applying.

 7           MR. WEDOFF:  Yeah.  So really the reason we filed

 8   this motion when we did was because the Second Circuit appeal

 9   had concluded.  In addition, there was some uncertainty about

10   whether and to what extent U.S. Trustee fees would be owed.

11   That's been clarified now by the Supreme Court.  So those were

12   the two live issues that had sort of --

13           THE COURT:  Got it.

14           MR. WEDOFF:  -- prolonged the motion, but.

15           THE COURT:  Okay.  So I think that covers me.  Does

16   anyone else want to be heard with respect to the motion for

17   entry of a final decree and an order closing the Chapter 11

18   cases?

19           MS. SULLIVAN:  Nicole -- can you hear me?

20           THE COURT:  Yes, I can.

21           MS. SULLIVAN:  Nicole Sullivan.

22           THE COURT:  Go ahead, Ms. Sullivan.  Yep.

23           MS. SULLIVAN:  Nicole Sullivan from White & Williams.

24   I represent Mihir Bhansali.

25           THE COURT:  Sorry, you know what, you're a little

1   garbled sounding.  So creep closer to your mic and speak slowly

2   and loudly.

3          MS. SULLIVAN:  (Indiscernible) because when I do this

4   at home, I'm fine, but when I'm in my proper office, it doesn't

5   work very well.  I apologize.

6          I just have concerns that, you know, all the money

7   that the trustee has seen, different adversary proceedings, and

8   there's two on behalf of (indiscernible) my client, Mr.

9   Bhansali, you know, it's seeking multiple millions of dollars

10  judgment, and then there's no backstop or process in the estate

11  to make sure that, you know, if it's collected -- if it's

12  awarded and then collected, how it gets done.

13         And in the meantime, the trustee closes the

14  bankruptcy and there's no more quarterly reporting to us about,

15  you know, the administration of the estate and the amount of

16  funds remaining in the trust.  And I think that that could

17  raise concerns going forward.

18         THE COURT:  Okay.  I mean, I know you didn't file an

19  objection, but I get your concern.  Let me just ask Mr. Wedoff,

20  I'll just note you came to a conversational rest.  So that's

21  the fundamental concern you've got, right, Ms. Sullivan?

22         MS. SULLIVAN:  That was the fundamental concern,

23  yeah, thank you.

24         THE COURT:  Okay.  So, Mr. Wedoff, let me ask you

25  about that.  First off, how much money is Punjab National Bank

1  owed?

2          MR. WEDOFF:  Oh, under the claim, I think they put in

3  a claim for a billion dollars.  So that's -- their claim will

4  not be satisfied in full.

5          THE COURT:  Okay.

6          MR. WEDOFF:  I think it's safe to say.

7          THE COURT:  And is that allowed, but on a -- with a

8  subordinated status?

9          MR. WEDOFF:  Yes, correct.  Correct.  So they put in

10 the claim, I believe it was a billion dollar claim against each

11 of the three debtors.  I don't have that information directly

12 in front of me.  But yeah, the way this worked is because their

13 claim would have swamped everybody else, this was something

14 that we negotiated carefully and extensively with PNB to, in

15 order to get the plan confirmed and effective.

16          In terms of the, you know, in terms of the objection,

17 I mean, we didn't receive an objection.  We noticed this.

18          THE COURT:  You know, yeah, I hear you.  I just --

19          MR. WEDOFF:  I'm just kind of responding on the fly,

20 but I think our papers speak for themselves.  I think we

21 satisfied the requirements of 350(a) and the applicable

22 bankruptcy rules.  You know, notwithstanding that one of the

23 defendants would like to see, you know, ongoing administrative

24 costs, that's, you know, those are Chapter 11 requirements, but

25 they're not requirements in civil litigation.

```
 1            THE COURT:  Okay.  No, I -- so what notice would --

 2    will exist if and when a distribution is made to Punjab

 3    National Bank and if and when either intermediate or, you know,

 4    or final?

 5            MR. WEDOFF:  I'd have to look at the plan to see

 6    whether in the trust agreement.  I don't know the answer to

 7    that immediately.  I don't know.  I believe there would be some

 8    kind of notice that indicated that the trust was concluded, you

 9    know, that it was dissolved.  It's a five-year trust.  So to

10    the extent this litigation goes beyond next August, I think we

11    need to move for an extension of the trust.

12            But, you know, I can look at the trust agreement.

13    It's filed on the docket.  Again, I didn't anticipate this

14    objection coming in at the hearing, so I didn't pull up this

15    information ahead of time.

16            THE COURT:  Right.  I'll say, I'm not even sure it

17    constitutes an objection as opposed to an expression of

18    concern.

19            MR. WEDOFF:  Yeah.  And I appreciate --

20            THE COURT:  And so I just --

21            MR. WEDOFF:  -- it.  I just wasn't prepared to get

22    into the mechanics of the trust because I didn't anticipate any

23    objections in these proceedings.

24            THE COURT:  Okay.  No, I've got it.  Okay.  I think,

25    look, I think I'm ready to rule.  I'm going to grant the
```

1  motion.  And really for the -- first off, I'm going to note

2  it's not -- it didn't receive any timely objection from anyone.

3  And the U.S. Trustee is comfortable with it.  I carefully

4  reviewed the papers as noted.

5       Well, let me back up.  This is a case that is a long

6  pending bankruptcy case in which a plan has been confirmed and

7  gone effective.  The Case Number is 18-10509, reflecting that

8  it's at least -- it's a six-year-old case at this point.

9       And there are substantial and important adversary

10  proceedings for large dollar amounts being pursued by the

11  trustee, the liquidating trustee.  And as the moving papers

12  acknowledge that can be a reason, a factor for not closing the

13  estate, but it's not dispositive.  Section 350(a) states that

14  after an estate is fully administered and the Court has

15  discharged the trustee, the Court shall close the case.  That's

16  mandatory.

17       The motion papers at Paragraph 29 -- well, let me

18  correctly identify a case called New York Skyline, 2015 WL

19  5071948, as having extremely helpful discussion of the dynamic

20  present here.  Although that's not a Section 350 case, but that

21  was Judge Bernstein explaining that although the quote from the

22  case cited by the movant is, although the pendency of

23  unresolved adversary proceedings weighs against the entry of a

24  final decree, a bankruptcy court will often enter a final

25  decree and close the case while adversary proceedings are still

1   pending.  And the motion papers cite other cases that I think

2   also were cited in that <u>New York Skyline</u> decision.

3          Courts generally look at factors set forth in

4   Bankruptcy Rule 3022's advisory committee notes.  That rule is

5   essentially identical to section 350(a) regarding the closing

6   of cases.  And the rule is to be applied flexibly to allow the

7   Court to determine that an estate is fully administered and

8   should be closed, even if payments or other activities

9   involving the debtor and its creditors might continue.

10          And so courts are vested with significant discretion

11   in determining whether the bankruptcy case itself is fully

12   administered as that undefined statutory term is used in

13   Section 350(a).  Here it's clear to me that the trustee,

14   although pursuing hotly contested and big money adversary

15   proceedings, is doing so in a way with a limited impact on the

16   bankruptcy.

17          Everybody has been paid in full under the bankruptcy

18   plan with the exception of Punjab National Bank.  That is a

19   subordinated claimant with a very, very large claim.  I agree

20   with the trustee's representation and assessment that it's

21   exceedingly unlikely that a surplus will be realized through

22   the adversary proceedings, which are the only visible means of

23   recapturing assets to be used for satisfying that claim.

24          And in the circumstances, I just don't see a

25   realistic likelihood of any need for active administration by

1   the Court of the bankruptcy case or active estate

2   administration.  It's simply an exercise of this trustee acting

3   to pursue recoveries, which will be used to pay the estate,

4   cover expenses, and then satisfy the claim of Punjab National

5   Bank.

6           I further note that Section 350(b) makes clear that a

7   case can be reopened by the Court in which such case was closed

8   to administer assets, to accord relief to the debtor, or for

9   other cause.  So if Ms. Sullivan becomes concerned and thinks

10  there's reason to reopen for some form of case administration

11  to occur in the confines of the bankruptcy under the auspices

12  of the main bankruptcy case, a very simple motion to reopen

13  explaining why the need for greater supervision has arisen

14  could be filed, and I would give it prompt attention.

15          So I will note there's just some benefit to closing

16  cases when they're really done, and I think we're here.  Among

17  the benefits is the elimination of potential continued

18  incurrence of quarterly fees while there's an open Chapter 11

19  case.  Mr. Wedoff referenced that, and I guess I'm not sure how

20  alive those issues are, but nevertheless, I think it is a sound

21  discretionary exercise of case management authority to enter a

22  final decree at this point and not keep these cases hanging

23  around where there's really nothing active in the bankruptcy.

24  The action is all in the adversary proceedings, and those can

25  continue without a need to keep the umbrella bankruptcy case

1    hanging around.

2           Okay.  So that's the Court's ruling, and I'm not, I

3    guess, construing Ms. Sullivan's expression of concern to be an

4    objection.  I overrule it.  I'm not sure that it was intended

5    as an objection, but just an expression of concern.  But to the

6    extent it was an objection, I overrule it.  As noted, no other

7    objection was received, and so for that reason, you can submit

8    a proposed order granting the relief you seek.  Okay.

9           MR. WEDOFF:  Thank you, Your Honor.

10          THE COURT:  All right, thanks.  Okay, Mr. Wedoff,

11   what makes sense?  Maybe we should just quickly touch on the

12   motion for stay pending appeal.  I think it's moot, but let's

13   just button that down.

14          MR. WEDOFF:  Well, yeah, it is Ms. Sullivan's motion.

15          THE COURT:  Right.

16          MR. WEDOFF:  I would add that, you know, we reached

17   out to Ms. Sullivan about timing for document production.  She

18   said she is collecting the documents, and again, I don't want

19   to misstate anything she said, but this is my understanding.

20   She's collecting the documents and would like to enter into a

21   protective order.

22          THE COURT:  Okay.  Hang on a minute.

23          MR. WEDOFF:  We can address both those issue.

24          THE COURT:  Yeah, well, she's shaking her head, so

25   before we get into that, let me just ask her, really.

1          Ms. Sullivan, is that -- is your motion for stay

2    pending appeal moot now?  I think it is, but I just want to

3    make sure.

4          MS. SULLIVAN:  I think it is, Your Honor.

5          THE COURT:  Okay.

6          MS. SULLIVAN:  (Indiscernible).

7          THE COURT:  Okay.  So what's the cleanest way to make

8    the docket sheet reflect that?  Should I just enter a simple

9    order, just denying your motion is moot, or do you want to

10   withdraw it?

11         MS. SULLIVAN:  I think you can just deny as moot.

12         THE COURT:  Okay.  Okay.  So I'll just enter a simple

13   order, or maybe my deputy will enlighten me that we can do it

14   with a simple docket entry that she can just do, so we'll get

15   something in there to cap that off.  Okay.  Thank you.

16         All right.  So that's that.  And then, okay, so we've

17   -- then Mr. Wedoff has proceeded to talk about some discovery

18   issues, and I'm not sure, and generally status conference.

19         MR. WEDOFF:  (Indiscernible) offline, Your Honor.  I

20   was only raising them to say that we can address them offline.

21         THE COURT:  Oh, okay.

22         MS. WEDOFF:  (Indiscernible) that suffices

23   Ms. Sullivan.

24         THE COURT:  Okay.  Do you want to just talk offline,

25   and then -- yeah, well, wait a minute.  Let me slow down.  Is

1  there anything you want to raise at this time with -- on the

2  status conferences with respect to discovery or other issues,

3  Mr. Wedoff?

4          MR. WEDOFF:  So, I guess, just more broadly, for the

5  three adversary proceedings, there's a few items I would like

6  to discuss.  With respect to Ms. Bhensali's motion to stay

7  pending appeal, and her production of documents that were

8  related to that appeal, that we can discuss offline and table.

9          But there are some sort of overarching items I would

10  like to discuss, a couple more specific items I would like to

11  discuss.  However, I do note that Your Honor, I believe, was

12  the one who came up with the idea of a status conference in

13  these adversary proceedings in the first instance.  So if

14  there's anything the Court would like to address first, I'll

15  defer to you.

16          THE COURT:  Oh, okay.  Thank you.  Let -- I just want

17  to have you in reasonably frequently, and tried desperately to

18  keep these cases, which are unruly, actually moving towards

19  some form of completion.  That's my whole objective, right?

20  And so -- and I experience shows that some issues have popped

21  up with considerable regularity, so I want to just sort of keep

22  an eye on things, and make sure you've got a format to address

23  them.

24          So let me suggest this.  What's your punch list, Mr.

25  Wedoff?  And then I'll ask Ms. Sullivan.  Don't argue them,

1  just list what your list is of topics, and then I'll hear from

2  Ms. Sullivan, if she has additional topics, and then we'll go

3  through the topics, okay?  So what's your list, Mr. Wedoff?

4           MR. WEDOFF:  Okay, so the first item I would like to

5  discuss is a pre-trial schedule for all the adversary

6  proceedings.

7           THE COURT:  Okay.

8           MR. WEDOFF:  I would also like to discuss the, I

9  guess, the effect of the withdrawal of Moritt Hock as counsel

10 to Nirav Modi.  We have a number of other issues that we kind

11 of -- I don't know that we need to address any of them today,

12 but I would like to let the Court know that we highlighted --

13 we proposed some discovery procedures and some pre-trial

14 procedures for the defendants.  We received comments.

15          I think, other than the schedule, I think all of

16 those can be addressed offline, and would probably be better

17 addressed offline so there's no misunderstanding.  And I think,

18 you know, we will endeavor to do that as soon as the parties

19 are available.

20          I think the -- I guess the only other item I would

21 like to address, besides the schedule, the status of Mr. Modi,

22 I guess, as a defendant, would be -- I wanted to just flag for

23 the Court that we will be seeking another, hopefully, short

24 extension of time for Purvi Mehta to file an answer, and for

25 the parties to exchange initial disclosures in the 20-1054

1    adversary proceeding.  So that is due tomorrow, so I think we

2    will be submitting something today, and I just wanted to flag

3    that for the Court.

4           But I think those -- that's all I have.  I'm happy to

5    discuss anything else, but that's what I have.

6           THE COURT:  Okay.  Thank you.  I'll note that I'm

7    pretty sure that we've got deadlines that are running -- that

8    haven't yet run, including for appearance -- a filing of a

9    notice of appearance by new counsel for counsel whose -- for

10   parties whose attorneys were previously allowed to withdraw

11   from the representation, and I think that time hasn't run yet,

12   which is a bit of a possible impediment to setting binding

13   deadlines right now.  But let's see where we get.

14          All right.  I promised Ms. Sullivan I would let her

15   list her topics.  What additional topics, if any, do you have?

16          MS. SULLIVAN:  Well, I don't have additional topics.

17   I agree with Mr. Wedoff that the discovery procedures that he

18   raised in his letter to the parties two days ago that I

19   responded to yesterday, and I think that he's conversations

20   with other counsel to be discussed offline and to try to

21   (indiscernible) before we asked for the Court to leave.

22          But I also think the same is true (indiscernible) the

23   pre-trial schedule that Mr. Wedoff sent to us.  We received it

24   at, you know, around four o'clock on Tuesday.  You know, I

25   reviewed it and responded with what I think a better proposed

1   schedule will be.  I'm not sure that we'll reach an agreement,

2   but I think that the parties should at least take the

3   opportunity to try to do that.  And if we don't reach agreement

4   on the exact days, we might be keeping it on certain deadlines,

5   like how much time each party should have for their respective

6   reports (indiscernible).

7          So I think that the parties should have that

8   discussion first, and then we should come back to the Court

9   with the joint agreement, the proposed agreement, or with, you

10  know, our competing orders.

11          THE COURT:  Okay.

12          MS. SULLIVAN:  (Indiscernible) respective too.

13          THE COURT:  Oh, maybe my math -- I'm sorry.  I think

14  my math is off.  I had -- when I was saying there's some -- the

15  order granting withdrawal of prior counsel required appearance

16  of counsel by a date that hadn't run yet, I was wrong.  I

17  misread that order as October 26th.  It's September 26th.  So

18  their time has run, right?

19          MR. WEDOFF:  Right.  So and Mr. Toossi is on the

20  line.  He has put in appearances for Ami Javeri and her LLCs.

21  So the only --

22          THE COURT:  Right.

23          MR. WEDOFF:  -- party that did not put in an

24  appearance is Nirav Modi.  He is an important party in this

25  litigation.

1            THE COURT:  Right, right.  No, I know.

2            MR. WEDOFF:  He's also incarcerated in England, which

3    complicates matters.

4            THE COURT:  Right.

5            MR. WEDOFF:  I guess, you know, I read the order to

6    provide that by failing to appear through counsel, he is now

7    proceeding pro se.  I don't know if that requires a separate

8    order, or acknowledgement, or anything on the --

9            THE COURT:  No.  No, no, no, it doesn't.  No, that's

10   just his status.  So --

11           MR. WEDOFF:  Yeah.

12           THE COURT:  -- yeah.  So, I'll just say, let me spell

13   this out.  I entered an order September 26th, and I just, as I

14   say, misstated the date of it.  But prior counsel for a number

15   of parties moved to withdraw.  I granted it in the difficult

16   circumstance that the responsible attorneys had left that firm,

17   and really that firm wasn't in a position to continue the

18   representation.  So it just didn't seem fair or appropriate to

19   keep them in.

20           A feature of the order authorizing the withdrawal

21   directed the affected defendants to retain new counsel within

22   28 days.  That time has passed, 28 days from entry of the

23   order.  And I noted -- so when counsel withdraws on behalf of

24   an entity party, because entity parties cannot proceed pro se,

25   they're at risk of being held in default.  If they don't appear

1    through counsel, and thus continue to defend the action.  And

2    meanwhile, individuals are entitled to proceed pro se, but also

3    obliged to proceed pro se, unless they retain counsel.  So,

4    that's the status.  And that's the meaning of that order, is

5    just kind of memorializing that and giving notice to the

6    affected parties that they'll be held to the consequences.  So,

7    that's where we are.

8         I'm reminded, hello, Mr. Toossi, that we have counsel

9    for the entities and -- but not for Mr. Modi.  Yeah, do you

10   want to speak up, Mr. Toossi, at this point?  I guess you

11   haven't gotten to introduce yourself.  So I'll let you do that.

12        MR. TOOSSI:  Yeah.  Nice to be before you, Your Honor

13   and good afternoon.  I'm representing Ms. Javeri and her

14   entities here today.  I do have some information.

15        I understand that Mr. Modi is now considered pro se

16   before the Court.  I do know that he is making efforts to

17   retain counsel, but his status as an incarcerated inmate in

18   England, and the finances have made that complicated.  So I

19   don't think that there's a tactical advantage or anything.  I

20   don't think that he is considering himself to default in this

21   action.

22        So I can update him, even though I don't represent

23   him, I can update him and will update him on what happens in

24   court here today.

25        THE COURT:  Okay.  Thank you.  So let's see.  What --

1  I mean, just looking at -- I'm circling back to Mr. Wedoff's

2  topic.  So he'd like to have a pre-trial schedule in place on

3  all the adversaries.  We've really all just discussed the

4  effective withdrawal of counsel, I think, which was his second

5  topic.

6         And then he said there's other topics kind of brewing

7  and the subject of ongoing communications offline.  So -- and

8  then there was the question of seeking an extension of time for

9  Purvi Mehta to answer, right?

10        I think, look, I would want you to confer and try to

11 arrive at some sort of pre-trial order.  And I hate to be sort

12 of the facilitator of real-time conversation that should have

13 happened before, but let me just ask Mr. Wedoff, what are you

14 looking for?

15        MR. WEDOFF:  So Your Honor, we briefed this a year

16 ago.  We actually filed a motion asking for I think the

17 framework has not changed.  Basically, it's six months from the

18 entry of an order, fact discovery would close.  Roughly 12

19 months from entry of the order, expert discovery would close.

20        And after that, I think the way the form of order in

21 the bankruptcy court is written is that there's a final pre-

22 trial conference leading up to trial.  I understand that one or

23 more of the defendants may seek to move to withdraw the

24 reference.  And certainly that's, you know, I don't know that -

25 - we're not going to take the position right now that such a

1   motion, you know, should be denied out of hand.  So we could

2   certainly adjust the pre-trial schedule in order to allow for

3   motions to withdraw the reference.  But up until trial,

4   including motions for summary judgment, the bankruptcy court, I

5   think is the appropriate court to hear the litigation.

6           So but essentially, you know, the meat of our motion,

7   and it was filed in both the 19-1102 adversary proceeding and

8   the 20-1054 adversary proceeding.  In 19-1102, that was at

9   Docket 128.  This was actually discussed at the May 2nd

10  hearing.  And at that time, the Court at Page 18, Lines 14 to

11  15, and I don't want to -- I don't want to misstate what the

12  Court said, but my understanding was that the Court generally

13  agreed with us that a six-month fact discovery period followed

14  by an additional six months for expert discovery was

15  appropriate.

16          So the reason I'm raising all of this, Your Honor, is

17  that we've kind of already had these discussions and gotten to

18  a point where we felt like we needed to brief this motion.

19  Now, that said, we realize this was not teed up as a continued

20  hearing on our motion.

21          THE COURT:  Right That was -- that motion was --

22          MR. WEDOFF:  (Indiscernible) that it's going to be

23  terribly fruitful if we're going to go talk to the same people

24  who didn't agree with our schedule last time, and the notion

25  that we're going to come to some agreement, it seems sort of

1   doubtful.

2          So if, you know, I'm happy -- we're always happy to

3   discuss pre-trial matters, discovery matters with the

4   defendants, and we don't, you know, we're happy to see what we

5   can agree to, but I did want to sort of lay out that history of

6   what we've done.  This is not -- even though we sent this

7   letter on Monday that identified, you know, our proposed

8   schedule and a host of other discovery issues, the schedule

9   itself is not new.  So I did want to make that abundantly

10  clear.

11         And as Your Honor recognized, this litigation has

12  been going on for years.

13         THE COURT:  Yep.

14         MR. WEDOFF:  Discovery has been live.  We've produced

15  discovery.  We've requested discovery.  We have briefed motions

16  to compel.  So it's not as if we're just starting, you know,

17  from scratch and only have six months.  It's that we want to

18  get this wrapped up in six months so we can move this

19  litigation forward.

20         THE COURT:  All right.  Let me slow down.  What's the

21  docket you referenced -- well, the transcript you referenced

22  that's of the hearing from --

23         MR. WEDOFF:  The transcript is at -- it should be at

24  Docket Entry 152 in Adversary 19-1102.

25         THE COURT:  Okay, I'm looking at it.  So that was

1  from May 2nd.  I will say I definitely vividly remember this

2  discussion, and I agreed that we should have a fact discovery

3  deadline of six months, partly because if you set it longer,

4  people wallow.  So yeah, that was sort of my intention.

5          I do want to recognize that the incarceration of Mr.

6  Modi may be a real wrinkle because people have been trying to

7  get arrangements to depose him forever, and it hasn't happened

8  as far as I know.  But I guess the fact that you're citing a

9  transcript tells me we never formally entered an order.  Is

10 that right?

11         MR. WEDOFF:  Yeah, that's right.

12         THE COURT:  Okay.

13         MR. WEDOFF:  It's not to say that the Court entered

14 an order or that our motion is up for hearing today.  It's

15 really just to give you some background that this issue, the

16 scheduling issue, is not a new one, and it's one that we have

17 discussed with the defendants in the past.

18         THE COURT:  Yep.  Okay.  I'm looking at what you're

19 referring me to in the transcript, and it's  --

20         MS. SULLIVAN:  If I may, Your Honor?

21         THE COURT:  Yeah, it says I just -- hang on a sec,

22 though.  But you may in a second.  Yeah, I just want to say,

23 basically, Mr. Wedoff is accurately describing the transcript

24 and my thinking.  So I think -- yeah, go ahead, Ms. Sullivan.

25         MS. SULLIVAN:  Yeah, I think there's been a slight

1   change in the circumstances since then.  You know, the proposed

2   discovery from the trustee includes a 60-day period to bring

3   written responses and unprocessed responses and for the trustee

4   to produce documents, which was a part of the initial

5   discussion in the motion to set a scheduling order.

6            And originally, the trustee had represented that they

7   hadn't started copying documents, that they weren't planning on

8   using them in the adversary proceedings.  Now, I don't think

9   that's the same position, that they may be using them.  It's in

10  110 boxes of documents that, you know, we haven't undertaken

11  the review of because they didn't seem like they were relevant

12  or at least in this case.  And now, it seems like that might

13  be.

14           So that's why our suggestion had been just for a

15  shorter -- a short extension of this, six months to nine months

16  to allow this -- by the time you get through the discovery

17  responses contained in document, you're at -- according to Mr.

18  Wedoff's email, it was going to be at like three months before

19  we received any of that.

20           And then for us to review all of that, it's, you

21  know, there's a terabyte of electronic documents plus 110

22  boxes, plus whatever the subpoena and other non-party stuff is

23  that he wants to combine into all the different proceedings,

24  whether they're relevant or not.  I mean --

25           THE COURT:  Okay, I got it.  I suspect you can keep

1  going with the whole litany of reasons that reinforce the point

2  you've just made, but you've made the point.  So look, I'm not

3  going to impose a specific deadline now, but I agree with Mr.

4  Wedoff.  We should have a scheduling order in place that's

5  real.  And I knew we discussed it, but I think we need to have

6  a clearly stated demonstrable docketed case

7  management/scheduling order that actually states deadlines.

8         If experience is a guide, you folks are probably

9  unlikely to agree to what that should be.  So let me ask, I'm

10  open to both of your input about an appropriate way to get

11  there.  One thing that occurs to me is Mr. Wedoff can draft a

12  proposed scheduling order that he thinks is fair and makes

13  sense in light of whatever changed circumstances exist, and

14  then send that to Ms. Sullivan and Mr. Toossi and anybody else

15  who's got an interest here.  Receive comments and you'll either

16  agree or not agree.

17         I would be somewhat -- I mean, I'd be pleasantly

18  surprised if you agree.  But if you don't agree, you don't have

19  to torture yourselves over trying to reach agreement.  You can

20  just, like, have a good faith discussion.  If Mr. Wedoff has

21  moved to slightly change his proposal, then this is all going

22  to happen behind -- not before me.  If Mr. Wedoff wants to

23  modify his proposal in light of what he hears from Ms. Sullivan

24  or Mr. Toossi, fine.  And you can either get me a consented to

25  proposed order with dates or respective proposals, and I'll

1   decide.  Okay?

2          And I would be happy to decide disputed proposed

3   schedules either upon conducting a further conference so that

4   you can talk to me about it, or if you want, I can just stick

5   you with something based on what you submit and, you know,

6   accompanying cover letters explaining why what you prefer is

7   correct and why what the other side prefers is not correct.

8          So but open to better ideas.  Does that work for you,

9   Mr. Wedoff, something like that?

10          MR. WEDOFF:  I think the quickest and least paper-

11   intensive process is probably our preference.  So if it's a

12   matter of, you know, we will talk to Ms. Sullivan, we'll talk

13   to Mr. Toossi, and the other defendants.  But our interest is

14   certainly in getting this squared away.  And we did circulate

15   with our letter a proposed schedule and order.  So we did

16   propose dates already.  They're --

17          THE COURT:  Okay.

18          MR. WEDOFF:  -- six and a half months from today is

19   the close effect discovery.  It's May 30, 2025.  So we gave it

20   a couple extra weeks.

21          THE COURT:  Okay.

22          MR. WEDOFF:  But (indiscernible 2:18:25) --

23          THE COURT:  Great news for -- great news --

24          MR. WEDOFF:  I think a lot of the issues Ms. Sullivan

25   raised, to the extent that they come live, for example, if the

1   trustee changes his position and determines that something in

2   one of these 110 boxes of hard copies is going to be used at

3   trial, we don't anticipate that being the case.  If it does, we

4   can move to modify the close effect discovery.  But I don't

5   think this litany of hypotheticals is grounds to extend the

6   time for discovery now, particularly as it's been going on for

7   years already.

8           THE COURT:  Did you just say your proposal involves

9   fact discovery running through May of 2025?

10          MR. WEDOFF:  Correct.

11          THE COURT:  Okay.  That's a long time.  I mean, a lot

12  can happen in that amount of time with focus.  So but I will

13  just say that, but without changing what I proposed.  So I

14  didn't know that the specificity of your communication to Ms.

15  Sullivan, I haven't seen it.  So have a follow up.  If you

16  can't reach an agreement --

17          MR. WEDOFF:  (Indiscernible) have no problem filing

18  it on the docket, but I understand that's not the practice.

19  And I don't know that the defendants would want us --

20          THE COURT:  No, no, no.  Have discussion.  And then

21  if you happen to reach agreement, that'd be great.  And if you

22  don't, just file a letter with respective competing

23  attachments, exhibits that constitute your proposed orders, and

24  then I'll figure it out.

25          And Mr. Toossi, you know, welcome to the fray and

1  you're going to be playing catch up.  But I do, you know, sort

2  of want to make sure we get your input and your rights

3  protected, too.  But unfortunately --

4          MR. TOOSSI:  Yes.

5          THE COURT:  -- you know, you've leapt onto a speeding

6  train.  It's kind of well -- a slow moving, but inexorably

7  moving train that's a long way along the road.

8          MR. TOOSSI:  Right.  And I just want to say this,

9  Your Honor, about the six and a half months.  I agree with you

10 in a general scope of that is a long, long period of time.  But

11 I think that because I am new to this party, you know, and

12 because of the volume of the discovery that's out there that I

13 have to go through, I know my predecessors have put out

14 requests for production of documents, I would like an

15 opportunity to review the discovery to see what gaps I might

16 perceive and whether I need to put in other RFPs.

17         THE COURT:  Sure.

18         MR. TOOSSI:  And so I get that the six and a half

19 months is a long period of time.  The only thing that I would

20 ask is that, you know, if we can't come to an agreement, and in

21 fact, I actually am more optimistic that we're going to come to

22 an agreement, because I think that the differences that we've

23 seen in terms of, like, my conversations with co-counsel, or

24 co-defendant's counsel, are more on the margins that I'm in

25 than anything else.  I do think that we're going to probably --

```
 1   I think to the extent that we're going to have disagreement,

 2   it's going to be in a finite number of areas rather than --

 3            THE COURT:  Okay.

 4            MR. TOOSSI:  -- in a broad scope.  But I do think

 5   that -- I would appreciate, though, the Court's, not

 6   necessarily indulgence, but appreciation of the fact that I am

 7   trying to grab onto a speeding train.  And to the extent that I

 8   have to have additional discovery requests, based on my review

 9   of the documents, then you know, I do need some time to do

10   that.  And I don't know -- I will do everything in my power to

11   make sure that that happens in the prescribed time under a

12   scheduling order.

13            But I might need a little bit more than six and a

14   half months because of that, just because I need to get through

15   that discovery.  And then I need to make the request and I have

16   to give them time to respond to them.  And then, you know, you

17   can easily see how these things can back up when you're

18   relating them to proposed depositions.

19            THE COURT:  I get it.

20            MR. TOOSSI:  So --

21            THE COURT:  Look, let me say, I hear what you're

22   saying.  In a way, I view this as you're sort of laying a

23   marker, right, of what your concerns are.  I hear you.

24            MR. TOOSSI:  Yes.

25            THE COURT:  Have those discussions offline, and you
```

1   can make your submission saying, not good enough, but if you're

2   in that position.

3          MR. TOOSSI:  Yeah, I appreciate that, Your Honor.

4          THE COURT:  But if that, you know, accompanied by

5   something concrete about what you think is workable and

6   reasonable.  Okay?

7          MR. TOOSSI:  Oh, of course.  Of course.  Thank you.

8          THE COURT:  One specific thing I want to make sure

9   is, if there has not been an order entered at any time in these

10  cases, setting a specific deadline for the making of 26(a)

11  disclosures, I want that ordered and I want those to occur.  I

12  think you're going to be well served by having that ordered and

13  in place so that if and when you're doing trial prep, you know

14  the universe of witnesses, either through the initial 26(a)

15  disclosures or through, you know, supplementations or

16  modifications down the road.

17         So experience tells me that if that wasn't done,

18  trial prep can be extra unwieldy.  So let's make sure that's

19  covered.  All right?

20         All right.  I think I can -- do you want me to give

21  you a date in December to chat more after you've had these

22  discussions or should I hold off for the moment?  I can do it

23  either way.

24         MR. WEDOFF:  We could use a date.  I think,

25  alternatively, if the Court could just set a deadline for us to

 1 | submit proposed --

 2 | THE COURT:  Oh, yeah, yeah.  Yes, thank you.  So how

 3 | about the end of next week?  Today is Thursday.  So that would

 4 | be November 22.  That gets it out your hair before you hit

 5 | Thanksgiving week, and I don't want to wait too long.

 6 | Is that workable for people?  Ms. Sullivan often has multiple

 7 | balls in the air.  Does that work for you?

 8 | MS. SULLIVAN:  I'm traveling to California today.

 9 | I'm not returning until Tuesday night for a court hearing.  The

10 | Court hearing's there.  I'll be unavailable to speak

11 | (indiscernible) be off until Wednesday.  Maybe (indiscernible)

12 | 25th to the 26th.

13 | MR. WEDOFF:  That's fine with --

14 | THE COURT:  26?

15 | MR. WEDOFF:  Yeah, as long as it's before

16 | Thanksgiving.

17 | THE COURT:  26th is fine.  Submit it on the 26th.

18 | MS. SULLIVAN:  Okay.

19 | THE COURT:  I will tell you, I try not to stick

20 | people with Monday submission deadlines because that is an

21 | order to work on the weekend, and you can choose to do that for

22 | your own purposes, but I'll at least give you the theoretical

23 | possibility of buttoning this down using the Monday as a

24 | workday.  Okay?  So the 26th.  So yes.  So get me a consensus

25 | proposed scheduling order or multiple competing scheduling

1   orders on or before the 26th with, you know, a short

2   explanatory letter for why what you think is appropriate and

3   why what the other folks think, you know, want is bad, okay?

4           And then we'll figure it out from there, and I'll --

5   as you know, I'm available anytime if you, I mean, within

6   reason, but I can get you in promptly if you need a conference,

7   all right?

8           Does that -- let's see, let me look back to Mr.

9   Wedoff's list.  So we've got a concept of a plan for resolving

10  the pre-trial schedule issues.  We've already sort of discussed

11  the effect of withdrawal of Mr. Modi's counsel, and Mr. Toossi

12  is kindly going to reach out on an informal basis.  And then

13  you just flagged some other issues that aren't fully baked for

14  me yet, I think.  So I'll just --

15          MR. WEDOFF:  That's right.

16          THE COURT:  -- leave it at this.

17          MR. WEDOFF:  Just so the Court's aware, we sent a

18  letter with some proposed discovery procedures and ways to

19  handle things.  Ms. Sullivan provided a detailed response.  You

20  know, we can just discuss those issues.  I just wanted --

21          THE COURT:  Right.

22          MR. WEDOFF:  -- to let you know that that has

23  occurred.

24          THE COURT:  No, I'm --

25          MR. WEDOFF:  The only other item we had was that we

 1    will be requesting an extension of time for Purvi Mehta to --

 2            THE COURT:  Right.  I got that, and that's fine.  I

 3    will say, generally, if in these multi-defendant cases, it

 4    gives me some anxiety when some defendants are actively in play

 5    and actively litigating and doing discovery, and others are

 6    just sort of keep getting pushed off.  I really don't want to

 7    have to reopen full discovery for the people who are getting

 8    pushed off.  So just be sensitive to that.  I mean, I'm not

 9    telling you, no, you can't adjourn another party, but be

10    sensitive to whether you're buying yourself a mess.  Okay.

11            MR. WEDOFF:  Understood.

12            THE COURT:  All right.  Let me say, I'm glad you're

13    communicating.  That's great, and so I should say something

14    responsive to you're telling me you are, and I'm going to just

15    await developments.  I may just enter a very simple order

16    memorializing that November 26th deadline, because I'm a little

17    sensitive to having docket sheets that are a little inscrutable

18    about what's going on in a case.  And then I'll -- if we need

19    to have a conference, I'll just schedule it for some time in

20    December after we clear Thanksgiving, depending on what I see

21    on the 26th.  Okay?

22            If there's any other topic I haven't told you to

23    discuss that you know is really necessary to achieve the

24    orderly and prompt resolution of the case, please discuss those

25    too and come to me with proposals, because I'm trying to bring

1   this to a culmination, and it's difficult for me to anticipate

2   all the ways in which I might need to be doing things to cause

3   that to happen.  So keep your thinking hats on in that way, as

4   well as your -- on your specific tasks.  All right?

5            I think that covers us for the moment.

6            MR. WEDOFF:  Thank you, Your Honor.

7            THE COURT:  All right.  Thank you all.  Take care.

8   We're adjourned.

9       (Proceedings concluded at 12:35 p.m.)

10                         *  *  *  *  *

11

12

13

14

15               C E R T I F I C A T I O N

16

17            I, Heidi Jolliff, court-approved transcriber, hereby

18  certify that the foregoing is a correct transcript from the

19  official electronic sound recording of the proceedings in the

20  above-entitled matter.

21

22

23  _____

24  HEIDI JOLLIFF, AAERT NO. 2850    DATE: November 14, 2024

25  ACCESS TRANSCRIPTS, LLC