```
                      UNITED STATES BANKRUPTCY COURT
                      SOUTHERN DISTRICT OF NEW YORK

                                      .
IN RE:                                .  Case No. 18-10509-dsj
                                      .  Chapter 11
FIRESTAR DIAMOND, INC.                .
                                      .
               Debtor.                .
. . . . . . . . . . . . . . . . . .   .
RICHARD LEVIN,                        .  Adv. Proc. No. 19-01102-dsj
                                      .
               Plaintiff,             .
                                      .
   v.                                 .
                                      .
NIRAV DEEPAK MODI, et al.             .
                                      .
               Defendants.            .
. . . . . . . . . . . . . . . . . .   .
RICHARD LEVIN,                        .  Adv. Proc. No. 20-01054-dsj
                                      .
               Plaintiff,             .
                                      .
   v.                                 .
                                      .
AMI JAVERI, et al.,                   .
                                      .
               Defendants.            .
. . . . . . . . . . . . . . . . . .   .
RICHARD LEVIN,                        .  Adv. Proc. No. 24-01321-dsj
                                      .
               Plaintiff,             .
                                      .
   v.                                 .  One Bowling Green
                                      .  New York, NY  10004-1408
MIHIR BHANSALI, et al.,               .
                                      .  Thursday, April 24, 2025
               Defendants.            .  10:00 a.m.
. . . . . . . . . . . . . . . . . .   .
```

Transcription Company:  Access Transcripts, LLC
                        10110 Youngwood Lane
                        Fishers, IN 46048
                        (855) 873-2223
                        www.accesstranscripts.com

     Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

```
      TRANSCRIPT OF ADVERSARY PROCEEDING: 19-01102-dsj
         LEVIN V. MODI, ET AL. STATUS CONFERENCE;
            ADVERSARY PROCEEDING: 20-01054-dsj
        LEVIN V. JAVIERI, ET AL. STATUS CONFERENCE;
            ADVERSARY PROCEEDING: 24-01321-dsj
        LEVIN V. BHANSALI, ET AL. STATUS CONFERENCE
            BEFORE THE HONORABLE DAVID S. JONES
            UNITED STATES BANKRUPTCY COURT JUDGE
```

```
APPEARANCES (Continued):

For the Trustee:            Jenner & Block LLP
                            By:  CARL N. WEDOFF, ESQ.
                            1155 Avenue of the Americas
                            New York, NY  10036
                            (212) 891-1653


                            Jenner & Block LLP
                            By:  ANGELA M. ALLEN, ESQ.
                            353 N. Clark
                            Chicago, IL  60654
                            (312) 222-9350

For Mihir and Rakhi         White and Williams LLP
Bhansali:                   By:  NICOLE A. SULLIVAN, ESQ.
                            7 Times Square, Suite 2900
                            New York, NY  10036
                            (212) 631-4420


                            White and Williams LLP
                            By:  MARK E. NAKAHARA, ESQ.
                            1650 Market Street, Suite 1800
                            Philadelphia, PA  19103
                            (215) 864-6333

For Trident Trust           Robins Kaplan LLP
Company, Inc. (South        By:  TIMOTHY BILLION, ESQ.
Dakota):                    800 LaSalle Avenue, Suite 2800
                            Minneapolis, MN  55402
                            (612) 349-8500

For Ami Javeri, CPRE,        Akrivis Law Group PLLC
and CPS50:                  By:  AMIR TOOSSI, ESQ.
                            747 Third Avenue, 32nd Floor
                            New York, NY  10022
                            (347) 949-0548
```

For Purvi Modi:              Paykin Krieg & Adams, LLP
                             By:  BENJAMIN SUESS, ESQ.
                             2500 Westchester Avenue, Suite 107
                             Purchase, NY  10577
                             (917) 400-2984

For Nirav Modi:              Nirav Deepak Modi, Pro Se
                             HMP Wandsworth
                             Heathfield Road
                             London, SW18 3HU, United Kingdom

1

```
 1        (Proceedings commence)

 2             THE COURT:  Good morning.  It's Judge Jones.  Sorry

 3   to keep you waiting a little bit.  Let's see, my calendar

 4   melted away except for status conferences we have scheduled in

 5   three adversary proceedings under the Firestar Diamond main

 6   case, all brought by the trustee, Mr. Levin.

 7             So nice to see everybody.  We've got your appearances

 8   through the sign-in process, so let me just turn it over to

 9   whoever is speaking today for the Trustee, and I'll just have a

10   check-in with everybody and see where things stand and what, if

11   anything, I can do to help things along.

12             MR. WEDOFF:  Thank you, Your Honor, and sorry to be

13   the lone matter that makes you have a hearing today.  Carl

14   Wedoff --

15             THE COURT:  It's quite fine.

16             MR. WEDOFF:  Carl Wedoff, Jenner & Block, on behalf

17   of Richard Levin, the liquidating trustee of the Firestar

18   Diamond, Inc. Liquidating Trust.  I don't know if you want to

19   take other appearances first or if I should just jump into it?

20             THE COURT:  I guess -- well, I guess -- I know

21   everyone except for I may not know Mr. Toossi, so maybe I'll

22   just take appearances just to be meticulous.  So -- oh, and I'm

23   sorry, it looks like we have Mr. -- is it Billion also?

24             So let me hear from the trustee I -- go ahead,

25   Mr. Wedoff, and hello, Ms. Allen.  You want to --

26             MR. WEDOFF:  And, Your Honor, I note that Mr. Nirav
```

1   Modi is also on the line, and he doesn't have video, but he's

2   in attendance, to the extent you didn't catch that.

3          THE COURT:  Oh, okay, great.  He didn't have his

4   camera on, so that's fine.  All right.  Well, why don't I back

5   up since you're prompting me to do so and I'll be more formal

6   and take more appearances because we have more than the usual

7   players here.

8          So first for the trustee?

9          MR. WEDOFF:  Carl Wedoff, Jenner & Block.  On the

10  line as well is Angela Allen of Jenner & Block on behalf of the

11  trustee.

12         THE COURT:  Okay.  Hello to both of you.

13         And Ms. Sullivan?

14         MS. SULLIVAN:  Good morning, Your Honor.  Nicole

15  Sullivan from White and Williams for Mihir and Rakhi Bhansali,

16  and my associate, Mark Nakahara, is on as well.

17         THE COURT:  Okay.  And Mr. Billion?

18         MR. BILLION:  Good morning, Your Honor.  Tim Billion

19  from Robins Kaplan on behalf of Trident Trust Company (South

20  Dakota).

21         THE COURT:  Okay.  Hello to you.

22         And Mr. Toossi?

23         MR. TOOSSI:  Good morning, Your Honor.  Amir Toossi

24  for Ami Javeri, Central Park Real Estate LLC, and Central Park

25  South 50 LLC.

```
1              THE COURT:  Okay, great.

2              And Mr. Suess, is it?

3              MR. SUESS:  Suess, Your Honor.

4              THE COURT:  Suess.

5              MR. SUESS:  Benjamin -- it's okay.  Benjamin Suess,

6    Mueller Haberman Law Group, for Purvi Modi.

7              THE COURT:  Okay.  Great.

8              Anyone else actively participating today?  Okay.  No

9    one said yes.  If someone else who's present realizes they need

10   to be heard, they're certainly not precluded -- oh, yes.

11             MR. MODI:  Nirav Modi, pro se.

12             THE COURT:  Okay.  Welcome.  And thank you -- okay.

13   Great.  So let's see, let's turn it back, I guess -- I think it

14   makes sense to start with the Trustee to get a status update

15   and I'll give everyone a turn to be heard and raise any issues

16   of concern they may have.

17             I think you all saw, but to be sure, I've approved

18   the requested six-week extension of at least the discovery

19   cutoff to July 11th.  I put in there that you all should talk

20   amongst yourselves, and we'll have another check-in conference

21   at some mutually convenient time after the close of fact

22   discovery.  That's just a natural point to check in, make sure

23   things are on track, and tend to any further issues.  That's at

24   least my own thinking about that.

25             And then I see you have an expert discovery deadline
```

1    or schedule that's running out a fair number of months past

2    that point, so -- which is fine, but I just want to make sure

3    this case stays on the rails and so I'm always available.

4            Okay.  So with that preliminary, let me hear from

5    whoever's speaking today for the trustee.

6            MR. WEDOFF:  Good morning, Your Honor --

7            MR. MODI:  Certainly, Your Honor, I'm not --

8            THE COURT:  Yeah.

9            MR. MODI:  -- aware of any of this.

10           THE COURT:  Oh, I just entered an order yesterday,

11   Mr. Modi, and which just -- it's purely a scheduling matter.

12   It just allows --

13           MR. MODI:  Okay.

14           THE COURT:  -- additional time to take care of some

15   uncompleted fact discovery tasks.

16           MR. MODI:  No, I'm just expressing that since

17   July the 7th, 2024, I'm not aware of anything except an order,

18   something about disposition I received this weekend.  So for

19   the past year, I'm kind of don't know what's going on.

20           THE COURT:  Okay.  What is your physical location,

21   Mr. Modi?

22           MR. MODI:  I'm in a prison in Thameside in London.

23           THE COURT:  Right.  Okay.  I knew you had been there

24   and I wasn't sure if that was your -- remained your current

25   location.

 1                    MR. MODI:  Yes, I'm still there.

 2                    THE COURT:  Okay.  Let's -- at an appropriate time

 3      today, let's make sure we hear about whatever service and

 4      notice requirements may exist and make sure we have whatever

 5      mechanism we can put in place to cause you to see filings that

 6      pertain to you.  Okay?

 7                    MR. MODI:  Thank you.

 8                    THE COURT:  So -- yes.  All right.  But let me start

 9      with the Trustee just to get whatever update they want and tee

10      up whatever issues they think would be productive to talk about

11      today.

12                    MR. WEDOFF:  Thank you, Your Honor.  So the reason we

13      asked for this conference is really about deposition scheduling

14      and Mr. Modi is I think actually -- Mr. Modi's deposition

15      actually prompted this.  Given Mr. Modi's circumstances, both

16      getting authority to take a deposition and the actual mechanics

17      of scheduling it is more convoluted than say a defendant in New

18      York City.

19                    The -- what prompted this is that we had reach out to

20      HMP Thameside in London to arrange for dates.  Essentially what

21      we're doing is we're asking the prison's availability first and

22      then we made a petition to the High Court based on either those

23      dates that they -- the prison had provided us or the, you know,

24      earliest mutually agreeable dates for the defendant and the

25      other parties, the trustee and other defendants.

1          The dates we had picked -- so we have been in the --

2  as you are aware, we filed the motion for authority to take a

3  deposition outside of the United States, which the Court

4  granted, and that was last year.  I don't have the exact date

5  in front of me, but this has been a -- this process has been

6  going on for a while.

7          We just filed an application with the High Court to

8  get authority from the English authorities to take the

9  deposition.  However, the dates that we had cleared with the

10 prison we were informed by Ms. Sullivan that she was

11 unavailable those dates.

12         In addition, we noticed five other depositions in

13 March, all on March 12, so that for Mihir Bhansali, Rakhi

14 Bhansali, Ami Javeri, CPRE, and CPS50.  The two LLCs were

15 30(b)(6) deposition notices.  And going back for the dates that

16 we had noticed, it was April 16 for Mihir Bhansali, April 17

17 for Rakhi Bhansali, April 23 for Amir Javeri, April 24 for

18 CPRE, and April 25 for CPS50.

19         We were informed those dates didn't work and for

20 Ms. Javeri, we tentatively have a date that we think might

21 work, but we want to make sure that the other depositions get

22 scheduled; that we don't agree to one date and then everything

23 else gets pushed off indefinitely or we're unable to complete

24 the depositions in our current fact discovery window.

25         And if the Court -- I don't know -- I've never done

1   this before, but am I allowed to share my screen with the

2   Court, because I can show you the availability that we have

3   been provided by the parties.  Now, we don't have Mr. Modi's

4   availability because we have not had an open line of

5   communication with him, but I have -- you know, I got responses

6   from Trident, Ms. Javeri's counsel, the Bhansalis' counsel, and

7   we have the Trustee's availability, so with the Court's

8   permission, I'm happy to share that.

9            THE COURT:  Yeah, thanks.  My deputy, Ms. Calderon,

10  is going to make you a co-host which is the way we have to do

11  it.  Don't do anything inconsistent with the dignity of the

12  court while you've got this power, but you can put something up

13  once that's hooked up, which I think she just says she just --

14  she says she just did.

15           MR. WEDOFF:  Okay.  So I believe you can see this

16  now.

17           THE COURT:  Yeah.

18           MR. WEDOFF:  So as you can see, there's a lot of

19  conflicts in May and May is important to the trustee, not only

20  because we want to move this along and because that was, you

21  know, May as -- until yesterday, May 31 was the fact discovery

22  cutoff --

23           THE COURT:  So can we --

24           MR. WEDOFF:  -- but also because --

25           THE COURT:  Hang on.  Before you get going, can you

1   use some words to explain this because we're going to have a

2   transcript that wouldn't show it.

3              MR. WEDOFF:  Oh, okay, sure.  Of course.

4              THE COURT:  So we're looking at a May 2025 calendar

5   with a bunch of color-coded dates blocked off and if you can

6   just --

7              MR. WEDOFF:  Yeah.

8              THE COURT:  -- explain what those are, that would be

9   great.

10             MR. WEDOFF:  Yeah, so thank you, Your Honor.  So

11  again, this was prompted because we had asked Thameside for

12  availability for Mr. Modi and we had dates of May -- I believe

13  was May 5 and May 6.  It was either that or May 6 and May 7.

14             In any event, either of -- it was a two day -- two

15  consecutive days for four hours each with the notion of using

16  the trustee's seven hours under Rule 30 over the course of two

17  days given the time difference between London and New York.  We

18  would start -- you know, the prison said that they -- I believe

19  their availability to do a videoconference ends at 4:30 local

20  time and we had asked for 12 to 4 on consecutive days; 12 to 4

21  London time which would be 7 a.m. to 11 a.m. New York time.

22             THE COURT:  I got it.  Let me ask, are --

23             MR. WEDOFF:  So --

24             THE COURT:  Hang on.  Are you contemplating anyone

25  being there in person or is it a -- purely a video deposition?

1          MR. WEDOFF:  The trustee was planning on doing it

2    strictly through video and I think given the, you know, the --

3    just the logistics of getting people into a prison, we think

4    that would be almost necessitated.

5          THE COURT:  Right.

6          MR. WEDOFF:  Now, if Mr. Modi had counsel, right

7    now -- I understand right now he's proceeding pro se.  You

8    know, if he had counsel, I assume counsel would be able to

9    attend in person, but we were not planning to travel to London

10   for this deposition.

11         THE COURT:  Okay.  That's fine.

12         MR. WEDOFF:  So -- and I can explain a little bit

13   more about the color coding.  I realize this is going to be in

14   a transcript, but we can see blue is color coded for Bhansalis'

15   counsel, green is color coded for the Trustee's counsel, and

16   these are all just dates where one of the parties is

17   unavailable.

18         THE COURT:  So this shows unavailable dates.

19         MR. WEDOFF:  Correct.  And the two -- I guess maybe

20   it's pink, but red or pink are dates where tentatively or, you

21   know, I would say for one of them I don't think it's tentative,

22   I think it's fixed, but dates that we are at least holding and

23   planning to use for, you know, having a date set.  So that's

24   Ami Javeri on the 23rd.  Again, like I said, we want to ensure

25   that other depositions are scheduled before we, you know,

1   confirm that date, but that's a date that was suggested by

2   Ms. Javeri's counsel.

3        And then May 29, that is a date -- I'm getting ahead

4   of myself a little bit because I'm still trying to describe the

5   colors on the calendar, but May 29, another red date, that's

6   for Purvi Mehta who's in Belgium and her deposition has been

7   scheduled, requires significant amount of logistics as well.

8   She's overseas.  Her counsel, and I don't want to speak for Mr.

9   Suess, but he will be traveling to Belgium for that deposition,

10  and they needed to get office space in Belgium so we do not

11  want to move that date unless the Court says we have to.  It

12  would be very complicated to reschedule that one.

13       So to go -- to back up again, there's color coding

14  for dates where one of the parties is unavailable and the only

15  dates in May other than -- that where there is not a holiday or

16  one of the counsel is unavailable or there's another deposition

17  already scheduled, there are -- and again, I'm starting with

18  May 5 because I believe that was the first date that the prison

19  was going to have availability for Mr. Modi.

20       I suppose if we needed to schedule somebody's

21  deposition May 1 or 2, I believe the parties are available

22  those days, but starting on May 5, the only days where there's

23  availability for all parties are May 16, 20, 27, and 30.  None

24  of those are consecutive dates, so if we were to take

25  Mr. Modi's deposition over the course of two days, there's

```
1    going to be somebody who's not available.

2            So I guess it would -- I -- given Mr. Modi's

3    circumstances and given his importance to the case, we do not

4    want to push his deposition to the end of the line.  To the

5    extent we --

6            THE COURT:  So can I ask I --

7            MR. WEDOFF:  Yeah.

8            THE COURT:  Let me ask couple things.  This is, I

9    think -- maybe this is just what you're about to say.  I'm

10   surmising that you want to lock in dates for Mr. Modi's

11   deposition, get that successfully achieved, and then build

12   around that for others?

13           MR. WEDOFF:  I think that's right, and I guess what

14   would be helpful -- and again, I think we work constructively

15   with people and we've gotten dates.  Not suggesting anyone's

16   being, you know, obstinate or difficult, but there are a lot of

17   moving pieces, there are a lot of lawyers on the line, a lot of

18   parties on the line, and we just think, you know, if the

19   Bhansalis are -- you know, if they have veto power over this,

20   my concern is that this is --

21           THE COURT:  Right.

22           MR. WEDOFF:  -- going to push into June and --

23           THE COURT:  Yeah, in a minute I'll --

24           MR. WEDOFF:  -- that's a problem.

25           THE COURT:  I got it.  In a minute I'll hear from
```

1   Ms. Sullivan, but do you know if it's possible to do Mr. Modi

2   on the 16th and the 20th?  Which are not --

3            MR. TOOSSI:  Your Honor, if I may?

4            THE COURT:  Yeah.

5            MR. TOOSSI:  As far as I understand it, the trustee

6   only moved for approval from the UK High Court for the ability

7   to do the deposition on I want to say April 16 and we can't --

8   I don't think that we can schedule the deposition until the UK

9   High Court rules on that.

10            THE COURT:  Okay, well give me your --

11            MR. TOOSSI:  And then --

12            THE COURT:  Hang on, hang on.  First say your name

13   and who you represent so the transcript reflects that.

14            MR. TOOSSI:  My name is Amir Toossi.  I represent Ami

15   Javeri and the LLCs, the CPRE and CPS50.

16            THE COURT:  Okay.  Well, I'll -- if I -- I should be

17   clear.  To the extent High Court approval is required to

18   formalize and fully lock something in, I -- whatever I do

19   regarding scheduling on this end would be contingent on that

20   approval coming through and not overriding it and entirely

21   subject to that approval, but I need to hear from -- I'm going

22   to hear from everyone sequentially which -- so never fear,

23   you'll get a turn.

24            I'm just looking at this calendar and one possibility

25   is to push back on the fairly numerous unavailable dates of the

1   Bhansalis' counsel, but in the meantime, I'm just asking about

2   the possibility of doing Mr. Modi's deposition on the 16th and

3   the 20th.  That's a Friday and then a following Tuesday, so not

4   back to back days, but pretty close in time, and those are

5   precious days where there's no reflected unavailability.

6          So what's -- what do you think about the feasibility

7   of that, Mr. Wedoff?

8          MR. WEDOFF:  Well, I don't think it's -- I don't

9   think it's ideal.  I'm -- certainly if that's a way to get this

10  to work, I certainly don't want to stand in the way of that --

11         THE COURT:  Okay.

12         MR. WEDOFF:  -- but it's -- the issue is that's two

13  days and then -- but we have a few other depositions

14  (indiscernible).

15         THE COURT:  Oh, I know.  No, I know.  I'm just trying

16  to break it down.  I mean --

17         MR. WEDOFF:  Yeah.

18         THE COURT:  -- you know, the other thing I could do

19  is talk to Ms. Sullivan about her -- assuming it's primarily

20  her schedule that's the driver on the Bhansali side and find

21  out what's going on then.  I will say just generally, I try to

22  be respectful of people's schedules, but at the same time, as

23  you say, meaningful effort has to be made to get this work

24  done, so -- and so let's -- so that's my thought.  Should I --

25  Mr. Wedoff, if there's nothing else you want to raise, maybe I

1   should turn to Ms. Sullivan at this point?

2           MR. WEDOFF:  Well, I think there are a couple other

3   things like to raise.

4           THE COURT:  Okay.

5           MR. WEDOFF:  You know, the -- I guess I -- I think

6   that we all -- you know, that's -- assuming that works, we'd

7   also like to get Mihir and Rakhi Bhansali scheduled.  Now,

8   perhaps we can just say, you know, May 27 and May 30 because

9   those look like days that are open, you know, bar unless I --

10  you know, someone has something that's come up in the last

11  couple of days.  Assuming we could do that, then perhaps, you

12  know, perhaps that's a schedule we could live with.

13          The other piece I wanted to raise kind of like at the

14  outset here is that we noticed depositions for CPRE and CPS50.

15  Mr. Toossi has been -- you know, again, we've had open and, you

16  know, candid conversations about those.  I'll let Mr. Toossi

17  speak to his concerns about those notices, but those are also

18  depositions we'd like to get scheduled, you know, as soon as we

19  can.

20          THE COURT:  Okay.

21          MR. WEDOFF:  So just -- I want to make sure that's

22  sort of on the docket for discussion, but I'll leave it at that

23  for right now.

24          THE COURT:  Okay.  So I think you've tried to get

25  your full plate of issues articulated before I turn elsewhere,

1   which is fine, and I -- so let me just try to recap.  I didn't

2   note the full list of all depositions you want to accomplish,

3   but it includes Nirav Modi, it includes the Bhansalis, it

4   includes the -- Mr. Toossi's client two entities, and I think

5   some others, and you have a -- we have a lot of availability

6   issues for May, plus the need to accomplish the UK

7   prerequisites of getting the logistics and legal authority

8   lined up for Mr. Modi.  And I will -- oh yes, I will say you've

9   got the two dates marked in red on your calendar, one of which

10  Purvi Mehta requires a lot of possibly legal and logistical

11  coordinating and which does not fall on any known conflict

12  dates, so I'm going to say that should definitely go forward

13  then as far as I'm concerned.

14          So that's the full list, right?

15          MR. WEDOFF:  That's right, and one thing I -- just

16  one additional note if you'll oblige me, Your Honor.  I believe

17  it was either -- I think it was Tuesday, April 22nd, the

18  trustee received a notice of deposition without a date set and

19  then Ajay Gandhi received a notice of deposition which I

20  believe was also for May 29.  So we would like -- you know,

21  we're willing to be flexible, but given the amount of time we

22  had to spend to get Purvi Mehta set up, we'd rather not have

23  the Ajay Gandhi deposition go forward on that date.  It's not

24  our deposition, but if at all possible, if that could move,

25  that would be our preference -- our strong preference.

1          THE COURT:  Okay.  I'll hear from whoever noticed

2     that, assuming they're here.  If they don't mind shifting the

3     date, then certainly that's fine.  If it's a big problem for

4     some reason, I would lean back a little on the Trustee team and

5     its big law firm with resources and see if you can divide your

6     team to facilitate that, but if necessary so we'll just see.

7          Okay.  So let me come back.  I think I should turn to

8     Ms. Sullivan at this point, and I want -- I guess I'd like to

9     hear a couple things.  One is just let me know your schedule

10    situation and/or your team schedule situation and, you know,

11    why these unavailability dates are -- or how rigid -- how

12    strongly unavailable are you on the indicated dates, and then I

13    guess my other question is if -- what should we do about

14    Mr. Modi's deposition dates.  I think we should build around

15    that.

16          MS. SULLIVAN:  Okay.  Thank you, Your Honor.  Nicole

17    Sullivan from White and Williams.  So the dates are pretty

18    rigid.  They're not changeable.  I did tell the trustee's

19    counsel about the week of May 5th in early April and that I'd

20    be out of the country for a pre-planned vacation, so I was

21    surprised to find their application a couple weeks later,

22    noticing Mr. Modi for the -- May 6th and 7th when they knew I

23    wouldn't be available.  I understand now the trustee is trying

24    to work with that schedule for Mr. Modi so we can probably move

25    forward from that, but it's a trip that I can't change.

1  (Indiscernible) --

2         THE COURT:  Okay.  I mean, I'll tell you I -- let me

3  jump in and rudely interrupt to tell you I'm solicitous of

4  vacations.  But anyway, go ahead.

5         MS. SULLIVAN:  Well, thank you.  I appreciate it.

6  Especially this one's my sister's work trip that I don't have

7  to pay for, so it's even better.

8         The other dates are depositions I have in other --

9  another case, so they're also fixed dates.  We have an end date

10  on those for those depositions of May 30th, so I can't change

11  them.

12         We had changed the end date of discovery with the

13  Trustee in, I think, large part because of this difficulty in

14  May, so I don't think it's necessary to schedule all these

15  depositions in May when we have, you know, some time in June

16  and July, and I think even if we needed to extend it past

17  July 11th a couple of weeks, I don't think that would be so

18  detrimental to the case, especially given two facts that the

19  trustee hasn't raised, which yesterday we were -- the trustee's

20  counsel confirmed again that they are still producing

21  documents, they're still trying to gather documents, and that

22  they're going to be produced on a rolling ongoing basis, so I

23  still don't know what the universe of documents are that the

24  trustee is going to be relying on at trial.

25         Without that information, it's very difficult for me

1    to prepare my witnesses for the deposition and obviously this

2    is -- you know, the Judge is intimately familiar with the facts

3    here and so it's an important deposition for both sides and I

4    think it needs to be -- have care in that, so I don't want to

5    rush Mr. Bhansali's scheduled deposition just because the May

6    seem -- date seems important to the trustee when they had six

7    years, you know, since they filed this case and they're still

8    in document production mode.

9         The other issue we have is that the trustee has

10   indicated that he intends to use all seven hours allowed under

11   the rules for the depositions that he's noticed.  I don't know

12   that that's actually necessary for every single witness, but

13   that's his intention and so we have to figure out, like, you

14   know, when -- like the way they've scheduled Mr. Modi, for

15   example, I don't have an opportunity to ask any questions and I

16   don't know if the appropriate means is to cross-notice it and

17   go through my own process to get it scheduled or normally the

18   parties would work it out and say, you know, we would do 10 or

19   11, whatever the amount of hours we think are necessary when

20   you have a multi-party case.

21        So we're going to need the Court's assistance with

22   that, but, you know, Ms. Purvi Mehta is going to be deposed on

23   May 29th and the trustee's going to use all seven hours and,

24   you know, we're going to want to have questions, especially for

25   witnesses that will be unavailable for trial and so the

1    deposition may be their only testimony in this case, so

2    (indiscernible) --

3              THE COURT:  Okay.

4              MS. SULLIVAN:  -- more important.

5              THE COURT:  I got it.  So that sounds like a -- to me

6    like a conversation that needs to happen, should have happened,

7    hasn't really happened yet.  I guess this is a status

8    conference, not a motion to compel, because -- but I would

9    expect there to be meeting and conferring about allocating

10   deposition time and enlarging to the extent needed.

11             MS. SULLIVAN:  Well, I agree with you, Your Honor.  I

12   think that the trustee wanted to have you assist us with the

13   scheduling of these depositions, which is why we're here today,

14   but without having the full universe of documents, it's kind of

15   hard to even know exactly what amount of time we may or may not

16   need in addition to the Trustee.  But then are we going to

17   have, like, say Ms. Purvi Mehta on the 29th and then, like,

18   we're going to come back another time in June for the other

19   parties and the same with Ms. Javeri and all these different

20   witnesses.

21             And I'll just say on the Gandhi deposition, I didn't

22   realize that Ms. Mehta was still scheduled for May 29th and we

23   will --

24             MR. WEDOFF:  Yeah.

25             MS. SULLIVAN:  -- issue a new subpoena with a

1    different date.  I thought he -- the trustee had canceled --

2              THE COURT:  Great.

3              MS. SULLIVAN:  -- all depositions, but that's fine.

4              THE COURT:  Okay.  Thank you for that.  Let me ask --

5    I guess you haven't seen what's -- what you haven't seen yet,

6    so let me come back to Mr. Wedoff and ask, in an ideal world,

7    document discovery is complete and then you do depositions.

8    This case is too old.  I don't want to be too rigid about that

9    because I want the depositions to occur, and this case has to

10   be pointing towards completion.

11             But however, can you give us any assurance that the

12   remaining discovery written -- document discovery won't be game

13   changers or necessitate reopening depositions?

14             MR. WEDOFF:  There -- we've made the full database of

15   documents the trustee has available to Ms. Sullivan.  The only

16   documents that maybe were not produced, and I believe quite

17   a -- many or most of them already were, are documents produced

18   by third parties on a confidential basis to the trustee where

19   we need to go back to the third party and ask for their

20   permission to provide it to other parties.

21             We're in the process of doing that, but we have

22   dozens and dozens of third parties, mostly who produced to the

23   examiner, fewer who produced to the trustee.  We have to go

24   back and sort of go over seven years of miscellaneous

25   productions to confirm that to the extent something was

1   confidential, that we reach out to them and give them the

2   appropriate notice under the protective order to produce it.

3        It's those documents that we have not provided to

4   Ms. Sullivan, so any confidential third-party documents not

5   previously produced, and we did produce quite a few of them

6   already to Ms. Sullivan.

7        The other category are documents we haven't gotten

8   yet.  So we haven't gotten the documents.  We received one

9   production last night from Rakhi Bhansali, but we still haven't

10  gotten clarity on Mr. Bhansali's outreach to his financial

11  institutions and we haven't gotten -- and again, I haven't

12  reviewed the document production we received last night.  I

13  don't know if that contains the tax returns for -- that were --

14  the defendants were ordered to produce, but certainly, any

15  documents that we have requested that have not yet been

16  produced, obviously we're not in a -- you know, we're not in

17  a -- we're not in a position to say, you know, it's -- it would

18  be inappropriate to say we can't use those at trial because we

19  haven't gotten them yet.

20       So I think the universe of documents that has not

21  gone to Ms. Sullivan is small.  We don't think they are -- we

22  don't think anything in there is going to be, you know,

23  critical to her case or our case, but we are -- we did want to

24  make clear that there, you know, as we are entitled to do, we

25  are making a rolling production and we're, you know, making --

```
 1              THE COURT:  Yeah, but what -- right.  Let me just

 2   cut -- jump in.

 3              MR. WEDOFF:  Yeah.

 4              THE COURT:  There's nothing impermissible about the

 5   way you're doing that, and that makes sense, and I understand

 6   that you can only produce that what you receive as you receive

 7   it and if you have confidentiality obligations, you have to

 8   work that through too.  So my question though is what that --

 9   whether that makes it prudent to hold off more on the

10   depositions.

11              MR. WEDOFF:  No, I don't think it does.

12              THE COURT:  And that --

13              MR. WEDOFF:  I think it's typical in a deposition

14   you --

15              THE COURT:  And why?

16              MR. WEDOFF:  Well, I think it's typical you ask

17   questions in a deposition and based on the answers you receive,

18   you may have follow-up document requests.  And that's why we

19   wanted to get these scheduled with a little bit of lead time

20   before fact discovery closes and to the extent we need follow

21   up.

22              THE COURT:  Okay.

23              MR. WEDOFF:  That's particularly the case with

24   Mr. Modi.

25              THE COURT:  Well --
```

 1          MR. WEDOFF:  Now that Mr. Modi is appearing, we have

 2  not heard from him.  I've sent many letters.  We can talk about

 3  the propriety of service, you know --

 4          THE COURT:  Okay.

 5          MR. WEDOFF:  -- after this, but again, the point

 6  there in particular because we don't have a clear line of

 7  communication, he's not represented by US counsel that we can

 8  just chat with, we want to make sure that to the extent we need

 9  follow up, we do that sooner rather than later.

10          THE COURT:  Is there --

11          MR. WEDOFF:  That's fair.

12          THE COURT:  Hang on.  Hang on.  Is there any reason,

13  Mr. Wedoff, that a continued deposition could not be scheduled

14  later if you get in your desired two half-day sessions

15  relatively soon?

16          MR. WEDOFF:  Oh, absolutely not, and frankly, if

17  Mr. Modi is -- you know, if we have a clear line of

18  communication with him and he agrees, you know, we can all get

19  together and agree on some kind of format for his depositions

20  and schedule for his depositions, we'd be open to that.  It's

21  just we've been -- basically been operating in a void where we

22  send stuff by courier and First Class Post to the prison --

23  prisons.  A lot of the -- I will tell you right now, some of

24  the notices we provided were misdirected to Wandsworth.  We

25  understand that they were forwarded to his current prison and

1  we re-sent everything, notwithstanding anything that was

2  forwarded.  We re-sent all communications from the last several

3  months.  Anything that had been misdirected was re-sent earlier

4  this month.

5          THE COURT:  Okay.

6          MR. WEDOFF:  So to the extent Mr. Modi hasn't

7  received anything, that must be a problem --

8          THE COURT:  I got it.

9          MR. WEDOFF:  - with the prison, but --

10         THE COURT:  Okay.  Well, hang on a second because I

11  appreciate you raising that.  I want to stay on -- focused on

12  deposition dates.

13         MS. SULLIVAN:  Can I just answer something on the

14  documents for --

15         THE COURT:  Sure.

16         MS. SULLIVAN:  So the trustee referenced that he

17  produced a database and I think -- I don't remember if Your

18  Judge -- if Your Honor recalls that, but we did discuss that

19  previously.  It's like a terabyte or more of information.  I

20  mean, I don't know the exact number of documents, but it's

21  millions of documents -- millions of pages, like, that was the

22  whole reason we had put into the discovery order for the

23  Trustee to identify the documents he intends to rely on at

24  trial, because we can't go through those millions of documents

25  and know what he's going to use or not use, and it's obviously

1    the Trustee's burden of proof here, not Mr. Bhansali's.

2           And we still don't have a clear picture of that other

3    than it's not the entire database that the trustee has told us

4    and, you know, the other documents from these third parties,

5    we've been pushing back on those for a long time and they were

6    produced to the examiner, as Mr. Wedoff just said, which is six

7    years ago.

8           So just saying, like, I think rushing these -- I

9    agree with you the case needs to move forward, but rushing

10   these depositions to all occur in May when the Trustee counsel

11   told me that he can't confirm that it won't cause him to seek

12   to reopen Mr. Bhansali or Mrs. Bhansali's deposition isn't

13   appropriate when there's time to get those things done and in

14   order, and then we just have one deposition without them having

15   to come back multiple times, given that the depositions are

16   already going to exceed seven hours as it is given the

17   multi-party nature.

18           THE COURT:  Okay.  Yeah, Mr. Toossi, go ahead.

19           MR. TOOSSI:  Yeah.  Yeah, I know you wanted to do

20   this sequentially, Your Honor, but there's so much that's been

21   said here that I need to respond to and it's accumulating, but

22   I'm in an even worse position than Ms. Sullivan because I -- my

23   predecessor on the case sent out a discovery request in 2023

24   that was not responded to until November of 2024.  There's

25   clear deficiencies in that.  I've spoken with Mr. Wedoff about

1   that.

2          I've given my own request for production.  I still

3   haven't gotten a production of documents on that, and there's

4   so much that delays me in what I need to do in the case.

5          We're talking about the depositions that the Trustee

6   wants to do.  I want to do depositions as well, and I have a

7   right to do them, and how am I supposed to decide who am I

8   going to call to depose when I haven't gotten third-party

9   documents, when I haven't gotten the full production from the

10  Trustee?  I can't even say how -- allocating time on a

11  deposition, I don't know how much time I need without having

12  the documents that I need to make that decision.

13          And I appreciate that Mr. Wedoff thinks that certain

14  documents won't be a game changer, but I don't think that he's

15  in a position to decide what might be a game changer for

16  Ms. Sullivan or for me or for anybody else on the defense side.

17          THE COURT:  Right.

18          MR. TOOSSI:  So -- and then when we don't have

19  these -- I understand -- the trustee keeps saying we want to

20  move this forward, and I do too, but what -- the point that I

21  think needs to be made here is, look at what we have right now.

22  We have a lack of document production from a trustee that has

23  had these documents for over -- for about seven years.  We have

24  a notice to the -- a motion to the High Court in the UK that

25  was only submitted last week, right?  Off an order that Your

1   Honor signed -- I don't remember the exact date, but I believe

2   it was November, right?

3          That deposition can't go forward until the UK High

4   Court -- it can't even be scheduled until the UK High Court

5   approves it, and my understanding -- I don't know if this is

6   right because I'm not a UK lawyer, but my understanding is that

7   that could take months before the UK court will approve it.

8          Mr. Wedoff is shaking his head, but he and I have

9   different information about this.  He thinks it can be done in

10  two weeks, but I don't think that the UK High Court has even

11  picked it up.  I don't know -- and I also know from talking to

12  Mr. Modi's prior counsel that they haven't gotten document

13  production either.

14         So when you add all of this up, what we have is a

15  lack of documents -- and I understand that depositions can go

16  forward before document production, but the vast majority of

17  the questions that are going to be asked in these depositions

18  are about business activities and occurrences that happened

19  more than seven years ago and in some cases 17 years ago.  To

20  ask these people to sit for depositions without an opportunity

21  to review documents and to refresh their recollection and to be

22  prepared to, frankly, it starts to look like a perjury trap.

23  And it's not fair to put these people in that position where

24  they have -- they just don't have an opportunity to prepare.

25         I've told the Trustee's counsel I'm making my client

1  available for a deposition on May 23rd, right?  But I still

2  don't have the documents that are in response to my request for

3  documents, and two days ago I speak to Mr. Wedoff and he tells

4  me, number one, we have no documents from PNB, who's the

5  putative victim in this case, the -- all of their

6  communications with PNB's counsel are part of the common

7  interest privilege which I plan to challenge.

8         He mentioned earlier that we have these 30(b)(6)

9  notices.  I may have to move to quash those because I don't

10 have a human witness that can testify on behalf of the company

11 that is not a defendant in the case.  And beyond that, I don't

12 know what the deposition schedule looks like, so I can't tell

13 you whether it's going to be cumulative or not.

14         So we're -- I understand the desire to move this case

15 forward, but at some point the trustee's actions have to be

16 consistent with their desire to move it forward.  And they're

17 asking us to do things that, frankly, I'm sitting here, I

18 haven't even sent out a deposition notice because I don't know

19 who I'm supposed to send out a deposition notice to.  I'm

20 supposed to (indiscernible) --

21         THE COURT:  Okay, I got it.  Let me jump in.

22         MR. TOOSSI:  Yeah.

23         THE COURT:  I'm sorry to interrupt.

24         MR. TOOSSI:  Yeah.

25         THE COURT:  I mean, look, the -- I'm going to say

1  things -- I understand why this conference was sought and

2  it's -- think it's a good thing for me to have conversations

3  with you all to check in.  I have an impression of this --

4  well, I'll just say we're not in a setting of a motion to

5  compel and the meet and confer process that's required by the

6  local rules has not been completed, which it's not required to

7  be completed to have a conference and that's fine, but I think

8  you all need to talk.

9       I think maybe what I should do is a little more

10 simple and just say -- I mean, I've looked at the calendar.  I

11 will say these adversary proceedings have been pending since

12 2019.  Certainly, any deposition where the trustee is ready to

13 go and is going to use their seven hours or, you know, a big

14 chunk of time can go forward, if in the trustee's judgment

15 they're ready to go.  I don't think it makes sense to make

16 people wait.

17      If they're pushing on a schedule where witnesses are

18 underprepared because documents haven't been made available or

19 at least with adequate time to prepare, they'll sort of proceed

20 at their own risk in that regard, and I would think that

21 well-prepared clients and witnesses, which I'm sure you'll

22 have, will say things like, gosh, I can't remember the exact

23 sequence of communications eight years ago or whatever if in

24 fact they can't, so you may have a lot of unrefreshed memory

25 testimony and if so, you know, you'll all have to deal with

1    that.

2          So to put that more simply, my inclination is to --

3    and my urging is to tell everyone to the extent the trustee is

4    seeking to go forward with depositions and they're going to be

5    the askers at least for a big chunk of the lion's share of the

6    time, I think it's not premature for that to happen and they

7    should proceed.  And I will be protective of any other party's

8    right to say you know what, we need a second session with that

9    witness because we didn't have adequate information and

10   information that either wasn't available to us prior to the

11   first session of the deposition or that -- at all or that we

12   weren't aware of because we got buried in a terabyte of data

13   and we couldn't have found this and this justifies a second

14   session, or because the trustee used up all available airtime

15   and we need some more and so we need to reconvene.  Any of

16   those things I'll be receptive to, but I think it makes sense

17   to let the trustee go forward on mutually available dates to

18   the extent they want to and, you know, and with them bearing

19   the risk of that.

20          MS. SULLIVAN:  (Indiscernible) --

21          THE COURT:  Yeah, Ms. Sullivan?

22          MS. SULLIVAN:  Because you said you'd be receptive to

23   that, I mean, to the extent that the trustee wants to go

24   forward with the Bhansalis while we're still reaching out to

25   the banks and trying to get the records that we don't have in

1   our possession or custody per, you know, the last ruling from

2   the Court, I don't -- I think it should be at their peril.  I

3   mean, they could wait to see what the results of that is and

4   then have the full document production, but I don't think it's

5   appropriate to ask to do that.

6          I've done it in other cases.  I've had other cases

7   where we take a deposition without any documents, but we didn't

8   get to bring the witness back for a second bite at the apple

9   once a document production happens, so I think --

10         THE COURT:  Right.

11         MS. SULLIVAN:  -- trustee should elect which way he

12   wants to move forward with it and if he wants to do it without

13   the documents, then he doesn't get a second bite at the apple.

14         MR. TOOSSI:  And we agree with that.

15         THE COURT:  Well, I'm sure you all would.  I'm not

16   going to preclude a second bite at the apple, but it's -- I'm

17   sure there's a variety of law that you all can enlighten me on

18   and I think the answer is typically it depends and how -- on

19   factors probably including what degree of diligence was

20   exercised, was the information that supposedly justifies the

21   renewing something that could and should have been available

22   and known previously, how important is it, how prejudicial to

23   the other side would it be to go forward, but particularly if

24   everybody else is going to be resuming and asking questions of

25   the same witness, I would think you would factor that.

```
 1              Anyway, I'm just talking off the top of my head which

 2    is a bad habit I indulge in.  Bottom line, if the trustee wants

 3    to go forward, fine, and I'll encourage you all to just be

 4    mutually considerate and work out dates and allow that to

 5    occur.  I'm sure the trustee -- I can see them actively

 6    thinking right now about how they want to play this and they

 7    can decide if they want to hold off in light of some of what

 8    they've heard from either me or other counsel.  That's fine

 9    too.  Okay?

10              So I do think -- I mean, this is a sprawling, massive

11    case, document discovery from many sources.  You're going to

12    have a lot of continuing inflows of information, and I think

13    you're never going to be at a perfect moment of completeness

14    and so at some point you just have to proceed with depos, but

15    I'm going to let you all figure that out.  And I'm not going to

16    preclude the trustee going forward now and please try to find

17    dates that work.  I guess that's the best thing I can say.

18              Mr. Modi, it looks like maybe you wanted to say

19    something?  Whoop.  Maybe not.  Okay.  Mr. Modi's --

20              MR. WEDOFF::  Did we lose him?

21              THE COURT:  No, he's here.

22              MR. MODI:  Hello?

23              THE COURT:  Yes.  Hi, Mr. Modi?

24              MR. MODI:  Hello.

25              THE COURT:  Yes, did -- yeah, did you want to say
```

1   something?  Go right ahead.

2          MR. MODI:  I wanted to say quite a few things.  I

3   would like to keep it succinct.  Okay.  The first document I've

4   received from the trustee at Thameside was on August -- sorry,

5   April 17th and April 20th.  This is to inform me about the

6   application to the High Court.  This is the first time I've

7   received anything directly from the trustee.

8          There are two other documents I've received, one in

9   October and one in April.  October last year, and one in April.

10  Something regarding Ami -- sorry, Rakhi Bhansali and Mihir

11  Bhansali which were forwarded to me by -- from Wandsworth.

12         I see in this that you've made an order for my

13  deposition on August 27 and I see the trustee has made an

14  application to the UK High Court on April the 16th.  I -- I'm

15  not understanding why there's an eight-month delay between the

16  order and his application.

17         I have James Chou, who was my counsel, he left the

18  firm on July the 7th.  After that, I've not received any

19  communication from the trustee to me.  The trustee's aware I'm

20  in Thameside because we are both involved in a different case.

21         The trustee -- even in the emails.  So he's emailing

22  Thameside Prison, but he's posting Wandsworth which is

23  interesting.  (Indiscernible) --

24         THE COURT:  I'm sorry, Mr. Modi, how -- have you

25  received things that were rooted via -- what's the name of the

 1   other facility, Wandsworth or something?

 2          MR. MODI:  Wandsworth Prison.  I've received two

 3   documents, one in October 2024 and one in early April, this

 4   year.

 5          THE COURT:  Let me ask this, Mr. Modi.

 6          MR. MODI:  (Indiscernible) --

 7          THE COURT:  Yeah, Mr. Modi, I'm sorry to cut you off.

 8   This is Judge Jones again.  Do you -- I don't know what

 9   communications methods are available for you.  I -- you don't

10   happen to have email access, do you?

11          MR. MODI:  No.

12          THE COURT:  Okay.  And so the -- what's the means of

13   communicating with you that works?  Is it by mail?

14          MR. MODI:  A post.

15          THE COURT:  By post.

16          MR. MODI:  Mail only.

17          THE COURT:  And do you know by heart what address

18   people -- how should people address mail to you?  Maybe you can

19   just say it on the record right now, if you know.

20          MR. MODI:  I've just received -- sorry, I've received

21   some post on the 17th, which is addressed properly.  But I can

22   say it.  Just Nirav Modi, HMP Thameside.  So H-M-P in capitals.

23   Thameside is T-H-A-M-E-S-I-D-E.  The next line is Griffin,

24   G-R-I-F-F-I-N, Manor, M-A-N-O-R, Way, W-A-Y, London, SE, so

25   sugar echo, 28 0FJ, father, Jones, UK.

38

1          THE COURT:  Okay.  Great.  Thank you.  All right.  So

2     I mean, if that's helpful and if there needs to be

3     re-transmittals of anything, that can occur and people can use

4     that as the means of communication with you, so it's helpful to

5     hear from you to have that.

6          Let's do -- and, Mr. Modi, is there any prospect of

7     you retaining counsel because obviously this is a very serious

8     case and you would be well served by being represented.  Is

9     that something that might occur?

10         MR. MODI:  Not at this -- right now I don't have the

11    funds.  So I'm in -- I'm pro se in other cases also.  Can I

12    complete my points?

13         THE COURT:  Yes.

14         MR. MODI:  Yeah?  Okay.  So my first request, my only

15    request for documents is on August 23 to the trustee.  My

16    previous counsel had emailed him multiple times afterwards.  He

17    just said he has not received a response.  So as of today, I do

18    not have a single document which I've asked for.  That's as far

19    as my access to documents is concerned.

20         In February 2024, I applied to prison for a computer

21    and I applied -- and multiple times I followed up to see when I

22    could get a computer.  There was not a reply.  In -- I have

23    another UK High Court case, and I made an application in August

24    for adjournment until January 26 on this case because of, you

25    know, without a computer, I won't be able to look for anything

1   and there's no way I can -- sorry.  There's -- there won't be a

2   way for me to go through -- you know, one terabyte for me I

3   guess would be like a million pages.  I don't know how to do

4   that.  And I don't even know how I'll receive that.

5          To the High Court, I made the application in -- I

6   think in August.  The High Court heard me in November.  They

7   adjourned it -- they adjourned my adjournment until February

8   and on February 27th, I have received -- I have an order --

9   sorry, there's some construction in the background.

10         THE COURT:  That's fine.

11         MR. MODI:  Yeah.  So I received an order on

12  February 27th from Judge Bailey (phonetic) that I should apply

13  again for a computer with the order from the court that I need

14  a computer.  Without that, I won't be able to participate in

15  the trial.

16         I've made that application to prison.  I'm waiting to

17  hear back from them, and the High Court is going to decide on

18  October 18th whether the case is going to be adjourned or not.

19  And my reason for adjournment is just the quality of arms that

20  I won't get a fair trial because I can't look at any documents.

21         THE COURT:  Okay.  I understand.

22         MR. MODI:  Okay.

23         THE COURT:  Were there more things you wanted to

24  raise?

25         MR. MODI:  Yeah.  So based on my experience in the

 1   UK, if an application has been made for -- application made to

 2   High Court, it's going to take three, four months before High

 3   Court even hears it.  So if the application has been made in

 4   April 16th, I don't -- I don't know.

 5            THE COURT:  Okay.

 6            MR. MODI:  I mean, we'll see.

 7            THE COURT:  I've got it.  All right.  Well, look --

 8            MR. MODI:  And I'm asking you the same, can I -- I

 9   would like to adjourn my case until next year.

10            THE COURT:  Okay.  So viewing -- yeah, and that's, I

11   guess, the adversary proceeding before me in which you're a

12   defendant which is 19-1102.  All right.  So I'm going to deny

13   that at this time because we're trying to keep this --

14            MR. MODI:  Okay.

15            THE COURT:  But I will tell you there's -- scheduling

16   orders that extend out a significant number of months, we're

17   trying to move those forward.

18            Let me just say -- thank you, Mr. Modi.  Let me say a

19   couple of things about issues you raised.  First off, I think

20   your access to a computer is I think a matter for the UK prison

21   authorities and the UK legal system and so it's not something

22   in which I should intrude or really comment, so it sounds like

23   you're appropriately pursuing that.

24            I wanted to get your mailing address, and I will let

25   the parties think about, in light of your saying you haven't

1 │ received various communications, if they want to re-transmit

2 │ things to that address, they can do.  I'm not making any

3 │ particular directive, but think about whether that's

4 │ appropriate and necessary and would be productive towards

5 │ advancing the case.

6 │        And I appreciate that you're saying you don't have

7 │ funds and have been unable to retain counsel.  I think it's

8 │ best practice for me to tell you, you would be well served by

9 │ getting a lawyer, if you can get one, but you do have the

10 │ entitlement to proceed pro se as you're doing now.  And so

11 │ those are my main reactions.

12 │        Look, I think really what I should do in terms of the

13 │ immediate things that were put before me today is not direct

14 │ depositions to occur at specific dates, but just say I would --

15 │ just what I said before, I would encourage -- I do think it's

16 │ time to commence depositions.  I'm going to be open to

17 │ continued sessions as needed, either because the Trustee

18 │ consumed most of the available time for the scheduled session

19 │ and other parties need a fair opportunity to ask questions,

20 │ that alone would be sufficient, and then that would be

21 │ augmented by any showing that documents that became available

22 │ only after the deposition or unreasonably before the deposition

23 │ justify resuming.  So I'm open to those types of showings, but

24 │ I think we'll cross those -- that -- those bridges when we get

25 │ to them.  Okay?

1          So, you know, I will say, I mean, I sympathize with

2     all of you as professionals.  This is a really monster of a

3     case with a lot of complexity and a lot of elements that are

4     hard to wrestle to the ground, but we have to try, so let's try

5     to keep this moving as best we can.

6          I'm not -- I really am not sure I can do more than

7     that, but I'll let the trustee speak to me if there's something

8     more concrete you think I really can and should do today.

9          MR. WEDOFF:  Thank you, Your Honor.  One thing I

10    wanted to note -- and I'm not questioning the veracity of what

11    Mr. Modi relayed about only receiving documents, you know, a

12    handful.  We did send stuff to the wrong prison.  I'm not

13    hiding that.  And there was probably three or four or five -- I

14    don't know the exact number of documents that we sent to the --

15    you know, a letter, a couple letters and a couple of just

16    filings in these matters, and we just served via courier, and

17    for the last couple of times we sent stuff to Mr. Modi -- sent

18    materials to Mr. Modi, we served both by courier, so hand

19    delivering to the prison, and by First Class Post, which I

20    believe is the term of art in England, from our London office.

21    And I have confirmations that those documents were transmitted

22    through those means and for whatever reason, it sounds like

23    they're not getting to Mr. Modi.

24          And this also occurred -- this is before your time,

25    Your Honor, but when we moved for default of Mr. Modi, the

1  same -- we heard the same thing, but we had filed documents.

2  He didn't get them.  We only learned about them after the fact

3  after we had received a default against him.

4           So I am concerned about -- I just want to make sure

5  we have a clear line of communication.  I'm not blaming

6  anybody, I'm not --

7           THE COURT:  Right.

8           MR. WEDOFF:  -- suggesting that Your Honor has any

9  immediate answers, but it is a serious concern on our end

10  because we want to make sure that Mr. Modi's seeing what we are

11  doing.

12           THE COURT:  Right.

13           MR. WEDOFF:  And he's a participant in this case.

14           THE COURT:  Well, let me ask -- Mr. Modi, it's

15  very -- it's terrific you're here.  I'm glad for your sake so

16  that you can hear what's going on firsthand and it's helpful

17  for me as well.  Do you have a copy of the complaint against

18  you in -- or that commenced the case against you that we're

19  talking about now?

20           MR. MODI:  Yes, I do because that is many years ago.

21           THE COURT:  Yeah.  That's old.  It's old, but

22  important.

23           MR. MODI:  Yes, I have --

24           THE COURT:  Okay.  And --

25           MR. MODI:  Yes, I have that --

```
 1                THE COURT:  And is there an amended --

 2                MR. MODI:  And I have the -- I have two documents,

 3   that and the examiner's report, and my -- what the documents

 4   which my previous counsel produced and my request for, that's

 5   all I have.

 6                THE COURT:  Okay.

 7                MR. MODI:  And I also do not receive bundles and post

 8   regularly.  I've complained to the prison multiple times, but

 9   it's prison.

10                THE COURT:  Right.  Is there -- let me ask this:  In

11   the States, often mail has to be marked legal mail and then it

12   gets handled a little bit more reliably and it's subject to

13   less search protocols.  Is that -- is there a process like that

14   in UK that you're aware of?

15                MR. MODI:  Yes.  There's a Rule 39, but Rule 39 means

16   it should not be opened unless there's strong evidence that

17   something inappropriate in that, but there is no provision for

18   it to be handled differently or separately.  (Indiscernible)

19   generally --

20                THE COURT:  Right, that actually is essentially the

21   same as here.  So would it help do you think if --

22                MR. MODI:  Yeah, but there's --

23                THE COURT:  Hang on.  Let me just ask this:  Do you

24   think it would help --

25                MR. MODI:  Yes, Your Honor.
```

```
 1              THE COURT:  -- if counsel marked it legal mail or

 2   some -- with some equivalent notation --

 3              MR. MODI:  No, they can mark it Rule 39, but for my

 4   own lawyers, I've not received bundles marked Rule 39 multiple

 5   times.  It's very frustrating, but there's just nothing I can

 6   do.  And even if I tell them look, I -- my lawyer said they've

 7   sent this, this is a proof of receipt, there's just no

 8   response.

 9              THE COURT:  Okay.  I mean, I say okay in a cheerful

10   tone of voice not because I think that's good, but because I

11   want to explore with you whatever we can do to try to ensure

12   you get -- you receive things.

13              MR. MODI:  Yeah.

14              THE COURT:  If it's any -- one thing I would suggest

15   is that maybe the trustee can post -- send to you via post

16   copies of transcripts that have -- of prior conferences and

17   hearings in the case.  Okay.  I -- as I've been quickly

18   reviewing the docket, there's been a lot of procedural activity

19   and a lot of conferences, but I don't know that there have

20   really been applications and orders aimed directly at Mr. Modi,

21   at least to a heavy extent, but if you want, I'm sure the

22   Trustee could send you copies of transcripts of hearings or

23   conferences that have occurred and then -- I say this not

24   because I think they're vital to your interest, but they would

25   give you a feel for the progress of the case.
```

```
 1                 MR. MODI:  Yes.  Yes, please.

 2                 THE COURT:  Okay.  So let me just ask the trustee to

 3    do that just by post and that will help ensure you have a

 4    expanded feel for what's going on in the case.  Okay?  That's

 5    not to say there's been any --

 6                 MR. MODI:  Yes.  Yes, Your Honor.

 7                 THE COURT:  -- prior deficiency on the trustee's

 8    part, but let's get that done.

 9                 All right.  So thanks, Mr. Wedoff.

10                 Oh, and I see you too, Mr. Toossi.  I'll come to you

11    in a second.

12                 So anything more --

13                 MR. TOOSSI:  Yes.

14                 THE COURT:  -- the trustee wants to add?

15                 MR. WEDOFF:  Yeah, I do want to add a couple things.

16    One, there were outstanding document requests to Mr. Modi and

17    those requests were not for -- I realize he probably doesn't

18    have documents on his person that would be responsive, but to

19    the extent we looked -- we're basically looking for electronic

20    communications and anything else that he would have access to,

21    I guess for lack of a better term, but --

22                 MR. MODI:  Sorry, sir.  Can you repeat, please?

23    This -- with this construction, I can't hear anything.

24                 THE COURT:  I'll just repeat -- yeah, this is Judge

25    Jones, Mr. Modi.  I'll repeat.  Mr. Wedoff said there are
```

```
 1   outstanding document requests to you and he assumes that you
 2   don't have access to physical documents now, but there were
 3   also electronic records he was seeking.  You know, I assume
 4   it's going to be -- I'll put -- speak roughly, stuff that
 5   should be on your computer or on electronic accounts, including
 6   texts, emails, and maybe other maybe financial records, other
 7   electronically kept information.  So do you have any ability to
 8   access that or maybe through others acting for you?
 9         MR. MODI:  No, I do not have any electronic records
10   because all of my records were seized by the Enforcement
11   Directorate.  And all my servers, and in fact, the trustee has
12   more access to my records than I do --
13         THE COURT:  Okay.
14         MR. MODI:  -- because the -- yeah, my computer in the
15   US was synced with my email server.
16         THE COURT:  Okay.  Okay.  So yeah, Mr. Wedoff, if you
17   want to make a further application about that, fine.  You know,
18   I don't know if you wanted to raise anything else.  I kind of
19   jumped in.
20         MR. WEDOFF:  I do.  And I'm sorry to belabor this,
21   Your Honor, but we had -- those were outstanding for a while
22   with Mr. Chou and Mr. Dworkin, Mr. Modi's previous counsel, and
23   they had indicated that they were attempting to, you know --
24   and again, this is not physical -- is not records from say a
25   laptop, but it would be, you know, email accounts or text
```

1  message accounts, social media accounts, where you would

2  have -- you would theoretically be able to log in and get the

3  information.

4         I'm not asking for Mr. Modi to respond to that on the

5  spot.  I just wanted to note that was an outstanding request at

6  the time Mr. Modi went pro se.

7         Second and maybe more pressing, we sent RFAs to

8  Mr. Modi last month.  Now, I don't -- it sounds like he did not

9  get them.  I want to ensure that those go to Mr. Modi and that

10 he has an opportunity to review them.  My concern is that when

11 we send something there's no real way for us to know whether or

12 not he got it, and I -- other than, I guess, sending a

13 follow-up letter, I don't know how he -- I don't know how he

14 responds to us.

15        So my concern is I know he has counsel in another

16 matter in the UK and that counsel is not acting for him in the

17 United States and he's not an American lawyer, but if there is

18 any way to just -- even if it's just simply confirming that

19 something was received, it would be very helpful.  Because

20 otherwise we just send RFAs, RFPs, and we just don't know if

21 they were received, it's hard to really act on the lack of a

22 response.

23        THE COURT:  Got it.  So let me do two things.  One is

24 I'm going to translate the term RFAs for Mr. Modi which he may

25 or may not know.  That's requests for admissions.  That's a

1   discovery device in US law and it's very important because one

2   party can send another party a list of things that they ask the

3   other side to admit and if those aren't responded to and

4   denied, then they're deemed admitted for purposes of the case,

5   so they're very powerful tools.

6          So that's -- that was the specific thing that

7   Mr. Wedoff mentioned.  He also mentioned RFPs that I think is

8   requests for production.  That's requests for documents which

9   are also important, although they have -- they can have less

10  direct -- important legal consequences, but to my mind, a

11  little less potent than RFAs.

12         At any rate, now let me ask the pertinent question

13  that Mr. Wedoff asked, which is, Mr. Modi, is there a way that

14  you could somehow confirm receipt of things you do get so that

15  people aren't left wondering if there's some breakdown in the

16  system that has caused you not to receive things?

17         MR. MODI:  Yes, I can.  And in fact, I'm trying to do

18  this with another lawyer, an adversarial proceeding, where I

19  call them up.  So, you know, we have a check in, like every

20  month I'll call them up, received this, this, this, then

21  I'll -- and that -- and they can tell me what they've sent.  It

22  can be every month.  It can be every two weeks.

23         The only one thing I've requested this and -- is that

24  there should not be any hostility or silly remarks.  This is

25  just a factual thing that, did you receive this, did I not

1    receive this?

2              THE COURT:  Yeah, that seems fine.

3              Mr. Wedoff, could -- you've referenced having a

4    London office, which seems helpful.  I mean, I guess it's

5    easier to call a London number from Thameside than a stateside

6    number.  Is that something where Mr. Modi could just call your

7    firm?

8              MR. WEDOFF:  Absolutely.

9              THE COURT:  So do you want to -- Mr. Modi, do you

10   have something to write with at the moment?

11             MR. MODI:  Yeah, just pen and paper.  Yes.

12             THE COURT:  Yeah, great.  So Mr. Wedoff --

13             MR. MODI:  I have his London address on my --

14             THE COURT:  Oh.  Oh, great.

15             MR. MODI: -- on what I received.

16             THE COURT:  How about a phone number?

17             MR. MODI:  But just I have a question.

18             THE COURT:  Wait, wait, before I lose --

19             MR. MODI:  Yes, the phone number also for Jason

20   Yardley.

21             THE COURT:  Okay.  Wait, is that the -- that would be

22   a person that Mr. Modi could contact with that information,

23   Mr. Wedoff?

24             MR. WEDOFF:  And -- yes, he's one of our attorneys.

25   I would actually recommend contacting Clare Hennessey, who is

1   counsel in our London office.

2           MR. MODI:  Yes, I don't have a number, but I have --

3           MR. WEDOFF:  Yeah, I'm happy to give it to you if you

4   are in a position to take it.

5           MR. MODI:  Yes, please.  Hold on, please.

6           MR. WEDOFF:  Okay.  Thank you.

7           MR. MODI:  Just one second.

8           MR. TOOSSI:  Your Honor, while we're waiting --

9           MR. MODI:  Your Honor (indiscernible) --

10          THE COURT:  Hang on, hang on, Mr. Toossi, wait, wait.

11          MR. TOOSSI:  Yeah.

12          THE COURT:  We got to stick on this one, but I will

13  come to you.

14          Go ahead.

15          MR. MODI:  Okay.  Your Honor, is there a sequence to

16  this process because, you know, is there like first documents

17  and then questions and exchange of documents, then deposition,

18  then this admissions?  Because right now in my case we're going

19  the other way.

20          THE COURT:  There is not -- I think there's a

21  practical most common practice of doing the bulk of document

22  discovery first, followed by depositions, and a lot of that

23  work has been done, but it's not necessarily strictly required,

24  so --

25          MR. MODI:  No.  Sorry, none of that work has been

1   done for me, so I --

2              THE COURT:  Right.

3              MR. MODI:  -- that's -- would like to clarify that.

4   Zero work.  With the exception of the documents I told you, I

5   don't have anything else.

6              MR. WEDOFF:  Your Honor, we're happy to reproduce the

7   production we made to Mr. Modi's counsel that apparently they

8   did not share with them, and we will -- we're happy to send

9   that to the prison.

10             THE COURT:  Okay.

11             MR. WEDOFF:  But let me give you the number for Clare

12  Hennessey.

13             MR. MODI:  How -- so just a question.

14             THE COURT:  Hang on, Mr. --

15             MR. MODI:  How would you send one terabyte of data to

16  me?

17             THE COURT:  Hang on a second, Mr. Modi.  Well,

18  let's --

19             MR. MODI:  Yeah.

20             THE COURT:  So first --

21             MR. MODI:  Okay.  I'll start with the number.

22             THE COURT:  No, let me first just say, Mr. Wedoff,

23  yes, please do re-transmit the prior production to Mr. Modi,

24  and then, Mr. Modi, you can confirm receipt, assuming that you

25  actually receive it.  And we'll --

1              MR. MODI:  Okay.

2              THE COURT:  I -- you're right that printing a

3   terabyte of data is possibly ridiculous or I don't know, I'll

4   let the trustee sort of figure out how they want to handle

5   that.  Okay?  The -- I should say the particular thing I want

6   to happen, there's a rolling Rule 26(a) requirement of what are

7   called initial disclosures, but those then have to be

8   supplemented and any party that wants to rely on documents

9   during the trial, or to prove their case, needs to produce that

10  which -- on which they intend to rely.  And so that, at a

11  minimum, is what should be being produced.  Okay?

12             So -- and that will -- has the enforcement mechanism

13  of if you -- if that was not produced, that cannot then be

14  excluded from use at trial, so -- okay, so the Trustee can

15  build around those -- that concept.  All the parties can build

16  around that concept.

17             Okay.  So sorry, Mr. Wedoff, I feel like maybe --

18             MR. WEDOFF:  I need to give the phone number for my

19  colleague --

20             THE COURT:  Yeah, go ahead.

21             MR. WEDOFF:  -- in London.  Sorry.

22             THE COURT:  Ms. Hennessey.

23             MR. WEDOFF:  Yeah, Clare Hennessey.  Her -- it's

24  +44 --

25             MR. MODI:  Yes.

54

1          MR. WEDOFF:  -- for the country code, and then it's

2   330 --

3          MR. MODI:  Yes.

4          MR. WEDOFF:  -- 060 --

5          MR. MODI:  Yes.

6          MR. WEDOFF:  -- 5423.

7          MR. MODI:  Is this her mobile?

8          MR. WEDOFF:  This is her office number.

9          MR. MODI:  Okay.  Because if I don't get her, she

10  can't get me back.  Okay.

11         MR. WEDOFF:  And I'm happy to give you another

12  another number for -- if you don't have Mr. Yardley's number,

13  I'm happy to give you his number as well.  I think Clare might

14  be more responsive --

15         MR. MODI:  No, I have it.  It's 540 -- ends in 5408.

16         THE COURT:  Yeah, and I'll --

17         MR. WEDOFF:  Thank you.

18         THE COURT:  And, Mr. Modi, I'll just say --

19         MR. MODI:  Okay.

20         THE COURT:  -- if you happen to just get her

21  voicemail and not a human, you can just leave a voicemail

22  saying, this is Mr. Modi --

23         MR. MODI:  Okay.

24         THE COURT:  -- calling to say I've received the

25  following and just say what that is because then the

 1   information will be reached.

 2            MR. MODI:  Yes.

 3            THE COURT:  Okay.  I keep letting --

 4            MR. MODI:  Okay.

 5            THE COURT:  I keep not letting Mr. Toossi speak, so

 6   I'm going to let Mr. Toossi speak now.

 7            MR. TOOSSI:  Thank you, Your Honor.  I wanted to note

 8   because the RFAs were served on me, but I'm looking at the

 9   certificate of service and it looks like they went to HMP

10   Wandsworth which is the incorrect prison.

11            I'd also note that there are a number of documents --

12   and this is relevant to the LLCs.  There are a number of

13   documents where the Trustee is requesting Mr. Modi to admit

14   that the document is true and correct, which obviously Mr. Modi

15   cannot do unless he also has those documents, so I just want to

16   make sure that not only the RFAs are going to be sent to

17   Mr. Modi, but also the underlying documents because obviously

18   his admission -- if these are deemed admitted, it's going to be

19   prejudicial to my -- might be -- it might be prejudicial to my

20   clients.

21            THE COURT:  Okay.  I've got it.  So --

22            MR. WEDOFF:  To confirm, Your Honor, those were --

23            THE COURT:  Yeah.

24            MR. WEDOFF:  -- re-sent to Thameside with all the

25   underlying documents.

```
 1              THE COURT:  Okay, great.  So yes, so as long as it

 2   transmitted with the documents, Mr. Modi can review them and

 3   then that's fine.

 4              MR. WEDOFF:  That said, Mr. -- I'm sorry to

 5   interrupt, Your Honor.

 6              THE COURT:  No, go ahead.

 7              MR. WEDOFF:  That said, Mr. Modi apparently didn't

 8   receive them, so we will send them again.  But that was -- we

 9   intended to send them and apparently, they didn't get to

10   Mr. Modi, so we will try it -- we'll try again.

11              MR. TOOSSI:  When were they sent to the correct

12   prison?

13              MR. WEDOFF:  We re-sent about three or four days

14   after it was initially served at the wrong address.

15              THE COURT:  So April or?

16              MR. WEDOFF:  I'll tell you the exact date if you bear

17   with me.

18              MR. TOOSSI:  It'd just be good to know whether things

19   are going through or not going through.

20              THE COURT:  Right.

21              MR. WEDOFF:  April 2nd they were resubmitted to --

22              THE COURT:  Okay.  So by now you really ought to just

23   re-transmit, and I'm sorry that that's occurring, not in the I

24   accept blame for it, but in the I'm sympathetic.  All right.

25   So let's get that re-transmitted.
```

1          Let's see.  Okay.  So look, we've been on this

2    conference for about an hour and 15 minutes now, so I'm not

3    sure how productive this is proving.  I -- some of the things

4    are productive and it's great to have Mr. Modi.  I think we've

5    got a communication protocol, including a request that Mr. Modi

6    confirm receipt of things from time to time so that people

7    aren't left wondering, and I'll -- I should have been explicit.

8          I'll just ask regardless of sender, Mr. Modi, any

9    legal papers you receive or communications you received in

10   connection with the case, you can tell the Jenner & Block firm

11   at the number you just were told and they will -- they can

12   communicate with all parties on the case.  Okay?  I just think

13   they're probably best situated --

14          MR. MODI:  Okay.

15          THE COURT:  -- to be the point of contact for that

16   purpose.

17          MR. MODI:  Okay.  Thank you.

18          THE COURT:  Yep.  Okay.

19          So, Mr. Toossi, any more things you wanted to raise?

20          MR. TOOSSI:  No, Your Honor, I don't think so.  Just

21   give me one moment.

22          THE COURT:  Sure.

23          MR. TOOSSI:  No.  No, I'm fine, Your Honor.  Thank

24   you.

25          THE COURT:  Okay, great.

1          So look, we've talked a lot and I hope with some

2   degree of helpfulness.  Again, to recap, my bottom-line

3   takeaway is I encourage everyone to make themselves available

4   to the maximum extent possible to facilitate depositions.  I

5   think it is appropriate to begin the deposition process now.

6          The trustee will reflect on -- sort of re-think

7   through whether it makes sense to wait or whether now is the

8   time to start, in light of some of the loose ends that were

9   described, and you have a generalized assurance that all of the

10  other parties who are going to need to be deposing witnesses

11  who the trustee also wants to depose will have some opportunity

12  to get a second bite later at those witnesses to the extent

13  there's good reason why they couldn't ask their questions in

14  the same session that was commenced by the trustee, and to me

15  that translates to either a running out of time or a lack of

16  access to important information at the time of the initial

17  deposition session that warrants reopening.  Okay?  Those are

18  sort of --

19          MS. SULLIVAN:  (Indiscernible) --

20          THE COURT:  -- yeah, Ms. Sullivan?

21          MS. SULLIVAN:  I just want to be clear on that point

22  because I think it's going to -- it's going to come to a head

23  at some point in the future --

24          THE COURT:  I'm sure it will, yep.

25          MS. SULLIVAN:  Are we expected to cross-notice the

1  witnesses that we want to ask questions to or, you know,

2  because some of them I don't know that I -- like I might not

3  want to ask any questions and some of them -- obviously I do

4  want to ask Mr. Modi questions and I probably want to ask

5  Miss Mehta questions, but others I may or may not, so I don't

6  know if we have to cross-notice them so that we have -- we

7  preserve our right to take -- to ask questions or this is

8  sufficient for what we've discussed.

9           THE COURT:  I'm not smart enough to know the answer,

10 so --

11          MS. SULLIVAN:  Normally you don't cross -- I've never

12 cross-noticed witnesses in a case --

13          THE COURT:  Right.  Yes, in my life, it's just

14 someone convenes a deposition and everyone --

15          MS. SULLIVAN:  So I just want to make sure that if we

16 don't cross-notice that we're not going to be penalized for

17 that at a later date, that's all.

18          THE COURT:  I guess you --

19          MS. SULLIVAN:  Because Mr. Wedoff mentioned

20 cross-noticing and if we want to ask questions, we have to

21 cross-notice and I -- so I just wanted to be clear on the

22 record while we have you, Your Honor.  And I think Mr. Seuss

23 put his video on, so maybe he wants to join in.

24          THE COURT:  Okay.  Well, let me ask Mr. Wedoff who --

25 I mean, is there a need for other counsel to cross-notice

1   depositions of witnesses that the trustee notices?

2          MR. WEDOFF:  I think the -- it's really for matters

3   of scheduling, Your Honor.  We certainly wouldn't oppose a

4   cross-notice or certainly wouldn't say we got our seven hours,

5   ha ha, you're out of luck.  That's not our position.  But I do

6   think there's a matter of if, you know, if we're setting up

7   depositions overseas or there's someone with limited

8   availability, we don't want to lose our entitlement to seven

9   hours of deposition time because somebody else has questions,

10  so I think it's really a logistical matter and as I said, we

11  wouldn't -- we certainly wouldn't oppose and we --

12         THE COURT:  So --

13         MR. WEDOFF:  I will tell you, Your Honor, we -- at

14  the outset we actually wanted to work out some kind of protocol

15  to avoid this, but it seemed -- it was a little abstract at

16  that point and we just thought we would go under the rules, but

17  that's our thinking.  It's not that we are trying to deprive

18  anyone else of the opportunity to ask questions.  We just want

19  to ensure we get seven hours.

20         THE COURT:  Okay.  Look, let me just say this, I --

21  my expectation is that if a deposition is convened, all

22  affected counsel for parties in the case in which the

23  deposition is conducted are afforded the opportunity to ask

24  questions and that's what should happen.  I don't -- I am not a

25  wiz at the conduct of depositions abroad other than that I know

1   you have to comply with the laws of the foreign jurisdiction

2   and I am not conversant with what those are, so if those change

3   the requirements, I'd expect you all to meet and confer and

4   figure out what needs to happen to make sure your interests are

5   protected in other jurisdictions.  Okay?

6           Mr. Suess, you turned your camera back on.  Does that

7   mean you want to say -- raise something?

8           MR. SUESS:  I think the conversation the last hour

9   and a half has covered pretty much everything.

10          THE COURT:  Thank you.  I think so too.

11          MR. SUESS:  I think maybe the thing to do is for

12  counsel to have a meet and confer and discuss these logistical

13  issues --

14          THE COURT:  Yeah, I think that's right.

15          MR. SUESS:  It sounds like cooperation is the key

16  word here.

17          THE COURT:  It is.  I will say the -- yes.  This case

18  seems to require a lot of painstaking work by me, but -- which

19  is fine.  It's a major, major case and with a lot of

20  significance to the parties and complexities, so I'm happy to

21  do my bit and try to help you cut through that.  Okay.

22          MR. SUESS:  Thank you, Your Honor.

23          THE COURT:  Yep.  All right.  I think maybe we're

24  done.  Does anyone want to raise anything else, and

25  particularly Mr. Modi because I know you don't have much access

1   to us.

2           MR. MODI:  Sorry, I -- yes, the -- my request for

3   production of August 23, is it going to be ignored or will the

4   trustee act on it?

5           THE COURT:  Wait, I'm sorry, let's -- let me -- I --

6   if it was sent and received, then they're obliged to act on it,

7   but -- either by objecting or by responding.  Did you send it

8   August --

9           MR. MODI:  Because it has been two years, so I

10  don't --

11          THE COURT:  Yeah -- oh, August of 2023 you're saying?

12          MR. MODI:  Yes.  Yes.

13          THE COURT:  No -- well, Mr. Wedoff previously

14  mentioned having done a document production to your then

15  counsel, and so -- and that he's going to re-produce that to

16  you, so I think maybe that's -- that would be his answer, but

17  Mr. Wedoff, what's your answer?

18          MR. WEDOFF:  Yeah, and -- that's correct, Your Honor.

19  I will look to see what the volume is, because again, if it's a

20  million pages, we're not going to print out a -- I mean, there

21  wouldn't be anywhere to put it where Mr. Modi is, so maybe we

22  just have to, you know, send a letter with a proposal as to how

23  to get those documents to Mr. Modi because I don't have the

24  volume off -- you know, handy.

25          THE COURT:  Right.  Okay.  Maybe you can support his

1   request for a computer that he has pending in another case.

2            MR. WEDOFF:  We would be thrilled to do so, Your

3   Honor.

4            THE COURT:  Yeah.  Okay.  So let's work on that.  I'm

5   certainly not going to require the killing of a forest at this

6   time, so let's try to work with things electronically.  Okay?

7            All right.  So I think -- do you want me to set a

8   follow-up conference now for any particular date?  I've already

9   directed that we have one in July after the new discovery date.

10           Actually let me not make -- give that invitation.

11  What I'm going to do is you all need to meet and confer and

12  work out some of the issues we talked about, and I'll just make

13  myself available on short notice.  If you need to -- if you

14  need me again to talk anything through, that's fine.  It would

15  be helpful if it was kind of somewhat pointed, so even if it's

16  not a motion to compel situation, I'd love to get a

17  pre-conference letter outlining what the hopes -- what one

18  hopes will be accomplished at that.  Okay?

19           If you don't me -- need me, that's great.  And that's

20  fine, but I'm available.  Okay?  I have a few short periods of

21  unavailability, like the week of May 5th is bad, but mostly

22  I'll be around.  Okay?

23           All right.  Everyone is looking sort of like they've

24  had enough of talking to me and each other for the moment, so I

25  think what I'll do is say thank you for your efforts.  Please

1   try to work through these difficult issues and thanks for your

2   efforts and we'll keep working at this.  All right?  And we're

3   adjourned for now.  Take care.

4            MS. SULLIVAN:  Thank you, Your Honor.

5            MR. WEDOFF:  Thank you, Your Honor.

6            MR. MODI:  Thank you.

7            MR. TOOSSI:  Thank you, Your Honor.

8            MR. MODI:  Thank you, Your Honor.

9        (Proceedings concluded)

10                         * * * * *

11

12

13

14

15

16             **C E R T I F I C A T I O N**

17

18        I, Tracy A. Roman, court-approved transcriber, hereby

19   certify that the foregoing is a correct transcript from the

20   official electronic sound recording of the proceedings in the

21   above-entitled matter.

22

23   _____

24   TRACY A. ROMAN, AAERT NO. 282          DATE: April 30, 2025

25   ACCESS TRANSCRIPTS, LLC