AKRIVIS LAW GROUP, PLLC
Amir Toossi, Esq.
Akrivis Law Group
747 Third Avenue, 32nd Floor
New York, NY 10017
(347) 949-0548
atoossi@akrivislaw.com
*Counsel for Ami Javeri*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FIRESTAR DIAMOND, INC., *et al.*,<br><br>　　　　　Debtors. | Chapter No. 11<br><br>No.: 18-10509 (DSJ)<br><br>(Jointly Administered) |
| RICHARD LEVIN, trustee for the liquidating trust of FIRESTAR DIAMOND, INC. and OLD AJ, INC.,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>AMI JAVERI (A/K/A AMI MODI); PURVI MEHTA (A/K/A PURVI MODI); CENTRAL PARK REAL ESTATE, LLC; CENTRAL PARK SOUTH 50 PROPERTIES, LLC; TRIDENT TRUST COMPANY (SOUTH DAKOTA) INC., solely as Trustee of the ITHACA TRUST; TWIN FIELDS INVESTMENTS LTD.; AURAGEM COMPANY LTD.; BRILLIANT DIAMONDS LTD.; ETERNAL DIAMONDS CORPORATION LTD.; FANCY CREATIONS COMPANY LTD.; SINO TRADERS LTD.; SUNSHINE GEMS LTD.,<br><br>　　　　　Defendants. | Adv. Proc. No. 20-1054 (DSJ) |

**DEFENDANT AMI JAVERI'S OPPOSITION TO TRUSTEE'S MOTION FOR ORDER
REGARDING ATTACHMENT AND AMENDED STIPULATION**

**Table of Contents**

Preliminary Statement ...........................................................................................................1

Statement of Facts ................................................................................................................1

    A. The Attachment Order ................................................................................................1

    B. The Stipulation ...........................................................................................................2

    C. Performance Under the Stipulation............................................................................3

Argument...............................................................................................................................4

    I.    Ms. Javeri Has Not Breached the Amended Stipulation........................................ 4

        A. Ms. Javeri Has Paid Approximately $142,000 Towards the Apartments......... 4

        B. Ms. Javeri Has "Made All Reasonable Efforts"................................................7

    II.    The Trustee's Proposed Remedy Is Draconian and Inconsistent with the
        Purpose of the Attachment Orders..........................................................................8

    III.    Rather than Terminating the Stipulation, the Court Should
        Amend It to Preserve the Value of the Apartments and Allow
        Ms. Javeri to Continue Her Defense .......................................................................9

Conclusion ...........................................................................................................................10

# Table of Authorities

*Burke v. PriceWaterHouseCoopers LLP, Long Term Disability Plan,*
    537 F. Supp. 2d 546 (S.D.N.Y. 2008)..................................................................................6

*Madison Avenue Diamonds LLC v. KGK Jewelry LLC,*
    143 A.D.3d 501 (1st Dept. 2016).......................................................................................7

Defendant Ms. Ami Javeri, by and through her undersigned counsel, hereby submits this opposition to the *Trustee's Motion for Order Regarding Attachment and Amended Stipulation* [Docket No. 276],[1] and respectfully states as follows:

## Preliminary Statement

The Trustee's Motion rests on (i) a mischaracterization of the Amended Stipulation entered on August 21, 2024 (the "Stipulation") and (ii) a misleading presentation of arrears that pre-dated the Stipulation. Ms. Javeri has complied with her obligations under the Stipulation, has paid over $142,000 in apartment-related costs since its execution, and has acted in reliance on the bargained-for structure that preserved her ability to cover family expenses and legal fees for her defense in this action.

The Trustee's attempt to terminate the Stipulation and force liquidation of the Apartments is a transparent effort to leverage pre-judgment attachment as a coercive settlement device. The Court should deny the Motion and, instead, adopt the reasonable proposal set forth below to protect the value of the assets without the destructive consequences of a distressed sale.

## Statement of Facts

**A. The Attachment Order**

On February 21, 2024, Judge Lane entered an Order of Attachment in the above-captioned case.[2] See Docket No. 212. Specifically, Judge Lane ordered attachment of Ms. Javeri's interests in (i) the real property located at 50 Central Park South, Unit 33, New York, NY 10019 (the "Ritz Carlton Apartment"); (ii) the real property located at 160 Central Park South, Unit 3601, New York, NY 10019 (the "Essex House Apartment," and together with the Ritz

---

[1] Capitalized terms used but not defined herein have the meanings ascribed to them in the Motion.

[2] The Attachment Order mentioned above was the final such Order following litigation.

1

Carlton Apartment, the "Apartments"); (iii) Javeri's beneficial interests in the Ithaca Trust; and (iv) Javeri's beneficial interests in the Frost Trust (items (i) through (iv) above, collectively, the "Attached Assets").[3] The Ritz Carlton has an estimated value of $25 million, the Essex House has an estimated value of $6 million, and the Frost Trust currently holds approximately $8 million in cash.

### B. The Stipulation

In or about April 2024, counsel for Ms. Javeri approached the Trustee to negotiate a stipulation that would allow Ms. Javeri to afford legal counsel, make payments to prevent the continuing foreclosure proceedings of the Ritz Carlton Apartment, and allow Ms. Javeri access to funds for personal living expenses, among other things.

The resulting stipulation was entered on August 21, 2024 (the "Stipulation"). The Stipulation contained the following provisions, which are relevant to the Trustee's Motion:

- Payment from the Frost Trust principal of a retainer and reasonable legal fees for Ms. Javeri's counsel. See Stipulation ¶ 2(a).

- Payment from the Frost Trust principal of $413,177.02 to the Ritz Carlton Apartment's condominium association for outstanding charges at the Ritz Carlton Apartment. Id. at ¶¶ 2(b), 3(b).

- Payment of interest accrued on the Frost Trust principal to Ms. Javeri, which was "intended to cover: (i) all personal expenses, including all condominium common charges, other fees and expenses, insurance, and taxes associated with the Apartments, of Ms. Javeri and her children; (ii) all health insurance and medical expenses of Ms. Javeri and her children, and (iii) her children's educational expenses[.]" Id. ¶ 5(a).

- "To the extent any property taxes on the Ritz Carlton Apartment are due on or before December 31, 2024 are not paid on or before January 31, 2025, Ms. Javeri

---

[3] The Attached Assets have only been attached for the purposes of this matter, and not for the purposes of the other, related matters.

2

consents to judgment in favor of the Trustee in the amount of any such unpaid Apartment Taxes." Id. at ¶ 6.

- "Ms. Javeri will make all reasonable efforts to settle the foreclosure action with 50CPS-BOM and to prevent further encumbrances and foreclosure proceedings against the Apartments." Id. at ¶ 4.

**C. Performance Under the Stipulation**

Over the next year, Trident, the Trustee of the Frost Trust, paid $156,189 to Ms. Javeri from the interest generated from the monthly Treasury bills that were property of the Frost Trust. Consistent with her obligation under the Stipulation, Ms. Javeri used those funds for approved purposes, with $142,000 applied by Ms. Javeri to pay common charges, taxes, insurance and other maintenance expenses for the Apartments. Despite using only a minimal amount of the Trust disbursements for non-residential living expenses as permitted under the Stipulation, the interest generated from the monthly Treasury bills was insufficient to pay all Apartment common charges and other expenses in full.

Then, in February 2025, the Essex House began imposing late fees for outstanding common charges that were equivalent to 20% per annum of those amounts. As a result, and in recognition of the fact that a one-year certificate of deposit held by the Frost Trust would mature in July 2025 and yield approximately $225,000 in interest,[4] the undersigned contacted the Trustee to determine whether he was willing to amend the Stipulation to (a) pay down the outstanding common charges owed to the Essex House, thereby minimizing the late fees that were accruing and the risk that the Essex House would initiate foreclosure proceedings, and (b) use the remaining full amount of the Frost Trust principal to keep the Apartments current with respect to common charges and taxes.

---

[4] The Stipulation called for a portion of the Frost Trust principal to be invested in a one-year certificate of deposit, with the interest accrued meant to, in part, replenish funds used from the principal to pay to the Ritz Carlton. See Stipulation at ¶ 7.

3

The Trustee initially indicated openness to a new agreement, indicating that he was amenable to investing the entire Frost Trust principal in monthly Treasury bills. Over the course of negotiations, the Trustee agreed in principle to allow amounts from the Frost Trust principal to be used to bring the common charges and taxes current, and Ms. Javeri agreed that the full amount of interest generated from the Frost Trust principal would be used solely to pay for the common charges and taxes on an ongoing basis. The parties, however, understood that the interest would not be sufficient to satisfy those charges, and the parties were not able to agree on how the shortfall would be paid. When Ms. Javeri requested that the shortfall, estimated to be roughly $80,000 per year based on current interest rates, be paid from the Frost Trust principal, the Trustee refused to negotiate further and filed the Motion.

During negotiations concerning a potential amended stipulation and since the filing of the Motion, the Trustee has been pressing Ms. Javeri to make a settlement proposal with respect to this adversary proceeding.

The Trustee filed his Motion just four weeks before he is scheduled to be deposed in this action and approximately six weeks after Ms. Javeri was deposed. Fact discovery is scheduled to end on October 24, 2025.

## Argument

### I. Ms. Javeri Has Not Breached the Stipulation

The Trustee claims, wrongly, that Ms. Javeri has breached the Stipulation by failing to pay expenses related to the Apartments and allowing liens to be applied to the Apartments. Neither allegation is true. Rather, Ms. Javeri has complied with her obligations under the Stipulation.

4

### A. Ms. Javeri Has Paid Approximately $142,000 Towards the Apartments

The Trustee has made numerous statements in his Motion that are untrue. First, the Trustee claims that "Javeri has failed to pay expenses related to the Apartments." See Mot. at 7. This claim is not true. Since the Stipulation was entered, Ms. Javeri has paid approximately $142,000 towards common charges, insurance and other maintenance costs for the Apartments, including approximately $107,000 paid to the Ritz Carlton for common charges.

Second, the Trustee claims that "It does not appear that the failure to pay has resulted from Ms. Javeri's lack of other sources of funds, as she and her family continue to live and, presumably, to eat and tend to the other necessities of life without use of any Frost Trust funds." See Mot. at 7. It is difficult to understand exactly what the Trustee claims is a breach of the Stipulation – does he object to Ms. Javeri and her family "continu[ing] to live and … eat and tend to other necessities of life"? Regardless, the Stipulation explicitly authorizes Ms. Javeri to use funds distributed per the Stipulation for the payment of "all personal expenses" of her and her children, and the Trustee has not provided any evidence that Ms. Javeri has funds separate and apart from the Frost Trust payments sufficient to (i) keep the Apartments current, (ii) "continue to live and … eat and tend to the other necessities of life," and (iii) fund her legal defense in this action.

Third, the Trustee claims that "[s]ince the Stipulation was so-ordered roughly one year ago, Ms. Javeri has allowed over $600,000 of charges to accrue on the Apartments." See Mot. at 7. This contention is misleading insofar as it includes common charges and taxes that were owed when the Stipulation was entered. Both parties understood these pre-existing arrears when they negotiated the Stipulation. The purpose of the agreement was to extinguish the Ritz Carlton foreclosure action and to try and manage ongoing obligations, not settle all prior balances. To

5

now characterize historical arrears as new accruals is misleading and entirely contradicted by the record.

In claiming a breach of the Stipulation, the Trustee is effectively arguing that the Stipulation imposed certain responsibilities on Ms. Javeri that are nowhere to be found in the Stipulation. The Stipulation expressly provides for the payment of (i) "all personal expenses" of Ms. Javeri and her children, including Apartment-related costs and expenses, (ii) all health insurance and medical expenses of Ms. Javeri and her children, and (iii) Mr. Javeri's children's educational expenses. See Stipulation ¶ 5a. Ms. Javeri made every effort to focus on Apartment costs and minimize the use of funds for non-Apartment living expenses, but nowhere does the Stipulation require prioritization of Apartment expenses or the use of funds for Apartment expenses to the exclusion of all other enumerated categories of permitted expenditures. The Trustee's attempt to re-write the bargain to impose such prioritization must be rejected. See Burke v. PriceWaterHouseCoopers LLP, Long Term Disability Plan, 537 F. Supp. 2d 546, 552 (S.D.N.Y. 2008) (noting that it is a fundamental contracts principle that a court may not "rewrite, under the guise of interpretation, a term of the contract") (quoting Cruden v. Bank of New York, 957 F.2d 961, 976 (2d Cir. 1992)).

Likewise, there is simply no requirement in the Stipulation that Ms. Javeri keep the Apartments' common charges and taxes current. Ms. Javeri is unemployed, has never been employed, and her husband (who is representing himself *pro se* in a related action) is currently incarcerated in the United Kingdom. And although Ms. Javeri's oldest son is employed, his income is nowhere near enough to carry the costs of common charges, taxes, insurance and maintenance of the Apartments, as well as the costs of everyday living for himself and his family.

6

Indeed, the parties understood that the resulting interest from the Frost Trust would not be sufficient to keep the Apartments' common charges and taxes current. This was reflected by the parties' agreement that (1) the Trustee would be entitled to a judgment in the amount of real estate taxes owed on the Ritz Carlton Apartment as of December 31, 2024 if they were not satisfied by a certain date and (2) Ms. Javeri was to "make all reasonable efforts," not an undertaking that she would make all future payments.

Because the vast majority of the interest generated from the monthly Treasury bills was devoted to the Apartments, Ms. Javeri's performance was consistent with the Stipulation. This record of performance is inconsistent with any suggestion of willful noncompliance. See Madison Avenue Diamonds LLC v. KGK Jewelry LLC, 143 A.D.3d 501, 502 (1st Dept. 2016) (party not in breach where it was in substantial compliance with settlement agreement). Here, at a minimum, Ms. Javeri's substantial performance precludes any finding of breach.

### B. Ms. Javeri Has "Made All Reasonable Efforts"

Under the Stipulation, Ms. Javeri undertook the responsibility to "make all reasonable efforts to settle the foreclosure action with 50CPS-BOM and to prevent further encumbrances and foreclosure proceedings against the Apartments." See Mot. at 8. At this time, she has satisfied both obligations.

As an initial matter, the foreclosure proceeding initiated by the Ritz Carlton was settled and the lien associated with common charges was extinguished.

Although it is true that there are common charges and taxes that are owed, at the time the Stipulation was entered, the parties understood that certain arrears existed and that the anticipated interest from the Frost Trust principal was not sufficient to keep the Apartments current, let alone settle the past due amounts owed.

7

Rather, Ms. Javeri was obligated to "make all reasonable efforts" to prevent further encumbrances and foreclosure proceedings, in part because the parties understood that any action that forced a sale of the Apartments would result in recovery of an amount far below the Apartments' fair market value. But her responsibility was to employ "all reasonable efforts," not to make payments no matter the circumstances. Had the parties intended for her to make payments as they became due without fail, they would not have included the modifier "make all reasonable efforts." And the Trustee never explains why her efforts were not reasonable, given the funds available to her.

II.     **The Trustee's Proposed Remedy Is Draconian and Inconsistent with the Purpose of the Attachment Orders**

Even though the Trustee cannot articulate a clear breach of Stipulation, he nonetheless seeks an extraordinary remedy: liquidation of the Apartments and denial of Ms. Javeri's legal fees going forward. In essence, even though the Trustee does not have a judgment against Ms. Javeri and has not proven a single allegation against her, he urges this Court to render her homeless and unable to pay for her defense in this action.

The Trustee cites N.Y. CPLR 6218(a) as authority for his request, stating that the statute provides that "[i]f the urgency of the case requires, the court may direct sale or other disposition of property[.]" See Mot. at 10. The Trustee has shown no such urgency here.

The Trustee then states that "a sale of attached property may be warranted to preserve the assets' value." Id. But he does not explain how or why a forced sale is necessary to preserve the value when a forced sale will almost certainly cause more damage to the value of the Attached Assets. Specifically, as the parties both acknowledged when negotiating the Stipulation, a forced sale will almost certainly yield a purchase price for the Apartments far below fair market value.

8

Further, the Trustee's proposed forced sale of the Apartments amounts to a remedy that was never contemplated in the Attachment Orders. The Attachment Orders were designed to prevent Ms. Javeri from secreting or transferring the Attached Assets outside the Trustee's reach, not to provide the Trustee with pre-judgment recovery and certainly not deprivation of her home before any judgment is imposed on her.

Lastly, the Stipulation expressly provided for payment of Ms. Javeri's legal fees from Frost Trust principal. The Trustee's attempt to terminate the Stipulation would deprive Ms. Javeri of effective representation in ongoing litigation, especially at a critical point in the case when multiple depositions are scheduled for the next month, including the Trustee himself. Such a maneuver is improper and underscores the Motion's true purpose: to use pre-judgment remedies coercively.

### III. Rather than Terminating the Stipulation, the Court Should Amend It to Preserve the Value of the Apartments and Allow Ms. Javeri to Continue Her Defense

As stated above, the parties sought to renegotiate the Stipulation to protect the value of the Apartments before the Trustee decided to file the Motion. The parties agreed that the status quo under the Stipulation could be improved, and the parties made substantial progress towards an agreed upon resolution. Based on those negotiations, and to the extent the Court deems such amendment appropriate, Ms. Javeri proposes the following amendments to the Stipulation:

- Payment of a lump sum from the Frost Trust principal in an amount sufficient to bring the common charges and taxes on both Apartments current.
- Investment of the entire Frost Trust Principal in monthly Treasury bills, with the interest accrued to be paid by Trident towards the common charges and taxes on the Apartments.
- To the extent that the interest generated from the monthly Treasury bills is not sufficient to satisfy all common charges and taxes as they become due, Ms. Javeri will undertake to pay the difference. Under current interest rates, the shortfall

9

over the next 12 months is estimated to be roughly $80,000. As noted above, Ms. Javeri's oldest child is employed and can assist her in making these payments.

- Ms. Javeri will certify by a date determined by the Court that all common charges and taxes are current.
- Ms. Javeri will provide documentation showing that the common charges and taxes on the Apartments are current each month until the matter is resolved, either by motion, trial or settlement.

This framework ensures all obligations associated with the Apartments are satisfied, protects the Trustee's interest in preserving value, and avoids the unnecessary and value-destructive remedy of a forced sale. The entire purpose of the Attachment Order was to maintain the Apartments and preserve their value pending the resolution of this case. Ms. Javeri's proposal would do exactly that; the Trustee's request would accomplish the opposite.

## **Conclusion**

For the foregoing reasons, the Court should deny the Trustee's Motion. In the alternative, the Court should adopt Ms. Javeri's proposal for investment of Frost Trust principal in Treasury bills with interest applied to the Apartments' common charges and taxes and limited access to the principal to bring the Apartments current and for Ms. Javeri's legal fees.

Dated: September 16, 2025

                                                      Respectfully submitted,

                                                                /s/

                                                     Amir Toossi, Esq.
                                                    Akrivis Law Group
                                                    747 Third Avenue, 32nd Floor
                                                    New York, NY 10017
                                                    (347) 949-0548
                                                    atoossi@akrivislaw.com

                                                    *Counsel for Ami Javeri*

10